IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| WILLIE MCCASKILL, <br><br> Plaintiff, <br><br> v. <br><br> NAVIENT SOLUTIONS, INC., STUDENT ASSISTANCE CORPORATION, and NAVIENT CORPORATION, <br><br> Defendants. | No. No. 8:15-CV-1559-T-33-TBM |

**DEFENDANT NAVIENT SOLUTIONS, INC.'S MOTION TO STAY ACTION PENDING RULING FROM THE UNITED STATES SUPREME COURT**

**I.   INTRODUCTION**

In her Amended Complaint (the "Amended Complaint"), plaintiff Willie McCaskill ("McCaskill") alleges that defendant Navient Solutions, Inc. ("NSI") made autodialed calls to her cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"). Specifically, McCaskill contends that NSI made those calls without the "prior express consent" that the TCPA requires.

As detailed below, the TCPA claims alleged here involve critical, threshold issues of standing, which will be addressed in a matter pending before the United States Supreme Court. Indeed, in Robins v. Spokeo, Inc., 742 F.3d 409 (9th Cir. 2014) cert. granted, 135 S. Ct. 1892 (2015), the Supreme Court will determine whether Congress can confer standing upon a plaintiff whose only injury is an "injury in law" – i.e., a bare violation of a federal statute. Here, by her own admission, McCaskill seeks only the statutory damages that the TCPA allows. If the

1

Supreme Court concludes in Robins that an injury in law does not suffice, then McCaskill cannot proceed with her TCPA claims.

The Supreme Court will rule in Robins by June 2016. There is a growing trend among courts around the country to acknowledge the importance of the issue raised in Robins and, thus, to stay pending actions.[1] The Court should join that trend by granting this Motion to Stay.

## II.  BACKGROUND

### A.  McCaskill's Claims And The TCPA

McCaskill's daughter, Maretta Newsome ("Newsome"), has outstanding student loans. NSI allegedly made numerous calls to McCaskill's cellular telephone with respect to those loans. (Am. Compl. ¶¶ 19-21.) McCaskill alleges that the calls violated the TCPA because NSI placed them to her cell phone without her prior express consent and by using an automatic telephone dialing system. (Am. Compl. ¶¶ 58, 68, 84.)[2]

Under the TCPA, a defendant is liable for a plaintiff's actual monetary loss or $500 per call (for a negligent violation) or up to $1,500 per call (for a knowing or willful violation). See 47 U.S.C. § 227(b)(3). As confirmed by Plaintiff's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), McCaskill seeks statutory damages of up to $1,500 for each call, an

---

[1] See, e.g., Boise v. ACE USA, Inc., No. 15-CIV-21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015); Williams v. Elephant Ins. Co., No. 1:15-CV-00119-GBL, 2015 WL 3631691 (E.D. Va. May 27, 2015); In re Monitronics Int'l, Inc., MDL No. 1:13MD2493, Docket No. 462 (N.D. W. Va. June 17, 2015); Salvatore v. Microbilt Corp., No. 4:14-CV-1848, 2015 WL 5008856 (M.D. Pa. Aug. 20, 2015); Stone v. Sterling Infosystems, Inc., No. 2:15-CV-00711-MCE, 2015 WL 4602968 (E.D. Cal. July 29, 2015); Hillson v. Kelly Servs., Inc., No. 2:15-CV-10803, 2015 WL 4488493 (E.D. Mich. July 15, 2015); Larson v. Trans Union, LLC, No. 12-CV-05726-WHO, 2015 WL 3945052 (N.D. Cal. June 26, 2015); Ramirez v. Trans Union, LLC, Case No. 12-CV-00632-JSC, 2015 U.S. Dist. LEXIS 80692 (N.D. Cal. June 22, 2015); Syed v. M-I LLC, No. 1:14-CV-00742-WBS, 2015 WL 3630310 (E.D. Cal. May 29, 2015).

[2] To be sure, Defendants do not concede any liability whatsoever on these claims. For instance, Navient is a holding company, which does not engage in loan servicing activity. Further, there are factual questions as to use of the cell phone at issue and consent. Indeed, in February 2014, Newsome confirmed to NSI that calls could be made to the cell number.

2

injunction and attorneys' fees and costs. (See Declaration of Lisa M. Simonetti, ¶ 2, Ex. A.) McCaskill does not seek actual damages under the TCPA. Rather, McCaskill seeks only the statutory damages that the TCPA allows.[3]

### B. Standing And Robins

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art[icle] III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Thus, before a federal court can consider the merits of a legal claim, "the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).

