UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE MCCASKILL,

    Plaintiff,

-vs-

NAVIENT SOLUTIONS, INC., STUDENT    CASE NO.: 8:15-CV-1559-T-33-TBM
ASSISTANCE CORPORATION, and
NAVIENT CORPORATION,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT
## NAVIENT SOLUTIONS, INC.'S MOTION TO STAY

**COMES NOW**, the Plaintiff, Willie McCaskill, by and through her undersigned counsel, and respectfully requests this Honorable Court deny Defendant Navient Solutions, Inc.'s Motion To Stay Action Pending Ruling Of The United States Supreme Court (Doc. 41), and states the following in opposition thereto:

### Introduction

The Plaintiff has brought three counts against each of the three Defendants in this matter: violations of the Telephone Consumer Protection Act (TCPA); violations of the Fair Debt Collection Practices Act (FDCPA); and violations of the Florida Consumer Credit Protection Act (FCCPA). These claims steam from an almost unfathomable number of calls that the Defendants made to the Plaintiff's cellular phone without her prior express consent, all while seeking to collect a debt that belonged to a third party.

Between January of 2014 and the filing of this lawsuit the Defendants called the Plaintiff at least seven-hundred and sixteen (716) times on her cellular telephone using an auto-dialer.

1

What makes this case even more egregious is the fact that the Defendants obtained the Plaintiff's cellular telephone number via "skip-tracing"[1] and have been less than forthcoming about this fact during litigation. For example, counsel for the Defendants explicitly represented to this Court that Plaintiff's phone number was provided by Plaintiff's daughter during an October 8, 2015 case management conference:

> "There also is -- there is an issue of consent here. **The number was provided to the company by plaintiff's daughter.** This is not a completely random person in the world. So I think we are entitled to explore what that relationship was and whether consent was really given." (Emphasis added.)

In addition to providing incorrect information to the Court, counsel for the Defendants also repeatedly indicated to undersigned counsel that Plaintiff's daughter provided Plaintiff's cellular telephone number to Navient Solutions, Inc. ("NSI"). These assertions were subsequently established not to be true, and Defendants' counsel has now admitted that the Defendant actually obtained the number it made repeated calls to by "skip-tracing" the Plaintiff's daughter.

Initially, Plaintiff only brought this action against NSI. However, one business day before mediation Defendant NSI changed its position as to the number of calls that it placed to the Plaintiff's cellular telephone (claiming responsibility for "only" 249 of the 716 calls originally agreed upon)[2]. It subsequently became clear that NSI was attempting to avoid liability for the total calls placed to the Plaintiff's cellular phone by asserting that its sister corporation, Student Assistance Corp. ("SAC") placed the remaining 467 calls. Thus, the Plaintiff amended her

---

[1] Skip-tracing is a term used to describe the process of locating an individual's whereabouts for any number of purposes, including collecting debts.

[2] Counsel for the Defendant has repeatedly promised to provide Plaintiff with the total number of calls Defendant believes were made to Plaintiff by SAC; however to date (despite numerous requests) this information has not been provided and is a subject of Plaintiff's Motion to Compel (Doc. 46).In fact on Friday, November 13, 2015 Defense Counsel agreed to provide the total number of calls only to then turn around and file the Motion to Stay on Tuesday November 17, 2015.

2

complaint to add both SAC and Navient Corp. (SAC and NSI's parent corporation) as Defendants. It is crystal clear that the Defendants are liable for at least the statutory minimum of $500 per phone call (as well as possibly for trebled damages as provided for in the TCPA).

Furthermore, it seems rather disingenuous that Defendant NSI is seeking a stay in this matter when a) Defense counsel just unilaterally set the deposition of the Plaintiff's daughter for December 15, 2015 and the Deposition of the Plaintiff for December 16, 2015; b) the discovery deadline in this case is rapidly approaching (January 5, 2015); and c) the Defendants appear to have cherry-picked this case to seek a stay in as they have not sought to stay any of the other cases they have pending against the undersigned attorney or his law firm and are actively and aggressively defending those matters. *See Dykins v. Navient Solutions Inc.*, 6:14-cv-741-Orl-37GJK; *Boggs v. Navient Solutions Inc.*, 8:15-cv-02293-EAK-JSS; *Kent v. Navient Solutions, Inc.*, 4:15-CV-103-SEB-DML; *Dieng v. Navient Solutions, Inc.*, 8:15-cv-1820-SDM-EAJ; *Garcia v. Navient Solutions, Inc.*, 8:15-cv-02510-JDW-TBM; *Burdette v. Navient Solutions, Inc.*, 6:15-cv-01898-CEM-KRS; *Schwartz v. Navient Solutions, Inc.*, 6:15-cv-1817-Orl-22TBS.[3]

It appears clear that the request to stay these proceedings is simply another way for the Defendants to avoid liability, delay justice, and/or strong-arm the Plaintiff into settling her case for less than it is worth.

