IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| WILLIE MCCASKILL,<br><br>        Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, INC., STUDENT ASSISTANCE CORPORATION, and NAVIENT CORPORATION,<br><br>        Defendants. | No. 8:15-CV-1559-T-33-TBM |

**DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants Navient Solutions, Inc. and Student Assistance Corporation (together, "Defendants"), by their attorneys and pursuant to Fed. R. Civ. P. 37 and M.D. Fla. L.R. 3.04(a), move for an order compelling plaintiff Willie McCaskill ("McCaskill") to produce documents in response to Request Nos. 1, 3 and 5 in Defendants' First Requests for Production. In support of this Motion, Defendants state as follows:

**I.**     **INTRODUCTION**

Plaintiff failed to timely and adequately respond to the only written discovery served upon her in this action. On December 17, 2015, Defendants served their First Requests for Production of Documents on McCaskill (the "Requests"), consisting of five narrow requests. Pursuant to this Court's Case Management and Scheduling Order, McCaskill's responses were due on or before Monday, January 4, 2016. However, McCaskill failed to respond. Defendants promptly contacted McCaskill regarding the lack of responses and the waiver of her objections. McCaskill then served responses – with objections – on Thursday, January 7, 2016, and refused

to produce documents for three of the five requests. McCaskill also provided no explanation for the untimely responses except a supposed inadvertent calendar error, which is insufficient to cure her waiver, and then ignored Defendants' efforts to meet and confer. Moreover, even if McCaskill did not waive her objections, they clearly are baseless. Accordingly, the Court should compel McCaskill to produce the documents sought by the Requests and award sanctions against her for requiring Defendants to make this Motion.

## II.     BACKGROUND

### A.     Plaintiff And The Claims

McCaskill filed her initial Complaint against NSI on July 2, 2015. She filed her Amended Complaint, adding SAC and Navient Corporation ("Navient Corp."), the ultimate parent company of NSI and SAC, on November 2, 2015. [Doc. 1, Doc. 35]. McCaskill alleges that NSI, SAC and Navient Corp. (collectively, "Defendants") made numerous calls to a cellular telephone number which supposedly belongs to McCaskill, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq., and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. McCaskill alleges that this cellular telephone number belongs to her and that calls were made to it without her prior express consent. However, the facts are nowhere near so straightforward.

McCaskill's daughter, Maretta Newsome ("Newsome") has outstanding student loans owned by the U.S. Department of Education and serviced by defendant Navient Solutions, Inc. ("NSI"). In connection with attempting to collect delinquent amounts on the loans, NSI identified a phone number at issue – (727) 581-6140 (the "Number") – in public records as associated with Newsome. Notably, federal regulations governing federal student loans require

loan servicers to diligently attempt to locate delinquent borrowers, including through searches of public records for telephone numbers to be used in collections. See 34 C.F.R. § 682.411.

Subsequently, on February 4, 2014, Newsome logged into NSI's Manage Your Loan ("MYL") website and confirmed the Number as her "Home Phone" in the Contact Information section. This section contained the following notice:

> By providing my telephone number, I authorize [NSI, formerly known as Sallie Mae, Inc.], its affiliates and agents to contact me at such number using any means of communication, including, but not limited to, calls placed to my cellular phone using an automated dialing service, calls using prerecorded messages and/or SMS text messages, regarding any current or future loans owned or serviced by Sallie Mae, Inc. its affiliates and agents, even if I will be charged by my service provider(s) for receiving such communications.

Indeed, the Number was assigned to the McCaskills' home residence for many years. The Number also has been affiliated with Largo for Jesus ("LFJ"), an Evangelist church incorporated by McCaskill in 1999, since its inception. Besides independently forming and incorporating the church, McCaskill currently runs it and operates as its pastor. Newsome is, and always has been, a director or officer at the church. LFJ is not affiliated with any other telephone number; the Number is its sole means of telephone contact. In March of 2013, McCaskill converted the number to a cell phone. Overall, however, McCaskill and Newsome have utilized the Number in some fashion for approximately 41 years.

