IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| WILLIE MCCASKILL, <br><br> Plaintiff, <br><br> v. <br><br> NAVIENT SOLUTIONS, INC., STUDENT ASSISTANCE CORPORATION, and NAVIENT CORPORATION <br><br> Defendants. | No. 8:15-CV-1559-T-33-TBM |

# DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT

Defendants Navient Solutions, Inc. and Student Assistance Corporation, through counsel and under Federal Rule of Civil Procedure 56 and Local Rule 3.01, file this Motion for Partial Summary Judgment and Summary Judgment, and the Incorporated Memorandum of Law, seeking partial summary judgment on plaintiff's claim of willful violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and full summary judgment on plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, et seq.

## I.     INTRODUCTION

In her Second Amended Complaint (the "Complaint"), plaintiff Willie McCaskill ("McCaskill") asserts claims against defendants Navient Solutions, Inc. ("NSI") and Student Assistance Corporation ("SAC") (together, "Defendants") for supposed violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, et seq., and the Telephone Consumer

LOS_ANGELES/#13310.4

Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. McCaskill's claims arise from autodialed telephone calls made by Defendants to a cellular telephone number -- (727) 581-6140 (the "Number") -- that supposedly belongs to her. Defendants called the Number in connection with efforts to reach McCaskill's daughter, Maretta Newsome ("Newsome"), who had delinquent federal student loans and who had confirmed to NSI that the Number was hers. According to the Complaint, the calls were made in willful violation of the TCPA and also were improper attempts to collect a debt from McCaskill in violation of the FDCPA and FCCPA. These claims fail, however, based on the undisputed facts and well-settled law.

As an initial matter, under established Eleventh Circuit precedent, a calling party incurs liability for a willful violation of the TCPA (and, thus, potential treble damages) for knowingly making an autodialed call to a cell phone without the called party's "prior express consent." Here, Defendants did no such thing. Instead, at all times, Defendants were attempting to reach Newsome, who had confirmed the Number as her own when applying for a loan forbearance with NSI. Further, neither McCaskill nor Newsome ever told Defendants not to call the Number, or that it supposedly belongs to McCaskill. McCaskill therefore cannot meet the standard for willful violation of the TCPA.

Moreover, McCaskill's claims of improper debt collection are entirely misdirected. Indeed, Defendants obviously did not make any attempt whatsoever to collect Newsome's debt from McCaskill, nor did they engage in any conduct that violates the FDCPA or the FCCPA. Further, SAC is not a debt collector in any event. Thus, McCaskill's claims under the FDCPA and FCCPA are defeated.

## II.   STATEMENT OF MATERIAL FACTS

**The Defendants**

1. NSI is engaged in the business of servicing student loans. (**Ex. 2**, Deposition of Cheryl Dillon ("Dillon Deposition"), 13:3–13:4.) Some of those loans, like Newsome's, are owned by the United States Department of Education (the "Department"), and NSI services the loans on its behalf. (Id. 13:3–13:14.)

2. The servicing of loans owned or guaranteed by the Department is governed by a complex set of federal regulations.[1] See 34 C.F.R. §§ 682.400-682.423. As relevant here: (a) when loans are delinquent, NSI is required to contact the borrowers (34 C.F.R. § 682.411(c)-(f)); and (b) when a servicer cannot reach a borrower with the information in her records, it must diligently attempt to locate her, including through searches of public records for telephone numbers (34 C.F.R. § 682.411(h)(1)).

3. SAC is not a loan servicer; it is engaged in default prevention for the guarantors of federal student loans. (**Ex. 1**, Deposition of Kevin Campbell ("Campbell Deposition,"), 11:12–11:15.) Guaranty agencies are state or private nonprofit agencies that administer the federal guaranteed loan program. See 34 C.F.R. § 682.400. These agencies insure the funds that lenders provide to students, which are, in turn, reinsured by the federal government. Id.

