**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**WILLIE MCCASKILL,**

      **Plaintiff,**

**v.**                              **CASE NO:  8:15-cv-1559-T-33-TBM**

**NAVIENT CORPORATION, NAVIENT
SOLUTIONS INC., and STUDENT
ASSISTANCE CORPORATION,**

      **Defendants.**

_____/

**PLAINTIFF WILLIE MCCASKILL'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, the Plaintiff, WILLIE MCCASKILL, by and through her undersigned counsel, who respectfully requests partial summary judgment against Defendants Navient Solutions Inc. ("NSI") and Student Assistance Corporation ("SAC"). pursuant to Federal Rule of Civil Procedure 56, and states the grounds for summary judgment as follows:

## I.     **INTRODUCTION**

The Plaintiff filed an Amended Complaint [Doc. 35] against NSI and SAC (jointly referred to as "Defendants") for violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 §227(b)(1)(A)(iii) ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq*. ("FCCPA") and the Fair Debt Collections Practices Act, 15 U.S.C. §1692, *et. seq* (hereinafter the "FDCPA").  Together, the Defendants called the Plaintiff seven hundred and twenty-seven (727) times on her cellular telephone for the purpose of collecting a debt.  In fact, NSI's two hundred and forty-nine (249) calls and SAC's four hundred and seventy-eight (478) calls to Ms.

McCaskill's cellular telephone were to collect on a student loan taken out by a "Maretta Newsome."

It is well known, in the debt collection industry, that the use of robo-dialers is an easy and cheap way to bully and harass people to pay for debts for which they are not responsible. Its hard to imagine a better example than this case where two companies gang up on a mother and Pastor over her daughter's alleged debt, and relentlessly call her 727 times.

By enacting the TCPA, Congress intended to "protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012). According to the Federal Communications Commission (FCC), "[u]nwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf. Congress and The Federal Communications Commission ("FCC") have recognized that robo-calls are extraordinarily aggravating, when made to a cellular telephone.

> Unwanted calls are especially problematic when made to mobile phones, which are now ubiquitous. "People keep their cellular phones on their person at nearly all times: in pockets, purses, and attached to belts." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005). Calls to mobile phones not only invade the sanctity of the home, like calls to residential phones, but can literally reach into our pockets and pocketbooks and interrupt us at any moment of our lives—at home or at work; while walking or driving; when away on vacation; while in church or other private spaces; and during moments of quiet contemplation.

*ACA Int'l v. FCC, et al*, D.C. Cir., No. 15-1211, (respondent brief filed 1/15/16). As such the FCC has continued to reiterate the distinction made by Congress when the TCPA was first enacted in 1991, "if a caller uses an autodialer or prerecorded message to make a non-emergency call to a

wireless phone, the caller must have obtained the consumer's prior express consent or face liability for violating the TCPA." *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶9, (2015) (hereinafter "FCC 2015"); 47 U.S.C. §227(b)(1)(A)(iii).

The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013); see also, S. Rep. 102–178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972; see also *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, at 954 (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy); see also, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Soundbite Communications, Inc.,* 27 FCC Rcd. at 15391–92 ¶ 2 (Nov. 26, 2012) (discussing TCPA's purpose of protecting consumers against unwanted contact from automated dialing systems). Because the TCPA is a remedial statute, it should be construed to benefit consumers. See *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir.2011).

For the reasons expressed herein, Plaintiff is entitled to judgment as a matter of law as to Defendants' liability for violations of the Telephone Consumer Protection Act, 47 U.S.C §227(b)(1)(A)(iii) (hereinafter the "TCPA"), treble damages for Defendants' willful or knowing violations of the TCPA, and liability for Defendants' violations of the FCCPA.  Further Plaintiff is entitled to summary judgment as to Defendant SAC's violations of the FDCPA, with the issue of the amount of actual and punitive damages under the FCCPA and FDCPA to be determined by a jury.