As courts have noted, Robins "may conclusively determine" whether, under circumstances such as those presented here, a named plaintiff has Article III standing. See, e.g., Boise, 2015 WL 4077433, at *5. The issue before the Supreme Court is framed as follows:

> Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute. (Petition for Writ of Certiorari, Robins, 135 S. Ct. 1892 (No. 13-1339), 2014 WL 1802228, at *i (hereinafter "Robins Petition".)

The Circuits are split on this issue.[4]

---

[3] NSI recognizes that McCaskill also alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq. (the "FCCPA"). As explained below, however, the entire action should be stayed pending a ruling from the Supreme Court.

[4] The Sixth, Seventh and Ninth Circuits have held that Article III standing can be conferred despite a lack of actual damages. See, e.g., Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702, 705-07 (6th Cir. 2009); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 952-53 (7th Cir. 2006); Robins, 742 F.3d at 411. The Second and Fourth Circuits disagree. See, e.g., Kendall v. Emps.

Oral argument took place on November 2, 2015 in Robins. A decision is expected by June 2016, in the ordinary course.

### III.    ARGUMENT

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Further, and importantly, a court should grant a motion to stay if a higher court in a separate case will decide issues of law that are significant to the case sought to be stayed. See Boise, 2015 WL 4077433, at *7 (granting motion to stay pending the Supreme Court's ruling in Robins); see also Sierra Club v. Coca-Cola Corp., 673 F. Supp. 1555, 1557 (M.D. Fla. 1987) (staying the action pending the Supreme Court's decision on interrelated issues); 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., No. 10-61984-CIV, 2011 WL 2470344, at *16 (S.D. Fla. June 21, 2011) (granting defendant's motion to stay pending the determination by the Florida Supreme Court, certified by the Eleventh Circuit, of interrelated issues.); E.E.O.C. v. Delta Air Lines, Inc., No. C76-906A, 1977 WL 872, at *1 (N.D. Ga. June 30, 1977) (staying the proceedings pending decision of interrelated issues by the Supreme Court). "In determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." Peach State Labs, Inc. v. Envtl. Mfg. Solutions, LLC, No. 6:09-CV-395-ORL-28DAB, 2012 WL

---

Ret. Plan of Avon Prods., 561 F.3d 112, 121 (2d Cir. 2009) (determining that, although "plan fiduciaries have a statutory duty to comply with [the Employee Retirement Income Security Program, 29 U.S.C. § 1001, et seq.]," a claim for breach of that duty cannot be maintained without "alleg[ing] some injury or deprivation of a specific right that arose from a violation of th[e] duty"); David v. Alphin, 704 F.3d 327, 338-39 (4th Cir. 2013) (rejecting the argument that the mere "deprivation of [a] statutory right . . . is sufficient to constitute an injury-in-fact for Article III standing").

503839, at *3 (M.D. Fla. Jan. 13, 2012) report and recommendation adopted, No. 6:09-CV-395-ORL-28, 2012 WL 503837 (M.D. Fla. Feb. 15, 2012). Here, all three factors weigh in favor of granting a stay of McCaskill's claims.

First, McCaskill would not be unduly prejudiced or tactically disadvantaged by a stay. The duration of the stay would be brief because the Supreme Court is expected to release its decision in Robins by June 2016. See Ramirez, 2015 U.S. Dist. LEXIS 80692, at *4 (granting the motion to stay because the Robins decision will likely be issued within a year – i.e., by June 2016 – pursuant to the Supreme Court's "customary practice"). In fact, if the action is not stayed, it is NSI that will face the prospect of significant prejudice based on unnecessary proceedings and expense. See Boise, 2015 WL 4077433, at *6 (granting a stay based on Robins and stating that "[p]laintiff will not be unduly prejudiced or harmed by a stay of proceedings, which only stands to delay [p]laintiff's potential recovery for a period likely less than twelve months. Conversely, without a stay, [d]efendant will be forced to endure onerous discovery and significant expenses, which may be needlessly incurred if the Supreme Court rules favorably for the [d]efendant in either one of the two cases." (internal citations omitted)).

Second, and critically, the issues of standing presented in Robins could well be dispositive of McCaskill's TCPA claims. See id. ("It is also relevant that [Robins] will deal with threshold issues of jurisdiction and whether this case may proceed at all. Ultimately, both parties could be harmed by the burden of potentially superfluous litigation." (internal citations omitted)); see also 200 Leslie Condo. Ass'n, 2011 WL 2470344, at *15 (imposing a stay because "the outcome of Count III [in the underlying case] will turn on the Florida Supreme Court's answers to the[] questions [certified to the Florida Supreme Court by the Eleventh Circuit]"); Ramirez, 2015 U.S. Dist. LEXIS 80692, at *3-4 (granting the motion to stay because the

5

Supreme Court's pending decision in Robins "may directly impact the [c]ourt's class certification ruling").