**Legal Standards Applicable To Motions To Stay**

While the Defendant cites one of the landmark Supreme Court cases concerning the staying of actions, *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)("*Landis*"), it appears to have missed one of this case's most important points, namely the Supreme Court's admonition that

---

[3] Counsel for the Defendant is admitted in at least six pending (6) cases in the Middle District despite the fact that she is not licensed in Florida. Based on Local Rule 2.02 (a) this seems surprising.

"[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)("*Landis*"). It is also well established that "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997), *citing Landis*, 299 U.S. at 255. As will be further shown below, the Defendant has plainly failed to meet its significant burden to establish that the "rare circumstances" spoken of in *Landis* are present in the instant case. It is clear based upon the Defendants actions to date that this request to stay these proceedings is merely another stall tactic designed to delay rather than to serve any legitimate purpose.

**The Grant Of Certiorari in *Spokeo* is Not Grounds For A Stay.**

As a threshold matter, it is hardly a "rare circumstance" for the Supreme Court to grant certiorari in a case that might affect a number of other cases, nor is such an event cause to upend all litigation that might potentially be impacted. Indeed, in *Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015)("*Gissendaner*"), the Eleventh Circuit specifically discussed the ramifications of a grant of certiorari and held that

> grants of certiorari do not themselves change the law, [and] they must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied. Our decision in [*Schwab v. Secretary, Department of Corrections*, 507 F.3d 1297 (11th Cir.2007)] is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari. Until the Supreme Court issues a decision that actually changes the law, we are duty-bound to apply this Court's precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood of a plaintiff's success on the merits.

(internal quotations and citations omitted). Importantly, if the Eleventh Circuit is willing to apply this standard to matters with such irreparable consequences as the death penalty, the principle espoused therein can only apply equally or with even more force to the circumstances found in the instant case, where the Defendant at most seeks to avoid some litigation expense.

4

While the Court might possibly have somewhat more discretion to stay civil litigation as opposed to a sentence of death, it is worth noting that Judge Lazzara of this district recently relied upon *Gissendaner* and *Schwab* in denying a very similar motion a seeking a stay pursuant to *Spokeo* in a TCPA case. *Speer v. Whole Food Market Group, Inc.*, 8:14-cv-3035-T-26TBM (Doc. 46)(M.D. Fla. Apr. 29, 2015)(attached as Exhibit A).

It is also evident that the Defendant has failed to fully discuss the ramifications of granting a stay pursuant to *Spokeo* when the consequences of this decision are taken to their logical conclusion. Notably, the Supreme Court's grant of certiorari in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) ("*Spokeo*")does not involve Telephone Consumer Protection Act ("TCPA") claims such as are at issue here but rather involves claims made under an entirely different statute, the Fair Credit Reporting Act ("FCRA"). The significance of this distinction can be found in the *Spokeo* petition, as it explains that, in addition to possibly impacting claims under the FCRA and TCPA, the requested relief has the potential to affect claims under the Truth in Lending Act, Fair Debt Collection Practices Act, Employee Retirement Income Security Act, Real Estate Settlement Procedures Act, Lanham Act, Fair Housing Act, Americans With Disabilities Act, Video Privacy Protection Act, and "many other statutes" (Exhibit B, pp. 32-34). If every federal court across the nation were to grant a stay in every potentially affected case, it is quite obvious that a substantial portion of the civil litigation in the nation's federal court system would grind to a screeching halt, hardly serving the interests of judicial economy. Notably, the *Spokeo* petitioner's contention that its petition has the potential to "upset the apple cart" in litigation pursuant to so many long-standing federal statutes is also suggestive that the petitioner may face an uphill battle in getting the relief it requests.

### *Spokeo* **Will Not Be Dispositive Of The TCPA Claims In This Case**

The Defendant's request for a stay is founded upon a severely flawed premise, namely the assertion that that the Plaintiff's "only injury is an 'injury in law' – i.e., a bare violation of a federal statute" (Doc. 41, p. 1). Rather remarkably, Navient bases this conclusion solely on the fact that the Plaintiff seeks the statutory damages under the TCPA rather than her actual damages (Doc. 41, p. 1-2).[4] The Plaintiff would assert that her decision to seek statutory damages is plainly not an admission that she has not suffered an injury-in-fact, contrary to what the Defendant claims. Rather, the request for statutory damages simply reflects the typical and unsurprising fact that her actual damages are less than $500 per call.

Part and parcel with its argument that the only injury suffered by the Plaintiff was purely a legal injury, the Defendant has attempted to frame the Plaintiff's standing in this case as being dependent upon opinions from the Sixth, Seventh and Ninth Circuits that have held that Article III standing can be conferred despite a lack of actual damages,[5] cases the Defendant contends have been called into question by the grant of certiorari in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) ("*Spokeo*") (Doc. 41, p. 3 n. 4). In fact, nothing could be further from the truth. The Eleventh Circuit has not expressly followed the "injury in law" precedent from the Sixth, Seventh and Ninth Circuits that the Defendant complains of. Rather, it has ruled that the mere fact that unlawful communications "occupied the telephone line and fax machine" of the

---

[4] The Plaintiff has also alleged violations of the FCCPA where she is seeking actual, punitive, and statutory damages, as well as violations of the FDCPA where she is seeking actual and statutory damages.