NSI made calls to the Number until February 16, 2015, when Newsome accessed MYL and removed it. According to McCaskill, she advised NSI or SAC, through a conversation with an agent named "Heather," that it was calling an incorrect number. However, the account records and call recordings do not support this claim, nor has an agent named "Heather" ever been involved in calls related to Newsome's account. McCaskill claims that this is the full extent of initiative she took to stop the calls. Newsome admits that she did not take any active steps to stop the calls from occurring.

### B. The Discovery Proceedings

On December 16, 2015, Defendants took McCaskill's deposition. During the deposition, McCaskill: (1) testified that she made notes of her supposed call with "Heather" at the time of the call, which have not been produced, but which she would have kept in an "important papers" file; and (2) referred to and read from a sheet of paper regarding her alleged conversation with "Heather" and the calls made to her, which her attorneys prepared. An example of the testimony is as follows:

> Q. You mentioned to me earlier the telephone call that you remember with Heather. Did you happen to ask for her last name?
> A. No.
> Q. How long were you on the phone with her?
> A. Probably about, maybe about 45 or 50 seconds. It wasn't that long.
> Q. Where are the notes that you mentioned that you have of that call?
> A. Right here (indicating).
> Q. Did you type that up at the time?
> A. No, I didn't type it up at the time.
> Q. Did you take notes at the time of the call?
> A. Yeah. I could remember what she was saying and what I was saying. I wrote it down because I didn't know.
> Q. Let's be clear, did you take notes of the phone call at the time that the call happened?
> A. Immediately after.
> Q. Okay. Where are those notes today?
> A. I had them typed up. I probably don't have them anymore. Does it matter?
> Q. It does. Who typed that up for you?
> A. I don't know.
> Q. Who are the possible candidates for persons who could have typed that up for you?
> A. When I give them the information for my statement.
> Q. Who's "them"?
> A. Okay. When I called into Morgan & Morgan, I gave them my statement.
> Q. When was the last time you saw the original notes?
> A. I don't know.
> Q. If you still had them, where would you keep them?
> A. At home right now.
> Q. Where at home would you look for them?
> A. In my folder.
> Q. What kind of folder is it?
> A. Important papers or whatever, but I didn't bring it because I didn't know I had to.

(McCaskill Deposition, 63:2–64:24.)

On December 17, 2015, Defendants served their Requests on McCaskill.  Two of the Requests – Nos. 1 and 5 – seek production of the notes McCaskill made regarding her phone call with Heather and the documents on which McCaskill relied during her deposition.  Request No. 3 asks for the tax returns for LFJ in the past four years.  McCaskill failed to respond to the Requests.

By email dated January 6, 2016, Defendants noted McCaskill's failure to respond to the Requests and the waiver of her objections.  By responding email on that date, McCaskill stated that her failure to respond was the result of a calendar error.  On January 7, 2016, McCaskill served discovery responses with objections.  Because McCaskill has waived those objections, and they are baseless in any event, Defendants sent a meet and confer letter on January 11, 2016.  McCaskill has not responded to the letter, or otherwise contacted Defendants to discuss her untimely and deficient responses.

### III.    ARGUMENT

#### A.    Based On Her Untimely Responses, McCaskill's Objections Were Waived.

Where a party fails to respond to discovery in a timely manner, that party waives any objections to the discovery, "unless the court finds good cause and excuses that failure."  Dish Network, L.L.C. v. TV Net Solutions, LLC, No. 6:12-cv-1629-Orl-28TBS, 2013 U.S. Dist. LEXIS 113259, at *6–7 (M.D. Fla. Aug. 12, 2013).  The burden is on the party who failed to respond to show good cause.  See, e.g., Reliance Ins. Co. v. Core Carriers, Inc., No. 3:06-cv-585-J-20MCR, 2008 U.S. Dist. LEXIS 53337, at *6–7 (M.D. Fla. June 11, 2008); Pitts v. Francis, No. 5:07cv169/RS/EMT, 2008 U.S. Dist. LEXIS 41894, at *11–12 (N.D. Fla. May 28, 2008).  In determining whether good cause exists to accept untimely objections, courts consider, among

5

other things, the reason for the delay. Dish Network, 2013 U.S. Dist. LEXIS 113259, at *8. As relevant here, courts have held that a calendar error, standing alone, does not suffice. See Starlight Int'l, Inc. v. Herlihy, 181 F.R.D. 494, 496–97 (D. Kan. 1998) (waiving objections that were four days late, and explaining that a calendar error does not constitute good cause for failure to respond to discovery in a timely manner). Accordingly, the burden was on McCaskill to provide an explanation, which she has not attempted to do, and the Court should uphold the waiver of objections.