4. At the instruction of guaranty agencies, SAC contacts borrowers to counsel them on repayment options -- by, for instance, offering forbearance plans -- in order to prevent the loans from reaching the stage of delinquency known as default. (**Ex. 1**, Campbell Deposition,

---

[1] The federal government has an interest in the repayment of such loans. Going forward, the Bipartisan Budget Act of 2015, approved by Congress and the President, creates an exception to the TCPA's prior express consent requirement for the collection of debts owed to or guaranteed by the United States.

3

11:24–12:6; Dillon Deposition, 13:18–13:20.)  If a loan goes into default, the guaranty agency assigns the loan to the federal government.  34 C.F.R. § 682.409.

5.  When SAC contacts borrowers by phone, it does not request or accept any payments.  Instead, if a borrower wants to make a payment, SAC transfers the borrower to the borrower's loan servicer.  (**Ex. 1**, Campbell Deposition, 27:21–28:13, 29:9–29:14.)[2]

**The Number**

6.  The Number was assigned to McCaskill's home residence for many years.  (**Ex. 4**, Deposition of Maretta Newsome ("Newsome Deposition"), 37:19 –38:18; **Ex. 3**, Deposition of Willie McCaskill ("McCaskill Deposition"), 25:25–26:8, 28:15–29:2.)

7.  In 1999, McCaskill submitted an application to the Florida Division of Corporations to form a non-profit church, Largo for Jesus ("LFJ").  McCaskill listed the Number in the application for LFJ; the Number was not reflected as her personal number.  McCaskill runs LFJ and serves as its pastor.  (**Ex. 3**, McCaskill Deposition, 43:11–43:12.)

8.  Newsome is referenced in the application to the Florida Division of Corporations as the Secretary for LFJ, and she has been referenced as an officer or director in every annual update with the Division of Corporations.  (**Ex. 4**, Newsome Deposition, 41:11–41:20; **Ex. 3**, McCaskill Deposition 45:16–47:22; 51:17–53:18, Exs. 4, 5.)

9.  LFJ is not affiliated with any other telephone number; the Number is its sole means of telephone contact.  (**Ex. 3**, McCaskill Deposition, 43:1–43:7.)

10.  In March of 2013, McCaskill converted the Number to a cell phone.  (Id. 26:4–26:8.)

---

[2] Navient Corporation is the ultimate parent of Defendants.  Navient Corporation was dismissed from this action on February 10, 2016, pursuant to a Joint Stipulation of Dismissal With Prejudice.

**Newsome's Confirmation Of The Number**

11. Pursuant to its obligations as the servicer of Newsome's federal student loans, NSI found the Number as associated with Newsome through a public records search.

12. On February 4, 2014, Newsome applied for a voluntary forbearance through a section of NSI's website called "Manage Your Loans" ("MYL"). During that process, Newsome confirmed the Number as her "Home Phone." (**Ex. 6**, Resps. of Def. Navient Solutions, Inc. to Pl.'s First Set of Interrogs., No. 2; **Ex. 7**, Resps. of Def. Student Assistance Corporation to Pl.'s First Set of Interrogs., No. 2; **Ex. 4**, Newsome Deposition, 57:18–74:5, Ex. 1.)

13. On the "Edit your contact information" page, the forbearance application stated:

> We would like to ensure we have the most up-to-date records for your student loan account. Please take a few moments to review your contact information and update as needed. If no changes are needed, please click submit.
>
> \*   \*   \*
>
> It is important that we have the most current address, telephone number, and e-mail address. Use this form to update and/or verify any part of your contact information.

(**Ex. 4**, Newsome Deposition, 60:7–60:21, Ex. 1, Bates # NSI0000002.)

14. On the "Voluntary Forbearance Verified Information" page, the application stated:

> This is a certification page for your voluntary forbearance request. Please read over the information carefully before submitting. Should any of the information be incorrect, click the edit button to make changes.

(Id. 70:11–70:18, Ex. 1, Bates # NSI0000016.)