## II.   STATEMENT OF MATERIAL FACTS

1.   The Plaintiff, WILLIE MCCASKILL, is a natural person and resident of Largo, Florida. (McCaskill, Depo., **Exhibit A**, 48:2-8).

2.      The Plaintiff is the subscriber to and regular user of the cellular telephone number (727)-***-6140.  (McCaskill Depo., **Exhibit A**, 24:19, 26:6-8).

3.      Defendant NAVIENT SOLUTIONS INC. (NSI) made two hundred and forty-nine (249) calls, using an automated telephone dialing system, to Plaintiff's cellular telephone number (727)-***-6140.  (NSI Answer [Doc. 43] at ¶¶ 20,24).

4.      Defendant STUDENT ASSISTANCE CORP. (SAC) made four hundred and seventy-eight (478) calls, using an automated telephone dialing system to Plaintiff's cellular telephone. (SAC Answer [Doc. 42] ¶¶ 21,25)

5.      The Defendants NSI and SAC made a combined 727 calls to Plaintiff's cellular telephone number (727)-***-6140. (NSI Answer [Doc. 43] at ¶¶ 20,24), (SAC Answer [Doc. 42] ¶¶ 21,25).

6.      None of Defendants' calls were made for emergency purposes. (NSI Answer [Doc. 43] at ¶¶ 20,24), (SAC Answer [Doc. 42] ¶¶ 21,25).

7.      The calls made by the Defendants to the Plaintiff's cellular telephone were regarding, Maretta Newsome. (Campbell Depo., **Exhibit B**, 66:11-14).

8.      The Plaintiff never provided Defendants with her cellular telephone number. (Dillon Depo., **Exhibit C,** 102:13-21.)

9.      Maretta Newsome never provided Defendants with Plaintiff's cellular telephone number. (Newsome Depo., **Exhibit D**, 55:19-21; 63:9-12, 19-20; 70:22-25; 81:18-21; 82:7-11; 84:18-85:13), (Dillon Depo., **Exhibit C**, 102:13-21.)

10.     NSI obtained Plaintiff's cellular telephone number from an internet search[1]  of public records, finding Plaintiff's number on a 1999 application to the Florida Division of

---

[1]      Skip-tracing is a colloquial term used to describe the process of locating a person's contact information from public or private records, including phone numbers, for any number of purposes.

Corporations, for the non-profit church, Largo for Jesus, of which she serves as a Pastor. (McCaskill, Depo., **Exhibit A**, 43:11-43:12) (Dillon Depo., **Exhibit C**, 102:13-21).

11.    NSI claims the Plaintiff's telephone number was placed somewhere in their "Manage Your Loans" webpage; however they have no earthly idea how it got there. (Dillon Depo., **Exhibit C**, 103:21 – 104:3)

12.    The Defendants, in no uncertain term, did not have consent much less "prior express consent" to call Plaintiff's cellular telephone using an ATDS for non-emergency purposes pursuant to the Telephone Consumer Protection Act ("TCPA").  (Dillon Depo., **Exhibit C**, 103:21 – 104:3) (Newsome Depo., **Exhibit D**, 55:19-21; 63:9-12, 19-20; 70:22-25; 81:18-21; 82:7-11; 84:18-85:13).

13.    On or about August 26, 2014, Plaintiff answered a call from Defendants and spoke with an agent named "Heather" and advised "Heather" that she had the wrong telephone number. (McCaskill Depo., **Exhibit A**, 21:4-18).

14.    On May 28, 2015, SAC debt collector Christine Hampton actually noted in Defendant's account notes that they had reached the wrong person and that the voicemail message on Plaintiff's cellular telephone identified that the number was not associated with Maretta Newsome. (Hampton Depo., **Exhibit E,** 29:5-20); ("SAC Account Notes" SAC0000431-0000450, **Exhibit F**, SAC0000432).

15.    Defendant SAC is a separate and distinct entity from Defendant NSI. (SAC Answer [Doc. 42] ¶¶12, 20, 24, 26, 27, 30, 32, 34, 36, 48-50, 55-64).