Third, a stay would reduce the burden of litigation on the parties and the Court. See 200 Leslie Condo. Ass'n, 2011 WL 2470344, at *16 (granting defendant's motion to stay because "[a] stay would result in savings to the parties and the Court"). Indeed, absent a stay, the parties and this busy Court will be burdened with discovery, significant motion practice, pre-trial hearings and trial on McCaskill's TCPA claims, all against the background of a substantial and fundamental question as to standing. See Boise, 2015 WL 4077433, at *5 ("the significant 'time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules . . . that plaintiffs like Boise lack Article III standing . . . . This Court may exercise its discretion to avoid such unnecessary expenditures of time and resources by ordering a stay of proceedings."); Doe v. Barrow Cnty., Ga., No. CIV.A. 2:03-CV-156WCO, 2005 WL 6033020, at *2 (N.D. Ga. Mar. 3, 2005) (staying the proceedings because "the interests of judicial economy . . . and the preservation of party resources override the potential but limited harm to plaintiff by delaying disposition of this case at this time").

Moreover, the concern for judicial economy strongly indicates that this Court should await the Supreme Court's rulings to prevent the risk of reaching a decision that is inconsistent with forthcoming Supreme Court precedent. See Boise, 2015 WL 4077433, at *2 (supporting a stay of proceedings where doing so would "prevent possibly inconsistent resolutions") (citing Clinton v. Jones, 520 U.S. 681, 706 (1997)); Doe, 2005 WL 6033020, at *2 (staying the proceedings "until it can be certain that the law applied is that which will ultimately be afforded legal effect"). This concern is especially acute here – i.e., the Supreme Court's ruling may compel the conclusion that this Court simply lacks the ability to hear McCaskill's TCPA claims.

6

Further, the entirety of this action should be stayed pending a decision in Robins. McCaskill's various claims – i.e., under the TCPA, the FDCPA and the FCCPA – are inextricably intertwined. All are based on the same facts and circumstances. It would confuse the issues and waste the time and resources of this Court and the parties to engage in piecemeal litigation, and a full stay of the action therefore is appropriate. See, e.g., Doe, 2005 WL 6033020, at *1 (granting motion to stay all proceedings because "the Supreme Court agreed to address questions of law similar and directly related to those [in the underlying case] so that its rulings may heavily influence the resolution of this case"); Versata Software, Inc. v. Dorado Software, Inc., No. 2:13-CV-00920-MCE-DAD, 2014 WL 1330652, at *3 (E.D. Cal. Mar. 28, 2014) (granting motion to stay all proceedings because "it would be an inefficient use of judicial resources to stay only those claims in this case that relate to [one issue] while allowing the claims related to the [second issue] to move forward – especially given that the stay in this matter will likely be lifted [seven months after the opinion] at the latest."); Anker v. Wesley, 670 F. Supp. 2d 339, 347 (D. Del. 2009) ("the court has decided to stay its consideration of claim two until the Supreme Court issues a decision . . . . Rather than engage in piecemeal litigation, the court will also stay claim one until the entire application is ready for consideration.").

In addition, and notably, it is unclear from the Complaint whether McCaskill purports to seek actual damages, or only statutory damages, on her FDCPA claim. To the extent that McCaskill does not seek actual damages, the issue raised in Robins applies with equal force to the FDCPA claim.

**IV.    CONCLUSION**

For the foregoing reasons, NSI respectfully requests that the Court stay this action pending the Supreme Court's ruling in Robins.

7

**RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned conferred with counsel for McCaskill on November 16, 2015 and counsel were not able to agree on a resolution of the Motion.

Dated: November 17, 2015                     Respectfully submitted,

                                             By:    /s/ Lisa M. Simonetti

                                             Lisa M. Simonetti
                                             (admitted *pro hac vice*)
                                             Vedder Price (CA), LLP
                                             1925 Century Park East, Suite 1900
                                             Los Angeles, California 90067
                                             T: (424) 204-7700
                                             F: (424) 204-7702
                                             lsimonetti@vedderprice.com

                                             Attorneys for Defendant
                                             NAVIENT SOLUTIONS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants: N/A.

/s/ Lisa M. Simonetti
Lisa M. Simonetti
(admitted *pro hac vice*)
Vedder Price (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: (424) 204-7700
F: (424) 204-7702
lsimonetti@vedderprice.com

Attorneys for Defendant
NAVIENT SOLUTIONS, INC.

CHICAGO/#2772191.2