[5] Notably, the Supreme Court had previously granted certiorari in a case addressing this issue but later determined that certiorari had been "improvidently granted." *First Am. Fin. Corp. v. Edwards*, 132 S. Ct. 2536, 2537 (2012). As such, *Spokeo* may not change the law at all.

recipient was "among the injuries intended to be prevented by the statute" and therefore adequate to confer Article III standing under the TCPA.[6] *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015). Put into other words, the Eleventh Circuit has held that occupation of the Plaintiff's communication device, in the instant case a cellular telephone, is a sufficient injury-in-fact adequate to confer Article III standing.[7] This is entirely consistent with Supreme Court precedent indicating that the injury-in-fact required for Article III standing is hardly a rigorous test. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) ("The Supreme Court has rejected the argument that an injury must be 'significant'; a small injury, 'an identifiable trifle,' is sufficient to confer standing."), *citing United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689, n.14 (1973). Here, there can be little doubt that the Plaintiff has alleged sufficient occupation of his communication device to establish injury-in-fact, as he has alleged a "tremendous volume of calls" (Doc. 1).

---

[6] Importantly, in light of the fact that the Ninth Circuit opinion under review in Spokeo expressly declined to address the issue, it is likely that the Supreme Court will confine itself to the issue of whether a statutory violation confers de facto Article III standing and decline to establish any new parameters as to what consequences suffered by a plaintiff as a result of a statutory violation constitute an adequate injury-in-fact for Article III standing. *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 414 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (2015) ("Because we determine that Robins has standing by virtue of the alleged violations of his statutory rights, we do not decide whether harm to his employment prospects or related anxiety could be sufficient injuries in fact.").

[7] Other courts have also examined TCPA cases and found that the Plaintiffs suffered an injury-in-fact. *See Torres v. National Enterprise Systems, Inc.*, 2012 2012 WL 3245520, *2-3 (N.D. Ill. 2012) (holding in a TCPA case that the allegations that automated phone calls were a "nuisance" to the plaintiff and "invaded her privacy" are sufficient to establish Article III standing); *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, *3 (N.D. Ill. 2012) ("Plaintiffs . . . were directly injured by defendants' violations of the TCPA because they had to spend time tending to unwanted calls and their cell phone minutes were depleted. This is enough to establish 'injury in fact' under Article III.").

It should also be noted that the ERISA cases from the Second and Fourth Circuits that the Defendant contends reflect the proper state of the law concerning Article III injury bear almost no resemblance the instant case. Those cases focused their disapproval on hypothetical injuries that might never occur, an issue not present here. For example, in *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013)("*Alphin*"), the Plaintiffs, who were representatives of a putative class of participants in a pension plan, claimed standing as a result of an underfunded condition of their pension plan allegedly caused by statutorily-prohibited financial misconduct, despite the fact that no payment of benefits to this class had been reduced or missed. Noting that well-established law that "a participant in a defined benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund" and that also pension plans were insured and supervised by the federal government, the court found that "the risk that Appellants' pension benefits will at some point in the future be adversely affected as a result of the present alleged ERISA violations [was] too speculative to give rise to Article III standing." *Id.* at 338. The holding in *Kendall v. Employees Ret. Plan of Avon Products*, 561 F.3d 112 (2d Cir. 2009)("*Kendall*") was similar in that it disapproved of Article III standing for hypothetical future injuries caused by alleged ERISA violations in a situation where it was distinctly possible that those injuries would never occur. Unlike the *Alphin* and *Kendall* cases, the injuries alleged here have in fact occurred and are not contingent upon future events.

Finally, even if the unlikely assumption is made that an injury-in-fact Article III standing requirement that could not be satisfied by the Plaintiff will imposed by a decision in *Spokeo*, this would not allow the Defendant to escape liability. This case could be transferred to state court, as expressly authorized by the TCPA, where the Article III injury requirement of course does not exist. *See Condon v. Office Depot, Inc.*, 855 So. 2d 644 (Fla. 2d DCA 2003)(affirming that

TCPA claims may be brought in Florida state courts). Contrary to what is suggested by the Defendant, the Defendant will not escape liability as a result of **any** decision in *Spokeo*.

**Conclusion**

The Plaintiff respectfully requests that this Honorable Court deny the Defendant's Motion to Stay Action Pending Ruling from the United States Supreme Court, consider sanctions against the Defendant and/or counsel, and grant any other relief deemed necessary and proper in the pursuit of justice.

Respectfully submitted,

*/ s / William Peerce Howard*
William Peerce Howard
Florida Bar Number: 1-3330
Morgan & Morgan, P.A.
One Tampa City Center
201 North Franklin Street
Tampa, Florida 33602
Telephone:   (813) 223-5505
Facsimile:   (813) 275-9295
Email: whoward@forthepeople.com
            jplaceres@forthepeople.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 1, 2015, the foregoing was electronically served via the Court's CM/ECF filing system to all counsel of record:

*/s/ William Peerce Howard, Esq.*
William    Peerce    Howard,    Esq.
Attorney for Plaintiff