Moreover, McCaskill plainly has not dealt with Defendants in good faith on this issue. Indeed, in Dish Network, the court explained that the responding parties' failure to serve timely responses and their failure to respond to attempts to meet and confer evidenced a lack of good faith. Dish Network, 2013 U.S. Dist. LEXIS 113259, at *9. Thus, the court found their objections to be waived. Id. Similarly, here, McCaskill failed to timely respond to Defendants' Requests, and then simply ignored Defendants' attempts to meet and confer. As a result, the Court should hold that McCaskill waived her objections and require her to produce the requested documents in response to Defendants' Requests. Id.; see also Reliance Ins. Co., 2008 U.S. Dist. LEXIS 53337, at *6–7 ("Plaintiff has provided the Court with no reasons (much less good cause) for its failure to file timely objections to Defendant's discovery requests. Accordingly, although the Court finds Plaintiff's objections compelling, Plaintiff has waived any objections to the discovery requests.").

      **B.**    **In Addition, McCaskill's Objections Should Be Overruled.**

Even if McCaskill did not waive her objections due to untimeliness, those objections are baseless. Defendants discuss the requests at issue below, in accordance with Local Rule 3.04(a):

> **Request No. 1:** Notes regarding a telephone call that allegedly was made by "Heather" to you on behalf of NSI or SAC. These notes were the subject of deposition testimony taken on December 16, 2015.

>**McCaskill's Objection to Request No. 1:** Plaintiff objects to this Request on the grounds it seeks the production of a document protected by attorney-client privilege.  Please see Plaintiff's corresponding privilege log.

**Reasons to Compel Production:** Plaintiff's privilege log refers to a "Note from Client to Attorney Concerning telephone Calls and Conversation with Heather."  However, as reflected above, plaintiff testified during her deposition that she prepared the notes at the time of the purported call.  Thus, the notes obviously are not privileged, and McCaskill must produce them. See, e.g., Maplewood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 582–83 (S.D. Fla. 2013) (explaining that the attorney-client privilege applies to communications between clients and counsel); Owens v. Stifel, Nicolaus & Co., No. 7:12-CV-144 (HL), 2013 U.S. Dist. LEXIS 171913, at *30 (M.D. Ga. Dec. 6 , 2013) (holding that documents were not "protected by the attorney-client privilege because the documents [did] not seek legal advice").

>**Request No. 3:** The tax returns for Largo for Jesus Christian Center, Inc. for the past four tax years.
>
>**McCaskill's Objection to Request No. 3:** Plaintiff objects to this Request on the grounds it is unduly burdensome, intended to harass, not reasonably calculated to lead to the discovery of admissible evidence and is irrelevant.

**Reasons to Compel Production:** Request No. 3 is reasonably calculated to lead to discovery of admissible information and narrowly tailored.  Plaintiff and her daughter are both officers/directors of LFJ, and the Number was reported to the Florida Division of Corporations as the means of contact for LFJ.  Meanwhile, McCaskill contends that the Number is assigned to her private cell phone.  Thus, the tax returns are relevant to determining whether the costs of the Number were taken as a business expense.  Finally, the request is not unduly burdensome; it is limited to a narrow set of documents from a specific timeframe. Arthrex, Inc. v. Parcus Med., LLC, No. 2:11-cv-694-FtM-29SPC, 2012 U.S. Dist. LEXIS 156873, at *10–12 (M.D. Fla.

7

Nov. 1, 2012) (overruling objections that document requests were overbroad and unduly burdensome where the requests were narrowly tailored to a specific set of documents).

> **Request No. 5:** The documents reviewed by you during deposition testimony taken on December 16, 2015, specifically: (a) a typewritten page of information, including with respect to a call allegedly made to you by "Heather"; and (b) a chart.
>
> **McCaskill's Objection to Request No. 5:** Plaintiff objects to this Request on the grounds it seeks the production of a document protected by attorney-client privilege. Please see Plaintiff's corresponding Privilege Log.