15. In the Contact Information section, the application stated:

> By providing my telephone number, I authorize Sallie Mae, Inc. [now known as Navient Solutions, Inc.], its affiliates and agents to contact me at such number, using any means of communication, including but not limited to calls placed to my cellular phone using an automated dialing device, calls using pre-recorded messages, and/or SMS text messages regarding current or future loans owned or

5

serviced by Sallie Mae, Inc., its affiliates and agents even if I'm charged by my service providers for receiving such communications.

(Id. 64:21–65:10, Ex. 1, Bates # NSI0000003.)

16. The application contained an electronic signature certification, as follows:

I have chosen to submit my forbearance request with an electronic signature. By typing in my name, I am completing the borrower signature field on the voluntary forbearance request with an electronic signature. My electronic signature certifies that I have read, understand, and agree to the terms and conditions of the voluntary forbearance request. If I prefer to print and sign a paper copy or I do not want my payments postponed, I can discontinue the electronic signature process by selecting the cancel button.

By submitting my electronic signature, I understand and agree with the following statements. I agree to the terms of this forbearance and agree to repay my loans upon expiration of this forbearance in accordance with the terms of my promissory note.

(Id. 72:21–73:18, Ex. 1, Bates # NSI0000019.)

17. Newsome did not change the contact information listed in the application. (Id. 59:17–59:23, 67:19–69:16, 70:5–71:2, Ex. 1.)

18. Newsome signed the application and received her requested forbearance. (Id. 73:19–73:23.)

19. While NSI and SAC exist for different purposes, as explained above, they share some technology services, including the system that stores borrowers' consents for receiving autodialed calls. (**Ex. 2**, Dillon Deposition, 32:24–38:1.) Thus, if a borrower provides consent to be called, both NSI and SAC have access to that information. (Id.)

**The Calls To The Number**

20. NSI started calling the Number on January 13, 2014, and ceased by February 16, 2015. SAC started calling on March 27, 2014, and ceased by May 28, 2015. (See **Ex. 8**, SAC Call Log; **Ex. 9**, NSI Call Log.)

6

21. During the relevant timeframes, NSI attempted to call the Number a total of 248 times, while SAC attempted to call it 478 times. (**Ex. 6**, Resps. of Def. Navient Solutions, Inc. to Pl.'s First Set of Interrogs., No. 4; **Ex. 7**, Resps. of Def. Student Assistance Corporation to Pl.'s First Set of Interrogatories, No. 4.)

22. During the relevant timeframes, NSI and SAC did not speak with McCaskill, except when she called in on one occasion. The conversation was as follows:

> Company: This call may be recorded. Is this Maretta Newsome?
> Caller: Who?
> Company: Maretta Newsome?
> Caller: No, I thought this was Lowe's. Sorry I've got the wrong number.
> Company: Oh, I'm sorry, you don't know anyone by that name?
> [Call ends]

(**Ex. 3**, McCaskill Deposition, 20:16–20:21, 33:9–33:14.)

23. Otherwise, McCaskill did not answer a call from NSI or SAC, and she did not take any steps to stop the calls.[3] (Id. 33:15–34:20.)

24. NSI and SAC attempted to contact Newsome at her other phone numbers, but never spoke with her. (Newsome Deposition, 51:6–53:9.) Newsome did not make any effort to stop the calls, either to her phone or the Number. (Id.)

**The Notes From The Alleged Phone Call With "Heather"**

25. Defendants have no record of any substantive conversation with McCaskill. Further, there is no record of an employee named "Heather" making calls to the Number for either of the Defendants. (**Ex. 10**, Supplemental Resps. of Def. Student Assistance Corporation to Pl.'s First Set of Interrogs., No. 6; **Ex. 11**, Second Supplemental Resps. of Def. Student

---

[3] McCaskill alleges that she did answer one call in August of 2014 and that she spoke with an agent named Heather. (McCaskill Deposition, 20:19–20:25.) As discussed in detail below, however, there is no admissible evidence demonstrating that this call occurred.