16.    Defendant SAC robo-calls in order to secure payment on delinquent accounts due to NSI. (Peterson Depo., **Exhibit G**, 9:5-6) (Hearing Transcript, **Exhibit H**, 11:8-16) (SAC Answer [Doc. 42] ¶¶ 21,25).

5

17.    In accordance with their internal policies and procedures, NSI may call anybody eight times in any given day. (Peterson Depo., **Exhibit G**, 35:1-3).

18.    In accordance with their internal policies and procedures, NSI may place fifty-six calls to a single consumer in a week. (Peterson Depo., **Exhibit G**, 35:1-3).

19.    In accordance with their internal policies and procedures, SAC may call any phone number eight times in any given day. (Hampton Depo., **Exhibit E**, 26: 20-25)

20.    The continuous calls from Defendants caused Plaintiff aggravation, "got on [her] nerves, and woke her up in the mornings.  (McCaskill Depo., **Exhibit A**, 71: 16-21)

21.    Defendants vehement denials that they did nothing wrong only cements their fate that their conduct was in fact willful and knowing.  (Hampton Depo., **Exhibit E**, 27:20-28-1), (Peterson Depo., **Exhibit G**, 35:7-9)

### III.    <u>LEGAL STANDARD</u>

Rule 56(c) mandates the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  F.R.C.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrates the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "go beyond the pleadings" and designate facts in the record "showing that there is a genuine issue for trial."  *Id.*, at 324.

In responding to a motion for summary judgment, the non-moving party "may not rest upon mere allegations or denials," but "must set forth specific facts showing that there is a genuine

issue for trial." Fed.R.Civ.P. 56(e).  The non-moving party must also do more than simply show that there exists some doubt as to the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("*Matsushita*").  To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  Moreover, the non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986)), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita* 475 U.S., at 586-87), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).  Under these standards, the undisputed facts of this case compel the conclusion that Plaintiff is entitled to Summary Judgment on Plaintiff's claims.

## IV.   LEGAL ARGUMENT AND CITATION OF AUTHORITY

The facts in the record unequivocally demonstrate, and Defendant does not deny, that they phoned Plaintiff seven hundred and twenty-seven (727) times on his cellular telephone, using an automated telephone dialing system (hereinafter "ATDS"), in the attempt to collect a debt. As such, Defendants not only violated the TCPA by placing automated telephone calls to Plaintiff's cell phone without her prior express consent, but also violated the FCCPA and FDCPA by engaging in harassing and abusive conduct, causing Plaintiff's telephone to ring repeatedly and employing unfair and unconscionable means in the attempt to collect a debt.

For the reasons comprehensively set forth below, the uncontroverted material facts demonstrate that Plaintiff is entitled to judgment as a matter of law on the matters discussed above.

### a. The Plaintiff Is Entitled To Judgment as a Matter of Law As to Liability For Defendants' Violations of the TCPA.

The first matter that the Plaintiff seeks summary judgment upon is that the 249 telephone calls made by NSI and the 478 calls made by SAC to the Plaintiff's cellular telephone using an automated telephone dialing system constituted 727 separate violations of the TCPA, entitling the Plaintiff to the statutory minimum of $500 in damages per call. The relevant provisions of the TCPA provide that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A)      to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> . . .
> (iii)      to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. §227(b)(1)(A)(iii). As will be shown below, all requirements of this statute have been demonstrated by evidence and no genuine issues of material fact remain.

### i. U.S. Connection of the Case.

As a preliminary matter, there is no dispute that the calls in question have the requisite U.S. connection required by the TCPA statute as the calls were made to a "recipient . . . within the United States" using a U.S. based (area code 727) cellular number. The Affidavit of Plaintiff Willie McCaskill indicates that she received the calls while in the U.S.

### ii. Use of An ATDS or Prerecorded Voice to Make Calls to A Cell Phone.

The Defendants do not and shall not contest that an ATDS was used to place all 727 phone calls to the Plaintiff's cellular telephone.