**Reasons to Compel Production:** Plaintiff's privilege log refers to a "Note from Client to Attorney Concerning telephone Calls and Conversation with Heather" and "Call logs from Client to Attorney on Attorney Forms." However, Plaintiff's deposition testimony was based on these documents. During the deposition, the documents were in front of her and she referred to and read from the documents. As a result, any privilege is waived. Sperling v. City of Kennesaw Police Dep't, 202 F.R.D. 325, 328 (N.D. Ga. 2001) (finding voluntary waiver of attorney-client privilege where the deponent "read from and relied on" a privileged document during her deposition).

### C. The Court Should Impose Sanctions Against McCaskill.

Defendants understand that the Court has reserved the issue of sanctions on all prior motions. However, on this Motion, pursuant to Rule 37(a)(5), Federal Rules of Civil Procedure, McCaskill should be required to pay to Defendants the reasonable expenses, including attorneys' fees, incurred in bringing this Motion. Rule 37(a)(5) provides:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

>    (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>    (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>    (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5); see also Middle District Discovery: A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida, § I.E.3 (2015).

The situation here is very simple and inarguable. McCaskill failed to timely and adequately respond to the Requests, and to meet and confer in good faith. See Sunshine Stone Prods., LLC v. Bruton, No. 5:12-cv-293-Oc-34PRL, 2014 U.S. Dist. LEXIS 142598, at *3 (M.D. Fla. Oct. 7, 2014) (awarding reasonable expenses and attorneys' fees incurred in filing a motion to compel and explaining that "[w]here, as here, the motion to compel is granted, and is caused by the failure of a party to provide responsive answers to discovery requests, the [c]ourt is required to award the fees and expenses incurred in filing the motion").

Further, on the reserved issue of sanctions, Defendants also seek to ensure the record is clear. During the January 12, 2016 discovery hearing before the Court, McCaskill argued that SAC failed to comply with the Court's December 31, 2015 Order. This is not true. The Order required SAC to "identify by full name and, if no longer in Defendant(s) employ, by the last known address, each employee identified by code on the call logs as having called the subject phone number." (December 31, 2015 Order, 6 (emphasis added).) In its response, SAC provided precisely this information. The agent identification numbers cited by McCaskill at the hearing appear on certain other account records, not the call logs. Even so, however, on January 13, 2016, SAC served an additional response, providing the information for those additional agents. Accordingly, while SAC has done more than required, McCaskill did not timely or fully respond to the five narrow document demands posed by Defendants in this case.

9

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion in its entirety.

Dated:  January 19, 2016

Respectfully submitted,

By:   /s/ Lisa M. Simonetti

Lisa M. Simonetti
(admitted *pro hac vice*)
Vedder Price (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: (424) 204-7700
F: (424) 204-7702
lsimonetti@vedderprice.com

Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
SESSIONS, FISHMAN, NATHAN &
ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone: (813) 890-2463
Facsimile: (866) 466-3140
dvanhoose@sessions-law.biz

Attorney for Defendants
NAVIENT SOLUTIONS, INC., STUDENT
ASSISTANCE CORPORATION, and
NAVIENT CORPORATION

## CERTIFICATE OF GOOD FAITH CONFERENCE

I certify that, pursuant to Local Rule 3.01(g), counsel for Defendants attempted to confer with counsel for Plaintiff by letter and email in a good faith attempt to resolve the issues raised by this motion but received no response.

*/s/ Lisa M. Simonetti*
Lisa M. Simonetti

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2016, a copy of the foregoing **MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS** was served by electronic mail on the party listed below:

>Frank H. Kerney, III, Esq.
>William Peerce Howard, Esq.
>Morgan & Morgan, Tampa P.A.
>One Tampa City Center
>201 N. Franklin Street, 7th Floor
>Tampa, FL  33602
>Tel: (813) 223-5505
>Fax: (813) 223-5402
>BHoward@ForThePeople.com

/s/  Lisa M. Simonetti

Lisa M. Simonetti