Assistance Corporation to Pl.'s First Set of Interrogs., No. 6; **Ex. 12**, Supplemental Resps. of Def. Navient Solutions, Inc. to Pl.'s First Set of Interrogs., No. 6.)

26. McCaskill alleges, and testified, that she did answer one call in August 2014 and talked with an employee named "Heather." (**Ex. 3**, McCaskill Deposition, 20:16 –20:25.)

27. In order to give this testimony, McCaskill read from a typewritten sheet prepared by her attorneys (the "Attorney Notes").

28. Also during her Deposition, McCaskill stated that she had written a note of the alleged call with Heather in August 2014 (the "Handwritten Note"). (Id. 63:2–64:14.)

29 The Handwritten Note had not been referenced in or produced through McCaskill's Initial Disclosures.

30. Following the deposition, Defendants served a document demand for both the Attorney Notes and the Handwritten Note.

31. On or about January 19, 2016, McCaskill produced the Attorney Notes, which provide:

> I received a call from Heather around or about 8-26-14. She called my cell phone and said she was calling for Maretta Newsome and I told her I am sure that she has caller I.D. and she can see this is not Maretta Newsome's phone number. She said I need to give Maretta her message and I told her she has the wrong person and I am not her messenger to deliver her calls. Heather ask me if I knew her and I said yes, and told her why doesn't she call her and did she have her phone number. Heather gave me the phone number for Maretta and I told her it was correct. She said Maretta does not answer her phone. I ask her not to call my cell phone any more about a student loan. I told Heather I have never had a student loan and I don't have anything to do with someone elses bills. The call ended. After a short time I began to get bombarded with cell phone calls. Calls started from 7:59a.m. until 8:56p.m. some times. At times it did not matter if it was even Saturday and Sunday. I have been aggravated enough for no reason at all.

(**Ex. 13**, Pl.'s Supplemental Resp. to Defs.' Reqs. for Produc., No. 1.)

32. On January 27, 2016, McCaskill produced the Handwritten Note, which states:

> My name is Willie Myra McCaskill and I had a call from Heather around or about the 26th of August 2014. She called my cell phone and said she was calling for Maretta Newsome and I told her I am sure that she has caller I.D. and know this is not the number for Maretta. She said I need to give Maretta Newsome her message and I told her she has the wrong person and I am not her messenger to deliver her calls. She ask me did I know her and I said yes, and told her why she doesn't call Maretta and did she have her phone number and Heather told me what her home number was and I told her it was correct. I told her not to call my cell phone anymore. It was about a student loan. I told Heather I have never had a student loan and I don't have anything to do with someone elses bills. The call ended. After that call, my cell phone rang constantly and I had Saturday and Sunday calls also.

(**Ex. 5**, Pl.'s Second Supplemental Resp. to Defs.' Reqs. for Produc., No. 1.)

### III. ARGUMENT

**A.    The Legal Standard Under Rule 56.**

"Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Johns v. Jarrard, 927 F.2d 551, 555 (11th Cir. 1991) (citing Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990)). "Adjudications of partial summary judgment are authorized under Rule 56(d), Fed. R. Civ. P., and are governed by the standards for summary judgment in Rule 56(c)." Heller v. Plave, No. 89-0639-CIV-ATKINS, 1993 WL 557846, at *4 (S.D. Fla. Aug. 2, 1993) (citing Johns, 927 F.2d at 554-56)).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); see also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). A fact is material when, under the substantive governing law, it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d

9

202 (1986). If the evidence offered in support of the motion establishes every essential element of a defense, there is no need to offer evidence to negate or disprove matters on which the opposing party has the burden of proof at trial. Celotex Corp., 477 U.S. at 323.