###### iii.   **Navient Solutions Inc.'s Calls Were Not Made For "Emergency Purposes."**

The Defendants do not and shall not contest that all 727 phone calls to the Plaintiff's cellular telephone were made for non-emergency purposes.

###### iv.   **The Plaintiff is the Called Party.**

Plaintiff is the "called party."  *See Breslow v. Wells Fargo Bank, N.A.,* 755 F. 3d 1265 (11th Cir. 2014); and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).  The telephone number (727)-***-6140 belongs to the Plaintiff, as demonstrated in her Affidavit. Plaintiff was the recipient of all 727 telephone calls from the Defendants.

###### v.   **The Defendants Never Had The "Prior Express Consent" Of The Plaintiff To Call Her Cellular Telephone Using An ATDS Or Pre-Recorded Voice.**

In this matter, it is absolutely uncontroverted that the Plaintiff never provided her "prior express consent" for the Defendants to call her cellular telephone using an ATDS or pre-recorded voice.  Most significantly, the Defendants acknowledge that they were never provided Plaintiff's cellular telephone number, rather the number was obtained from an NSI initiated internet search. Furthermore, they never had any direct authorization from the Plaintiff to contact her on her cellular telephone.  Rather, at most, the Defendants may attempt to, incorrectly, argue that they were given "prior express consent" to call the Plaintiff's cellphone from the Plaintiff's daughter, Maretta Newsome, a person that the testimony in this case has established lacked any authority to provide such consent.

"Prior express consent" is the only affirmative defense to a 47 U.S.C. § 227(b)(1)(A)(iii) violation.  Further, "[t]o ensure that creditors and debt collectors call only those consumers who

have consented to receive autodialed and prerecorded message calls," the caller bears the burden

to maintain evidence showing that "prior express consent" was given. *In Re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559,

564-65, 2008 WL 65485 (Jan. 4, 2008). (hereinafter "2008 FCC Ruling").

> "We emphasize that prior express consent is deemed to be granted only if the
> wireless number **was provided by the consumer** to the creditor, and that such
> number was provided during the transaction that resulted in the debt owed. To
> ensure that creditors and debt collectors call only those consumers who have
> consented to receive autodialed and prerecorded message calls, we conclude that
> the creditor should be responsible for demonstrating that the consumer provided
> prior express consent."

See also, *FCC 2015*, at ¶ 47 ("if any question arises as to whether prior express consent was

provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior

express consent"). The Defendants have now acknowledged that the number was obtained from

an online search of public records through a process known as "skip tracing."[2]  Listing your

number as a contact number for a ministry on state business records is not, in anyway, express

consent to receive auto-dialed collections calls for your adult daughter's student loan debt. To

think otherwise is preposterous and contrary to any reasonable interpretation of "prior express

consent" under the TCPA. The FCC has made clear consent cannot be "presumed." The TCPA

and the Commission's rules plainly require express consent, not implied or "presumed" consent."

Consent is found when one provides his or her number. Here, the Defendants took the

liberty of obtaining the Plaintiff's number themselves, despite already having contact information

for Ms. Newsome, simply because they did not like the response they were receiving. In this day

in age, when nearly all information is available through a simple on-line search, Defendant's

position sets a ridiculous precedent, subjecting all persons across the country to automated

---

[2] This is of course contrary Defendants' original representation to the Court, that Court that Maretta Newsome
"provided" the Plaintiff's number to the Defendants. (Hearing Transcript, **Exhibit H**, 11:21-25).

collection calls for any debt owed by a close friend or family member.

There is no evidence that the Plaintiff provided her prior express consent to receive calls, regarding her daughter's loan, to her cellular telephone using an automated telephone dialing system. Specifically, how Plaintiff's cellular telephone number was entered into Defendants' system at all, following Defendants' "skip-tracing" remains "unknown". Prior express consent is satisfied when a consumer provides his or her number to the creditor, and in the absence of this affirmative action on the part of the Plaintiff, the Defendant is not entitled to the affirmative defense of prior express consent.