"After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1373 (S.D. Fla. 2014) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). To show there is a genuine issue of material fact "requires more than showing a mere scintilla of evidence; the non-movant must show that reasonable jurors could find by a preponderance of the evidence that the non-movant is entitled to a verdict." Velten v. Lippert, 985 F.2d 1515, 1523 (11th Cir. 1993) (citing Anderson, 477 U.S. at 252, 106 S. Ct. at 2512)). Indeed, the Eleventh Circuit has held that the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F. 2d 1573, 1576–77 (11th Cir. 1990).

**B.  Given The Undisputed Facts And Governing Law, McCaskill's Claim For Willful Violation Of The TCPA Is Defeated.**

The TCPA was enacted to protect the privacy interests of telephone subscribers through various restrictions on the use of automated telephone equipment. See S. Rep. No. 102- 178, 102nd Cong., 1st Sess. (1991). The restrictions related to cell phones are set forth in 47 U.S.C. § 227(b)(1), which provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – . . .

10

>(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

The remedies for violations of the TCPA are set forth in 47 U.S.C. § 227(b)(3), and include statutory damages of $500 per call for negligent violations and up to $1,500 per call for willful violations.

Importantly, the question of willfulness under the TCPA is directed to the Court: "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3)(C) (emphasis added). As the Eleventh Circuit has explained, to establish a willful violation of the TCPA, a plaintiff must prove that the defendant engaged in "knowing conduct." Alea London Ltd. v. Am. Home Services, Inc., 638 F.3d 768, 776 (11th Cir. 2011); Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015) ("The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute"). Thus, where a defendant mistakenly calls a number that belongs to the plaintiff, the court cannot award treble damages under 47 U.S.C. § 227(b)(3)(C). Lary, 780 F.3d at 1107; see also Harris v. World Fin. Network Nat. Bank, 867 F. Supp. 2d 888, 891 (E.D. Mich. 2012).

The facts in this case are nearly identical to those in Harris, which is instructive. There, Leann Morgan ("Morgan"), an individual who was not a party to the lawsuit, opened a credit account with defendants. Id. at 890. In applying for the credit account, Morgan provided her cellular telephone number to defendants. Id. After Morgan fell behind on her credit accounts, defendants initiated collection efforts by using an automated dialing system to place calls to the

11

LOS_ANGELES/#13310.4

number that Morgan had provided. Id. at 891. On August 23, 2010, plaintiff answered a phone call from defendants and stated that they should stop calling plaintiff because they were calling the wrong number. Id. Although the court held that plaintiff could recover $500 per call against defendants for negligent violation, the court (not the jury) denied plaintiff's request for treble damages for calls made before August 23, 2010, because, "[w]ithout knowing that the number associated with Morgan's account was actually Plaintiff's number, Defendants' violations cannot be deemed willful or knowing." Id. at 895.

Similarly, here, Newsome, who is not a party to this lawsuit, has student loans serviced by NSI. On February 4, 2014, before Defendants began calling the Number, Newsome logged onto MYL through NSI's website. She then confirmed the Number as her "Home Phone" in the Contact Information section and authorized Defendants "to contact [her] at such number using any means of communication."[4]

Further, neither McCaskill nor Newsome ever told NSI or SAC to stop calling or that the Number supposedly belongs to McCaskill. Indeed, in this regard, the Court should not permit McCaskill to attempt to create an issue of fact through the Handwritten Note. At the summary judgment stage, a court does not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255. This does not mean, however, that a court must credit a plaintiff's self-serving, or questionable, declaration on a motion for summary judgment. As explained by the United States Supreme Court:

---

[4] To be clear, Defendants do not at all concede that they will have liability for negligent violations of the TCPA. To the contrary, faced with analogous circumstances, where family members were involved with a single cell phone number, the Eleventh Circuit Court of Appeals found that common law agency principles apply to the TCPA's prior express consent requirement, thus creating a genuine issue of material fact that precludes summary judgment. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014). Thus, the issue of consent would not properly be raised here.

12

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed. 2d 686 (2007).