The Defendants will likely try to take the position that the Plaintiff's daughter, Maretta Newsome, provided "confirmation" of the telephone number in question, in an attempt to escape liability, under the TCPA, for their 727 calls. In addition to being non-sensical and without any legal basis, this contention lacks any factual basis as well. While finally admitting that the Plaintiff's number was obtained through a skip trace internet search, and not provided by Ms. Newsome (as they had represented to this Court) the Defendants have been unable to provide any evidence or explanation as to how the Plaintiff's skip traced number magically appeared in their system, except repeated saying "I don't know." Defendants have professed a concerning lack of knowledge concerning exactly how Maretta Newsome could have supposedly "confirmed" this erroneous number, acknowledging uncertainty as to whether she even ever typed it in on Defendant NSI's "Manage Your Loan" website or if the number was in fact auto-populated by the Defendant(s) as a result of their skip trace. Certainly, the Defendants have provided nothing to rebut Maretta Newsome's vehement denials that she ever provided the Plaintiff's number to the Defendants or authorized them to call it. Additionally, in light of the clearly established absence of any authority on the part of Maretta Newsome to authorize automated calls to her mother's cell

11

phone, the Defendants contention that she provided consent is obviously insufficient to defeat summary judgment in favor of the Plaintiff. *See, e.g., Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) (Noting that, under the TCPA, "one can consent to a call only if one has the authority to do so, and only the subscriber . . . can give such consent."),

The Defendants also ignore numerous other facts that are utterly fatal to this "express consent" defense.  For example, a NSI debt placed a call to the Plaintiff's number and noted that the name on the voicemail did not match with information about the debtor and made a notation in the Defendants' records to this effect.  Due to this discrepancy, this employee declined to even leave a voicemail during this call.  How the Defendants can justify subsequently making more than seven hundred automated calls to this number after the discovery of this discrepancy is impossible to fathom.  Moreover, when Maretta Newsome provided the correct number through the Defendants' "Manage Your Loan" internet system, why did the calls to the Plaintiff not cease?  As can be seen, the Defendants' actions fell well outside any reasonable hypothesis of consent.

The Defendant has failed to meet its burden and has not been able to establish that "the wireless number was **provided by the consumer** to the creditor, and that such number was provided during the transaction that resulted in the debt owed;" wherefore, the Plaintiff is entitled to summary judgment as a matter of law for Defendant's violations of the TCPA. Id. (emphasis added).  In light of the above, the Plaintiff's request of summary judgment as to each of the 727 calls constituting separate violations of the TCPA is overwhelmingly a straight-forward matter. Plaintiff is seeking the "strict liability" statutory minimum of $500 for each violation, thus entitling the Plaintiff to $363,500.00.

    **b.  <u>The Plaintiff Is Entitled To Judgment As A Matter Of Law As to Defendant's Willful Or Knowing Violations of The TCPA.</u>**

The second matter that the Plaintiff seeks summary judgment upon is that the 727 telephone calls made by Navient Solutions Inc. and Student Assistance Corp. to the Plaintiff's cellular telephone using an automated telephone dialing system were "willful or knowing" in nature, thus entitling the Plaintiff to treble damages, or $1,500, per call.  *See* 47 U.S.C. §227(b)(3)(C).  Here, there is a plethora of evidence to support this proposition.  As a threshold matter, Defendants will not dispute that they called the Plaintiff's cellular telephone a combined 727 times for non-emergency purposes using an auto-dialer.  It is also undisputed that the Plaintiff's telephone number was obtained by skimming it off the internet and was not provided to the Defendants by the Plaintiff or her daughter, Maretta Newsome. Running internet searches, or skip-tracing numbers as the Defendant says is the perfect example of what "express consent" is not and itself violates the entire purpose and spirit of the TCPA.  The Defendants admit that this is how they do business and this is how they pull numbers out of thin air.  Imagine if they are allowed to continue this type of conduct and simply call moms and pastors and anyone one else they feel like.  This brazen and lawless activity is an incredible violation of Americans' rights and entitles Plaintiff to treble damages against the Defendants for each of the 727 calls.