Such is the circumstance here because something is very wrong with the Handwritten Note. As explained above, Defendants have no record of any substantive conversation with McCaskill, nor of any employee named "Heather" making a call to her. However, McCaskill testified that she made the Handwritten Note, documenting this supposed conversation, at the time of the call in August 2014 and that she would have kept it in her file of "important" papers. To be sure, based on their records, Defendants did not credit this testimony whatsoever; they did not believe that such a document was made at that time (because there was no conversation between Defendants and "Heather"). But, following McCaskill's deposition, Defendants requested production of the Handwritten Note. To put it mildly, it was not promptly produced. To the contrary, it was provided only after a motion to compel was granted on Defendants' request for production, and after production of the Attorney Notes. If the Handwritten Note was legitimate, this amount of effort to secure production plainly would not make sense. Also, if legitimate, the Handwritten Note should have been disclosed in or produced with McCaskill's Initial Disclosures.

Given this, and the fact that the Handwritten Note does not at all appear to be what McCaskill described at deposition -- i.e., a note made by her <u>at the time</u> of the supposed phone call -- the Court should not consider it. Indeed, the Handwritten Note, on its face, references calls made <u>subsequently</u>: "<u>After that call</u>, my cell phone rang constantly and I had Saturday and Sunday calls also." Thus, it could not have been created at the time of the alleged call. Instead, the Handwritten Note appears to merely recite the Attorney Notes, and the language of the

13

Handwritten Note indicates that it was created well after the occurrence of the supposed phone call. While Defendants will never know with certainty what McCaskill did here with the Handwritten Note, or why, she should not be permitted to avoid summary adjudication based on that conduct. The Handwritten Note is not a contemporaneous record of any supposed conversation with "Heather." See, e.g., Hall v. Sunjoy Indus. Group, Inc., 764 F. Supp. 2d 1297 (M.D. Fla. 2011) (disregarding on summary judgment plaintiff's unsupported affidavit that contradicted her prior sworn testimony and other evidence on the record).[5]

C.  McCaskill's Claims Under The FDCPA and FCCPA Likewise Are Defeated.

  1.  FCCPA Section 559.72(7) Claim Against Both Defendants – There Is No Triable Issue Of Fact Regarding Whether Their Conduct Could Be Reasonably Expected To Harass.

McCaskill cannot recover under Section 559.72(7) of the FCCPA because the supporting facts -- namely, a high volume of phone calls -- are insufficient as a matter of law to constitute harassment. Pursuant to Section 559.72(7), a person may not "[w]illfully communicate with a debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Lardner v. Diversified Consultants, Inc., 17 F. Supp. 3d 1215, 1225 (S.D. Fla. 2014) (citing Fla. Stat. § 559.72(7)), vacated on other grounds, Lardner v. Diversified Consultants, Inc., No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 63007 (S.D. Fla. May 1, 2014). Importantly, "[p]roof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate

---

[5] Further, the Court should reject any effort by McCaskill to rely in her Opposition on the Federal Communication Commission's 2015 Ruling regarding the TCPA. All of the phone calls in this matter occurred between February 2014 and May 2015, which is before the ruling was issued. Declaratory Ruling and Order, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection act of 1991, F.C.C. 15-72 (July 10, 2015).

differences or to persuade the debtor to pay without litigation." Id. at 1226 (citing Schauer v. Morse Operations, Inc., 5 So. 3d 2, 5 (Fla. Dist. Ct. App. 2009)). Rather, such communications may be considered "harassing in their frequency . . . when they continue <u>after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed</u>." Id. (citing Schauer, 5 So. 3d at 5) (emphasis added).