In addition to the "strict liability" damages afforded by the TCPA it goes on to provide "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  47 U.S.C. § 227(b)(3)(C).

> "The requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute. Cf. *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.2011) ("The [Act] does not require any intent for liability except when awarding treble damages."). For example, to violate section 227(b)(1)(A)(i), a defendant must know that he is using

13

an "automatic telephone dialing system" to place a "call," and that the call is directed toward an "emergency" line. Id. § 227(b)(1)(A)(i)."

*Lary v.Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).   For starters, the Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.   The Defendants have been sued in Federal Court over 173 times in the last 3 years and continues to maintain a corporate policy of using an automatic telephone dialing system or a prerecorded or artificial voice message to collect debts from individuals, such as Plaintiff, for their financial benefit.   Additionally, Defendants have received thousands of complaints from consumers alleging similar violations of the TCPA. On or about December 31, 2015 this Court entered an Order [Doc. 64] compelling Defendants to provide prior complaints from their shared complaint database. Specifically, the Court ordered:

> "Moreover, to the extent that Defendant(s) have been subject to formal written complaints or inquiries by a State of Florida or federal agency or entity during the relevant period of this suit because of their alleged violation of the TCPA, the FCCPA, or the FDCPA for collection activities of the kind at issue in this case, a copy of such complaint or inquiry shall be provided." [Doc. 64]

Despite the narrow scope of this Order, the Defendants provided 77 complaints lodged between January 2014 and December 2015 and a number of these complaints deal specifically with facts similar to the case at hand: Defendants calling family members of borrowers looking to reach a borrower.  The fact of the matter is that Defendants are very aware they are routinely being accused of violating the TCPA and should therefore be well aware of the provisions of the statute.

By searching for a number online the Defendants obtained an incorrect number for Maretta Newsome and engaged in a dialing campaign that resulted in an independent third party, Willie McCaskill, being called an almost unfathomable seven hundred and twenty-seven times without her prior express consent. It is difficult to think of a scenario that is more offensive to the spirit of

the TCPA, which at its core requires callers to obtain consent before engaging in this type of behavior, than the one at hand.

Further supporting the Plaintiff's position, is the fact that the Defendants continued to call the Plaintiff despite the fact that her voicemail message clearly indicated that the phone number belonged to "Willie and Malaki McCaskill" and not Maretta Newsome. Christine Hampton, an agent of SAC, noted on May 28, 2015, that she herself did not leave a message on the Plaintiff's voicemail after hearing a different name on the voicemail message. Additionally, Plaintiff spoke with a collector that worked for Navient, "Heather" on or about August of 2014. At that time, Plaintiff advised "Heather" that she had the wrong number when she called asking to speak with Maretta Newsome. Despite having actual knowledge that the wrong person was being called, Defendants continued their campaign of phone calls against the Plaintiff in a flagrant violation of the TCPA.

It is therefore apparent that, as explained previously, the Defendants both knew that ATDS calls to a "skip-traced" number is not prior express consent, Plaintiff did not provide consent, wanted the calls to stop and Defendants knew that these calls were violations of the TCPA. In light of these facts and the unambiguous lack of consent described in the section above, as well as being informed they reached the incorrect party, treble damages as to the knowing or willful nature of Defendants' TCPA violations is appropriate. See *Coniglio v. Bank of Am., N.A.*, 2014 WL 5366248, at *5 (M.D. Fla. 2014) (overruled on other grounds) (noting that allegations of unambiguous communications requesting cessation of direct communication with a TCPA Claimant were adequate to establish that the TCPA defendant's conduct was knowing and willful and therefore treble damages of $1,500 per call was appropriate). See also *Clements v. DSM Supply L.L.C.*, 2014 WL 560561 (M.D. Fla. 2014) (holding that treble damages of $1,500 per call

were appropriate for each fax received after Claimant's written request to cease communications.);

*Gambon v. R & F Enterprises, Inc.*, No. 6:14-cv-403-Orl-18GJK (M.D. Fla filed Dec. 2, 2014).