Thus, courts regularly find no harassment as a matter of law under facts similar to this case. Id. at 1225 ("Summary judgment is routinely granted in favor of debt collectors where the party . . . does not present evidence of harassing conduct other than a high volume of calls."). In Lardner, the court granted summary judgment in favor of defendant in an FDCPA/FCCPA case where defendant called 132 times over the course of eight months. Id. at 1226. While the court conceded that the call volume was high, the court held in favor of defendant because the plaintiff "[did] not set forth any additional evidence of egregious or harassing behavior, such as requesting the communications stop." Id. Specifically, "[p]laintiff did not communicate with Defendant to convey information about the alleged debt, to negotiate with Defendant, or to tell Defendant that it should no longer contact her." Id. "Therefore, Defendant's conduct did not violate the FCCPA." Id.; see also Waite v. Financial Recovery Servs., Case No. 8:09-cv-02336-T-33AEP, 2010 U.S. Dist. LEXIS 133438, at *9, 16 (M.D. Fla. 2010) (granting summary judgment in favor of defendant in an FDCPA case where the number of calls was high, but defendant engaged plaintiff in a live conversation in "only a handful of instances" and there was no indication that "[p]laintiff ever asked [d]efendant to cease contact").[6]

---

[6] The FCCPA expressly instructs that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5).

Here, even if the call volume could be viewed as high – approximately 700 calls by two separate companies over the course of about 15 months -- there is no evidence to support a finding that Defendants made the phone calls in a manner that could be reasonably expected to harass. For instance, Defendants did not engage in a single substantive conversation with McCaskill; she did not answer the calls. Further, McCaskill never asked Defendants to stop calling. Indeed, McCaskill did not take any active steps to stop the calls from occurring. Thus, as in <u>Lardner</u> and <u>Waite</u>, there is no triable issue of fact regarding whether Defendants' conduct rose to the level of harassment. See <u>Pugliese v. Professional Recovery Serv., Inc.</u>, No. 09-12262, 2010 U.S. Dist. LEXIS 64111, at *27 (E.D. Mich. June 29, 2010) (granting summary judgment in favor of defendant where defendant called plaintiff several times every day, placed 350 calls to plaintiff over an eight-month period, and engaged in ten actual conversations with plaintiff, and reasoning that defendants "were only making legitimate, while persistent efforts to reach Plaintiff," which "alone is insufficient to violate the FDCPA").

### 2. FCCPA Section 559.72(9) Claim Against Both Defendants – Defendants Cannot Be Liable Under Section 559.72(9) Of The FCCPA Because McCaskill Does Not Have Standing.

To have standing under section 559.72(9), the plaintiff must be a debtor. <u>Smith v. MarkOne Fin., LLC</u>, No. 3:13-cv-933-J-32MCR, 2015 U.S. Dist. LEXIS 11803, at *13 (M.D. Fla. Feb. 2, 2015). "Unless the context otherwise indicates, the FCCPA uses the word debtor to refer to 'any natural person obligated or allegedly obligated to pay any debt.'" <u>Id.</u> at *11 (quoting Fla. Stat. § 559.55(8)). "In determining whether a plaintiff was allegedly obligated to pay a debt, the operative question is whether the defendant communicated to the plaintiff that she was obligated." <u>Id.</u> (citing <u>Fini v. Dish Network L.L.C.</u>, 955 F. Supp. 2d 1288, 1298 (M.D. Fla. 2013)). "Thus, where a creditor calls the wrong number and alleges that the call recipient owes a debt, the recipient is a debtor under the FCCPA." <u>Id.</u> at *11–12 (citing cases). "Where instead a

16

creditor calls a debtor's family member to direct the debtor to return the call, . . . the family member lack[s] standing." Id. (citing Belin v. Litton Loan Servicing, LP, No. 8:06-cv-760-T-24, 2006 U.S. Dist. LEXIS 47953, at *1 (M.D. Fla. July 14, 2006)).

Accordingly, courts regularly find that the family member of a debtor lacks standing to sue under section 559.72(9) of the FCCPA where the family member is not alleged to owe on the debt. For instance, in Belin v. Litton Loan Servicing, a debt collector contacted the debtor's girlfriend and mother several times in an attempt to collect from the debtor. 2006 U.S. Dist. LEXIS 47953, at *3. During these attempts, the lending company would ask the girlfriend and mother to put it in contact with the debtor. Id. The court held that because the girlfriend and mother "[were] not alleged to be obligated to pay on the loan, they [were] not debtors under the FCCPA, and they [did] not have standing to pursue claims for violations of the FCCPA." Id. at *20; see also Smith, 2015 U.S. Dist. LEXIS 11803, at *13 ("As [Defendant] did not allege that [Plaintiff] was obligated to pay the debt, [Plaintiff] is not a debtor under the traditional FCCPA definition. Accordingly, [Plaintiff] does not have standing to bring a claim under § 559.72(9).").