In light of these facts and the undisputed fact that Plaintiff never gave Defendant her prior express consent to be called using an ATDS, summary judgment on the knowing or willful nature of Defendant's TCPA violations is appropriate. Although admittedly not as crystal clear as the summary judgement on the $500 per call strict liability aspect of this case as stated above, this is one of those cases where Plaintiff should be entitled to $1,500 for each of the seven hundred and twenty-seven calls made by the Defendants, or $1,090,500.

c. **Plaintiff is Entitled to Partial Summary Judgment As A Matter of Law As to Liability For Defendants' Violations of the FCCPA.**

The FCCPA has been held to be a laudable legislative attempt to curb what the legislature evidently found to be a series of known abuses in the area of debtor-creditor relations in the state of Florida. *Laughlin v. Household Bank, Ltd*. 969 So.2d 509 (Fla. 1st DCA 2007).

The FCCPA imposes civil liability on "any person" for certain prohibited debt collection practices. Among the prohibited practices, is the exact behavior Respondent committed while attempting to collect from Plaintiff. Pursuant to F.S. §559.72(7), no person shall…, "(7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." F.S. § 559.72(7). Further §559.72(9) prohibits persons like the Defendants from "claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate." The FCCPA §559.77(2) provides for civil remedies for violations of the FCCPA, including statutory, actual and punitive damages, as well as reasonable attorney's fees and costs and in the case at hand, the record demonstrates that in the process of attempting to collect a debt,

16

the Defendants' utilized a robo dialer to contact the Plaintiff over seven hundred times in the span of a year and a half.

"Debtor" is defined by Florida Statute §559.55(2) as "any natural person obligated or *allegedly obligated* to pay any debt." [emphasis added]. Obviously, by repeatedly calling an individual, who informed the Defendants that she was not "Maretta Newsome," Defendant is implying that they believe the individual to be lying and in fact, owe them money. Quite frankly, there is no other reasonable explanation for Defendant to continue to call the Plaintiff seven hundred twenty-seven (727) times, unless they believed the individual to owe them money, or hoped to harass the individual into giving them money. See *Desmond v. Accounts Receivable Management*, 72 So.2d 179 (Fla. 2nd DCA 2011) (finding that the individual called had standing to bring an FCCPA case and was an alleged debtor because he had no way to stop the calls and owed the defendant no money).

SAC and NSI willfully communicated with Plaintiff with such frequency as can reasonably be expected to harass. There can be no doubt, that a phone ringing over seven hundred times and up to eight times in a single day, is reasonably expected to torment the recipient, and policies which allow for up to eight calls a day can only be expected to harass. Moreover, a creditor or debt collector, such as the Defendants, know that incorrect telephone numbers may result in the collection process. This is particularly true when companies utilize methods, such as skip tracing and autodialers, as the Defendant's did here, in attempts to collect a debt. SAC and NSI knowingly employed methods of collection that did not permit the cessation of calls to the Plaintiff and therefore engaged in "other conduct" which can reasonably be expected to abuse or harass such an alleged debtor. Plaintiff also brought a § 559.72(9) claim which prohibits the Defendants from "claiming, attempting or threatening to enforce a debt when such person knows that the debt is not

legitimate." In our case, the Defendant was verbally told, and knew, the debt was not legitimate but continued calling Ms. McCaskill on a daily basis.

When considering the Defendants' audacious conduct in obvious violation of the FCCPA, the statute is instructive that the Defendants' nature of noncompliance, frequency and persistence of non-compliance and extent the noncompliance was intentional. §559.77(2). The record evidence is more than sufficient for the Court to exercise its full force in awarding $1,000 in statutory damages, as to each Defendant, as well as reasonable attorneys' fees and costs and reserve the determination of actual and punitive damages for a jury.

     d.  **Plaintiff is Entitled to Partial Summary Judgment As A Matter of Law As to Liability For Defendant Student Assistant Corporation's Violations of the FDCPA**.