Similarly, here, Defendants never alleged that McCaskill owed on Newsome's student loans. Under these facts, McCaskill does not have standing to sue under section 559.72(9).

### 3. FCCPA And FDCPA Claims Against SAC – SAC Cannot Be Liable Under The FCCPA Or FDCPA Because SAC Is Not A Debt Collector And Does Not Collect Or Attempt To Collect Debts.

To prevail on an FDCPA claim, a plaintiff must prove," among other things, that "the defendant is a debt collector." Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1344 (M.D. Fla. 2010) (citing Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000)). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

17

asserted to be owed or due another." Id. (citing 15 U.S.C. § 1692a(6)).  Similarly, while the FCCPA is not limited to "debt collectors," but applies to "persons" generally, to prevail on an FCCPA claim, a plaintiff must prove, among other things, that the defendant was engaging "in collecting consumer debts."  Renfrow v. First Mortg. Am., Inc., Case No. 08-80233-CIV-MARIA/JOHNSON, 2011 U.S. Dist. LEXIS 63392, (S.D. Fla. June 13, 2011) (citing Fla. Stat. § 559.72 (2015)); Fla Stat. § 559.72 (2015) ("In collecting consumer debts, no person shall . . ." engage in the prohibited conduct.).

As explained above, SAC performs default prevention on behalf of federal guaranty agencies by counseling debtors.  (**Ex. 1**, Campbell Deposition, 11:12–11:16.)  SAC does not take payments of any kind, nor does it collect or attempt to collect debts.  (Id. 19:19–20:7; **Ex. 2**, Dillon Deposition, 14:3–14:8.)  As a result, Plaintiff's claims under the FDCPA and FCCPA against SAC fail as a matter of law.  Kirby v. Professional Ass'n Mgmt., No. 3:12-cv-697-J20-MCR, 2012 U.S. Dist. LEXIS 162138, at *11 (M.D. Fla. Nov. 9 2012) (granting summary judgment on FDCPA claim because defendant was not a debt collector).

## IV.   CONCLUSION

WHEREFORE, Defendants respectfully request that this Court:  (1) grant partial summary judgment in their favor on plaintiff's claim of willful violation of the TCPA; (2) grant summary judgment in their favor on plaintiff's claims under the FCCPA; (3) grant summary judgment in favor of SAC on plaintiff's claims under the FDCPA; and (4) grant such other relief as this Court deems just and proper.

Dated: February 12, 2016

Respectfully submitted,

By: /s/ Lisa M. Simonetti

Lisa M. Simonetti
(admitted *pro hac vice*)
Vedder Price (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: (424) 204-7700
F: (424) 204-7702
lsimonetti@vedderprice.com

Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
SESSIONS, FISHMAN, NATHAN &
ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone: (813) 890-2463
Facsimile: (866) 466-3140
dvanhoose@sessions-law.biz

Attorney for Defendants
NAVIENT SOLUTIONS, INC. and
STUDENT ASSISTANCE CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2016, a copy of the foregoing **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT** was served by electronic mail on the party listed below:

>Frank H. Kerney, III, Esq.
>William Peerce Howard, Esq.
>Morgan & Morgan, Tampa P.A.
>One Tampa City Center
>201 N. Franklin Street, 7th Floor
>Tampa, FL  33602
>Tel: (813) 223-5505
>Fax: (813) 223-5402
>BHoward@ForThePeople.com

                                               /s/  Lisa M. Simonetti
                                                      Lisa M. Simonetti