"The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." _Peters v. Gen. Serv. Bureau, Inc.,_ 277 F.3d 1051, 1054 (8th Cir.2002); _see_ 15 U.S.C. § 1692(e) ("[T]o insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged[.]"). According to 15 U.S.C. §1692, "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy**."**

In the course of collecting on a defaulted student loan for NSI, Student Assistance Corporation willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person, in violation of 15 U.S.C. § 1692(d). Specifically, SAC called Plaintiff's cellular telephone four hundred and seventy-eight (478) times. Defendant's harassment and abuse of Plaintiff in violation of the FDCPA was not limited to an egregious volume of calls, but was reinforced with

pattern of conduct that not only had the natural consequence of harassing, abusing, and oppressing a consumer, but was intended to do so.  The Plaintiff never provided either Defendant with her cellular telephone number.  And in fact, never did the third party who was allegedly responsible for the debt, Maretta Newsome.  As it stands, nobody knows how or frankly if Plaintiff's number really was in Defendant's webpage at all.  What everyone does does know is that Plaintiff didn't owe the Defendants' a penny and got 727 robo-calls on her cell phone.

SAC's shameless, repetitious, and willful disregard for the Plaintiff's rights is exactly the sort of behavior the FDCPA was designed to curtail.  Similar to its state counterpart, the FDCPA provides guidance in awarding statutory damages.  When determining liability, the Court shall consider the nature of noncompliance, frequency and persistence of non-compliance and extent the noncompliance was intentional.  15 U.S.C. § 1692(k)(b).  The Plaintiff asks this Court to award $1,000 in statutory damages and Plaintiff's reasonable attorney fees and costs against SAC, with the issue of actual and punitive damages to be subject to a determination by a jury.

## CONCLUSION

There is no genuine issue of material fact precluding partial summary judgment in favor of the Plaintiff as a matter of law with regards to Defendants liability for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) for the 727 telephone calls made by the Defendants to Plaintiff's cellular telephone using an automated telephone dialing system (ATDS) without her "prior express consent."  Thus, Plaintiff is entitled as a matter of law to $500 for each of the 727 calls or a total of $363,500. Alternatively, there is no genuine issue of material fact precluding summary judgment in favor of the Plaintiff as a matter of law with regards to the "willful or knowing" nature of the Defendant's violations of the TCPA in the form of the aforementioned 727 telephone calls placed by the Defendants to Plaintiff's cellular telephone using

an automated telephone dialing system without her prior express consent.  Thus, Plaintiff is entitled as a matter of law to $1,500 for each of the 727 calls or a total of $1,090,500.  Punitive damages, and actual damages are traditionally damages left for a jury and Plaintiff requests the Court to reserve on these.

It is respectfully requested that the court enter a partial summary judgment order concluding that the Plaintiff is entitled to $1,090,500 in trebled damages for Defendants' 727 calls in violation of the TCPA; alternatively Plaintiff asks for her "strict liability" damages of $500 per call or $363,500 and for the court to allow the issue of treble damages to go to the jury. Additionally, summary judgment in favor of the Plaintiff is respectfully requested as to Defendants' liability for violations of the FCCPA on the part of both Defendants, and SAC's violations of the FDCPA.

Respectfully submitted,

/s/ William Peerce Howard
William Peerce Howard
The Consumer Protection Firm
210-A Macdill Avenue
Tampa, FL 33609
Tele: 813-220-2954
Florida Bar #: 0103330
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, William Peerce Howard, hereby certify that on February 12, 2016, I caused a copy of the foregoing to be electronically filed with the Clerk of the District Court using the CM/ECF system, which will provide electronic notice of the filing to all counsel of record.

/s/ William Peerce Howard _____
William Peerce Howard, Esquire
Florida Bar #: 0103330
