EXHIBIT 2

# In The Matter Of:

*McCaskill v.*
*Navient Solutions, Inc.*

---

*Cheryl A. Dillon*
*December 29, 2015*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



Original File 122915DillonC.kh.txt
Min-U-Script® with Word Index

Page 1

1      IN THE UNITED STATES DISTRICT COURT

2         MIDDLE DISTRICT OF FLORIDA

3            TAMPA DIVISION

4  WILLIE McCASKILL,        )

5      Plaintiff,           )

6      v.                   ) Case No.
                            ) 8:15-CV-1559-T-33-TBM
7  NAVIENT SOLUTIONS,       )
   INC., STUDENT            )
8  ASSISTANCE               )
   CORPORATION, and         )
9  NAVIENT CORPORATION,     )

10     Defendants.          )

11

12          Videotaped deposition of

13  CHERYL A. DILLON taken pursuant to notice at

14  Stat Office Solutions, 1201 North Orange

15  Street, 7th Floor, Wilmington, Delaware,

16  beginning at 9:58 a.m., on Tuesday,

17  December 29, 2015, before Kimberly A. Hurley,

18  Registered Merit Reporter and Notary Public.

19

20

21

22              WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
23              (302) 655-0477
                www.wilfet.com
24

Page 2

1  APPEARANCES:

2      FRANK H. KERNEY III, ESQUIRE
       OCTAVIO GOMEZ, ESQUIRE
3      MORGAN & MORGAN
         201 North Franklin Street - Suite 700
4        Tampa, Florida 33602
         for the Plaintiff
5
       DAYLE M. VAN HOOSE, ESQUIRE
6      SESSIONS FISHMAN NATHAN & ISRAEL
         3350 Buschwood Park Drive - Suite 195
7        Tampa, Florida 33618-4317
         for the Defendants
8
       PATRICK CHAING, ESQUIRE
9      NAVIENT

10  ALSO PRESENT:

11     PHILLIP WOOLER
       Videographer
12
                - - - - -
13

14

15

16

17

18

19

20

21

22

23

24

Page 3

1      THE VIDEOGRAPHER: We are now on

2  the record.  My name is Phil Wooler.  I'm a

3  videographer retained by Wilcox & Fetzer for a

4  video deposition in the United States District

5  Court, Middle District of Florida, Tampa

6  Division.

7      Today's date is December 29th,

8  2015.  The video time is 9:58 a.m.  This

9  deposition is being held at 1201 Orange Street

10  in Wilmington, Delaware, in the matter of

11  McCaskill versus Navient Solutions,

12  Incorporated, et al.  The deponent is

13  Cheryl Dillon.

14      Will all counsel please identify

15  themselves?

16      MR. KERNEY: Yes, Frank Kerney

17  on behalf of the plaintiff.

18      MR. GOMEZ: Tav Gomez on behalf

19  of the plaintiff.

20      MS. VAN HOOSE: Dayle Van Hoose

21  on behalf of Navient Solutions, Inc.

22      THE VIDEOGRAPHER: And the court

23  reporter, Kim Hurley, will now swear in the

24  witness.

Page 4

1      CHERYL A. DILLON,

2  the witness herein, having first been

3  duly sworn on oath, was examined and

4  testified as follows:

5      BY MR. KERNEY:

6  Q.  Good morning, ma'am.  Thank you for

7  being here today.  Would you please state your

8  full name for the record?

9  A.  Cheryl Dillon.

10  Q.  Thank you.  Ms. Dillon, as a brief

11  introduction, I'm going to ask that you give

12  oral responses here today.  Don't shake your

13  head or nod.  We need to hear "yes" or "no" if

14  that's your answer to a question.

15      I'm also going to ask counsel,

16  if you make an objection pursuant to the

17  Middle District rules, just object to form.

18  We don't need a narrative as to the objection.

19      So, Ms. Dillon, would you go

20  ahead and state your date of birth for me?

21  A.  2/12/70.

22  Q.  And where do you live?  Not

23  necessarily your home address but what city?

24  A.  Smyrna, Delaware.

Cheryl A. Dillon                                               Page 5

1   Q.   Where are you currently employed?
2   A.   **Navient Solutions, Inc.**
3   Q.   What is your job title there?
4   A.   **Collection direct mail manager.**
5   Q.   How long have you been employed in
6   that capacity?
7   A.   **This role has been one year.**
8   Q.   Prior to this role that you have, in
9   what capacity did you work?
10  A.   **I worked as education manager.**
11  Q.   With Navient Solutions?
12  A.   **Yes.**
13  Q.   How long did you work as the education
14  manager?
15  A.   **Four years, approximately.**
16  Q.   What were your responsibilities as far
17  as being the education manager?
18  A.   **I had a role of managing those who**
19  **trained others, and I helped with training**
20  **others that were newly hired to the company,**
21  **and I also worked on design or managed the**
22  **team to design material.**
23  Q.   Would that be training materials?
24  A.   **Yes.**

Cheryl A. Dillon                                               Page 6

1   Q.   So were you training employees in the
2   call center?
3   A.   **Yes.**
4   Q.   Prior to that how were you employed?
5   A.   **I was a trainer at Navient Solutions,**
6   **Inc.**
7   Q.   How long did you work as a trainer
8   for?
9   A.   **About a year.**
10  Q.   Prior to that where did you work?
11  A.   **Discover Card.**
12  Q.   What did you do at Discover?
13  A.   **I was a team lead for a call center.**
14  Q.   Is it correct that you have been with
15  Navient Solutions for approximately six years?
16  A.   **Almost seven.**
17       **MS. VAN HOOSE:** Frank, I didn't
18  want to interrupt your question, but just for
19  ease of reference for today, can we refer to
20  Navient Solutions as NSI?
21       **MR. KERNEY:** Yes, absolutely.
22  Thank you.
23       **BY MR. KERNEY:**
24  Q.   And that was going to be kind of my

Cheryl A. Dillon                                               Page 7

1   next question.  I saw you have a LinkedIn
2   page.  Is that correct?
3   A.   **Yes.**
4   Q.   So I just look everybody up on there,
5   and I saw that you list yourself as an
6   employee of Navient.  Are you employed by
7   Navient Corp. or Navient Solutions, Inc.?
8   A.   **Navient Solutions, Inc.**
9   Q.   So I will differentiate with NSI for
10  Navient Solutions, Inc., and then Navient we
11  will refer to Navient Corp.  Okay?
12  A.   **Okay.**
13  Q.   You understand that you have been
14  presented here today as a corporate
15  representative for NSI?
16  A.   **Yes.**
17  Q.   You understand that you're under oath
18  and have to tell the truth here today?
19  A.   **Yes.**
20  Q.   Have you ever had your deposition
21  taken before?
22  A.   **Yes.**
23  Q.   In what capacity?
24  A.   **Representative of NSI.**

Cheryl A. Dillon                                               Page 8

1   Q.   How many times?
2   A.   **Three.**
3   Q.   When was the most recent time other
4   than today?
5   A.   **Two weeks ago.**
6   Q.   What is your educational background?
7   A.   **Some college.**
8   Q.   Where did you attend?
9   A.   **University of Phoenix.**
10  Q.   Do you hold any professional
11  certificates or licenses?
12  A.   **I have had classes for certification**
13  **in life coaching.**
14  Q.   Do you still hold that certificate
15  today?
16  A.   **Somewhere.**
17  Q.   It would be active, in other words?
18  A.   **Yes.**
19  Q.   Very good.  Just so you understand,
20  today I might ask you questions that deal with
21  the background of this case and your prep with
22  your attorneys.  I don't ever want you to tell
23  me about conversations with your lawyer or
24  in-house counsel or anything like that.  Your

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                        Page 9

1   attorney will, of course, object if need be.
2   But I do want to ask what you did in
3   preparation for today's deposition.
4   A.  I reviewed the materials produced,
5   listened to call recordings, met with counsel.
6   Q.  How long did you meet with counsel
7   for?
8       MS. VAN HOOSE: You're not
9   asking her about conversations, substance,
10  anything like that?
11      BY MR. KERNEY:
12  Q.  Just how you spent prepping with your
13  attorney, that's all.
14  A.  A few hours yesterday.
15  Q.  Very good. Do you have an
16  understanding as to what this matter is about?
17  A.  Yes.
18  Q.  What is that understanding?
19  A.  It's in regard to phone calls to a
20  specific phone number.
21  Q.  Do you know who the called party was
22  in this case?
23      MS. VAN HOOSE: Object to form.
24      THE WITNESS: I don't recall the

Cheryl A. Dillon                                       Page 10

1   name.
2       BY MR. KERNEY:
3   Q.  Do you know what the TCPA is,
4   Telephone Consumer Protection Act?
5   A.  Yes.
6   Q.  When did you first hear about the
7   Telephone Consumer Protection Act?
8   A.  Since working for NSI.
9   Q.  So when you first came on six, almost
10  seven, years ago, is that when you first
11  learned about the TCPA?
12  A.  I don't recall exactly.
13  Q.  Did you -- with regards to your
14  position as an educator I think you referred
15  to it as, trainer, did you educate staff
16  regarding the TCPA?
17  A.  Yes.
18  Q.  In what capacity?
19  A.  What do you mean?
20  Q.  Did you draft training materials for
21  them? Did you give presentations?
22  A.  Yes, both.
23  Q.  How often would you give presentations
24  on the TCPA?

Cheryl A. Dillon                                       Page 11

1   A.  Every new-hire class was instructed.
2   Q.  So when you say, "new-hire class,"
3   what does that mean?
4   A.  They were just hired. Before they get
5   on the phones, they receive new-hire training.
6   Q.  Is that group training?
7   A.  Yes.
8   Q.  So there will be four or five people
9   or however many number hired at a time and
10  everyone sits in on this training session
11  together; is that accurate?
12      MS. VAN HOOSE: Object to form.
13      THE WITNESS: We have group new
14  hire.
15      BY MR. KERNEY:
16  Q.  How many people would be in those
17  groups?
18  A.  It would depend. Anywhere from a
19  couple of people, depending on the area that
20  was hiring, to 20 or more people.
21  Q.  So would you say that you're
22  knowledgeable with regards to TCPA compliance?
23  A.  Yes.
24  Q.  Which physical office location do you

Cheryl A. Dillon                                       Page 12

1   work at?
2   A.  The Newark, Delaware.
3   Q.  What's the address there?
4   A.  It's Prides Crossing. Our mail goes
5   to the Wilmington mailroom, so I don't recall
6   the number of our --
7   Q.  How many physical offices does NSI
8   have?
9   A.  I'm not a hundred percent sure.
10  Q.  How many can you think of?
11  A.  We have sister companies, so I have to
12  think about the branding at each site. I'm
13  not a hundred percent sure.
14  Q.  Okay. What sister companies do you
15  have?
16  A.  Pioneer Credit Recovery, Student
17  Assistance Corporation, General Revenue
18  Corporation.
19  Q.  Are NSI, SAC, General Revenue
20  Corporation, and Pioneer Credit all
21  subsidiaries of Navient Corporation?
22  A.  Navient Corp. is the parent company.
23  Q.  What is Navient Corp.'s purpose as a
24  company?

---

Cheryl A. Dillon                                      Page 13

1  A.  My understanding is it's the holding
2    company.  So financial.
3  Q.  What is NSI's purpose as a company?
4  A.  We are a servicing company.
5  Q.  What do you service?
6  A.  Student loans.
7  Q.  Who are the guarantors with regards to
8    those loans?
9  A.  There's a number of guarantors.
10  Q.  Do you know how many there are,
11    approximately?
12  A.  No, I don't.
13  Q.  Can you name any of them?
14  A.  U.S. Department of Education.
15  Q.  Anyone else?
16  A.  I've seen guarantors that identify a
17    certain state.
18  Q.  What does Student Assistance
19    Corporation do?
20  A.  They counsel student loan borrowers.
21  Q.  What does General Revenue Corporation
22    do?
23  A.  They handle third-party collection.
24  Q.  And what does Pioneer Credit Recovery

---

Cheryl A. Dillon                                      Page 14

1    do?
2  A.  Third-party collection.
3  Q.  Does Student Assistance Corp. collect
4    any debts?
5  A.  They take no payments.
6  Q.  Do they attempt to collect a debt at
7    all?
8  A.  They can't.  They can't take payments.
9  Q.  Does Navient Solutions, Inc., collect
10    debts?
11  A.  Yes.
12  Q.  You said that you weren't sure how
13    many physical locations NSI has because some
14    of those locations are shared with sister
15    corporations.
16    MS. VAN HOOSE:  Object to form.
17    BY MR. KERNEY:
18  Q.  Was that accurate?
19  A.  No.  Some of the locations may be --
20    like I have been at several of our locations
21    and I don't necessarily recall which sister
22    company is that building.
23  Q.  Occupies the building?
24  A.  Right.

---

Cheryl A. Dillon                                      Page 15

1  Q.  Does NSI share office space with any
2    of the sister corporations?
3  A.  Yes.
4  Q.  Which corporations?
5  A.  Student Assistance Corp., Pioneer.
6    Don't know for sure any others.
7  Q.  Does NSI share office space with any
8    of its sister companies at the Newark,
9    Delaware, office?
10  A.  I don't believe so.
11  Q.  Does NSI share office space with any
12    of its sister companies at the Wilmington,
13    Delaware, office?
14    MS. VAN HOOSE: Do you have a
15    specific address?
16    THE WITNESS: I'm not aware of
17    that.
18    BY MR. KERNEY:
19  Q.  Is there more than one physical
20    location for NSI in Wilmington?
21  A.  I'm aware of one address.
22  Q.  Who is your direct supervisor
23    currently?
24  A.  Bob Bednar.

---

Cheryl A. Dillon                                      Page 16

1  Q.  Could you spell Bob's last name?
2  A.  B-e-d-n-a-r.
3  Q.  And what is Mr. Bednar's title?
4  A.  He is channel strategist senior
5    director.
6  Q.  And what does that mean?
7  A.  He oversees or directs my team and the
8    implementation team for written communication,
9    largely.
10  Q.  Prior to your current role when you
11    were working as an educator -- am I saying
12    that correctly?  You were -- educator was your
13    title?
14  A.  Education manager.
15  Q.  Education manager.  When you were an
16    education manager, who was your direct
17    supervisor?
18  A.  Jenny Johnson.
19  Q.  What was her title?
20  A.  She was director.  Whether she was
21    called of training and development or
22    education, I'm not sure.
23  Q.  Is Ms. Johnson still employed by NSI?
24  A.  Yes.

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                        Page 17

1 Q.  Is she still employed as the director
2 of training?
3 A.  Yes.
4 Q.  Who would her direct supervisor be?
5 A.  Patty Peterson.
6 Q.  What is Ms. Peterson's title?
7 A.  I'm not sure if she's an AVP or VP,
8 actually.
9 Q.  Do you know what any of Ms. Peterson's
10 job responsibilities are?
11 A.  Yes.
12 Q.  What are her responsibilities?
13 A.  Oversee the support of NSI, GRC,
14 Pioneer, whether it's dialer, letters,
15 training.
16 Q.  So she -- Patty Peterson is employed
17 by NSI and she oversees I'm going to use
18 "compliance" for lack of a better term, but
19 I'm referring to what you just described to
20 me, for Pioneer Credit Recovery and General
21 Revenue Corp.?
22    MS. VAN HOOSE: Object to form.
23    THE WITNESS: She doesn't manage
24 compliance.  She manages the support.

Cheryl A. Dillon                                        Page 18

1    BY MR. KERNEY:
2 Q.  What does that mean?
3 A.  Support, the operation.
4 Q.  Is that the internal operation that's
5 being done with NSI, or is that all operations
6 for those sister companies?
7    MS. VAN HOOSE: Object to form.
8    THE WITNESS: I won't say all.
9 I don't know the full reach, you know, of
10 those responsibilities.
11    BY MR. KERNEY:
12 Q.  Mr. Bednar, who does he report to?
13 A.  Patty Peterson.
14 Q.  What does -- what are Mr. Bednar's
15 responsibilities?
16 A.  As I said, he manages my team and the
17 implementation team ultimately.
18 Q.  What does that entail specifically as
19 far as managing the teams?
20 A.  Producing written -- any written
21 communication over the consumers, ensuring
22 that it is clear, compliant, and
23 understandable.
24 Q.  And when you say "compliant,"

Cheryl A. Dillon                                        Page 19

1 compliant with what?
2 A.  Any required language or making sure
3 that it's not unclear.
4 Q.  Does that include compliance with
5 state and federal laws?
6    MS. VAN HOOSE: Now we're going
7 into someone else's job responsibilities.
8 We're, I think, getting outside the scope.
9 You're asking her understanding of --
10    MR. KERNEY: Correct.
11    MS. VAN HOOSE: I'll let it go
12 for a little bit.
13    THE WITNESS: We ensure state
14 disclosures appear on letters, whatever
15 required notices appear within our letters as
16 regards to debt collection.
17    BY MR. KERNEY:
18 Q.  Who is the president or CEO of NSI?
19 A.  Jack Remondi.
20 Q.  Could you spell his last name?
21 A.  R-e-m-o-n-d-i.
22 Q.  Does Mr. Remondi, to your knowledge,
23 have any involvement with any of the sister
24 companies of NSI?

Cheryl A. Dillon                                        Page 20

1    MS. VAN HOOSE: Object to form.
2    THE WITNESS: I don't know what
3 he does on a daily basis.
4    BY MR. KERNEY:
5 Q.  Who is the No. 2 individual beneath
6 Mr. Remondi.
7 A.  I think John Kane.
8 Q.  How does Mr. Kane spell his last name?
9 A.  K-a-n-e.
10 Q.  Do you know what Navient Solutions,
11 Inc.'s, net worth is?
12 A.  I do not.
13 Q.  How many people are employed by NSI?
14 A.  I'm not sure.
15 Q.  How many people work in your physical
16 office location?
17 A.  I'd say a few hundred.
18 Q.  Is the office location you work out of
19 corporate headquarters?
20 A.  No.
21 Q.  Where is headquarters?
22 A.  Our main office is Wilmington.
23 Q.  Who would be the person within NSI
24 that would be best suited to tell me what the

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                    Page 21

1  company's net worth is?
2      **MS. VAN HOOSE:** Object to form.
3      Answer if you know the answer.
4      **THE WITNESS:** I don't know who
5  the best person would be.
6      **BY MR. KERNEY:**
7  Q.  Do you know how many call centers NSI
8  has?
9      **MS. VAN HOOSE:** Object to form.
10     **THE WITNESS:** Not exactly.
11     **BY MR. KERNEY:**
12 Q.  How many can you think of?
13     **MS. VAN HOOSE:** Object to form.
14 Same objection.
15     **THE WITNESS:** I can think of
16 four.
17     **BY MR. KERNEY:**
18 Q.  Where are those four located?
19 **A.  Wilkes-Barre, Pennsylvania; Newark,**
20 **Delaware; Muncie, Indiana; Fishers, Indiana.**
21 Q.  Have you been to any of those physical
22 call centers?
23 **A.  Yes.**
24 Q.  Do you have any idea how many

Cheryl A. Dillon                                    Page 22

1  employees would be at any -- how many
2  employees that work in the capacity as a
3  caller, what do you call them agents?
4  **A.  That's fine.  That's a fine term.**
5  Q.  How many agents work in the individual
6  locations, from what you have seen?
7  **A.  I don't know exactly.**
8  Q.  How many of those four call centers
9  you named manually dial?
10     **MS. VAN HOOSE:** Object to form.
11 We have got the stipulation about calls and
12 how calls are made.  I don't think that going
13 into who's dialing how is really within the
14 scope.  That was the purpose of the
15 stipulation.
16     **MR. KERNEY:** I don't know that
17 it was, necessarily.  And it could lead to
18 other information we need.
19     **MS. VAN HOOSE:** How?
20     **MR. KERNEY:** I don't necessarily
21 want to get into it on the record.
22     **MS. VAN HOOSE:** Why don't we go
23 off the record for a minute.
24     **THE VIDEOGRAPHER:** 10:19 off the

Cheryl A. Dillon                                    Page 23

1  record.
2      (Discussion off the record.)
3      **THE VIDEOGRAPHER:** 10:23 back on
4  the record.
5      **BY MR. KERNEY:**
6  Q.  Are there specific groups of employees
7  who manually dial calls?
8      **MS. VAN HOOSE:** Object to form.
9      **THE WITNESS:** Of the call
10 centers I'm aware of, I have -- and have
11 trained in the past, they can -- same agents
12 can auto dial that can manual dial.
13     **BY MR. KERNEY:**
14 Q.  How would it be determined what an
15 agent -- agent's responsibility would be,
16 whether it was manually dialing or auto
17 dialing?
18     **MS. VAN HOOSE:** Object to form.
19 And I think that's also beyond the scope of
20 what's in the notice.
21     **THE WITNESS:** The management and
22 dialer teams.
23     **BY MR. KERNEY:**
24 Q.  Do you know how many dialer teams

Cheryl A. Dillon                                    Page 24

1  there are?
2      **MS. VAN HOOSE:** Object to form.
3      **THE WITNESS:** I don't know if
4  they're all considered ultimately one within
5  NSI with different responsibilities.  I don't
6  know exactly their structure of the dialer
7  team.
8      **BY MR. KERNEY:**
9  Q.  Do you know which auto-dialing system
10 or software is used by NSI?
11     **MS. VAN HOOSE:** Object to form.
12 Actually, that's where we're going to stop.
13 We have got a stipulation on this going into
14 dialing software.  All of that is not why
15 we're here today.
16     **MR. GOMEZ:** I don't think it
17 tells us what the dialer is.  We're going to
18 get into all the details regarding these phone
19 calls and how they react.  Answering the name
20 of the dialer is not -- how is that outside
21 of...
22     **MR. KERNEY:** These are very
23 simple questions for someone in this capacity.
24     **MR. GOMEZ:** And we're going to

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                    Page 25

1  try to get into how many calls can this system
2  dial per day and things like that.  So I think
3  it's part of the areas of inquiry.
4      MS. VAN HOOSE: Well, maybe be
5  part of the areas of inquiry, but those were
6  written before the stipulation was entered
7  into?
8      MR. GOMEZ: Correct, and there
9  was an order after that, saying any
10  objections, bring them up.  This is all under
11  confidentiality agreement anyway.  So I think
12  we should proceed instead of stopping.
13      The area of inquiry No. 3
14  specifically says --
15      MS. VAN HOOSE: I understand
16  that.  We also objected.  We're also
17  maintaining our objections and we also have a
18  stipulation.
19      MR. GOMEZ: After all that I
20  think she can answer under area of inquiry
21  No. 3.
22      MR. KERNEY: Would you read the
23  question back for the witness, please?
24      (The reporter read back as

Cheryl A. Dillon                                    Page 26

1  instructed.)
2      MS. VAN HOOSE: I'll maintain my
3  objection.
4      THE WITNESS: I'm aware of the
5  Noble dialing system and Interactive.
6      BY MR. KERNEY:
7  Q.  Could you spell the second system for
8  me?
9  A.  I-n-t-e-r-a-c-t-i-v-e.
10  Q.  So Interactive?
11  A.  Yes.
12  Q.  I wasn't sure if there was something
13  special in the spelling.
14      How many outbound auto-dialed
15  calls are made a day by NSI?
16      MS. VAN HOOSE: Object to form.
17      THE WITNESS: I don't know the
18  total.
19      BY MR. KERNEY:
20  Q.  Can you estimate?
21      MS. VAN HOOSE: Object to form.
22      THE WITNESS: I don't know.
23      BY MR. KERNEY:
24  Q.  Who would know that information?

Cheryl A. Dillon                                    Page 27

1  A.  I imagine the dialer, dialer team.
2  Q.  Do you know what hours daily the
3  dialing team makes calls?
4      MS. VAN HOOSE: Object to form.
5      THE WITNESS: Between 8:00 a.m.
6  and 9:00 p.m. in the customer's time zone.
7      BY MR. KERNEY:
8  Q.  How many different shifts are on?
9      MS. VAN HOOSE: Object to form.
10      THE WITNESS: I don't know.
11      BY MR. KERNEY:
12  Q.  Does anyone from NSI report to Navient
13  Corp.?
14  A.  No.
15  Q.  Does anyone from Navient Corp. report
16  to NSI?
17  A.  Not that I'm aware of.
18  Q.  Does anyone from Student Assistance
19  Corp. report to NSI?
20  A.  Explain your question.
21  Q.  Is there anybody that you know of that
22  has responsibility to report back to NSI
23  regarding the work that Student Assistance
24  Corp. does for NSI?

Cheryl A. Dillon                                    Page 28

1  A.  I don't know.
2  Q.  Do you know what Sallie Mae, Inc., is?
3  A.  Yes.
4  Q.  What is Sallie Mae, Inc.?
5  A.  It is a student loan company.
6  Q.  And what is their purpose?
7  A.  I no longer work for them to know
8  exactly what they do and the scope of what
9  they do now.
10  Q.  That was my next question I had for
11  you.  My understanding is that at some point
12  Sallie Mae split into two separate companies:
13  Sallie Mae, Inc., and Navient Corp.  Is that
14  correct?
15      MS. VAN HOOSE: Object to form.
16      THE WITNESS: With Inc. and
17  Corp. I may not be specific for you, but there
18  was a split.  Sallie Mae exists; Navient
19  exists.
20      BY MR. KERNEY:
21  Q.  And Navient Solutions, Inc., where you
22  work today, my understanding is that that
23  became Navient Solutions, Inc., approximately
24  a year and a half ago?

Cheryl A. Dillon                                              Page 29

1       MS. VAN HOOSE: Object to form.
2    Is there a question?
3       BY MR. KERNEY:
4    Q.  Is that correct?
5    A.  Just over a year ago.
6    Q.  And prior to that what was the name of
7    the company you worked for?
8    A.  Sallie Mae.
9    Q.  So you were an employee of Sallie Mae
10   working in several different capacities, and
11   then about a year ago the company changed to
12   Navient Corp.
13      Is that a correct synopsis
14   there?
15      MS. VAN HOOSE: Object to form.
16      THE WITNESS: There is Navient
17   Corp., NSI, both.
18      BY MR. KERNEY:
19   Q.  Do you know what the reason was that
20   Sallie Mae was rebranded or the name was
21   changed to Navient Solutions, Inc.?
22      MS. VAN HOOSE: Object to form.
23      THE WITNESS: No.
24

Cheryl A. Dillon                                              Page 30

1       BY MR. KERNEY:
2    Q.  How would you explain the nature or
3    the purpose of the relationship between
4    Student Assistance Corp. and Navient
5    Solutions, Inc.?
6    A.  They're sister companies.
7    Q.  And does Student Assistance Corp. work
8    for NSI?
9    A.  They're two different companies.
10   Q.  I understand, but does SAC perform a
11   service for NSI?
12   A.  No.
13   Q.  So my understanding was that NSI
14   worked with Student Assistance Corp. and
15   provided them delinquent accounts that SAC
16   then called on.
17      Is that not correct?
18      MS. VAN HOOSE: Object to form.
19      THE WITNESS: My understanding
20   is Student Assistance Corporation works on
21   behalf of guarantors, not on behalf of
22   servicers.
23      BY MR. KERNEY:
24   Q.  Okay.  Do you know if NSI as a

Cheryl A. Dillon                                              Page 31

1    servicer has any contractual relationship with
2    SAC?
3    A.  I don't know.
4    Q.  So do you know what duties are owed by
5    Student Assistance Corp. to NSI?
6       MS. VAN HOOSE: Object to form.
7    And just so we're clear, she's here to testify
8    as NSI's corporate representative.  She can
9    answer to the best of her knowledge, but...
10      MR. KERNEY: Understood.
11      THE WITNESS: Can you rephrase
12   or restate your question?
13      MR. KERNEY: Would you read the
14   question back?
15      (The reporter read back as
16   instructed.)
17      MS. VAN HOOSE: Maintain my
18   objection.
19      THE WITNESS: My understanding
20   is that Student Assistance Corp.'s duties are
21   to the guarantor.
22      BY MR. KERNEY:
23   Q.  Do you know, is there any shared
24   budget between NSI and Student Assistance

Cheryl A. Dillon                                              Page 32

1    Corp.?
2    A.  I don't know about the budget.
3    Q.  Do you know if Student Assistance
4    Corp. employees are trained at the same time
5    and same location as Navient Solutions, Inc.,
6    employees?
7    A.  I have not seen them do that in the
8    same classroom.  Same location, yes.
9    Q.  Do the same educators train the
10   employees of SAC and NSI?
11   A.  Typically they have a designated
12   trainer for each line or area of business.
13   Q.  So SAC has its own trainers and NSI
14   has its own trainers and they wouldn't get
15   involved with each other's employees?
16      MS. VAN HOOSE: Object to form.
17      THE WITNESS: I haven't been in
18   that area for a while, but they have their own
19   responsibilities.
20      BY MR. KERNEY:
21   Q.  Do you know if NSI pays any fee to
22   Student Assistance Corporation?
23   A.  I don't know.
24   Q.  Do you know if Student Assistance

Cheryl A. Dillon    Page 33

1    Corp. and NSI share any databases of
2    information?
3    **A.   They both have the ability to get some**
4    **information from the Class system.**
5    Q.   Class, C-l-a-s-s?
6    **A.   Yes.**
7    Q.   What is the Class system?
8    **A.   It's a system of record.**
9    Q.   And who manages or operates the Class
10   system?
11   **A.   I believe it's NSI.**
12   Q.   And who would have the ability to
13   input or add information into the system?
14   **A.   NSI employees.**
15   Q.   Any NSI employee?
16   **A.   With access to the system.**
17   Q.   What kind of information is contained
18   on that system?
19   **A.   Demographics on our customers.**
20   Q.   So hypothetical situation.
21   Willie McCaskill is the plaintiff in this
22   case.  She's not the called party, but I'm
23   just going to use her name.  If NSI is
24   servicing a loan for Willie McCaskill and then

Cheryl A. Dillon    Page 34

1    the loan goes into default and then Student
2    Assistance Corp. is doing what they do, would
3    call notes from both Student Assistance Corp.
4    and NSI be stored on that same system, the
5    Class system?
6       **MS. VAN HOOSE:** Object to form.
7       **THE WITNESS:** Can you rephrase
8    that?
9       **BY MR. KERNEY:**
10   Q.   Well, I'm trying to understand how the
11   information is shared between the different
12   entities on that database.
13   **A.   Correct.  But what's your question?**
14   Q.   That's the question.  How is that
15   information shared on that database, No. 1?
16      **MS. VAN HOOSE:** Object to form.
17      **THE WITNESS:** Can you be more
18   specific?
19      **BY MR. KERNEY:**
20   Q.   Well, how does -- what information
21   would NSI share with SAC on that database?
22      **MS. VAN HOOSE:** Object to form.
23      **THE WITNESS:** SAC can see the
24   demographics about the customers.

Cheryl A. Dillon    Page 35

1    **BY MR. KERNEY:**
2    Q.   What do those demographics include?
3    **A.   Phone numbers, loan balances.**
4    Q.   What else?
5    **A.   Who's on the account.**
6    Q.   Would it contain the best address for
7    the client?
8    **A.   Yes.**
9    Q.   Can you think of any other information
10   that would be contained on that database?
11   **A.   Account notes.**
12   Q.   So the account notes are stored there.
13      **MS. VAN HOOSE:** Object to form.
14      **BY MR. KERNEY:**
15   Q.   Who can add an account note to the
16   Class system?
17   **A.   A Navient employee with access.**
18   Q.   Would that include the agents that are
19   making calls?
20   **A.   Yes.**
21   Q.   So if someone works in the call center
22   and they call on an account and the person
23   they call says, "I don't want to be called
24   anymore," that person should be able, in

Cheryl A. Dillon    Page 36

1    theory, to enter that information on the Class
2    system:  "Do not call this person anymore"?
3       **MS. VAN HOOSE:** Object to form.
4    Is that the question?
5       **MR. KERNEY:** Yes.
6       **BY MR. KERNEY:**
7    Q.   Would they be able to enter the
8    information into the database?
9       **MS. VAN HOOSE:** Object to form.
10      **THE WITNESS:** They have
11   procedures to update the Class system.
12      **BY MR. KERNEY:**
13   Q.   And what are those procedures?
14   **A.   For what scenario?**
15   Q.   Well, for -- if someone says that they
16   do not want to be called anymore.  Let's start
17   there.
18   **A.   They would change the consent.**
19   Q.   And then that information later would
20   be accessible by an employee of SAC who
21   accessed the Class system; is that correct?
22      **MS. VAN HOOSE:** Object to form.
23      **THE WITNESS:** It depends on what
24   knowledge they have of the system to locate

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                    Page 37

1  that information.
2      BY MR. KERNEY:
3  Q.   And what do you mean by that?
4  A.   They have limited knowledge of the
5  Class system.
6  Q.   SAC has limited knowledge of the Class
7  system; is that what you're saying?
8      MS. VAN HOOSE: Object to form.
9      THE WITNESS: Yes.
10     BY MR. KERNEY:
11 Q.   Why would that be?
12 A.   They're not employed by NSI.
13 Q.   So they're not trained properly to
14 view that information?
15     MS. VAN HOOSE: Object to form.
16     THE WITNESS: They are trained
17 to view the information they need.
18     BY MR. KERNEY:
19 Q.   Okay.  So they have access to whatever
20 information that they need from that database,
21 they can log on and see it; is that correct?
22     MS. VAN HOOSE: Object to form.
23     THE WITNESS: They're probably
24 educated on what their management knows that

Cheryl A. Dillon                                    Page 38

1  they need.
2      BY MR. KERNEY:
3  Q.   Is there any other commonly shared or
4  accessible database between SAC and NSI other
5  than the Class system?
6      MS. VAN HOOSE: Object to form.
7      THE WITNESS: Not that I'm aware
8  of.
9      BY MR. KERNEY:
10 Q.   At what point would NSI refer or send
11 an account to SAC for counseling?
12     MS. VAN HOOSE: Object to form.
13     THE WITNESS: I have not had any
14 experience sending any accounts to Student
15 Assistance Corp.
16     BY MR. KERNEY:
17 Q.   You understand that Student Assistance
18 Corp. provides counseling for NSI accounts
19 that are delinquent or behind on payments?
20     MS. VAN HOOSE: Object to form.
21 You've got to ask a question.  You're giving
22 her statements.
23     BY MR. KERNEY:
24 Q.   Are you familiar with SAC's purpose?

Cheryl A. Dillon                                    Page 39

1  A.   Yes.
2  Q.   That purpose is to provide counseling;
3  is that correct?
4  A.   Yes.
5  Q.   Does NSI refer accounts to SAC for
6  counseling?
7      MS. VAN HOOSE: Object to form.
8      THE WITNESS: I'm not aware of
9  them doing so.  I'm aware of them acting on
10 behalf of guarantors, not servicers.
11     BY MR. KERNEY:
12 Q.   So who refers accounts to SAC, then?
13 A.   I don't know.
14 Q.   Does NSI become aware at any point if
15 SAC is calling on an account to provide
16 services?
17 A.   They may.
18     MS. VAN HOOSE: Object to form.
19 Make sure you give me a moment.
20     THE WITNESS: I'm sorry.
21     BY MR. KERNEY:
22 Q.   I'm sorry, can you repeat that answer?
23 A.   They may.
24 Q.   And why do you say, "They may"?

Cheryl A. Dillon                                    Page 40

1  A.   SAC has limitations such as we spoke
2  of earlier.  They may refer someone to their
3  servicer, who may be Navient or NSI, or other
4  servicers.
5  Q.   So if I'm an employee of NSI in the
6  call center and I'm assigned to call on an
7  account, do I have access to see that SAC is
8  also calling on that account?
9      MS. VAN HOOSE: Object to form.
10     THE WITNESS: Not that I'm aware
11 of.
12     BY MR. KERNEY:
13 Q.   So both SAC and NSI could be calling
14 on the account at the same time, in theory?
15     MS. VAN HOOSE: Object to form.
16     THE WITNESS: It's possible.
17     BY MR. KERNEY:
18 Q.   Do you know if NSI shares information
19 with SAC regarding prior express consent of a
20 party to be called using an auto dialer?
21 A.   Yes.
22 Q.   Does NSI provide SAC with information
23 if a party revokes their consent to be called
24 using an auto dialer?

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                                   Page 41

 1  **A. That's my understanding.**
 2  Q. How does NSI provide that information
 3  to SAC?
 4  **A. They update the system of record.**
 5  Q. Would that be the Class system?
 6  **A. Yes.**
 7  Q. Does Student Assistance Corp. inform
 8  NSI if a party revokes their consent to be
 9  called using an auto dialer?
10  **A. I don't know.**
11  Q. Who would know that information?
12  **A. Our IT team.**
13     **MS. VAN HOOSE:** Can we just take
14  a short break before you go on to the next
15  question?
16     **MR. KERNEY:** Sure.
17     **THE VIDEOGRAPHER:** 10:43 off the
18  record.
19     (A recess was taken.)
20     **THE VIDEOGRAPHER:** 10:54 back on
21  the record.
22     **BY MR. KERNEY:**
23  Q. So I want to just go back briefly.
24  You said earlier that you were deposed

---

Cheryl A. Dillon                                                   Page 42

 1  approximately two weeks ago; is that correct?
 2  **A. Yes.**
 3  Q. Do you recall the name of that case?
 4  **A. I do not.**
 5  Q. Did the facts involve the TCPA?
 6  **A. Yes.**
 7  Q. When were the other two depositions?
 8  **A. I believe they were both this year.**
 9  Q. Okay. And did either of those involve
10  the TCPA?
11  **A. Yes.**
12  Q. Do you recall the name of either one
13  of those other cases?
14  **A. Yes.**
15  Q. What's the name of the case you
16  recall?
17  **A. Dyken.**
18  Q. D-y-k-e-n. Versus NSI?
19  **A. Yes.**
20  Q. You also testified earlier about your
21  involvement in new-hire training. How often
22  is there follow-up training regarding the
23  TCPA?
24     **MS. VAN HOOSE:** Object to form.

---

Cheryl A. Dillon                                                   Page 43

 1     **THE WITNESS:** That could vary.
 2     **BY MR. KERNEY:**
 3  Q. Based on what?
 4  **A. If their manager sees that they have**
 5  **any issues or struggles, they would coach them**
 6  **immediately.**
 7  Q. Is there mandatory follow-up training
 8  at any point?
 9  **A. We have required regulatory training**
10  **each year.**
11  Q. When is that training?
12  **A. There's a schedule and number of**
13  **individual courses online. I don't know the**
14  **schedule.**
15  Q. Okay. And are there any materials
16  given to employees during their TCPA
17  compliance training?
18  **A. They have online resources.**
19  **Everything is online.**
20  Q. When you say "online," is it through
21  NSI's website or is it through third-party
22  websites?
23  **A. NSI maintains their -- an internal**
24  **site for their -- of resources for employees.**

---

Cheryl A. Dillon                                                   Page 44

 1  Q. Who is in charge of the training of
 2  new employees now?
 3  **A. Ultimately Jenny Johnson, who I spoke**
 4  **of earlier.**
 5  Q. Okay. And do you receive updated
 6  training, compliance training, regarding the
 7  TCPA?
 8  **A. Yes.**
 9  Q. Is that annually as well?
10  **A. Yes.**
11  Q. Did you ever, during your time in
12  training employees, train any Student
13  Assistance Corp. employees?
14  **A. Yes.**
15  Q. What did you train them with regards
16  to?
17  **A. It was new-hire training, and as a**
18  **manager, I would fill in when needed. I don't**
19  **recall the topics that I personally may have**
20  **covered.**
21  Q. Okay. And with regard to the Class
22  system, does SAC or anybody at SAC have the
23  ability to make changes or input data into
24  that system?

---

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                    Page 45

1     MS. VAN HOOSE: Object to form.
2     THE WITNESS: I don't know. I
3  don't recall training them to make any such
4  changes.
5     BY MR. KERNEY:
6  Q.  Would it be fair to say that NSI
7  obtains consent for a party to be called using
8  an auto dialer and that consent is essentially
9  shared between NSI and SAC?
10    MS. VAN HOOSE: Object to form.
11    THE WITNESS: Can you rephrase
12  your question?
13    BY MR. KERNEY:
14  Q.  The consent that NSI obtains to call a
15  party using an auto dialer shared with SAC,
16  does that give SAC the authority to call using
17  an auto dialer as well?
18    MS. VAN HOOSE: Objection. Are
19  you asking for a legal conclusion or her
20  understanding --
21    MR. KERNEY: Just her
22  understanding based on her knowledge as the
23  trainer.
24    THE WITNESS: My understanding

---

Cheryl A. Dillon                                    Page 46

1  is that consent information is shared.
2     BY MR. KERNEY:
3  Q.  Very good. So if SAC were to call
4  somebody and they were to have revoked their
5  consent by saying, "I don't ever want to be
6  called again," would SAC be able to give that
7  information to NSI regarding that particular
8  account?
9     MS. VAN HOOSE: Object to form.
10    THE WITNESS: I am not -- I
11  don't know how that works on SAC's side
12  systemically.
13    BY MR. KERNEY:
14  Q.  Is there any notice given to NSI when
15  an account is assigned to Student Assistance
16  Corp.?
17    MS. VAN HOOSE: Object to form.
18    THE WITNESS: I can say I have
19  never been notified of accounts.
20    BY MR. KERNEY:
21  Q.  Okay. So my understanding in this --
22  the way your world works, so to speak, is that
23  there's a guarantor, NSI who services the
24  loan, and SAC who can provide counseling

---

Cheryl A. Dillon                                    Page 47

1  services if the loan goes into default or
2  becomes delinquent. Is that correct?
3     MS. VAN HOOSE: Object to form.
4     THE WITNESS: Can you re -- can
5  you repeat that?
6     BY MR. KERNEY:
7  Q.  Sure. There's a guarantor of every
8  loan, correct?
9  A.  I believe so.
10  Q.  In this case do you know who it is?
11    MS. VAN HOOSE: Object to form.
12    THE WITNESS: There could be
13  more than one guarantor.
14    BY MR. KERNEY:
15  Q.  I'll tell you that in this instance
16  it's USA Funds.
17    How does USA Funds share
18  information with NSI?
19  A.  They provide accounts or Department of
20  Education provides in this case -- in at least
21  part of this case accounts to NSI.
22  Q.  And does NSI report to the guarantor
23  regarding the calls that are made on the
24  account?

---

Cheryl A. Dillon                                    Page 48

1  A.  I'm not familiar with reporting shared
2  with the guarantor.
3  Q.  Do you have any idea how information
4  is shared between the guarantor and NSI? Is
5  there a commonly shared database or anything
6  of that nature?
7  A.  NSI works on behalf of the owners of
8  the loan. So not necessarily the guarantor of
9  the loan.
10  Q.  Is there information shared with the
11  owner of the loans and NSI?
12  A.  We have responsibilities to them that
13  my understanding is we would explain if we're
14  meeting our obligation or responsibilities to
15  the owner of the loan.
16  Q.  What are those responsibilities and
17  obligations?
18  A.  We have requirements to communicate
19  with each borrower or one applicable
20  co-borrower, which is rare for the Department
21  of Ed.
22  Q.  And how would you inform the loan
23  owner that you were communicating with the
24  borrower?

---

Cheryl A. Dillon                                            Page 49

1      MS. VAN HOOSE: Object to form.
2      THE WITNESS: That's not within
3   my responsibilities, so I don't know exactly
4   how that's conveyed.
5      BY MR. KERNEY:
6   Q.  Does NSI have a policy of keeping call
7   notes when a call is made on an account?
8      MS. VAN HOOSE: Object to form.
9      THE WITNESS: We have notes
10  regarding our calls.
11     BY MR. KERNEY:
12  Q.  And where are those notes stored?
13  A.  Class.
14  Q.  Would --
15  A.  In this case Class.
16  Q.  Would an employee of SAC have the
17  ability to view those call notes made by NSI?
18  A.  They can see the notes in class.
19  Q.  To your knowledge, can SAC add call
20  notes after they make a call?
21     MS. VAN HOOSE: Object to form.
22     THE WITNESS: They have their
23  own system.
24

Cheryl A. Dillon                                            Page 50

1      BY MR. KERNEY:
2   Q.  What is their system called?
3   A.  BPS.
4   Q.  Do you know what that stands for?
5   A.  Borrower Pursuit System.
6   Q.  So if NSI is calling on an account and
7   they're going to upload their notes to Class,
8   and SAC is calling on the same account and
9   they're going to upload their notes to BPS,
10  there's no common system where all those notes
11  are available?
12     MS. VAN HOOSE: Object to form.
13     THE WITNESS: Not that I'm aware
14  of.
15     BY MR. KERNEY:
16  Q.  Does the guarantor or loan owner have
17  the ability to view any of the call notes made
18  by NSI?
19     MS. VAN HOOSE: Object to form.
20     THE WITNESS: Not that I'm aware
21  of.
22     BY MR. KERNEY:
23  Q.  So the -- my understanding is the
24  guarantor is required to send an account for

Cheryl A. Dillon                                            Page 51

1   counseling when it becomes 60 days delinquent.
2   Is that correct?
3      MS. VAN HOOSE: Object to form.
4      You can answer.
5      THE WITNESS: I don't know the
6   time threshold.
7      BY MR. KERNEY:
8   Q.  But you're aware that at some point
9   the accounts that are delinquent are sent for
10  counseling?
11  A.  Yes.
12  Q.  How does NSI inform the guarantor that
13  the account is delinquent?
14     MS. VAN HOOSE: Object to form.
15     THE WITNESS: I don't know the
16  process.
17     BY MR. KERNEY:
18  Q.  I'd like to turn your attention to a
19  document that I'm going to ask the court
20  reporter to mark for us as Exhibit 1, which is
21  going to have the Bates stamp NSI190 all the
22  way through NSI252.
23     (Dillon Deposition Exhibit No. 1
24  was marked for identification.)

Cheryl A. Dillon                                            Page 52

1      BY MR. KERNEY:
2   Q.  Take a moment to look through that and
3   let me know when you're ready.  I promise it's
4   not going to be a pop quiz on the policies and
5   procedures.
6   A.  (Complied.)
7      Okay.
8   Q.  So I'm going to start by asking you
9   some just kind of background questions so I
10  understand the policies and then we might
11  refer to specific things in here.  And if you
12  want to look through this before you give me
13  an answer, that's fine.  Okay?  Again, I'm not
14  trying to quiz you or catch you off guard or
15  anything.  I'm just trying to understand the
16  background here.
17     Are you familiar with what NSI's
18  policy is regarding how a party may revoke
19  their prior express consent to be called using
20  an auto dialer?
21  A.  Yes.
22  Q.  What is that policy?
23  A.  There is a policy called "Cease and
24  Desist Request Procedure."  That's a

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                        Page 53

1   **procedure, not a policy.**
2   Q.   What page are you looking at?
3   **A.   210.**
4   Q.   Okay.  So will you share that policy
5   with me?
6   **A.   Yes.  Basically that, if they tell us**
7   **they do not wish to be called, we would update**
8   **the consent for auto dial.**
9   Q.   I looked through this document and
10  there's a section that covers definitions.
11  But the one definition I did not find in here
12  was "consent," the word "consent."
13      How would you define that word?
14      **MS. VAN HOOSE:** Are you asking
15  her personally?
16      **MR. KERNEY:** Yes.
17      **THE WITNESS:** Permission.
18      **BY MR. KERNEY:**
19  Q.   So if somebody says, "I don't ever
20  want to be called again," would they be
21  revoking their consent to be called?
22      **MS. VAN HOOSE:** Object to form.
23      **THE WITNESS:** If a customer told
24  me that they didn't want to be called again, I

Cheryl A. Dillon                                        Page 54

1   would want to be specific with what phone
2   number they were referencing.
3       **BY MR. KERNEY:**
4   Q.   So let's walk through that scenario.
5   If you were training an agent in your former
6   capacity and they asked you, "Someone" -- "I
7   just called someone and they said, 'Please
8   never call me again,'" how would you advise
9   that agent to proceed?
10  **A.   I would advise them to try to obtain a**
11  **better number or a way to communicate with the**
12  **borrower.**
13  Q.   What if the borrower said, "These
14  calls are really annoying," would you consider
15  that to be a revocation of consent at that
16  point?
17      **MS. VAN HOOSE:** Object to form.
18      **THE WITNESS:** I would not.
19      **BY MR. KERNEY:**
20  Q.   Are there any magic words, so to
21  speak, that the borrower needs to say in order
22  for NSI to consider a revocation?
23      **MS. VAN HOOSE:** Object to form.
24      **THE WITNESS:** There are probably

Cheryl A. Dillon                                        Page 55

1   examples of clearer -- clearer expressions of
2   their permission or lack of permission than
3   others.
4       **BY MR. KERNEY:**
5   Q.   In the initial training of the
6   call-center employees, are there examples
7   given of what would be a revocation of
8   consent?
9   **A.   Myself and my team would probably do**
10  **that, yes.**
11  Q.   So what would an example be that you
12  have given in the past?
13  **A.   If they say, "Stop calling my cell**
14  **phone."**
15  Q.   Okay.  Were there ever any examples
16  given by you of things people say that are not
17  revocation of their consent?
18      **MS. VAN HOOSE:** Object to form.
19      **THE WITNESS:** I can't recall if
20  I told them what doesn't count or what is not.
21      **BY MR. KERNEY:**
22  Q.   Whose decision is it whether or not it
23  counts, so to speak, whether or not what
24  someone says counts as a revocation?  Who

Cheryl A. Dillon                                        Page 56

1   makes that call?
2   **A.   The person talking to that borrower**
3   **has to have an understanding of what the**
4   **borrower is saying to them.**
5   Q.   So the agent in the call center?
6   **A.   Yes.**
7   Q.   How are the agents in the call center
8   compensated?
9       **MS. VAN HOOSE:** Objection.
10      **THE WITNESS:** They're hourly
11  employees I believe.
12      **BY MR. KERNEY:**
13  Q.   Are they commissioned at all?
14  **A.   I'm aware of some incentive plans.**
15  Q.   How do those incentive plans work?
16      **MS. VAN HOOSE:** Object to form.
17      **THE WITNESS:** I'm not a
18  hundred percent sure, but it's based on
19  helping customers resolve their delinquency
20  that's past due.
21      **BY MR. KERNEY:**
22  Q.   So would an example be if you collect
23  X amount of money, you will receive a bonus?
24      **MS. VAN HOOSE:** Object to form.

Cheryl A. Dillon                                    Page 57

1      THE WITNESS: In part I'm sure.
2      BY MR. KERNEY:
3  Q.  Okay.  Would you say that the
4  call-center employees are incentivized to
5  collect payments on the accounts?
6      MS. VAN HOOSE: Object to form.
7      THE WITNESS: We are an
8  organization that's trying to keep people on
9  point and receive the payments that they owe.
10     BY MR. KERNEY:
11 Q.  The policy that you just referred to,
12 which I believe was on 210, you called that
13 the cease-and-desist request policy, it says
14 at the top of that page that that policy went
15 into effect April 8, 2014.
16     Are you with me?
17 A.  I see that date.  It shows that that's
18 when it was approved.
19 Q.  Okay.  Was there a different policy
20 regarding cease-and-desist requests prior to
21 April 8, 2014?
22     MS. VAN HOOSE: Objection.
23     THE WITNESS: I don't know if
24 there was anything different prior to this

Cheryl A. Dillon                                    Page 58

1  date.
2      BY MR. KERNEY:
3  Q.  Whose policies are these?  The top of
4  the documents are all labeled "Navient."  Are
5  these Navient Corporation's policies or
6  Navient Solutions, Inc.'s, policy?
7  A.  NSI.
8  Q.  Do you know who receives copies of
9  these policies and procedures?
10 A.  I do not.
11 Q.  Did you personally receive copies of
12 these policies and procedures at any point?
13 A.  They are available on -- on our
14 internal system to our employees.
15 Q.  Are employees trained regarding these
16 policies and procedures?
17 A.  Yes.
18 Q.  When are they trained regarding these
19 policies and procedures?
20 A.  Before they get on the phones as
21 needed for coaching, correction, and each year
22 the regulatory requirements.
23 Q.  Do you know, are these same policies
24 provided to employees of SAC?

Cheryl A. Dillon                                    Page 59

1      MS. VAN HOOSE: Object the form.
2      THE WITNESS: 214 says affected
3  departments includes SAC.
4      BY MR. KERNEY:
5  Q.  Is this logo at the top of the page
6  that says "Navient" NSI's logo or is it
7  Navient Corp.'s logo?
8  A.  It's the branding.  So everything I do
9  within NSI has that branding.
10 Q.  Do SAC materials have that branding as
11 well?
12 A.  I don't know.
13 Q.  Okay.  Are you familiar with the term
14 "skip tracing"?
15 A.  Yes.
16 Q.  What does "skip tracing" mean?
17 A.  I'll just refer to our document so you
18 can see.  It's on 215.
19 Q.  Yes, I'm here.  Can you summarize this
20 for me?  Explain to me what the policy is
21 regarding skip tracing.
22 A.  Yes.  Basically we're outreaching to
23 obtain location information regarding a
24 consumer that we want to contact.

Cheryl A. Dillon                                    Page 60

1  Q.  And when you say, "location
2  information," does that include telephone
3  numbers as well?
4  A.  It could.
5  Q.  Who does the skip tracing?  Is it the
6  call-center employees or are there separate
7  individuals who do skip tracing?
8  A.  I'm aware of call-center employees
9  that do look for location -- or try to
10 ascertain location information.
11 Q.  Are certain borrower accounts assigned
12 to certain agents within the call centers?
13     MS. VAN HOOSE: Object to form.
14     THE WITNESS: In certain
15 instances, yes.
16     BY MR. KERNEY:
17 Q.  What would those instances be?
18 A.  Based upon the level of delinquency
19 and the particular skill set of our agents.
20 Q.  Would an agent who had a specific
21 borrower account assigned to him or her also
22 potentially skip trace to find contact
23 information for that borrower?
24 A.  Yes, they may.

Cheryl A. Dillon | Page 61

1  Q.  If a number is obtained via skip
2  tracing, does NSI have permission to begin
3  calling that number using an auto dialer?
4     **MS. VAN HOOSE:** Object to form.
5     **THE WITNESS:** Can you rephrase
6  the question?
7     **BY MR. KERNEY:**
8  Q.  If NSI obtains a number via skip
9  tracing, is that number automatically entered
10 for auto dialing?
11 **A.  That depends.**
12 Q.  What does that depend on?
13 **A.  If it's a land line, we can add the**
14 **number and we can call it.**
15 Q.  What if it's not a land line?
16 **A.  Then we can add the number, but we do**
17 **not have consent to auto dial it.**
18 Q.  How do you confirm that a number is a
19 land line versus a cell phone?
20 **A.  That's done systemically.**
21 Q.  How is that?
22 **A.  I'm not quite sure what the process**
23 **is.**
24 Q.  Okay.  What process is undertaken to

Cheryl A. Dillon | Page 62

1  verify a number that's been skip traced?
2     **MS. VAN HOOSE:** Object to form.
3     **THE WITNESS:** We call it; ask
4  for the person who we think it belongs to.
5     **BY MR. KERNEY:**
6  Q.  Now, at what point might a skip-traced
7  cell phone number be added into the system for
8  auto dialing?
9  **A.  Upon permission.**
10 Q.  How would that permission be obtained?
11 **A.  Either by speaking to the person who**
12 **has the cell phone or online getting**
13 **permission through our website, or a letter,**
14 **any type of written communication.**
15 Q.  Do skip-traced numbers auto populate
16 on a borrower's Manage Your Loans page?
17 **A.  I have seen phone numbers on MYL.  I'm**
18 **not sure if they are entered or appear.**
19 **Ultimately the borrower says yes or no the**
20 **permission when they are on MYL.**
21 Q.  Absolutely.  But is there an instance
22 where a skip-traced number could be input for
23 the borrower to subsequently confirm?
24 **A.  I don't know.**

Cheryl A. Dillon | Page 63

1  Q.  Who would know that?
2  **A.  IT department.**
3  Q.  What services or websites does NSI use
4  to skip trace information?
5  **A.  Accurate is one I'm aware of.**
6  Q.  Is that the name of a service or the
7  name of a website?
8  **A.  A website.**
9  Q.  Do you know the URL for that website?
10 **A.  No.**
11 Q.  What is the Asset Performance Group?
12 **A.  My understanding is that is a group of**
13 **multiple lines of business that support**
14 **collection efforts.**
15 Q.  And when you say, "multiple lines of
16 business," do you mean multiple business
17 entities?
18 **A.  Yes.**
19 Q.  What are those entities?
20 **A.  Refer to 214 as an example.  So in**
21 **regard to the cease-and-desist procedure that**
22 **we were referencing, the affected departments,**
23 **some of those make up the Asset Performance**
24 **Group.**

Cheryl A. Dillon | Page 64

1  Q.  Are you familiar with NSI's policy
2  regarding leaving voice mail messages?
3  **A.  Yes.**
4  Q.  What is that policy?
5  **A.  It depends on the type of phone number**
6  **that we're calling what we can say or should**
7  **refrain from saying.**
8  Q.  What does that mean, type of phone
9  number?
10 **A.  On 222 -- this is an example.  So on**
11 **223 this does not include -- this is only**
12 **third party, but an example would be a known**
13 **phone number of the consumer versus a**
14 **non-consumer, someone that's not the direct**
15 **borrower.**
16 Q.  Okay.  So this policy here on 222
17 strictly refers to a non-known phone number,
18 meaning would that be a number that had been
19 skip traced?
20    **MS. VAN HOOSE:** Object to form.
21    **THE WITNESS:** This is not for
22 non-known phone numbers.
23    **BY MR. KERNEY:**
24 Q.  Okay.  So I'm reading this provision

Cheryl A. Dillon                                                    Page 65

1   here.  I understand.  This only applies to
2   recorded messages left for a consumer, not the
3   message to authorize third parties.  In these
4   instances, the APG employees must provide
5   descriptive procedure below.  That's what I'm
6   referring to, I'm sorry.  I see there's a
7   second part there for the consumer.
8       So to an authorized third party,
9   is it accurate to say that this little blurb
10  here, this script is what is always left on
11  the voice mail?
12      MS. VAN HOOSE: Object to form.
13      THE WITNESS: What script?
14      BY MR. KERNEY:
15  Q.  I'm looking at the paragraph below.
16  "This message is meant only for [CONSUMER
17  FIRST AND LAST NAME] and is about a personal
18  business matter.  If you are not [Consumer
19  First and Last Name], do not listen to the
20  rest of this message.  By continuing to listen
21  to this message, you acknowledge that you are
22  [CONSUMER FIRST AND LAST NAME].
23      "[CONSUMER FIRST AND LAST NAME],
24  this message is from [COLLECTOR NAME] with

Cheryl A. Dillon                                                    Page 66

1   [COMPANY NAME] and is about a past due debt
2   from [ORIGINATING CREDITOR/CLIENT] in the
3   amount of [TOTAL AMOUNT DUE].  Please call me
4   back at," phone number.  "Federal law requires
5   that we advise you that this communication is
6   from a debt collector and is an attempt to
7   collect a debt.  Any information that you
8   provide to us will be used for such purpose.
9   Again, this message is only for [CONSUMER
10  FIRST AND LAST NAME]," telephone number,
11  "Thank you."
12  A.  So this procedure I said was an
13  example.  The affected departments do not
14  include those involved in this particular
15  account.  So this would not be a script used
16  under the circumstances of this case.
17  Q.  Understood.  Are voice mail messages
18  ever left on numbers that have not been
19  confirmed?
20      MS. VAN HOOSE: Object to form.
21      THE WITNESS: Say that again.
22      BY MR. KERNEY:
23  Q.  Are voice mail messages left on
24  numbers that have not been confirmed?  For

Cheryl A. Dillon                                                    Page 67

1   example, if a number were skip traced but it
2   hadn't been confirmed by the borrower yet.
3       MS. VAN HOOSE: Object to form.
4       THE WITNESS: I don't know what
5   the practice is, current practice is.
6       BY MR. KERNEY:
7   Q.  If an agent were to call a number
8   manually and the voice recording on the other
9   line named a person who was not the borrower,
10  what would the agent be responsible to do at
11  that point?
12      MS. VAN HOOSE: Object to form.
13      THE WITNESS: They don't have --
14  I don't know of a responsibility that they
15  would have.
16      BY MR. KERNEY:
17  Q.  So they wouldn't keep any note that
18  said, "I called for Marietta Newsome, but the
19  voice mail message says, 'You reached Willie
20  and Malaki,'" nothing like that?
21  A.  No.
22  Q.  Is there a limit to the number of
23  calls that are made to a skip-traced number?
24  A.  Clarify what you mean by "skip-traced

Cheryl A. Dillon                                                    Page 68

1   number."
2   Q.  A number that was obtained via skip
3   tracing that had not yet been confirmed.
4   A.  We have calling thresholds for any
5   phone numbers we have related to an account.
6   Q.  What are those thresholds?
7   A.  Up to eight calls per phone number in
8   a day.
9   Q.  In one day.  And how many days a week
10  is that limited to?
11  A.  I'm not aware of a stipulation for
12  days of the week.
13  Q.  Are calls made seven days a week?
14  A.  I don't know the full business hours
15  of our call centers.
16  Q.  Eight calls in seven days would be
17  56 calls a week.  That would be approximately
18  240 calls per month.  240.8.  Do you think
19  that 56 calls in one week is excessive?
20      MS. VAN HOOSE: Objection.
21      THE WITNESS: I think we're
22  compliant with that number of calls in a week.
23      BY MR. KERNEY:
24  Q.  Is there a number of calls that you

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                        Page 69

1   think would be excessive?
2      MS. VAN HOOSE: Objection.
3   She's here to testify as a corporate
4   representative, not based on her personal
5   opinions.
6      THE WITNESS: I would say it
7   being outside of our policy and procedure, it
8   would be excessive.
9      BY MR. KERNEY:
10  Q.   Anything more than eight times in one
11  day would be excessive to you?  Is that your
12  testimony?
13  A.   According to our policy, it is
14  excessive beyond eight calls per number per
15  day.
16  Q.   If a borrower was being called eight
17  times a day by NSI and was subsequently called
18  eight times that same day by SAC, for 16 total
19  calls, would that be excessive?
20     MS. VAN HOOSE: Object to form.
21  Again, she's not testifying about SAC's
22  policies, procedures, what they do, what they
23  don't do, any of that.  She's here to testify
24  about NSI.

---

Cheryl A. Dillon                                        Page 70

1      THE WITNESS: That number of
2   calls would mean we have not had contact with
3   them at all.  I don't find zero contact
4   excessive.
5      BY MR. KERNEY:
6   Q.   Is NSI a debt collector?
7   A.   It's part of what we do.
8   Q.   How does NSI earn money?
9   A.   How does what?
10  Q.   How does NSI make money?
11  A.   We service loans.
12  Q.   Who pays you for servicing those
13  loans?
14  A.   Well, customers can submit their
15  payments to us.  There are instances where the
16  loans default and we still have interest in
17  things that have come to be.  We have
18  collection costs that some of our sister
19  companies obtain.
20  Q.   So are you paid by the borrower or are
21  you paid by the loan owner or the guarantor?
22     MS. VAN HOOSE: Object to form.
23     THE WITNESS: I don't know the
24  financial -- you know, like how that all works

---

Cheryl A. Dillon                                        Page 71

1   out.
2      BY MR. KERNEY:
3   Q.   You have no knowledge as to how
4   revenue comes into NSI?
5      MS. VAN HOOSE: Object to form.
6      THE WITNESS: I know that we get
7   revenue because people pay us.
8      BY MR. KERNEY:
9   Q.   Which people pay you?
10     MS. VAN HOOSE: We're now
11  entering well beyond the scope of the notice.
12  There's nothing in there about how NSI is
13  paid.  I let you go a little ways about how
14  collectors are paid.  That's also outside the
15  scope.  I think we need to come back in.
16     MR. GOMEZ: On 27 when we're
17  trying to figure out the defendant's net
18  worth --
19     MS. VAN HOOSE: You asked the
20  net worth and she testified she didn't know.
21     BY MR. KERNEY:
22  Q.   I'm just trying to find out how --
23     MS. VAN HOOSE: We're outside
24  the scope, so let's back it in.

---

Cheryl A. Dillon                                        Page 72

1      BY MR. KERNEY:
2   Q.   Do you know who drafted these sets of
3   policies and procedures that you're looking
4   at?
5   A.   I can see the owner listed at the top
6   of each policy and procedure who would have
7   been responsible for the content.
8   Q.   I'm just looking at the page Bates
9   stamped NSI 190, and that's Robert Glinkle.
10  Who is Robert Glinkle?
11  A.   Robert Glinke is a compliance
12  employee.
13  Q.   Who does Mr. Glinke report to?
14  A.   I'm not sure of his direct manager.
15  Q.   And I see on the second paragraph of
16  that same page through the page Bates stamped
17  NSI 195 that this document is dealing with the
18  FDCPA, the Fair Debt Collection Practices Act.
19     Are you familiar with the FDCPA?
20     MS. VAN HOOSE: One question.
21  Did you say 190 through 195?
22     MR. KERNEY: I'm sorry.  190
23  through 194.  Thank you for your
24  clarification.

---

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon | Page 73

1  **THE WITNESS:** I'm familiar with
2  FDCPA.
3  **BY MR. KERNEY:**
4  Q.  Does NSI have to comply with FDCPA?
5  **MS. VAN HOOSE:** Object to form,
6  to the extent you're asking for a legal
7  conclusion.
8  **THE WITNESS:** The second
9  paragraph says, "Even though the Fair Debt
10  Collection Practices Act does not apply to
11  first party collectors, it is the intent of
12  this policy to provide guidance to first party
13  collectors on best practices using the FDCPA
14  as a basis for the material contained herein."
15  **BY MR. KERNEY:**
16  Q.  So would it be fair to say that, even
17  though NSI does not have to comply with the
18  FDCPA, NSI has elected to incorporate some
19  portions or provisions of the FDCPA into its
20  own policies and procedures?
21  **A.  I would say we act within the spirit**
22  **of that act.**
23  Q.  That's an excellent answer.  I like
24  the way you said that.

---

Cheryl A. Dillon | Page 74

1  Page Bates stamped NSI 191,
2  there's a section there, "Verbal
3  Communication."  Do you see that?
4  **A.  Yes.**
5  Q.  And it says, "Consumers must not be
6  contacted at a time or place that is known or
7  should be known to be inconvenient."
8  What does that mean?
9  **A.  That means that we would be cognizant**
10  **of if they tell us that -- examples I would**
11  **give I would say would be if they are in the**
12  **hospital, we would not be calling their**
13  **hospital room.  The next bullet is a good**
14  **example.  If their place of employment, they**
15  **shouldn't get calls of this nature, we would**
16  **not continue if they tell us that.**
17  Q.  Two bullet points down states:  "The
18  employee must not cause a telephone to ring or
19  engage any person in telephone conversation
20  repeatedly or continuously with intent to
21  annoy, abuse, or harass any person at the
22  called number."
23  What does that mean?
24  **A.  That means that we should not call**

---

Cheryl A. Dillon | Page 75

1  **without business intent.**
2  Q.  Okay.  With regards to these policies
3  and procedures, if an employee, call-center
4  employee, violates one of these policies and
5  procedures one time, what kind of disciplinary
6  action is taken against that employee?
7  **MS. VAN HOOSE:** Object to form.
8  **THE WITNESS:** The last -- on
9  193, under "Compliance Controls," the last
10  bullet says they are subject to discipline up
11  to and including termination for failing to
12  comply with these standards.
13  **BY MR. KERNEY:**
14  Q.  So who would make the decision whether
15  to discipline an employee for failure to
16  comply with these standards?
17  **A.  A lot of monitoring is done by the**
18  **management team or our compliance team.  I'm**
19  **sure there would be communication between both**
20  **if they hear something or see something that**
21  **they think is not compliant.**
22  Q.  Were you at any time in any of your
23  roles with Navient or formerly Sallie Mae in a
24  position where you would have disciplined an

---

Cheryl A. Dillon | Page 76

1  employee for failure to comply with these
2  standards?
3  **A.  I never personally had an employee**
4  **violate the policy that I was supervising.**
5  Q.  What kind of discipline might be taken
6  aside from termination?
7  **A.  I can tell you types of discipline.  I**
8  **can't tell you what action specifically is**
9  **what level of --**
10  Q.  That's fine.
11  **A.  Okay.  So they could have -- just a**
12  **warning, a verbal warning.  They could have a**
13  **written warning.  They could lose their**
14  **ability to achieve their incentive, lose their**
15  **ability to post for another position within a**
16  **certain time frame.**
17  Q.  To your knowledge, how often is a
18  verbal warning issued to an employee for
19  violation of these policies and procedures?
20  **A.  I don't have numbers on infractions**
21  **and discipline.**
22  Q.  Can you recall an instance where
23  someone within the company was issued a verbal
24  warning?

---

Cheryl A. Dillon                                          Page 77

1  A.  Yes.
2  Q.  How many instances can you recall of
3  that happening?
4  A.  I don't know pertaining to what
5  specific aspects of policies or procedures,
6  but I know that they're diligent.
7  Q.  Can you recall an employee being fired
8  or terminated for failure to comply with these
9  standards?
10  A.  With this particular policy?
11  Q.  With regards to any policy or
12  procedure.
13  A.  Yes.
14  Q.  How many times can you recall someone
15  being fired for that?
16  A.  Not being on the floor and usually the
17  last to hear of anything, I can think of a
18  few.  I don't have direct knowledge.
19  Q.  Would you say that happens frequently?
20      MS. VAN HOOSE: Object to form.
21      THE WITNESS: I don't know -- I
22  don't know if it does or not.
23      MS. VAN HOOSE: Do you have much
24  more?  Maybe another break?

Cheryl A. Dillon                                          Page 78

1      MR. KERNEY: Why don't we break
2  for lunch for 45 minutes, because it's 11:45,
3  and we will come back at 12:30.
4      THE VIDEOGRAPHER: 11:43 we're
5  off the record.
6      (Lunch recess taken at
7      11:43 a.m.)
8      (Deposition resumed at
9      12:34 p.m.)
10      THE VIDEOGRAPHER: The time is
11  12:34.  We're back on the record.
12      BY MR. KERNEY:
13  Q.  Thank you.  We talked a little bit
14  earlier about the BPS system that Student
15  Assistance Corp. uses.  Can Navient Solutions,
16  Inc., view the BPS system?
17  A.  No.
18  Q.  Does it matter to NSI whether or not
19  SAC is calling on the same account on the same
20  day as NSI?
21      MS. VAN HOOSE: Object to form.
22      THE WITNESS: We don't have that
23  information as we call our customers.
24

Cheryl A. Dillon                                          Page 79

1      BY MR. KERNEY:
2  Q.  Were you trained personally to use the
3  BPS system?
4  A.  I attended training, observed training
5  for call-center agents during BPS, part of the
6  training.
7  Q.  So would you be able to access the
8  system, log on and use it yourself personally?
9  A.  No.
10  Q.  If a borrower revokes their consent to
11  be called using an auto dialer to an agent of
12  SAC, can NSI still call that number using an
13  ATDS?
14  A.  Going back to what I said earlier, I'm
15  not sure how that's relayed or communicated
16  with NSI.  So I don't know --
17  Q.  Assuming it were communicated.
18      MS. VAN HOOSE: Object to form.
19      THE WITNESS: If we had
20  knowledge of revoked consent, we do not call.
21  We don't call on the auto dialer I should say.
22      BY MR. KERNEY:
23  Q.  I understand.  Now, you stated earlier
24  your policy is to make up to eight calls per

Cheryl A. Dillon                                          Page 80

1  day on a borrower's account.  Where does that
2  number eight per day come from?
3      MS. VAN HOOSE: Object to form.
4      THE WITNESS: I have reviewed
5  our policy, and it states it within the
6  policy.
7      BY MR. KERNEY:
8  Q.  My question is:  Do you know why the
9  number eight was selected?
10  A.  No.
11  Q.  Is it possible that there's an
12  instance where a third-party collector, one of
13  NSI's sister companies, is calling on the same
14  account as NSI on the same day?
15      MS. VAN HOOSE: Object to form.
16      THE WITNESS: Our other sister
17  companies, is that what you said?  What was
18  your question?
19      BY MR. KERNEY:
20  Q.  Correct.
21  A.  They collect on defaulted loans.
22  Q.  NSI would not call at the same time as
23  the third-party collectors that are sister
24  companies?

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                      Page 81

1  A.  I don't believe so.
2  Q.  You testified earlier that eight calls
3  a day would not be considered excessive,
4  correct?
5  A.  Per our policy, yes.
6  Q.  Would 16 calls per day be excessive?
7      MS. VAN HOOSE: Object to form.
8      THE WITNESS: NSI cannot call
9  beyond eight calls a day.
10     BY MR. KERNEY:
11 Q.  But if SAC was calling eight times a
12 day as well, totaling 16 calls, about the same
13 account, would that be excessive?
14 A.  That's a different company.
15 Q.  Regarding the Class system, how many
16 times have you personally viewed a borrower's
17 entry on Class?
18 A.  Often.
19 Q.  Hundreds of times?
20 A.  Probably.
21 Q.  Okay.  Have you ever seen a Class
22 entry made by an employee of SAC?
23 A.  No.
24 Q.  Did you review the Class system

---

Cheryl A. Dillon                                      Page 82

1  entries for this case, the account of
2  Marietta Newsome?
3  A.  Yes.
4  Q.  Were there notes entered on that
5  account?
6  A.  I saw notes on the account.
7  Q.  Do you know how many notes you saw?
8  A.  I'd have to look at them again.
9  Q.  Turning back to the policies and
10 procedures that we looked at earlier, which
11 was marked as Exhibit 1, are these the most
12 up-to-date policies that NSI is utilizing?
13 A.  I didn't check our policies to see the
14 latest date on them.  I have no reason to
15 believe that these are not policies that apply
16 to the time frame in question.
17 Q.  When was your last training personally
18 on these Navient Solutions, Inc.'s, policies
19 and procedures?
20 A.  I believe within the last six months.
21 Q.  When are you next scheduled for
22 testing regarding the policies and procedures?
23 A.  The 2016 schedule isn't out yet.
24 Q.  What kind of testing is done regarding

---

Cheryl A. Dillon                                      Page 83

1  these policies and procedures?
2  A.  Some of our online has questions to
3  follow.  I don't recall which ones do or
4  don't.  And some have an attestation where at
5  the end of the course saying we read and
6  understand.
7  Q.  Some are scored and some are not; is
8  that correct?
9      MS. VAN HOOSE: Object to form.
10     THE WITNESS: Yes.
11     BY MR. KERNEY:
12 Q.  Are the call-center employees given
13 scored tests or unscored tests?
14 A.  We have the same --
15     MS. VAN HOOSE: Object to form.
16     THE WITNESS: I'm sorry.  We do
17 the same, same exact regulatory courses.
18     BY MR. KERNEY:
19 Q.  Okay.  Are there scored tests given
20 each year?
21 A.  We have consistent training online
22 each year.  Some have questions at the end;
23 some don't.  There could be additional courses
24 depending on a person's role and how a reg

---

Cheryl A. Dillon                                      Page 84

1  impacts their role.
2  Q.  The training you did personally six
3  months ago or within the last six months, was
4  it scored training?
5      MS. VAN HOOSE: Object to form.
6      THE WITNESS: I don't recall --
7  I don't recall which ones had -- like which
8  ones had questions at the end and which ones
9  did not.  But I completed both types.
10     BY MR. KERNEY:
11 Q.  Within the last six months?
12 A.  All of the required courses that I
13 had, for this year, most recent ones in the
14 last six months.
15 Q.  On a scored test, what kind of score
16 do you need to receive to pass?
17 A.  It depends on the content of the
18 course.
19 Q.  What would be a passing -- strike
20 that.
21     What content does it depend on?
22 A.  I don't make the decisions regarding
23 what the score is, but I have seen where I
24 needed to have 80, 90 or a hundred percent to

---

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                                Page 85

1   pass that course.
2   Q.  And suppose you did not pass, you
3   didn't score 80, 90 or 100 percent, what would
4   happen?
5   A.  I would have an opportunity to retest,
6   to retake the course and retest.
7   Q.  And how many times would you be
8   eligible to retake the course and test?
9   A.  I don't recall the set number, but
10  there's a policy regarding that, and you're
11  required to pass.
12  Q.  Okay.  Would you turn to page 211 of
13  those policies and procedures, please?  Do you
14  see the section marked:  "1st Party
15  Employees - Verbal Cease & Desist Requests"?
16  A.  Yes.
17  Q.  It says, "The following governs steps
18  that need to be taken for verbal Cease &
19  Desist requests for consumer's [sic] located
20  in states that require verbal Cease & Desist
21  requests to be honored."
22      What states require verbal cease
23  and desists to be honored?
24  A.  If I were to take calls, I would have

---

Cheryl A. Dillon                                                Page 86

1   my resources at my disposal to double-check
2   that information.
3   Q.  What resources are those?
4   A.  The policies, the online training
5   material.
6   Q.  There's a written policy that includes
7   which states require those cease-and-desist
8   requests to be honored and which states do
9   not?
10  A.  Yes.  Everyone's advised on which
11  states those are.  They're -- I don't believe
12  they're in this document, and I don't recall
13  them.
14  Q.  Are you familiar with an FCC order
15  that came out this year regarding the TCPA?
16      MS. VAN HOOSE: Object to form.
17      THE WITNESS: No.
18      BY MR. KERNEY:
19  Q.  To your knowledge, have there been any
20  updates to this policy we just reviewed, "1st
21  Party Employees - Verbal Cease & Desist
22  Requests," since July of 2015?
23  A.  I don't know if there have been or
24  not.

---

Cheryl A. Dillon                                                Page 87

1   Q.  Does Florida recognize or require a
2   verbal cease-and-desist request to be honored?
3   A.  I'm not familiar with the states or
4   Florida law.
5   Q.  Would an agent be required to note on
6   Class if a party indicated that they no longer
7   wanted to be called?
8       MS. VAN HOOSE: Objection.
9   Asked and answered.
10      THE WITNESS: Just reviewing the
11  policy -- or procedures for you.  Under "1st
12  Party Employees - Verbal Cease & Desist" on
13  211 that you mentioned, it says that, if an
14  employee receives notification they no longer
15  wish to receive, they will document the
16  account with the consumer's verbal request in
17  the account notes.
18      BY MR. KERNEY:
19  Q.  Has there ever been an occasion that
20  you can recall where an agent has failed to
21  comply with that procedure?
22  A.  I don't have any specific example of
23  that, no.
24  Q.  Are you aware of any complaints,

---

Cheryl A. Dillon                                                Page 88

1   formal or informal, stating that a borrower
2   requested an agent cease calling and the calls
3   continued?
4   A.  We get lots of complaints of a variety
5   of things.  I'm sure that they probably state
6   that, too.
7   Q.  Did you review the complaint filed in
8   this case, the lawsuit that was filed in this
9   case?
10  A.  I only reviewed the documentation and
11  the calls.
12  Q.  Are you aware that the plaintiff in
13  this case is alleging that she spoke with an
14  agent of NSI and requested that the calls
15  stop?
16  A.  Yes.
17  Q.  Is that reflected in the call notes on
18  Ms. Newsome's account?
19  A.  No.
20  Q.  How big is the compliance team?
21  A.  I don't know.
22  Q.  You were involved -- you're the
23  manager of collections now; is that correct?
24  A.  No.

---

Cheryl A. Dillon | Page 89

1 Q.  What's your position?
2 A.  **Manager of collection direct mail**
3 **communication.**
4 Q.  Collection direct mail, okay.
5     When you were training
6 employees, did the compliance team help with
7 the training or interact with the employees at
8 all during that training?
9     MS. VAN HOOSE: Object to form.
10    THE WITNESS: On occasion, yes.
11    BY MR. KERNEY:
12 Q.  In what capacity?
13 A.  **I have been in circumstance where they**
14 **co-facilitated the training or were available**
15 **for questions by employees at the end or**
16 **during.**
17 Q.  Who is the head of the compliance
18 department currently?
19    MS. VAN HOOSE: Object to form.
20    THE WITNESS: I don't know.
21    BY MR. KERNEY:
22 Q.  Is every call made to a borrower
23 recorded?
24 A.  **Every call where an agent talks to the**

Cheryl A. Dillon | Page 90

1 **borrower is recorded.**
2 Q.  How long are those calls stored for?
3 A.  **I'm not aware of a specific time that**
4 **they're not stored.**
5 Q.  Who has access to the recordings?
6 A.  **Our compliance-call-monitoring team**
7 **listens to calls, the managers listen to**
8 **calls.**
9 Q.  How frequently do they -- are the
10 calls monitored?
11 A.  **I'm not a hundred percent sure.**
12 Q.  Who would know that information?
13 A.  **Probably the managers, compliance**
14 **team.**
15 Q.  What would the penalty be if an agent
16 failed to record the fact that a borrower
17 asked them to stop calling?
18 A.  **I don't see anything in this**
19 **particular procedure that details exactly what**
20 **the penalty would be, and I'm not familiar**
21 **with, as I said earlier, the exact penalty for**
22 **certain aspects of policy and procedure not**
23 **being followed.**
24 Q.  Are there instances where a manager or

Cheryl A. Dillon | Page 91

1 supervisor is required to take a call over
2 from an agent?
3     MS. VAN HOOSE: Object to form.
4     THE WITNESS: If a customer asks
5 for a manager, then the manager should oblige
6 and talk to them or call them back if they're
7 not available at the time.
8     BY MR. KERNEY:
9 Q.  When an informal complaint is made,
10 whether in writing or over the phone, where is
11 that complaint stored?
12 A.  **Information about the conversation**
13 **would be noted in the system.**
14 Q.  Which system is that?
15 A.  **In this case in Class if it was NSI.**
16 Q.  Is there any separate database where
17 complaints are stored?
18    MS. VAN HOOSE: Object to form.
19    THE WITNESS: We scan written
20 communication, and I don't know if there's
21 other systems, since that's not in the scope
22 of my job responsibilities.
23    BY MR. KERNEY:
24 Q.  Did you review the complaint database

Cheryl A. Dillon | Page 92

1 prior to today's deposition?
2     MS. VAN HOOSE: Object to form.
3     THE WITNESS: I only reviewed
4 the documentation that was provided.
5 Q.  Do you know how many complaints were
6 made against NSI within the last 12 months?
7 A.  **I do not.**
8 Q.  Do you know how many were made within
9 the last 24 months?
10 A.  **I do not.**
11 Q.  Who would have that information?
12 A.  **I don't know.**
13 Q.  Who responds to complaints when they
14 come in?
15    MS. VAN HOOSE: Object to form.
16    THE WITNESS: I'm not sure.
17    BY MR. KERNEY:
18 Q.  Do you know what corrective actions
19 are taken following a complaint that calls
20 have not ceased after a borrower requested
21 that they cease?
22 A.  **No.**
23    MS. VAN HOOSE: Object to form.

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                    Page 93

1       BY MR. KERNEY:
2   Q.  I want to talk to you a little bit
3   about sort of the overall servicing process
4   and how it begins.  When is an account first
5   assigned to NSI or how does it become assigned
6   to NSI?
7   A.  **We have contract with owners of loans**
8   **and they provide us the accounts.**
9   Q.  How do they provide you those
10  accounts?
11  A.  **I don't know specifically how they're**
12  **provided to us.**
13  Q.  What's the first thing that happens
14  when NSI begins servicing an account?
15  A.  **What do you mean?**
16  Q.  What's the first step taken when an
17  account comes through the door?
18  A.  **I don't know exactly a step that**
19  **occurs.  We service the accounts that include**
20  **statements, servicing them from -- if they**
21  **call with questions, taking payments,**
22  **receiving those payments, sending letters.**
23  Q.  So is there an intake process when an
24  individual account is first assigned to NSI?

Cheryl A. Dillon                                    Page 94

1   A.  **What do you mean?**
2   Q.  Is there a process regarding how the
3   information is input into Class, for example?
4   A.  **I don't know how that works.**
5   Q.  I'm going to pass you a document.  I'm
6   going to ask the court reporter to mark it as
7   Exhibit 2.
8       (Dillon Deposition Exhibit No. 2
9   was marked for identification.)
10      BY MR. KERNEY:
11  Q.  Have you seen that document before?
12  A.  **I don't recall.**
13  Q.  Would you turn to the second page?
14  That first sentence there says, "NSI
15  stipulates that it attempted 249 non-emergency
16  phone calls to telephone number
17  (727)581-6140."
18      Is that information accurate, to
19  your knowledge?
20  A.  **I don't have any information to say**
21  **that it's not accurate, to believe it's not**
22  **accurate.**
23  Q.  Okay.  I'm going to pass down two more
24  documents and I'm going to ask the court

Cheryl A. Dillon                                    Page 95

1   reporter to mark these separately as
2   exhibits 3 and 4.
3       (Dillon Deposition Exhibit Nos.
4   3 and 4 were marked for identification.)
5       BY MR. KERNEY:
6   Q.  I'm going to ask you to start with
7   document 3, which is three pages.  Have you
8   seen this document before?
9       MR. KERNEY: For the record,
10  document 3 begins with "Agent," "Date,"
11  "Status," "Addit Status," "Time," "Campaign."
12      MS. VAN HOOSE: Got it, thanks.
13      BY MR. KERNEY:
14  Q.  Have you seen this document before,
15  ma'am?
16  A.  **Not in this form.**
17  Q.  In what form have you seen it?
18  A.  **Like a spreadsheet.**
19  Q.  Do you know what the information
20  contained in this document is?
21  A.  **Yes.**
22  Q.  The first column there is marked
23  "Agent."  What does that mean?
24  A.  **That means the call-center agent.**

Cheryl A. Dillon                                    Page 96

1   Q.  Does that mean the agent who initiated
2   that particular call?
3   A.  **Yes.**
4   Q.  The second column is "date."  Am I
5   correct to assume that's the date of the call?
6   A.  **Yes.**
7   Q.  The third column is "Status."  What
8   does that mean?
9   A.  **Basically the result of the attempt.**
10  Q.  What does AM mean?
11  A.  **I believe that means answering**
12  **machine.  The version I had had it spelled**
13  **out, so I might be rusty.**
14  Q.  Do you know what A means?
15  A.  **I'm not a hundred percent sure.**
16      MS. VAN HOOSE: Do you have the
17  other one?
18      MR. KERNEY: I do not.  Can we
19  pull it up?
20      MR. GOMEZ: That will take a
21  little bit of time.
22      MR. KERNEY: We will move on
23  while Tav pulls that up.
24

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                            Page 97

BY MR. KERNEY:

1    Q.  Do you know what the next column
2    "Addit Status," what does "Addit Status" mean?
3    A.  I can tell you that a couple of them
4    look as though they are our reaction to the
5    result of the call, to the status.
6    Q.  Do you know what that last column
7    "Campaign" means?
8    A.  I can tell you what "Campaign"
9    normally refers to.  I don't know those codes.
10   Q.  Please.  What does it normally refer
11   to?
12   A.  It's a grouping of accounts
13   categorizing accounts to be dialed.
14   Q.  Where would the information in this
15   document have been obtained from?
16   A.  I would believe that our dialer team
17   would have helped provide this information.
18   Q.  Would this information be stored in
19   the Class system?
20   A.  I see notes in the Class documentation
21   regarding calls.  I believe this would have
22   come from the dialing system that we discussed
23   earlier.

Cheryl A. Dillon                                            Page 98

1    Q.  The Noble dialer; is that correct?
2    A.  Or Interactive, yes.
3    Q.  You don't know if this document was
4    made for purposes of this litigation or if
5    this is something that was a printout from the
6    dialer?
7        MS. VAN HOOSE: Object to form.
8        THE WITNESS: I can pull the
9    information.  I review the information.  I can
10   see that this is specific only to the phone
11   number in question.
12   BY MR. KERNEY:
13   Q.  Would you turn to the second document
14   I handed you which is marked 4, Exhibit 4?
15   Have you had a chance to look at that?
16   A.  No.
17   Q.  Do you know what "Campaign" means with
18   regards to this document?
19   A.  Again, it's a group of like accounts
20   for a specific -- to dial, to call them.
21   Q.  Do you know what these different
22   abbreviations mean?
23   A.  I can tell the area of operation and
24   the type of loans in general.

Cheryl A. Dillon                                            Page 99

1    Q.  So what tells you what the area of
2    operation is?
3    A.  "CRS."
4    Q.  What does that stand for?
5    A.  Customer resolution services I think.
6    Q.  What tells you what type of loan it
7    is?
8    A.  The "FFELP."
9    Q.  Do you know what the additional, I'm
10   going to call them, comments mean associated
11   with those campaigns?
12   A.  No.
13   Q.  Do you know what "Call Mode" means?
14   A.  No.
15   Q.  Do you know what "Agent ID" means?
16   A.  Yes.
17   Q.  I only see "Agent ID" entered one
18   time.  It's on the second page.
19   A.  Yes.
20   Q.  c48284.  Does that identify the agent?
21   A.  Yes.
22   Q.  Why is there only one agent identified
23   on the total document?
24   A.  I don't know.

Cheryl A. Dillon                                           Page 100

1    Q.  Who would know that information?
2    A.  The dialer team.
3    Q.  I'm going to have Tav continue to look
4    for that.  I'm going to move on and come back
5    to that.
6        MS. VAN HOOSE: Do you want the
7    Bates numbers?
8        MR. GOMEZ: Yes.  What is it?
9        MS. VAN HOOSE: 3197 through --
10   I think we were up to in the last production
11   -- the last number is 3205.
12       MR. GOMEZ: Can we take a break
13   now so we can get it set up so you can go
14   through the account and get going?
15       MR. KERNEY: That's fine.
16       THE VIDEOGRAPHER: 1:04 off the
17   record.
18       (Discussion off the record.)
19       THE VIDEOGRAPHER: 1:08 we're
20   back on the record.
21   BY MR. KERNEY:
22   Q.  Okay.  I'd like to ask you about the
23   account in question.  You said you reviewed
24   the Class system for the account in question

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                                Page 101

1   belonging to Marietta Newsome --
2   **A. Yes.**
3   Q.  -- is that correct?
4       Do you know when NSI first began
5   servicing the account?
6   **A. I don't recall.**
7       **MS. VAN HOOSE:** Do you have the
8   record?  Do you want her to look at the
9   records for you?
10      **MR. KERNEY:** I'm just asking.
11  If she doesn't know, that's fine.
12      **MS. VAN HOOSE:** Okay.
13      **BY MR. KERNEY:**
14  Q.  Do you know the total balance of the
15  loan?
16  **A. It was over $50,000, just over.**
17  Q.  Do you recall how many payments had
18  been made by Ms. Newsome on the account?
19  **A. I didn't see a payment history.**
20  Q.  Did that mean there were no payments
21  made or that it just wasn't the information
22  that you saw?
23  **A. I didn't see anything.**
24  Q.  Do you know what amount of interest is

Cheryl A. Dillon                                                Page 102

1   owed versus principal on the loan?
2   **A. No.**
3   Q.  Do you know who the guarantors are
4   with regards to the loan or loans?
5   **A. No.**
6       **MS. VAN HOOSE:** You have the
7   document.  She can interpret the documents for
8   you, but not from her memory.
9       **BY MR. KERNEY:**
10  Q.  Do you know when NSI first began
11  calling Ms. Newsome to service her account?
12  **A. No.**
13  Q.  Do you know how NSI obtained the phone
14  number 727-581-6140?
15  **A. My understanding is from public**
16  **record.**
17  Q.  What public record is that, if you
18  know?
19  **A. I don't know.**
20  Q.  So was that number skip traced?
21  **A. Yes.**
22  Q.  Do you know who skip traced that
23  number?
24  **A. I don't.**

Cheryl A. Dillon                                                Page 103

1   Q.  Do you know when that number was first
2   obtained?
3   **A. I don't recall.  I can see when the**
4   **calls began.**
5   Q.  Do you know when the calls began?
6   **A. It appears to be January 2014.**
7   Q.  Is it NSI's position that NSI had
8   consent to call the number 727-581-6140 using
9   auto dialer?
10  **A. Yes.**
11  Q.  What gave NSI consent to call that
12  6140 number using an auto dialer?
13  **A. Customer logged into our website to**
14  **give consent.**
15  Q.  What did she do to give consent on the
16  website?
17  **A. She reviewed her demographics and**
18  **clicked a button indicating that she -- by**
19  **submitting that, that she was consenting.**
20  Q.  Would that -- strike that.
21      Was the 6140 number entered into
22  the Manage Your Loans page by the borrower?
23  **A. I don't know.**
24  Q.  Do you know if the 6140 number

Cheryl A. Dillon                                                Page 104

1   self-populated on the borrower's Manage Your
2   Loans page?
3   **A. I don't know.**
4   Q.  Who would know that information?
5   **A. Our IT department.**
6   Q.  Are you aware today that the 6140
7   number does not belong to Marietta Newsome but
8   belongs to a third party, Willie McCaskill?
9       **MS. VAN HOOSE:** Object to form.
10      **THE WITNESS:** My understanding
11  is that the public record led our agent to
12  believe that it was associated with the
13  borrower, and I understand that someone else
14  states that that's their cell phone.
15      **BY MR. KERNEY:**
16  Q.  Is it NSI's position today that it had
17  consent to call the 6140 number, knowing that
18  that number belongs to a third party?
19      **MS. VAN HOOSE:** Object to form.
20      **THE WITNESS:** It was the NSI
21  agent's understanding that it was the
22  borrower's -- a good number to reach the
23  borrower and that we had consent from our
24  borrower to do so.

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                               Page 105

1      BY MR. KERNEY:
2   Q.  If NSI knew that that number belonged
3   to a third party and not the borrower, would
4   it have continued to call using an auto
5   dialer?
6   A.  If we knew it was a cell phone, we
7   would want consent from the person whose cell
8   phone it was.
9   Q.  But which you did not have in this
10  case, correct?
11     MS. VAN HOOSE: Object to form.
12     THE WITNESS: I'm only aware of
13  what I reviewed, that we understood it to be
14  our borrower's number and that, when she
15  logged in to MYL, she gave consent.
16     BY MR. KERNEY:
17  Q.  Are you aware of any employee in the
18  call center named Heather?
19  A.  No.
20  Q.  Who would be the best person to speak
21  to regarding whether or not there is or was a
22  Heather employed in the call center?
23  A.  Probably Human Resources.
24  Q.  Who in Human Resources?

---

Cheryl A. Dillon                                               Page 106

1   A.  I'm trying to think of a name of
2   someone in Human Resources.  I think a first
3   name's Brenda Lloyd.
4      MR. KERNEY: Can we take a
5   five-minute break while we try to follow-up
6   with Jason on that record?
7      THE VIDEOGRAPHER: 1:15 off the
8   record.
9      (Discussion off the record.)
10     THE VIDEOGRAPHER: Time is 1:26.
11  We're back on the record.
12     BY MR. KERNEY:
13  Q.  So you did have a chance to review the
14  Class page for Marietta Newsome's account,
15  correct?
16  A.  Yes.
17  Q.  Do you know how many calls were made
18  per day to Ms. Newsome by NSI?
19  A.  Not exactly.
20  Q.  Do you know if multiple calls were
21  made per day to Ms. Newsome?
22  A.  In some instances, yes.
23  Q.  Do you recall seeing how many
24  different contact numbers you had for

---

Cheryl A. Dillon                                               Page 107

1   Ms. Newsome listed in the Class system?
2   A.  No.
3   Q.  Do you recall there being more than
4   one number?
5   A.  I didn't review screens from Class
6   that showed the phone numbers.
7   Q.  What screens from Class did you
8   review?
9   A.  The account notes.
10  Q.  What other screens would there be to
11  review aside from the account notes?
12  A.  To answer your question, original
13  question, there's a screen that has the phone
14  numbers listed.
15  Q.  What other screens would there be?
16  A.  111 lists a couple phone numbers.
17  11-Z shows phone numbers and some other values
18  about the phone numbers.
19  Q.  Once the 6140 number was entered into
20  Class and a campaign of auto-dialed calls
21  began to that number, NSI was aware that that
22  number was a cell phone, correct?
23     MS. VAN HOOSE: Object to form.
24     THE WITNESS: I don't know when

---

Cheryl A. Dillon                                               Page 108

1   we knew it was a cell phone.
2      BY MR. KERNEY:
3   Q.  What steps were taken to confirm who
4   the 6140 number belonged to?
5      MS. VAN HOOSE: Object to form.
6      THE WITNESS: I know that public
7   record was checked.  It was associated with
8   our borrower and we would have called to try
9   to confirm and reach our borrower.
10     BY MR. KERNEY:
11  Q.  Did the borrower ever confirm verbally
12  that that was her phone number?
13  A.  I don't recall any conversations with
14  the borrower.
15  Q.  Did you review the call recordings
16  prior to today's deposition?
17  A.  Yes.
18  Q.  And did you hear any recording where
19  the borrower confirmed that that was her
20  number?
21  A.  Again, I didn't hear any conversations
22  with the borrower.  Lots of attempts.
23  Q.  Would it be safe to say if NSI did not
24  have a recording of the borrower verbally

---

Cheryl A. Dillon                                                Page 109

1  confirming that number, that the borrower
2  never did verbally confirm that number?
3     MS. VAN HOOSE: Object to form.
4     THE WITNESS: I'm not aware of
5  verbal consent.
6     BY MR. KERNEY:
7  Q.  You said the number came from a public
8  record.  Have you viewed that public record
9  personally?
10 A.  No.
11 Q.  Do you know what kind of public record
12 the number came from?
13 A.  I don't recall knowledge of where it
14 came from.
15 Q.  Are you aware of whether or not there
16 were other parties listed on that document
17 besides Marietta Newsome?
18 A.  I did not see the document, no, who
19 was listed.
20 Q.  So you don't know that that public
21 record is -- a certificate of incorporation of
22 a church?
23 A.  In discussion with counsel --
24    MS. VAN HOOSE: Don't get into

Cheryl A. Dillon                                                Page 110

1  your discussion with lawyers.
2     BY MR. KERNEY:
3  Q.  Don't tell us anything your lawyers
4  told you.
5     Are you aware that approximately
6  five other people were listed on that document
7  besides Marietta Newsome?
8  A.  I didn't know a number of people.
9  Q.  If five people were listed on that
10 document, which they are, I have seen it,
11 would NSI have consent to call all of those
12 people?
13    MS. VAN HOOSE: Object to form.
14    THE WITNESS: If it was not
15 identified as a cell number, we would call any
16 individual associated with the phone number.
17    BY MR. KERNEY:
18 Q.  If the number was associated as a cell
19 phone number, what would you do?
20 A.  We would manually call the number.
21 Q.  Does NSI have a policy of contacting
22 wireless carriers regarding a number to find
23 out who that number is registered to?
24 A.  I don't -- I haven't observed any

Cheryl A. Dillon                                                Page 111

1     policy that explains -- explains that.
2  Q.  What is NSI's policy on who has the
3  ability to provide consent to call a cell
4  phone using an auto dialer?
5  A.  Policy usually says it better than me.
6     I didn't see anything that
7  really explains -- spells it out.  Just so I'm
8  clear, can you repeat the question?
9     MR. KERNEY: Would you please
10 read the question back?
11    (The reporter read back as
12 instructed.)
13    THE WITNESS: So we obtain --
14 our policy is to obtain consent from the
15 person that we understand the cell phone
16 belongs to.
17    MS. VAN HOOSE: I want to make
18 it clear for the record this is not everything
19 we have produced policy-and-procedure-wise.
20    MR. KERNEY: Yeah, I understand.
21    MS. VAN HOOSE: Okay.  I want to
22 make that clear for the record.
23    BY MR. KERNEY:
24 Q.  Can a family member living in the same

Cheryl A. Dillon                                                Page 112

1  household give prior express consent to call a
2  cell phone using an auto dialer if the phone
3  belongs to a family member living in the same
4  home?
5  A.  If we understand that it belongs to
6  one party, another party cannot give consent.
7  Q.  Can a minor child give consent to be
8  called on a cell phone using an auto dialer?
9     MS. VAN HOOSE: Are you reading
10 questions off your phone?
11    MR. KERNEY: Me?  I have notes
12 on there, yeah.
13    MS. VAN HOOSE: They're your
14 notes?
15    MR. KERNEY: They're mine.
16    Go ahead.
17    THE WITNESS: I don't know of
18 any age requirements.  I understand that, if a
19 person is the one whose cell phone it is,
20 they're the ones that can give us consent.
21    BY MR. KERNEY:
22 Q.  Do you know how many times NSI talked
23 to Marietta Newsome between January of 2014
24 and the filing of the lawsuit?

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                    Page 113

1      **MS. VAN HOOSE:** Objection.
2   Asked and answered.
3      **THE WITNESS:** From the calls
4   that I listened to, I did not hear of contact
5   with Ms. Newsome.
6      **BY MR. KERNEY:**
7   Q.  Isn't it true that NSI and SAC share a
8   compliance team?
9      **MS. VAN HOOSE:** Objection.  I
10  believe that's also asked and answered.
11     **THE WITNESS:** I don't know who
12  in compliance does what for each line or area
13  of our company.
14     **BY MR. KERNEY:**
15  Q.  Did you review any formal lawsuits
16  filed against NSI in preparation for today's
17  depo.?
18  **A.  I'm sorry, say again.**
19  Q.  Did you review any lawsuits that have
20  been filed against NSI in preparation for
21  today's deposition?
22  **A.  No.  Only the materials related to**
23  **Mrs. Newsome.**
24  Q.  Okay.  I'm going to just read you the

---

Cheryl A. Dillon                                    Page 114

1   names of some lawsuits and you can tell me
2   whether or not you have heard of that case or
3   whether or not you know any facts about that
4   case.  Okay?
5   **A.  Yeah.**
6   Q.  Bolds v. NSI, 14-CV-1741?
7   **A.  No.**
8   Q.  Friday v. Sallie Mae, 14-CV-588?
9   **A.  No.**
10  Q.  Dyken v. NSI, 14-CV-741?
11  **A.  Yes.**
12  Q.  What do you know about that case?
13  **A.  It was regarding telephone calls.**
14  Q.  TCPA violations?
15     **MS. VAN HOOSE:** Object to form.
16     **THE WITNESS:** It was related to
17  TCPA.
18     **BY MR. KERNEY:**
19  Q.  Did the plaintiff in that case allege
20  that he or she had previously revoked consent
21  to be called and that calls from NSI
22  continued?
23     **MS. VAN HOOSE:** Object to form,
24  and I believe the complaints were actually

---

Cheryl A. Dillon                                    Page 115

1   produced.  Right?  These complaints were
2   produced?
3      **MR. KERNEY:** Correct.
4      **MS. VAN HOOSE:** If you remember,
5   you can testify.
6      **THE WITNESS:** I don't recall
7   which of the scenarios applied to which of the
8   cases.
9      **BY MR. KERNEY:**
10  Q.  Schwartz v. NSI, 15-CV-1817?
11  **A.  No.**
12  Q.  Grace v. NSI, 15-CV-1496?
13  **A.  No.**
14  Q.  Shaw v. NSI, 15-CV-2028?
15  **A.  No.**
16  Q.  Hynes v. NSI, 15-CV-713?
17  **A.  No.**
18  Q.  Garcia v. NSI, 15-CV-2510?
19  **A.  No.**
20  Q.  Boggs v. NSI, 15-CV-2293?
21  **A.  No.**
22  Q.  Dieng v. NSI, 15-CV-1820?
23  **A.  No.**
24  Q.  Kent v. NSI, 15-CV-103?

---

Cheryl A. Dillon                                    Page 116

1   **A.  No.**
2   Q.  Lesion v. NSI, 15-CV-7224?
3   **A.  No.**
4   Q.  Nelson v. NSI, 15-CV-60903?
5   **A.  The last name Nelson sounds familiar.**
6   **I don't know details about it.**
7   Q.  Ward v. NSI, 15-CV-931?
8   **A.  No.**
9   Q.  Booth v. NSI, 15-CV-141?
10  **A.  No.**
11  Q.  Myers v. NSI, 15-CV-296?
12  **A.  No.**
13  Q.  Young v. NSI, 15-CV-58?
14  **A.  No.**
15  Q.  Who would be the best person to talk
16  to regarding the allegations in these lawsuits
17  if not yourself?
18     **MS. VAN HOOSE:** Again, you have
19  the actual complaints.
20     **MR. KERNEY:** I understand.
21     **THE WITNESS:** I don't know.  You
22  would have to ask my counsel.
23     **BY MR. KERNEY:**
24  Q.  Do you know how many times in the last

---

Cheryl A. Dillon                                         Page 117

1   two years NSI has been sued by somebody
2   alleging violations of the TCPA?
3   A.   No.
4       MS. VAN HOOSE: Can we go off
5   the record for just one minute?
6       THE VIDEOGRAPHER: 1:42 off the
7   record.
8       (Discussion off the record.)
9       THE VIDEOGRAPHER: 1:45 back on
10  the record.
11      BY MR. KERNEY:
12  Q.  I'm going to pass over a document that
13  I'm going to ask the court reporter to mark
14  for me as Exhibit 5.
15      (Dillon Deposition Exhibit No. 5
16  was marked for identification.)
17      BY MR. KERNEY:
18  Q.  Have you seen this document before,
19  ma'am?
20  A.   It looks familiar.
21  Q.  This is our amended notice of taking
22  videotape deposition of Navient Solutions,
23  Inc., pursuant to Federal Rule of Civil
24  Procedure 30(b)(6), and this is the amended

Cheryl A. Dillon                                         Page 118

1   version as to the location only.
2       So, ma'am, what I want you to
3   turn your attention to is the last three
4   pages, which identify the areas of inquiry for
5   today's deposition. You ready?
6   A.   Yes.
7   Q.  Thank you. Can you provide me with
8   the name and address of every individual that
9   participated in calls that are the subject
10  matter of this lawsuit?
11      MS. VAN HOOSE: Object to form.
12      THE WITNESS: No.
13      BY MR. KERNEY:
14  Q.  Would you turn to the next page and
15  look at No. 16? We asked you to be prepared
16  regarding prior lawsuits filed against Navient
17  Solutions, Inc., concerning alleged violations
18  of the TCPA.
19      Do you feel prepared to testify
20  regarding prior lawsuits against NSI regarding
21  violations of TCPA?
22      MS. VAN HOOSE: Object to form.
23      THE WITNESS: I provided you
24  information that I was aware of.

Cheryl A. Dillon                                         Page 119

1       BY MR. KERNEY:
2   Q.  But you can't get into details about
3   the specifics or total number of lawsuits or
4   anything like that?
5   A.   No.
6       MS. VAN HOOSE: Those were all
7   produced before today.
8       BY MR. KERNEY:
9   Q.  Are you able to testify to the facts
10  regarding No. 17, prior lawsuits filed against
11  the defendant concerning alleged violations of
12  the Fair Debt Collection Practices Act?
13      MS. VAN HOOSE: Object to form.
14      THE WITNESS: No.
15      BY MR. KERNEY:
16  Q.  Are you able to testify today
17  regarding No. 18, prior lawsuits filed against
18  defendant concerning alleged violations of the
19  FCCPA, Florida Consumer Collection Practices
20  Act?
21      MS. VAN HOOSE: Object to form.
22      THE WITNESS: No.
23      BY MR. KERNEY:
24  Q.  Are you able to testify regarding

Cheryl A. Dillon                                         Page 120

1   No. 19, prior complaints, formal or informal,
2   whether in writing or not, made by consumers
3   or their attorneys concerning alleged
4   violations of state and federal law relating
5   to the collection of consumer debts?
6       MS. VAN HOOSE: Object to form.
7   You haven't asked her questions about these
8   things. If you have questions about these
9   topics, ask her questions.
10      MR. KERNEY: I asked about the
11  prior-complaints database, if that was
12  reviewed. The answer was no.
13      MS. VAN HOOSE: She told you
14  about prior complaints. If you have questions
15  about these topics, ask her questions about
16  these topics.
17      MR. KERNEY: Again, I did.
18      THE WITNESS: I told you what I
19  know regarding No. 19.
20      BY MR. KERNEY:
21  Q.  But you haven't reviewed the informal
22  complaints made against defendant, correct?
23      MS. VAN HOOSE: Object to form.
24  I think she testified about what she reviewed

Cheryl A. Dillon                                           Page 121

1  and about formal and informal complaints.
2      THE WITNESS: I have not.
3      BY MR. KERNEY:
4  Q.  If you look at No. 27, it's correct
5  that you did not have any information
6  regarding NSI's net worth for the last four
7  years; is that correct?
8      MS. VAN HOOSE: Object to form.
9      THE WITNESS: Correct.
10     BY MR. KERNEY:
11 Q.  Do you know the guarantor agency for
12 this loan?
13     MS. VAN HOOSE: Do you have more
14 documents you'd like her to review relating to
15 the accounts?
16     MR. GOMEZ: No, we do not.  We
17 just want to see if she has that knowledge
18 regarding these loans.
19     THE WITNESS: I don't recall who
20 the guarantor is.
21     BY MR. KERNEY:
22 Q.  Again, you don't know the system that
23 NSI uses to communicate with the guarantor in
24 this matter; is that correct?

Cheryl A. Dillon                                           Page 122

1      MS. VAN HOOSE: Object to form.
2      THE WITNESS: I'm not familiar
3  with our communication.  We service on behalf
4  of the loan owners, not on behalf of the
5  guarantors.
6      BY MR. KERNEY:
7  Q.  Are you familiar with any contracts
8  between Student Assistance Corp. and Navient
9  Solutions, Inc., or Navient Corporation?
10     MS. VAN HOOSE: Objection.
11 Asked and answered.
12     THE WITNESS: No.
13     BY MR. KERNEY:
14 Q.  I'm going to pass a document to the
15 court reporter to mark as Exhibit 6, please.
16     (Dillon Deposition Exhibit No. 6
17 was marked for identification.)
18     BY MR. KERNEY:
19 Q.  I'll note for the record that this
20 document, this exhibit is really two separate
21 documents, sets of call logs.  The first is
22 numbered pages 1 through 4 and has the Bates
23 stamp NSI 3197 through 3200, and the next log
24 is labeled pages 1 through 5 and is Bates

Cheryl A. Dillon                                           Page 123

1  stamped NSI 3201 through 3205.
2      Have you seen this document
3  before, ma'am?
4  A.  Yes.
5  Q.  What is this document?
6  A.  It is a list of calls made to 6140.
7  Q.  The top column on the page stamped
8  NSI 3197 is "Wrapup Cat," c-a-t.  What does
9  that mean?
10 A.  It's categorizing the way the call
11 ended.
12 Q.  What would "Success" mean in that
13 column?
14 A.  I don't know all the variations for
15 that, but in this case a recording reached the
16 machine of the phone number -- for this phone
17 or voice mail.
18 Q.  You're obtaining that information from
19 the wrapup code, the next column over?
20 A.  Yes.
21 Q.  If you look down about ten rows down,
22 there's an entry under "Wrapup Code" that has
23 "S/T Callable - No Circuit."
24     Do you know what that means?

Cheryl A. Dillon                                           Page 124

1  A.  My understanding is that the call did
2  not go through.
3  Q.  The next column is called "Call Mode"
4  and there's two different types of entries in
5  there.  One says "Agentless" and one says
6  "Predictive."
7      What does "Agentless" mean?
8  A.  That none of our agents were engaged
9  in the call.
10 Q.  So how was the call made?
11 A.  It was automated.
12 Q.  And what about the rows that say
13 "Predictive," what does "Predictive" mean?
14 A.  That would indicate auto dial.
15 Q.  What's the difference between
16 automated and auto dial?
17 A.  Can you rephrase your question?
18 Q.  I asked you what "Agentless" means and
19 you said it was automated.  I asked you what
20 "Predictive" meant and you said it was auto
21 dial.
22 A.  Agentless automation of a call would
23 indicate that it was going to leave a
24 pre-recorded message.  Predictive auto dial

Cheryl A. Dillon                                          Page 125

1  would mean that, if we reached someone, it
2  would go to an agent.
3  Q.  The last column "Length," what does
4  that denote?
5  A.  How long each call occurred or the
6  attempt occurred.
7  Q.  And do you know where these pages
8  marked NSI 3197 through NSI 3200, do you know
9  where this information came from?
10  A.  I did not gather the information, but
11  would understand the dialer team would have
12  assisted in obtaining it.
13  Q.  Do you know if this document was
14  prepared for purposes of this litigation?
15  A.  That's my understanding.
16  Q.  Would you turn to NSI 3201?  Do you
17  see the last column, "Call Type"?
18  A.  Yes.
19  Q.  What does "Manual" mean under "Call
20  Type"?
21  A.  It means that one of our agents
22  initiated the phone call to the phone number.
23  Q.  How did the agent initiate that phone
24  call?

Cheryl A. Dillon                                          Page 126

1  A.  They would have reviewed the account,
2  looked at the available phone numbers, and
3  selected a phone number to dial.
4  Q.  So someone physically goes in, picks a
5  number out, clicks it or something of that
6  nature, and the call is made?
7      MS. VAN HOOSE: Object to form.
8      THE WITNESS: Basically, yes.
9      BY MR. KERNEY:
10  Q.  What does "Predictive" mean?
11  A.  Similar to the first set of pages,
12  this is auto dial.
13  Q.  Why are there two separate types of
14  logs provided here?  The first one on pages
15  3197 through 3200, and the second on 3201
16  through 3205.
17  A.  My understanding would be that they
18  had Department of Ed and other loans, so there
19  would be two -- a version for each.
20  Q.  Would those different versions --
21  would this information be pulled from
22  different systems?
23  A.  I don't know.
24  Q.  Would this information all be

Cheryl A. Dillon                                          Page 127

1  accessible on Ms. Newsome's profile on the
2  Class system?
3  A.  These details?
4  Q.  Correct.
5  A.  No.
6  Q.  So then where would this information
7  have been obtained from?
8  A.  My understanding would be the dialer
9  system.
10  Q.  Does the dialer print this report out
11  directly?
12      MS. VAN HOOSE: Object to form.
13      THE WITNESS: The dialer team
14  would have been asked or someone asked to
15  obtain the information.  How they do that I am
16  not sure.
17      BY MR. KERNEY:
18  Q.  Do you know if the dialer contains
19  other information regarding calls to this
20  number that is not included in these logs?
21  A.  I don't know.
22  Q.  Who would know that?
23  A.  Someone on the dialer team.
24      MR. KERNEY: Can we go off the

Cheryl A. Dillon                                          Page 128

1  record for one second?
2      THE VIDEOGRAPHER: 1:59 off the
3  record.
4      (Discussion off the record.)
5      THE VIDEOGRAPHER: Two o'clock
6  back on the record.
7      MR. KERNEY: I'm going to ask
8  the court reporter to mark this as Exhibit 7,
9  please.
10      (Dillon Deposition Exhibit No. 7
11  was marked for identification.)
12      BY MR. KERNEY:
13  Q.  Ma'am, have you reviewed this document
14  prior to today?
15  A.  Yes.
16  Q.  And what does this document reflect?
17  A.  The account notes.
18  Q.  And where would these notes have been
19  obtained from?
20  A.  Class.
21  Q.  And besides the information that's
22  marked as "Redacted" on here, are these notes
23  missing any other information that would be
24  obtained through Class?

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                      Page 129

1    **MS. VAN HOOSE:** Object to form.
2    **THE WITNESS:** Can you be more
3    specific?
4    **BY MR. KERNEY:**
5    Q.   Is there anything I would see in the
6    call notes on Class that's missing from these
7    records we have been provided?
8    **A.  For the time period requested,**
9    **everything would be here.**
10   Q.   Do you see the entry, the first entry
11   on the first page, it says, "020414 MYL TW50
12   MYL Login Successful"?
13   **A.  Yes.**
14   Q.   What does that mean?
15   **A.  That means that the customer logged**
16   **into our online system, our website.**
17   Q.   Do you see the next entry marked
18   "Partial Address Change"?
19   **A.  Yes.**
20   Q.   What does that entry mean?
21   **A.  That there was an edit made in the**
22   **address.**
23   Q.   Do you see the next entry, "Borrower
24   Home Phone Number Changed"?

---

Cheryl A. Dillon                                      Page 130

1    **A.  Yes.**
2    Q.   What does that entry mean?
3    **A.  An edit to the phone number in the**
4    **demographics online.**
5    Q.   Would that reflect when Ms. Newsome
6    allegedly confirmed the 6140 number on her MYL
7    account?
8    **A.  I would have to review the screens**
9    **that showed when she did that.  I don't recall**
10   **the exact dates or times of her logging in.**
11   **But I have no reason to doubt that this is**
12   **when the customer logged in, since it says she**
13   **logged in.**
14   Q.   Do you see the next section, the next
15   entry it appears says, "072814 System GD00
16   Call Attempts 1) 140728 1327 RA"?
17   **A.  Yes.**
18   Q.   What does that entry mean?
19   **A.  That a call was attempted on July 28,**
20   **2014.**
21   Q.   What does the system -- the word
22   "System" represent in that entry?
23   **A.  That this was an automated note from**
24   **our system.**

---

Cheryl A. Dillon                                      Page 131

1    Q.   What does "GD00" mean?
2    **A.  That is just a generic code associated**
3    **with the language that follows.**
4    Q.   And how about the "RA" at the end,
5    what does that mean?
6    **A.  I don't know.**
7    Q.   Could you turn to the next page?
8    **A.  Uh-huh.**
9    Q.   So there's several entries on this
10   page.  All essentially state:  "System GD00
11   Call Attempts 1)."
12       What do those entries all mean?
13   **A.  That the date in the date column is**
14   **when a call attempt was made.**
15   Q.   And "System" again, that means it was
16   made from the dialer?
17       **MS. VAN HOOSE:** Object to form.
18       **THE WITNESS:** It means it was
19   automated.  An automated remark, not a person.
20       **BY MR. KERNEY:**
21   Q.   And what do the six digits following
22   "Call Attempts 1)" represent?
23   **A.  They match the date in the date column**
24   **with the year, two-digit year, two-digit**

---

Cheryl A. Dillon                                      Page 132

1    **month, two-digit date.**
2    Q.   The next column four digits there, the
3    time?
4    **A.  I don't know for sure.**
5    Q.   Do you know what RA or RN or Z mean in
6    any of those entries?
7    **A.  I do not.**
8    Q.   I'm going to pass the court reporter
9    another document that we will mark as
10   Exhibit 8.
11       (Dillon Deposition Exhibit No. 8
12   was marked for identification.)
13       **BY MR. KERNEY:**
14   Q.   Do you see the top entry on that page
15   says, "Made Commercial Attempt, Found New
16   Information"?
17   **A.  Yes.**
18   Q.   What does that mean?
19   **A.  I'm not a hundred percent sure.**
20   Q.   What does "Borrower Home Phone Change"
21   mean?
22   **A.  Means that there was an edit to the**
23   **demographic for the home phone field.**
24   Q.   Would "Found New" -- "Made Commercial

---

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

---

Cheryl A. Dillon                                           Page 133

1  Attempt, Found New Information" reflect that a
2  new number was obtained via skip tracing?
3      MS. VAN HOOSE: Object to form.
4      THE WITNESS: It's possible.
5  I'm not sure.
6      BY MR. KERNEY:
7  Q.  What is the information that's been
8  redacted from these documents we're reviewing?
9      MS. VAN HOOSE: Just for the
10  record, you have an unredacted copy.
11     MR. KERNEY: That's fine.
12     BY MR. KERNEY:
13  Q.  Do you know what is redacted here,
14  just by looking at it?
15  A.  I don't recall.  I was looking at the
16  same pieces -- looking for the same piece of
17  information that we're going over on this.
18  Q.  Do you know who would have made these
19  entries into the system?
20  A.  Which entries?
21  Q.  "Made Commercial Attempt, Found New
22  Information."
23  A.  That's a system note again.  So that's
24  automatic.  But it was put on the account.

---

Cheryl A. Dillon                                           Page 134

1  Q.  Would you look at the third-to-last
2  page of this document?  Do you see the entry a
3  little more than halfway down that states:
4  "Phone Borrower Home, Call Terminated When
5  Requested"?
6  A.  Yes.
7  Q.  What does that mean?
8      MS. VAN HOOSE: Can we just say
9  the date of that for the record since we don't
10  have a Bates-number copy?
11     MR. KERNEY: Yes.  I'm sorry.
12  It's 010715.
13     THE WITNESS: It means that we
14  phoned the home number that we had for the
15  borrower and the call was terminated.  I don't
16  think it's a complete sentence.  I think it's
17  cut off.
18     BY MR. KERNEY:
19  Q.  Where would we be able to obtain the
20  rest of that information from?
21  A.  I don't know -- I don't know.
22  Q.  So this does indicate, then, that
23  someone spoke with Ms. McCaskill at this
24  point?

---

Cheryl A. Dillon                                           Page 135

1      MS. VAN HOOSE: Object to form.
2      THE WITNESS: No.  It indicates
3  we called the borrower's home phone.  A call
4  was terminated.  I don't know if we spoke to
5  anyone or who we spoke to.
6      BY MR. KERNEY:
7  Q.  So what could "When Requested" mean,
8  then?
9      MS. VAN HOOSE: Object to form.
10     THE WITNESS: I'm not sure,
11  because it's an incomplete thought.
12     MR. KERNEY: Just take a
13  five-minute break for me and Tav to talk and
14  we will be done.
15     THE VIDEOGRAPHER: 2:09 off the
16  record.
17     (A recess was taken.)
18     THE VIDEOGRAPHER: The time is
19  2:20.  We're back on the record.
20     BY MR. KERNEY:
21  Q.  Thank you.  Ma'am, are you familiar
22  with a lawsuit, it's referred to as the Archer
23  class action?
24     MS. VAN HOOSE: Object to form.

---

Cheryl A. Dillon                                           Page 136

1      THE WITNESS: Archer?
2      BY MR. KERNEY:
3  Q.  Correct.
4  A.  No.
5  Q.  I'm sorry, Arthur.  Are you familiar
6  with Arthur?
7  A.  Yes, I have heard of it.
8  Q.  Do you understand that that lawsuit
9  was a group of individuals alleging
10  allegations similar to those that are alleged
11  in the lawsuit here today?
12     MS. VAN HOOSE: Object to form.
13     THE WITNESS: I understand it
14  was also about phone calls.
15     BY MR. KERNEY:
16  Q.  Violations of the TCPA?
17     MS. VAN HOOSE: Object to form.
18     THE WITNESS: I understand that
19  was what was alleged.
20     BY MR. KERNEY:
21  Q.  And that lawsuit settled for how much?
22  A.  That I don't know.
23  Q.  Was it thousands of dollars?  Millions
24  of dollars?

---

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

Cheryl A. Dillon                                      Page 137

1  **A.  I don't know.**
2  Q.  We know that NSI made 249
3  non-emergency phone calls to the phone number
4  727-581-6140, correct?
5  **A.  That's what I read in the material.**
6  Q.  NSI never had prior express consent of
7  Willie McCaskill to call her phone number
8  727-581-6140?
9  **MS. VAN HOOSE:** Object to form.
10  Asked and answered.  We went over this.
11  **THE WITNESS:** We had consent
12  from who we thought the number represented.
13  Not from the plaintiff.
14  **BY MR. KERNEY:**
15  Q.  The consent that NSI alleges strictly
16  comes from Ms. Newsome's entry on her Manage
17  Your Loans web page; is that correct?
18  **MS. VAN HOOSE:** Objection.
19  Asked and answered.
20  **THE WITNESS:** That's where I saw
21  consent granted.
22  **BY MR. KERNEY:**
23  Q.  And there's no record of any verbal
24  consent being given by Ms. Newsome to call

Cheryl A. Dillon                                      Page 138

1  that number 6140, correct?
2  **MS. VAN HOOSE:** Also asked and
3  answered.
4  **THE WITNESS:** I did not hear
5  verbal consent in the call recordings.
6  **BY MR. KERNEY:**
7  Q.  You don't know whether or not the
8  number that ends in 6140 was entered by
9  Ms. Newsome on her MYL page or if it was auto
10  populated, correct?
11  **A.  Yes.**
12  **MS. VAN HOOSE:** Again, asked and
13  answered.  Let me make my objection.
14  **BY MR. KERNEY:**
15  Q.  You don't know what agent skip traced
16  the 6140 number, correct?
17  **MS. VAN HOOSE:** Object to form.
18  **THE WITNESS:** I don't know.
19  **BY MR. KERNEY:**
20  Q.  Isn't it true NSI called the 6140
21  number 249 times in an attempt to collect a
22  debt?
23  **MS. VAN HOOSE:** Object to form
24  and to the extent you're calling for a legal

Cheryl A. Dillon                                      Page 139

1  conclusion.
2  **BY MR. KERNEY:**
3  Q.  Go ahead.
4  **A.  In review of the documentation, there**
5  **was a note of 249 calls.  The customer was**
6  **past due on her loans.  We were trying to**
7  **reach her.**
8  Q.  And those 249 calls we know now were
9  made to Willie McCaskill for a debt she did
10  not owe, correct?
11  **MS. VAN HOOSE:** Objection.  You
12  can't testify for the witness.
13  **BY MR. KERNEY:**
14  Q.  Go ahead.
15  **A.  I only reviewed Mrs. Newsome's**
16  **account, and we were not calling to talk to**
17  **the plaintiff.**
18  Q.  Is Willie McCaskill a co-borrower on
19  Marietta Newsome's loans?
20  **A.  I did not see any information about**
21  **co-signers.**
22  **MR. KERNEY:** I don't have any
23  other questions at this time, but we're going
24  to just keep the depo. open based on the fact

Cheryl A. Dillon                                      Page 140

1  that the witness wasn't fully prepared to
2  answer all the areas of inquiry.
3  **MS. VAN HOOSE:** We object to you
4  keeping the depo. open.  And we will take that
5  up with the judge.  We have a hearing
6  tomorrow.
7  **MR. KERNEY:** Yeah, correct.
8  **THE COURT REPORTER:** Do both
9  counsel want the transcript non-expedited?
10  **MR. GOMEZ:** We want expedited.
11  We can have like the draft before the official
12  one.  Trial is not until April -- March or
13  April.  But my office will contact you
14  tomorrow and we will most likely get it
15  expedited.
16  **MR. KERNEY:** We will take it
17  expedited.
18  **THE COURT REPORTER:** How
19  expedited?
20  **MR. GOMEZ:** Can we have it by
21  the 4th?
22  **THE COURT REPORTER:** Okay.
23  Same?
24  **MS. VAN HOOSE:** Yes.

---

Page 141

1    (Deposition concluded at
2    2:26 p.m.)
3    - - - - -
4
5    T E S T I M O N Y
6    **DEPONENT:** CHERYL A. DILLON              PAGE
7    Examination by Mr. Kerney.................4
8
9    E X H I B I T S
10   DILLON DEPOSITION EXHIBIT NO.          MARKED
11   Exhibit 1 - Document Bates stamped
12   NSI 190 through NSI 252....................51
13
14   Exhibit 2 - Joint Stipulation of Facts.....94
15
16   Exhibit 3 - Document entitled, "Willie
17   McCaskill (Newsome)".......................95
18
19   Exhibit 4 - Document entitled, "Willie
20   McCaskill (Newsome)".......................95
21
22   Exhibit 5 - Notice of Deposition..........117
23
24

---

Page 142

1    E X H I B I T S (cont'd)
2
3    DILLON DEPOSITION EXHIBIT NO.          MARKED
4    Exhibit 6 - Document Bates stamped
5    NSI 3197 through NSI 3205.................122
6
7    Exhibit 7 - Borrower Correspondence
8    History....................................128
9
10   Exhibit 8 - Borrower Correspondence
11   History....................................132
12
13   DIRECTIONS NOT TO ANSWER    PAGE     LINE
14   NONE
15
16   REQUESTS MADE FOR DOCUMENTS  PAGE    LINE
17   NONE
18
19   ERRATA SHEET/DEPONENT'S SIGNATURE    PAGE 144
20   CERTIFICATE OF REPORTER          PAGE 145
21
22
23
24

---

Page 143

1    READING AND SIGNING INSTRUCTIONS
2
3
4    After reading the transcript of your
5    deposition, please note any change or
6    correction and the reason therefor on the
7    errata sheet that appears on the following
8    page.  DO NOT MAKE ANY MARKS OR NOTATIONS ON
9    THE TRANSCRIPT ITSELF.  Please sign and date
10   the errata sheet and return it to our office
11   at the address indicated below.  Our office
12   will distribute copies of the executed errata
13   sheet to all counsel.  If necessary, you can
14   make additional copies of the errata sheet.
15
16   Rule 30(e) governing this procedure provides
17   the deposition may be filed as transcribed if
18   you do not return a signed errata sheet within
19   30 days.
20
21      **RETURN ORIGINAL ERRATA SHEET TO:**
22   Wilcox & Fetzer, Ltd.
23   1330 King Street, Wilmington, DE  19801
24   depos@wilfet.com - 302-655-0477

---

Page 144

1   DEPONENT:  CHERYL A. DILLON
    DATE:  DECEMBER 29, 2015
2   CASE:  McCASKILL v. NAVIENT
3            ERRATA SHEET
    PAGE/LINE/    CHANGE OR CORRECTION AND REASON
4
5   ----/----/------------------------------------
6   ----/----/------------------------------------
7   ----/----/------------------------------------
8   ----/----/------------------------------------
9   ----/----/------------------------------------
10  ----/----/------------------------------------
11  ----/----/------------------------------------
12  ----/----/------------------------------------
13  ----/----/------------------------------------
14  ----/----/------------------------------------
15  ----/----/------------------------------------
16  ----/----/------------------------------------
17  ----/----/------------------------------------
18  ----/----/------------------------------------
19  ----/----/------------------------------------
20  I have read the foregoing transcript of my
21  deposition and, except for any corrections or
    changes noted above, I hereby subscribe to the
22  transcript as an accurate record of the
    statements made by me.
23
    Date:
24            Signature of Deponent

Page 145

```
 1              CERTIFICATE OF REPORTER

 2

 3   State of Delaware    )

 4
     New Castle County    )
 5

 6

 7        I, Kimberly A. Hurley, Registered Merit
     Reporter and Notary Public, do hereby certify
 8   that there came before me on Tuesday,
     December 29, 2015, the deponent herein,
 9   CHERYL A. DILLON, who was duly sworn by me and
     thereafter examined by counsel for the
10   respective parties; that the questions asked
     of said deponent and the answers given were
11   taken down by me in Stenotype notes and
     thereafter transcribed by use of
12   computer-aided transcription and computer
     printer under my direction.
13
          I further certify that the foregoing is a
14   true and correct transcript of the testimony
     given at said examination of said witness.
15
          I further certify that I am not counsel,
16   attorney, or relative of either party, or
     otherwise interested in the event of this
17   suit.

18

19

20

21

22        Kimberly A. Hurley, RPR, RMR

23

24   Dated:  January 3, 2015
```

**$**

**$50,000 (1)**
  101:16

**[**

**[COLLECTOR (1)**
  65:24
**[COMPANY (1)**
  66:1
**[CONSUMER (5)**
  65:16,18,22,23
  66:9
**[ORIGINATING (1)**
  66:2
**[sic] (1)**
  85:19
**[TOTAL (1)**
  66:3

**A**

**abbreviations (1)**
  98:22
**ability (8)**
  33:3,12 44:23
  49:17 50:17 76:14,
  15 111:3
**able (8)**
  35:24 36:7 46:6
  79:7 119:9,16,24
  134:19
**absolutely (2)**
  6:21 62:21
**abuse (1)**
  74:21
**access (6)**
  33:16 35:17 37:19

  40:7 79:7 90:5
**accessed (1)**
  36:21
**accessible (3)**
  36:20 38:4 127:1
**According (1)**
  69:13
**account (49)**
  35:5,11,12,15,22
  38:11 39:15 40:7,8,
  14 46:8,15 47:24
  49:7 50:6,8,24 51:13
  60:21 66:15 68:5
  78:19 80:1,14 81:13
  82:1,5,6 87:16,17
  88:18 93:4,14,17,24
  100:14,23,24 101:5,
  18 102:11 106:14
  107:9,11 126:1
  128:17 130:7 133:24
  139:16
**accounts (18)**
  30:15 38:14,18
  39:5,12 46:19 47:19,
  21 51:9 57:5 60:11
  93:8,10,19 97:13,14
  98:19 121:15
**accurate (7)**
  11:11 14:18 63:5
  65:9 94:18,21,22
**achieve (1)**
  76:14
**acknowledge (1)**
  65:21
**Act (8)**
  10:4,7 72:18
  73:10,21,22 119:12,
  20
**acting (1)**
  39:9

**action (3)**
  75:6 76:8 135:23
**actions (1)**
  92:19
**active (1)**
  8:17
**actual (1)**
  116:19
**actually (3)**
  17:8 24:12 114:24
**add (5)**
  33:13 35:15 49:19
  61:13,16
**added (1)**
  62:7
**Addit (3)**
  95:11 97:3,3
**additional (3)**
  83:23 99:9 143:14
**address (9)**
  4:23 12:3 15:15,
  21 35:6 118:8
  129:18,22 143:11
**advise (3)**
  54:8,10 66:5
**advised (1)**
  86:10
**affected (3)**
  59:2 63:22 66:13
**after (5)**
  25:9,19 49:20
  92:21 143:4
**again (17)**
  46:6 52:13 53:20,
  24 66:9,21 69:21
  82:8 98:19 108:21
  113:18 116:18
  120:17 121:22
  131:15 133:23
  138:12

**again' (1)**
  54:8
**against (9)**
  75:6 92:7 113:16,
  20 118:16,20 119:10,
  17 120:22
**age (1)**
  112:18
**agency (1)**
  121:11
**agent (27)**
  23:15 54:5,9 56:5
  60:20 67:7,10 79:11
  87:5,20 88:2,14
  89:24 90:15 91:2
  95:10,23,24 96:1
  99:15,17,20,22
  104:11 125:2,23
  138:15
**Agentless (4)**
  124:5,7,18,22
**agents (10)**
  22:3,5 23:11
  35:18 56:7 60:12,19
  79:5 124:8 125:21
**agent's (2)**
  23:15 104:21
**ago (7)**
  8:5 10:10 28:24
  29:5,11 42:1 84:3
**agreement (1)**
  25:11
**ahead (4)**
  4:20 112:16 139:3,
  14
**al (1)**
  3:12
**allegations (2)**
  116:16 136:10
**allege (1)**

114:19

**alleged (6)**
118:17 119:11,18
120:3 136:10,19

**allegedly (1)**
130:6

**alleges (1)**
137:15

**alleging (3)**
88:13 117:2 136:9

**Almost (2)**
6:16 10:9

**also (13)**
4:15 5:21 23:19
25:16,16,17 40:8
42:20 60:21 71:14
113:10 136:14 138:2

**always (1)**
65:10

**amended (2)**
117:21,24

**amount (4)**
56:23 66:3,3
101:24

**annoy (1)**
74:21

**annoying (1)**
54:14

**annually (1)**
44:9

**another (4)**
76:15 77:24 112:6
132:9

**answer (13)**
4:14 21:3,3 25:20
31:9 39:22 51:4
52:13 73:23 107:12
120:12 140:2 142:13

**answered (8)**
87:9 113:2,10

122:11 137:10,19
138:3,13

**Answering (2)**
24:19 96:11

**anybody (2)**
27:21 44:22

**anymore (3)**
35:24 36:2,16

**Anyone (5)**
13:15 27:12,15,18
135:5

**anything (13)**
8:24 9:10 48:5
52:15 57:24 69:10
77:17 90:18 101:23
110:3 111:6 119:4
129:5

**anyway (1)**
25:11

**Anywhere (1)**
11:18

**APG (1)**
65:4

**appear (3)**
19:14,15 62:18

**appears (3)**
103:6 130:15
143:7

**applicable (1)**
48:19

**applied (1)**
115:7

**applies (1)**
65:1

**apply (2)**
73:10 82:15

**approved (1)**
57:18

**approximately (7)**
5:15 6:15 13:11

28:23 42:1 68:17
110:5

**April (4)**
57:15,21 140:12,
13

**Archer (2)**
135:22 136:1

**area (8)**
11:19 25:13,20
32:12,18 98:23 99:1
113:12

**areas (4)**
25:3,5 118:4 140:2

**Arthur (2)**
136:5,6

**ascertain (1)**
60:10

**aside (2)**
76:6 107:11

**asked (18)**
54:6 71:19 87:9
90:17 113:2,10
118:15 120:7,10
122:11 124:18,19
127:14,14 137:10,19
138:2,12

**asking (7)**
9:9 19:9 45:19
52:8 53:14 73:6
101:10

**asks (1)**
91:4

**aspects (2)**
77:5 90:22

**Asset (2)**
63:11,23

**assigned (7)**
40:6 46:15 60:11,
21 93:5,5,24

**Assistance (25)**

12:17 13:18 14:3

15:5 27:18,23 30:4,7,
14,20 31:5,20,24
32:3,22,24 34:2,3
38:15,17 41:7 44:13
46:15 78:15 122:8

**assisted (1)**
125:12

**associated (6)**
99:10 104:12
108:7 110:16,18
131:2

**assume (1)**
96:5

**Assuming (1)**
79:17

**ATDS (1)**
79:13

**attempt (9)**
14:6 66:6 96:9
125:6 131:14 132:15
133:1,21 138:21

**attempted (2)**
94:15 130:19

**attempts (4)**
108:22 130:16
131:11,22

**attend (1)**
8:8

**attended (1)**
79:4

**attention (2)**
51:18 118:3

**attestation (1)**
83:4

**attorney (2)**
9:1,13

**attorneys (2)**
8:22 120:3

**authority (1)**

45:16

**authorize (1)**
65:3

**authorized (1)**
65:8

**auto (29)**
23:12,16 40:20,24
41:9 45:8,15,17
52:20 53:8 61:3,10,
17 62:8,15 79:11,21
103:9,12 105:4
111:4 112:2,8
124:14,16,20,24
126:12 138:9

**auto-dialed (2)**
26:14 107:20

**auto-dialing (1)**
24:9

**automated (6)**
124:11,16,19
130:23 131:19,19

**automatic (1)**
133:24

**automatically (1)**
61:9

**automation (1)**
124:22

**available (5)**
50:11 58:13 89:14
91:7 126:2

**AVP (1)**
17:7

**aware (28)**
15:16,21 23:10
26:4 27:17 38:7 39:8,
9,14 40:10 50:13,20
51:8 56:14 60:8 63:5
68:11 87:24 88:12
90:3 104:6 105:12,
17 107:21 109:4,15

110:5 118:24

---

# B

**back (24)**
23:3 25:23,24
27:22 31:14,15
41:20,23 66:4 71:15,
24 78:3,11 79:14
82:9 91:6 100:4,20
106:11 111:10,11
117:9 128:6 135:19

**background (4)**
8:6,21 52:9,16

**balance (1)**
101:14

**balances (1)**
35:3

**Based (6)**
43:3 45:22 56:18
60:18 69:4 139:24

**Basically (4)**
53:6 59:22 96:9
126:8

**basis (2)**
20:3 73:14

**Bates (9)**
51:21 72:8,16
74:1 100:7 122:22,
24 141:11 142:4

**Bates-number (1)**
134:10

**became (1)**
28:23

**become (2)**
39:14 93:5

**becomes (2)**
47:2 51:1

**Bednar (2)**
15:24 18:12

**B-e-d-n-a-r (1)**
16:2

**Bednar's (2)**
16:3 18:14

**before (13)**
7:21 11:4 25:6
41:14 52:12 58:20
94:11 95:8,14
117:18 119:7 123:3
140:11

**began (5)**
101:4 102:10
103:4,5 107:21

**begin (1)**
61:2

**begins (3)**
93:4,14 95:10

**behalf (9)**
3:17,18,21 30:21,
21 39:10 48:7 122:3,
4

**behind (1)**
38:19

**being (12)**
3:9 4:7 5:17 18:5
69:7,16 77:7,15,16
90:23 107:3 137:24

**believe (17)**
15:10 33:11 42:8
47:9 56:11 57:12
81:1 82:15,20 86:11
94:21 96:11 97:17,
22 104:12 113:10
114:24

**belong (1)**
104:7

**belonged (2)**
105:2 108:4

**belonging (1)**
101:1

**belongs (6)**
62:4 104:8,18
111:16 112:3,5

**below (3)**
65:5,15 143:11

**beneath (1)**
20:5

**besides (3)**
109:17 110:7
128:21

**best (7)**
20:24 21:5 31:9
35:6 73:13 105:20
116:15

**better (3)**
17:18 54:11 111:5

**Between (11)**
27:5 30:3 31:24
34:11 38:4 45:9 48:4
75:19 112:23 122:8
124:15

**beyond (4)**
23:19 69:14 71:11
81:9

**big (1)**
88:20

**birth (1)**
4:20

**bit (4)**
19:12 78:13 93:2
96:21

**blurb (1)**
65:9

**Bob (1)**
15:24

**Bob's (1)**
16:1

**Boggs (1)**
115:20

**Bolds (1)**

114:6

**bonus (1)**
56:23

**Booth (1)**
116:9

**borrower (43)**
48:19,24 50:5
54:12,13,21 56:2,4
60:11,21,23 62:19,
23 64:15 67:2,9
69:16 70:20 79:10
88:1 89:22 90:1,16
92:21 103:22 104:13,
23,24 105:3 108:8,9,
11,14,19,22,24
109:1 129:23 132:20
134:4,15 142:7,10

**borrowers (1)**
13:20

**borrower's (7)**
62:16 80:1 81:16
104:1,22 105:14
135:3

**both (9)**
10:22 29:17 33:3
34:3 40:13 42:8
75:19 84:9 140:8

**BPS (6)**
50:3,9 78:14,16
79:3,5

**branding (4)**
12:12 59:8,9,10

**break (6)**
41:14 77:24 78:1
100:12 106:5 135:13

**Brenda (1)**
106:3

**brief (1)**
4:10

**briefly (1)**

41:23

**bring (1)**
25:10

**budget (2)**
31:24 32:2

**building (2)**
14:22,23

**bullet (3)**
74:13,17 75:10

**business (7)**
32:12 63:13,16,16
65:18 68:14 75:1

**button (1)**
103:18

# C

**c48284 (1)**
99:20

**call (90)**
6:2,13 9:5 21:7,22
22:3,8 23:9 34:3
35:21,22,23 36:2
40:6,6 45:14,16 46:3
49:6,7,17,19,20
50:17 54:8 56:1,5,7
60:12 61:14 62:3
66:3 67:7 68:15
74:24 78:23 79:12,
20,21 80:22 81:8
88:17 89:22,24 91:1,
6 93:21 96:2,5 97:6
98:20 99:10,13
103:8,11 104:17
105:4,18,22 108:15
110:11,15,20 111:3
112:1 122:21 123:10
124:1,3,9,10,22
125:5,17,19,22,24
126:6 129:6 130:16,

19 131:11,14,22
134:4,15 135:3
137:7,24 138:5

**Callable (1)**
123:23

**call-center (8)**
55:6 57:4 60:6,8
75:5 79:5 83:12
95:24

**called (32)**
9:21 16:21 30:16
33:22 35:23 36:16
40:20,23 41:9 45:7
46:6 50:2 52:19,23
53:7,20,21,24 54:7
57:12 67:18 69:16,
17 74:22 79:11 87:7
108:8 112:8 114:21
124:3 135:3 138:20

**caller (1)**
22:3

**calling (18)**
39:15 40:8,13
50:6,8 55:13 61:3
64:6 68:4 74:12
78:19 80:13 81:11
88:2 90:17 102:11
138:24 139:16

**calls (56)**
9:19 22:11,12
23:7 24:19 25:1
26:15 27:3 35:19
47:23 49:10 54:14
67:23 68:7,13,16,17,
18,19,22,24 69:14,
19 70:2 74:15 79:24
81:2,6,9,12 85:24
88:2,11,14 90:2,7,8,
10 92:20 94:16
97:22 103:4,5

106:17,20 107:20
113:3 114:13,21
118:9 123:6 127:19
136:14 137:3 139:5,8

**came (6)**
10:9 86:15 109:7,
12,14 125:9

**Campaign (5)**
95:11 97:8,9
98:17 107:20

**campaigns (1)**
99:11

**cannot (2)**
81:8 112:6

**capacities (1)**
29:10

**capacity (8)**
5:6,9 7:23 10:18
22:2 24:23 54:6
89:12

**Card (1)**
6:11

**carriers (1)**
110:22

**case (21)**
8:21 9:22 33:22
42:3,15 47:10,20,21
49:15 66:16 82:1
88:8,9,13 91:15
105:10 114:2,4,12,
19 123:15

**cases (2)**
42:13 115:8

**Cat (1)**
123:8

**c-a-t (1)**
123:8

**catch (1)**
52:14

**categorizing (2)**

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

97:14 123:10

**cause (1)**
74:18

**Cease (9)**
52:23 85:15,18,20,
22 86:21 87:12 88:2
92:22

**cease-and-desist (5)**
57:13,20 63:21
86:7 87:2

**ceased (1)**
92:21

**cell (16)**
55:13 61:19 62:7,
12 104:14 105:6,7
107:22 108:1 110:15,
18 111:3,15 112:2,8,
19

**center (8)**
6:2,13 35:21 40:6
56:5,7 105:18,22

**centers (6)**
21:7,22 22:8
23:10 60:12 68:15

**CEO (1)**
19:18

**certain (6)**
13:17 60:11,12,14
76:16 90:22

**certificate (3)**
8:14 109:21
142:20

**certificates (1)**
8:11

**certification (1)**
8:12

**chance (2)**
98:15 106:13

**change (4)**
36:18 129:18

132:20 143:5

**changed (3)**
29:11,21 129:24

**changes (2)**
44:23 45:4

**channel (1)**
16:4

**charge (1)**
44:1

**check (1)**
82:13

**checked (1)**
108:7

**Cheryl (4)**
3:13 4:1,9 141:6

**child (1)**
112:7

**church (1)**
109:22

**Circuit (1)**
123:23

**circumstance (1)**
89:13

**circumstances (1)**
66:16

**city (1)**
4:23

**Civil (1)**
117:23

**clarification (1)**
72:24

**Clarify (1)**
67:24

**class (40)**
11:1,2 33:4,5,7,9
34:5 35:16 36:1,11,
21 37:5,6 38:5 41:5
44:21 49:13,15,18
50:7 81:15,17,21,24
87:6 91:15 94:3

97:20,21 100:24
106:14 107:1,5,7,20
127:2 128:20,24
129:6 135:23

**C-l-a-s-s (1)**
33:5

**classes (1)**
8:12

**classroom (1)**
32:8

**clear (5)**
18:22 31:7 111:8,
18,22

**clearer (2)**
55:1,1

**clicked (1)**
103:18

**clicks (1)**
126:5

**client (1)**
35:7

**coach (1)**
43:5

**coaching (2)**
8:13 58:21

**co-borrower (2)**
48:20 139:18

**code (3)**
123:19,22 131:2

**codes (1)**
97:10

**co-facilitated (1)**
89:14

**cognizant (1)**
74:9

**collect (8)**
14:3,6,9 56:22
57:5 66:7 80:21
138:21

**Collection (13)**

5:4 13:23 14:2
19:16 63:14 70:18
72:18 73:10 89:2,4
119:12,19 120:5

**collections (1)**
88:23

**collector (3)**
66:6 70:6 80:12

**collectors (4)**
71:14 73:11,13
80:23

**college (1)**
8:7

**column (14)**
95:22 96:4,7 97:2,
7 123:7,13,19 124:3
125:3,17 131:13,23
132:2

**come (7)**
70:17 71:15 78:3
80:2 92:15 97:23
100:4

**comes (3)**
71:4 93:17 137:16

**comments (1)**
99:10

**Commercial (3)**
132:15,24 133:21

**commissioned (1)**
56:13

**common (1)**
50:10

**commonly (2)**
38:3 48:5

**communicate (3)**
48:18 54:11
121:23

**communicated (2)**
79:15,17

**communicating (1)**

48:23

**communication (9)**
16:8 18:21 62:14
66:5 74:3 75:19 89:3
91:20 122:3

**companies (13)**
12:11,14 15:8,12
18:6 19:24 28:12
30:6,9 70:19 80:13,
17,24

**company (13)**
5:20 12:22,24
13:2,3,4 14:22 28:5
29:7,11 76:23 81:14
113:13

**company's (1)**
21:1

**compensated (1)**
56:8

**complaint (5)**
88:7 91:9,11,24
92:20

**complaints (12)**
87:24 88:4 91:17
92:6,14 114:24
115:1 116:19 120:1,
14,22 121:1

**complete (1)**
134:16

**completed (1)**
84:9

**compliance (15)**
11:22 17:18,24
19:4 43:17 44:6
72:11 75:9,18 88:20
89:6,17 90:13 113:8,
12

**compliance-call-monitoring (1)**
90:6

**compliant (5)**

18:22,24 19:1
68:22 75:21

**Complied (1)**
52:6

**comply (7)**
73:4,17 75:12,16
76:1 77:8 87:21

**concerning (4)**
118:17 119:11,18
120:3

**concluded (1)**
141:1

**conclusion (3)**
45:19 73:7 139:1

**confidentiality (1)**
25:11

**confirm (6)**
61:18 62:23 108:3,
9,11 109:2

**confirmed (6)**
66:19,24 67:2
68:3 108:19 130:6

**confirming (1)**
109:1

**consent (43)**
36:18 40:19,23
41:8 45:7,8,14 46:1,
5 52:19 53:8,12,12,
21 54:15 55:8,17
61:17 79:10,20
103:8,11,14,15
104:17,23 105:7,15
109:5 110:11 111:3,
14 112:1,6,7,20
114:20 137:6,11,15,
21,24 138:5

**consenting (1)**
103:19

**consider (2)**
54:14,22

**considered (2)**
24:4 81:3

**consistent (1)**
83:21

**Consumer (8)**
10:4,7 59:24
64:13 65:2,7 119:19
120:5

**consumers (3)**
18:21 74:5 120:2

**consumer's (2)**
85:19 87:16

**contact (7)**
59:24 60:22 70:2,
3 106:24 113:4
140:13

**contacted (1)**
74:6

**contacting (1)**
110:21

**contain (1)**
35:6

**contained (4)**
33:17 35:10 73:14
95:20

**contains (1)**
127:18

**cont'd (1)**
142:1

**content (3)**
72:7 84:17,21

**continue (2)**
74:16 100:3

**continued (3)**
88:3 105:4 114:22

**continuing (1)**
65:20

**continuously (1)**
74:20

**contract (1)**

93:7

**contracts (1)**
122:7

**contractual (1)**
31:1

**Controls (1)**
75:9

**conversation (2)**
74:19 91:12

**conversations (4)**
8:23 9:9 108:13,21

**conveyed (1)**
49:4

**copies (4)**
58:8,11 143:12,14

**copy (2)**
133:10 134:10

**Corp (30)**
7:7,11 12:22 14:3
15:5 17:21 27:13,15,
19,24 28:13,17
29:12,17 30:4,7,14
31:5 32:1,4 33:1
34:2,3 38:15,18 41:7
44:13 46:16 78:15
122:8

**corporate (4)**
7:14 20:19 31:8
69:3

**Corporation (9)**
12:17,18,20,21
13:19,21 30:20
32:22 122:9

**corporations (3)**
14:15 15:2,4

**Corporation's (1)**
58:5

**Corp's (3)**
12:23 31:20 59:7

**correct (41)**

6:14 7:2 19:10
25:8 28:14 29:4,13
30:17 34:13 36:21
37:21 39:3 42:1 47:2,
8 51:2 80:20 81:4
83:8 88:23 96:5 98:1
101:3 105:10 106:15
107:22 115:3 120:22
121:4,7,9,24 127:4
136:3 137:4,17
138:1,10,16 139:10
140:7

**correction (2)**
58:21 143:6

**corrective (1)**
92:19

**correctly (1)**
16:12

**Correspondence (2)**
142:7,10

**co-signers (1)**
139:21

**costs (1)**
70:18

**Could (15)**
16:1 19:20 22:17
26:7 40:13 43:1
47:12 60:4 62:22
76:11,12,13 83:23
131:7 135:7

**counsel (10)**
3:14 4:15 8:24 9:5,
6 13:20 109:23
116:22 140:9 143:13

**counseling (7)**
38:11,18 39:2,6
46:24 51:1,10

**count (1)**
55:20

**counts (2)**

55:23,24

**couple (3)**
11:19 97:4 107:16

**course (6)**
9:1 83:5 84:18
85:1,6,8

**courses (4)**
43:13 83:17,23
84:12

**Court (12)**
3:5,22 51:19 94:6,
24 117:13 122:15
128:8 132:8 140:8,
18,22

**covered (1)**
44:20

**covers (1)**
53:10

**Credit (4)**
12:16,20 13:24
17:20

**CREDITOR/CLIENT] (1)**
66:2

**Crossing (1)**
12:4

**CRS (1)**
99:3

**current (2)**
16:10 67:5

**currently (3)**
5:1 15:23 89:18

**customer (7)**
53:23 91:4 99:5
103:13 129:15
130:12 139:5

**customers (5)**
33:19 34:24 56:19
70:14 78:23

**customer's (1)**
27:6

**cut (1)**
134:17

# D

**daily (2)**
20:3 27:2

**data (1)**
44:23

**database (11)**
34:12,15,21 35:10
36:8 37:20 38:4 48:5
91:16,24 120:11

**databases (1)**
33:1

**date (15)**
3:7 4:20 57:17
58:1 82:14 95:10
96:4,5 131:13,13,23,
23 132:1 134:9 143:9

**dates (1)**
130:10

**day (18)**
25:2 26:15 68:8,9
69:11,15,17,18
78:20 80:1,2,14 81:3,
6,9,12 106:18,21

**Dayle (1)**
3:20

**days (6)**
51:1 68:9,12,13,
16 143:19

**DE (1)**
143:23

**deal (1)**
8:20

**dealing (1)**
72:17

**debt (11)**
14:6 19:16 66:1,6,

7 70:6 72:18 73:9
119:12 138:22 139:9

**debts (3)**
14:4,10 120:5

**December (1)**
3:7

**decision (2)**
55:22 75:14

**decisions (1)**
84:22

**default (3)**
34:1 47:1 70:16

**defaulted (1)**
80:21

**defendant (3)**
119:11,18 120:22

**defendant's (1)**
71:17

**define (1)**
53:13

**definition (1)**
53:11

**definitions (1)**
53:10

**Delaware (6)**
3:10 4:24 12:2
15:9,13 21:20

**delinquency (2)**
56:19 60:18

**delinquent (6)**
30:15 38:19 47:2
51:1,9,13

**demographic (1)**
132:23

**Demographics (5)**
33:19 34:24 35:2
103:17 130:4

**denote (1)**
125:4

**Department (7)**

13:14 47:19 48:20
63:2 89:18 104:5
126:18

**departments (3)**
59:3 63:22 66:13

**depend (3)**
11:18 61:12 84:21

**depending (2)**
11:19 83:24

**depends (4)**
36:23 61:11 64:5
84:17

**depo (3)**
113:17 139:24
140:4

**deponent (2)**
3:12 141:6

**depos@wilfetcom (1)**
143:24

**deposed (1)**
41:24

**deposition (22)**
3:4,9 7:20 9:3
51:23 78:8 92:1 94:8
95:3 108:16 113:21
117:15,22 118:5
122:16 128:10
132:11 141:1,10
142:3 143:5,17

**Deposition117 (1)**
141:22

**depositions (1)**
42:7

**described (1)**
17:19

**descriptive (1)**
65:5

**design (2)**
5:21,22

**designated (1)**

32:11

**Desist (6)**
52:24 85:15,19,20
86:21 87:12

**desists (1)**
85:23

**details (5)**
24:18 90:19 116:6
119:2 127:3

**determined (1)**
23:14

**development (1)**
16:21

**dial (14)**
22:9 23:7,12,12
25:2 53:8 61:17
98:20 124:14,16,21,
24 126:3,12

**dialed (1)**
97:14

**dialer (35)**
17:14 23:22,24
24:6,17,20 27:1,1
40:20,24 41:9 45:8,
15,17 52:20 61:3
79:11,21 97:17 98:1,
6 100:2 103:9,12
105:5 111:4 112:2,8
125:11 127:8,10,13,
18,23 131:16

**dialing (9)**
22:13 23:16,17
24:14 26:5 27:3
61:10 62:8 97:23

**Dieng (1)**
115:22

**difference (1)**
124:15

**different (13)**
24:5 27:8 29:10

30:9 34:11 57:19,24
81:14 98:21 106:24
124:4 126:20,22

**differentiate (1)**
7:9

**digits (2)**
131:21 132:2

**diligent (1)**
77:6

**Dillon (15)**
3:13 4:1,9,10,19
51:23 94:8 95:3
117:15 122:16
128:10 132:11 141:6,
10 142:3

**direct (9)**
5:4 15:22 16:16
17:4 64:14 72:14
77:18 89:2,4

**DIRECTIONS (1)**
142:13

**directly (1)**
127:11

**director (3)**
16:5,20 17:1

**directs (1)**
16:7

**disciplinary (1)**
75:5

**discipline (5)**
75:10,15 76:5,7,21

**disciplined (1)**
75:24

**disclosures (1)**
19:14

**Discover (2)**
6:11,12

**discussed (1)**
97:23

**Discussion (7)**

23:2 100:18 106:9
109:23 110:1 117:8
128:4

**disposal (1)**
86:1

**distribute (1)**
143:12

**District (3)**
3:4,5 4:17

**Division (1)**
3:6

**document (38)**
51:19 53:9 59:17
72:17 86:12 87:15
94:5,11 95:7,8,10,14,
20 97:16 98:3,13,18
99:23 102:7 109:16,
18 110:6,10 117:12,
18 122:14,20 123:2,
5 125:13 128:13,16
132:9 134:2 141:11,
16,19 142:4

**documentation (4)**
88:10 92:4 97:21
139:4

**documents (7)**
58:4 94:24 102:7
121:14 122:21 133:8
142:16

**dollars (2)**
136:23,24

**done (5)**
18:5 61:20 75:17
82:24 135:14

**door (1)**
93:17

**double-check (1)**
86:1

**doubt (1)**
130:11

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

**down (5)**
  74:17 94:23
  123:21,21 134:3

**draft (2)**
  10:20 140:11

**drafted (1)**
  72:2

**due (3)**
  56:20 66:1 139:6

**DUE] (1)**
  66:3

**duly (1)**
  4:3

**during (5)**
  43:16 44:11 79:5
  89:8,16

**duties (2)**
  31:4,20

**Dyken (2)**
  42:17 114:10

**D-y-k-e-n (1)**
  42:18

**E**

**each (12)**
  12:12 32:12,15
  43:10 48:19 58:21
  72:6 83:20,22
  113:12 125:5 126:19

**earlier (11)**
  40:2 41:24 42:20
  44:4 78:14 79:14,23
  81:2 82:10 90:21
  97:24

**earn (1)**
  70:8

**ease (1)**
  6:19

**Ed (2)**

**edit (3)**
  129:21 130:3
  132:22

**educate (1)**
  10:15

**educated (1)**
  37:24

**education (9)**
  5:10,13,17 13:14
  16:14,15,16,22 47:20

**educational (1)**
  8:6

**educator (3)**
  10:14 16:11,12

**educators (1)**
  32:9

**effect (1)**
  57:15

**efforts (1)**
  63:14

**eight (12)**
  68:7,16 69:10,14,
  16,18 79:24 80:2,9
  81:2,9,11

**either (3)**
  42:9,12 62:11

**elected (1)**
  73:18

**eligible (1)**
  85:8

**else (3)**
  13:15 35:4 104:13

**else's (1)**
  19:7

**employed (10)**
  5:1,5 6:4 7:6
  16:23 17:1,16 20:13
  37:12 105:22

**employee (20)**

  7:6 29:9 33:15
  35:17 36:20 40:5
  49:16 72:12 74:18
  75:3,4,6,15 76:1,3,
  18 77:7 81:22 87:14
  105:17

**employees (30)**
  6:1 22:1,2 23:6
  32:4,6,10,15 33:14
  43:16,24 44:2,12,13
  55:6 56:11 57:4
  58:14,15,24 60:6,8
  65:4 83:12 85:15
  86:21 87:12 89:6,7,
  15

**employment (1)**
  74:14

**end (5)**
  83:5,22 84:8
  89:15 131:4

**ended (1)**
  123:11

**ends (1)**
  138:8

**engage (1)**
  74:19

**engaged (1)**
  124:8

**ensure (1)**
  19:13

**ensuring (1)**
  18:21

**entail (1)**
  18:18

**enter (2)**
  36:1,7

**entered (8)**
  25:6 61:9 62:18
  82:4 99:17 103:21
  107:19 138:8

**entering (1)**
  71:11

**entities (3)**
  34:12 63:17,19

**entitled (2)**
  141:16,19

**entries (7)**
  82:1 124:4 131:9,
  12 132:6 133:19,20

**entry (15)**
  81:17,22 123:22
  129:10,10,17,20,23
  130:2,15,18,22
  132:14 134:2 137:16

**ERRATA (7)**
  142:19 143:7,10,
  12,14,18,21

**essentially (2)**
  45:8 131:10

**estimate (1)**
  26:20

**et (1)**
  3:12

**Even (2)**
  73:9,16

**ever (10)**
  7:20 8:22 44:11
  46:5 53:19 55:15
  66:18 81:21 87:19
  108:11

**Every (5)**
  11:1 47:7 89:22,
  24 118:8

**everybody (1)**
  7:4

**everyone (1)**
  11:10

**Everyone's (1)**
  86:10

**Everything (4)**

Case 8:15-cv-01559-VMC-TBM   Document 95-2   Filed 02/26/16   Page 49 of 170 PageID 1313
McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

43:19 59:8 111:18
129:9
**exact (3)**
83:17 90:21
130:10
**exactly (9)**
10:12 21:10 22:7
24:6 28:8 49:3 90:19
93:18 106:19
**Examination (1)**
141:7
**examined (1)**
4:3
**example (10)**
55:11 56:22 63:20
64:10,12 66:13 67:1
74:14 87:22 94:3
**examples (4)**
55:1,6,15 74:10
**excellent (1)**
73:23
**excessive (10)**
68:19 69:1,8,11,
14,19 70:4 81:3,6,13
**executed (1)**
143:12
**Exhibit (26)**
51:20,23 82:11
94:7,8 95:3 98:14
117:14,15 122:15,16,
20 128:8,10 132:10,
11 141:10,11,14,16,
19,22 142:3,4,7,10
**exhibits (1)**
95:2
**exists (2)**
28:18,19
**expedited (4)**
140:10,15,17,19
**experience (1)**

38:14
**Explain (4)**
27:20 30:2 48:13
59:20
**explains (3)**
111:1,1,7
**express (4)**
40:19 52:19 112:1
137:6
**expressions (1)**
55:1
**extent (2)**
73:6 138:24

**F**

**fact (2)**
90:16 139:24
**facts (3)**
42:5 114:3 119:9
**Facts94 (1)**
141:14
**failed (2)**
87:20 90:16
**failing (1)**
75:11
**failure (3)**
75:15 76:1 77:8
**fair (5)**
45:6 72:18 73:9,
16 119:12
**familiar (16)**
38:24 48:1 52:17
59:13 64:1 72:19
73:1 86:14 87:3
90:20 116:5 117:20
122:2,7 135:21 136:5
**family (2)**
111:24 112:3
**far (2)**

5:16 18:19
**FCC (1)**
86:14
**FCCPA (1)**
119:19
**FDCPA (7)**
72:18,19 73:2,4,
13,18,19
**federal (4)**
19:5 66:4 117:23
120:4
**fee (1)**
32:21
**feel (1)**
118:19
**Fetzer (2)**
3:3 143:22
**few (3)**
9:14 20:17 77:18
**FFELP (1)**
99:8
**field (1)**
132:23
**figure (1)**
71:17
**filed (8)**
88:7,8 113:16,20
118:16 119:10,17
143:17
**filing (1)**
112:24
**fill (1)**
44:18
**financial (2)**
13:2 70:24
**find (5)**
53:11 60:22 70:3
71:22 110:22
**fine (7)**
22:4,4 52:13

76:10 100:15 101:11
133:11
**fired (2)**
77:7,15
**first (26)**
4:2 10:6,9,10
65:17,19,22,23
66:10 73:11,12 93:4,
13,16,24 94:14
95:22 101:4 102:10
103:1 106:2 122:21
126:11,14 129:10,11
**Fishers (1)**
21:20
**five (3)**
11:8 110:6,9
**five-minute (2)**
106:5 135:13
**floor (1)**
77:16
**Florida (4)**
3:5 87:1,4 119:19
**follow (1)**
83:3
**followed (1)**
90:23
**following (4)**
85:17 92:20
131:21 143:7
**follows (2)**
4:4 131:3
**follow-up (3)**
42:22 43:7 106:5
**form (128)**
4:17 9:23 11:12
14:16 17:22 18:7
20:1 21:2,9,13 22:10
23:8,18 24:2,11
26:16,21 27:4,9
28:15 29:1,15,22

30:18 31:6 32:16
34:6,16,22 35:13
36:3,9,22 37:8,15,22
38:6,12,20 39:7,18
40:9,15 42:24 45:1,
10 46:9,17 47:3,11
49:1,8,21 50:12,19
51:3,14 53:22 54:17,
23 55:18 56:16,24
57:6 59:1 60:13 61:4
62:2 64:20 65:12
66:20 67:3,12 69:20
70:22 71:5 73:5 75:7
77:20 78:21 79:18
80:3,15 81:7 83:9,15
84:5 86:16 89:9,19
91:3,18 92:2,16,24
95:16,17 98:7 104:9,
19 105:11 107:23
108:5 109:3 110:13
114:15,23 118:11,22
119:13,21 120:6,23
121:8 122:1 126:7
127:12 129:1 131:17
133:3 135:1,9,24
136:12,17 137:9
138:17,23

**formal (4)**
88:1 113:15 120:1
121:1

**former (1)**
54:5

**formerly (1)**
75:23

**Found (4)**
132:15,24 133:1,
21

**Four (7)**
5:15 11:8 21:16,
18 22:8 121:6 132:2

**frame (2)**
76:16 82:16

**Frank (2)**
3:16 6:17

**frequently (2)**
77:19 90:9

**Friday (1)**
114:8

**full (3)**
4:8 18:9 68:14

**fully (1)**
140:1

**Funds (2)**
47:16,17

## G

**Garcia (1)**
115:18

**gather (1)**
125:10

**gave (2)**
103:11 105:15

**GD00 (3)**
130:15 131:1,10

**General (5)**
12:17,19 13:21
17:20 98:24

**generic (1)**
131:2

**getting (2)**
19:8 62:12

**give (14)**
4:11 10:21,23
39:19 45:16 46:6
52:12 74:11 103:14,
15 112:1,6,7,20

**given (8)**
43:16 46:14 55:7,
12,16 83:12,19

137:24

**giving (1)**
38:21

**Glinke (2)**
72:11,13

**Glinkle (2)**
72:9,10

**goes (4)**
12:4 34:1 47:1
126:4

**going (36)**
4:11,15 6:24
17:17 19:6 22:12
24:12,13,17,24
33:23 50:7,9 51:19,
21 52:4,8 79:14 94:5,
6,23,24 95:6 99:10
100:3,4,14 113:24
117:12,13 122:14
124:23 128:7 132:8
133:17 139:23

**GOMEZ (13)**
3:18,18 24:16,24
25:8,19 71:16 96:20
100:8,12 121:16
140:10,20

**Good (6)**
4:6 8:19 9:15 46:3
74:13 104:22

**governing (1)**
143:16

**governs (1)**
85:17

**Grace (1)**
115:12

**granted (1)**
137:21

**GRC (1)**
17:13

**group (7)**

11:6,13 63:11,12,
24 98:19 136:9

**grouping (1)**
97:13

**groups (2)**
11:17 23:6

**guarantor (15)**
31:21 46:23 47:7,
13,22 48:2,4,8 50:16,
24 51:12 70:21
121:11,20,23

**guarantors (7)**
13:7,9,16 30:21
39:10 102:3 122:5

**guard (1)**
52:14

**guidance (1)**
73:12

## H

**half (1)**
28:24

**halfway (1)**
134:3

**handed (1)**
98:14

**handle (1)**
13:23

**happen (1)**
85:4

**happening (1)**
77:3

**happens (2)**
77:19 93:13

**harass (1)**
74:21

**head (2)**
4:13 89:17

**headquarters (2)**

20:19,21

**hear (8)**
4:13 10:6 75:20
77:17 108:18,21
113:4 138:4

**heard (2)**
114:2 136:7

**hearing (1)**
140:5

**Heather (2)**
105:18,22

**held (1)**
3:9

**help (1)**
89:6

**helped (2)**
5:19 97:18

**helping (1)**
56:19

**herein (2)**
4:2 73:14

**hire (1)**
11:14

**hired (3)**
5:20 11:4,9

**hiring (1)**
11:20

**history (1)**
101:19

**History128 (1)**
142:8

**History132 (1)**
142:11

**hold (2)**
8:10,14

**holding (1)**
13:1

**home (8)**
4:23 112:4 129:24
132:20,23 134:4,14

135:3

**honored (4)**
85:21,23 86:8 87:2

**Hoose (180)**
3:20,20 6:17 9:8,
23 11:12 14:16
15:14 17:22 18:7
19:6,11 20:1 21:2,9,
13 22:10,19,22 23:8,
18 24:2,11 25:4,15
26:2,16,21 27:4,9
28:15 29:1,15,22
30:18 31:6,17 32:16
34:6,16,22 35:13
36:3,9,22 37:8,15,22
38:6,12,20 39:7,18
40:9,15 41:13 42:24
45:1,10,18 46:9,17
47:3,11 49:1,8,21
50:12,19 51:3,14
53:14,22 54:17,23
55:18 56:9,16,24
57:6,22 59:1 60:13
61:4 62:2 64:20
65:12 66:20 67:3,12
68:20 69:2,20 70:22
71:5,10,19,23 72:20
73:5 75:7 77:20,23
78:21 79:18 80:3,15
81:7 83:9,15 84:5
86:16 87:8 89:9,19
91:3,18 92:2,16,24
95:12 96:16 98:7
100:6,9 101:7,12
102:6 104:9,19
105:11 107:23 108:5
109:3,24 110:13
111:17,21 112:9,13
113:1,9 114:15,23
115:4 116:18 117:4

118:11,22 119:6,13,
21 120:6,13,23
121:8,13 122:1,10
126:7 127:12 129:1
131:17 133:3,9
134:8 135:1,9,24
136:12,17 137:9,18
138:2,12,17,23
139:11 140:3,24

**hospital (2)**
74:12,13

**hourly (1)**
56:10

**hours (3)**
9:14 27:2 68:14

**household (1)**
112:1

**however (1)**
11:9

**Human (3)**
105:23,24 106:2

**hundred (8)**
12:9,13 20:17
56:18 84:24 90:11
96:15 132:19

**Hundreds (1)**
81:19

**Hurley (1)**
3:23

**Hynes (1)**
115:16

**hypothetical (1)**
33:20

---

**I**

---

**ID (2)**
99:15,17

**idea (2)**
21:24 48:3

**identification (7)**
51:24 94:9 95:4
117:16 122:17
128:11 132:12

**identified (2)**
99:22 110:15

**identify (4)**
3:14 13:16 99:20
118:4

**imagine (1)**
27:1

**immediately (1)**
43:6

**impacts (1)**
84:1

**implementation (2)**
16:8 18:17

**Inc (20)**
3:21 5:2 6:6 7:7,8,
10 14:9 28:2,4,13,16,
21,23 29:21 30:5
32:5 78:16 117:23
118:17 122:9

**incentive (3)**
56:14,15 76:14

**incentivized (1)**
57:4

**include (7)**
19:4 35:2,18 60:2
64:11 66:14 93:19

**included (1)**
127:20

**includes (2)**
59:3 86:6

**including (1)**
75:11

**incomplete (1)**
135:11

**inconvenient (1)**
74:7

**incorporate (1)**
73:18

**Incorporated (1)**
3:12

**incorporation (1)**
109:21

**Inc's (3)**
20:11 58:6 82:18

**Indiana (2)**
21:20,20

**indicate (3)**
124:14,23 134:22

**indicated (2)**
87:6 143:11

**indicates (1)**
135:2

**indicating (1)**
103:18

**individual (6)**
20:5 22:5 43:13
93:24 110:16 118:8

**individuals (2)**
60:7 136:9

**inform (3)**
41:7 48:22 51:12

**informal (5)**
88:1 91:9 120:1,
21 121:1

**information (68)**
22:18 26:24 33:2,
4,13,17 34:11,15,20
35:9 36:1,8,19 37:1,
14,17,20 40:18,22
41:2,11 46:1,7 47:18
48:3,10 59:23 60:2,
10,23 63:4 66:7
78:23 86:2 90:12
91:12 92:12 94:3,18,
20 95:19 97:15,18,
19 98:9,9 100:1

101:21 104:4 118:24
121:5 123:18 125:9,
10 126:21,24 127:6,
15,19 128:21,23
132:16 133:1,7,17,
22 134:20 139:20

**infractions (1)**
76:20

**in-house (1)**
8:24

**initial (1)**
55:5

**initiate (1)**
125:23

**initiated (2)**
96:1 125:22

**input (4)**
33:13 44:23 62:22
94:3

**inquiry (6)**
25:3,5,13,20
118:4 140:2

**instance (4)**
47:15 62:21 76:22
80:12

**instances (7)**
60:15,17 65:4
70:15 77:2 90:24
106:22

**instead (1)**
25:12

**instructed (4)**
11:1 26:1 31:16
111:12

**INSTRUCTIONS (1)**
143:1

**intake (1)**
93:23

**intent (3)**
73:11 74:20 75:1

**interact (1)**
89:7

**Interactive (3)**
26:5,10 98:2

**I-n-t-e-r-a-c-t-i-v-e (1)**
26:9

**interest (2)**
70:16 101:24

**internal (3)**
18:4 43:23 58:14

**interpret (1)**
102:7

**interrupt (1)**
6:18

**introduction (1)**
4:11

**involve (2)**
42:5,9

**involved (3)**
32:15 66:14 88:22

**involvement (2)**
19:23 42:21

**issued (2)**
76:18,23

**issues (1)**
43:5

**ITSELF (1)**
143:9

**J**

**Jack (1)**
19:19

**January (2)**
103:6 112:23

**Jason (1)**
106:6

**Jenny (2)**
16:18 44:3

**job (4)**

5:3 17:10 19:7
91:22

**John (1)**
20:7

**Johnson (3)**
16:18,23 44:3

**Joint (1)**
141:14

**judge (1)**
140:5

**July (2)**
86:22 130:19

**K**

**Kane (2)**
20:7,8

**K-a-n-e (1)**
20:9

**keep (3)**
57:8 67:17 139:24

**keeping (2)**
49:6 140:4

**Kent (1)**
115:24

**Kerney (208)**
3:16,16 4:5 6:21,
23 9:11 10:2 11:15
14:17 15:18 18:1,11
19:10,17 20:4 21:6,
11,17 22:16,20 23:5,
13,23 24:8,22 25:22
26:6,19,23 27:7,11
28:20 29:3,18 30:1,
23 31:10,13,22
32:20 34:9,19 35:1,
14 36:5,6,12 37:2,10,
18 38:2,9,16,23
39:11,21 40:12,17
41:16,22 43:2 45:5,

13,21 46:2,13,20
47:6,14 49:5,11 50:1,
15,22 51:7,17 52:1
53:16,18 54:3,19
55:4,21 56:12,21
57:2,10 58:2 59:4
60:16 61:7 62:5
64:23 65:14 66:22
67:6,16 68:23 69:9
70:5 71:2,8,21 72:1,
22 73:3,15 75:13
78:1,12 79:1,22 80:7,
19 81:10 83:11,18
84:10 86:18 87:18
89:11,21 91:8,23
92:5,18 93:1 94:10
95:5,9,13 96:18,22
97:1 98:12 100:15,
21 101:10,13 102:9
104:15 105:1,16
106:4,12 108:2,10
109:6 110:2,17
111:9,20,23 112:11,
15,21 113:6,14
114:18 115:3,9
116:20,23 117:11,17
118:13 119:1,8,15,
23 120:10,17,20
121:3,10,21 122:6,
13,18 126:9 127:17,
24 128:7,12 129:4
131:20 132:13 133:6,
11,12 134:11,18
135:6,12,20 136:2,
15,20 137:14,22
138:6,14,19 139:2,
13,22 140:7,16
**Kerney4 (1)**
    141:7
**Kim (1)**
    3:23
**kind (8)**
    6:24 33:17 52:9
    75:5 76:5 82:24
    84:15 109:11
**King (1)**
    143:23
**knew (3)**
    105:2,6 108:1
**knowing (1)**
    104:17
**knowledge (15)**
    19:22 31:9 36:24
    37:4,6 45:22 49:19
    71:3 76:17 77:18
    79:20 86:19 94:19
    109:13 121:17
**knowledgeable (1)**
    11:22
**known (3)**
    64:12 74:6,7
**knows (1)**
    37:24

## L

**labeled (2)**
    58:4 122:24
**lack (2)**
    17:18 55:2
**land (3)**
    61:13,15,19
**language (2)**
    19:2 131:3
**largely (1)**
    16:9
**last (27)**
    16:1 19:20 20:8
    65:17,19,22,23
    66:10 75:8,9 77:17
82:17,20 84:3,11,14
92:7,10 97:7 100:10,
11 116:5,24 118:3
121:6 125:3,17
**later (1)**
    36:19
**latest (1)**
    82:14
**law (3)**
    66:4 87:4 120:4
**laws (1)**
    19:5
**lawsuit (7)**
    88:8 112:24
    118:10 135:22 136:8,
    11,21
**lawsuits (9)**
    113:15,19 114:1
    116:16 118:16,20
    119:3,10,17
**lawyer (1)**
    8:23
**lawyers (2)**
    110:1,3
**lead (2)**
    6:13 22:17
**learned (1)**
    10:11
**least (1)**
    47:20
**leave (1)**
    124:23
**leaving (1)**
    64:2
**led (1)**
    104:11
**left (4)**
    65:2,10 66:18,23
**legal (3)**
    45:19 73:6 138:24
**Length (1)**
    125:3
**Lesion (1)**
    116:2
**letter (1)**
    62:13
**letters (4)**
    17:14 19:14,15
    93:22
**level (2)**
    60:18 76:9
**licenses (1)**
    8:11
**life (1)**
    8:13
**likely (1)**
    140:14
**limit (1)**
    67:22
**limitations (1)**
    40:1
**limited (3)**
    37:4,6 68:10
**line (8)**
    32:12 61:13,15,19
    67:9 113:12 142:13,
    16
**lines (2)**
    63:13,15
**LinkedIn (1)**
    7:1
**list (2)**
    7:5 123:6
**listed (7)**
    72:5 107:1,14
    109:16,19 110:6,9
**listen (3)**
    65:19,20 90:7
**listened (2)**
    9:5 113:4

**listens (1)**
90:7

**lists (1)**
107:16

**litigation (2)**
98:4 125:14

**little (7)**
19:12 65:9 71:13
78:13 93:2 96:21
134:3

**live (1)**
4:22

**living (2)**
111:24 112:3

**Lloyd (1)**
106:3

**loan (20)**
13:20 28:5 33:24
34:1 35:3 46:24 47:1,
8 48:8,9,15,22 50:16
70:21 99:6 101:15
102:1,4 121:12 122:4

**loans (18)**
13:6,8 48:11
62:16 70:11,13,16
80:21 93:7 98:24
102:4 103:22 104:2
121:18 126:18
137:17 139:6,19

**locate (1)**
36:24

**located (2)**
21:18 85:19

**location (11)**
11:24 15:20 20:16,
18 32:5,8 59:23 60:1,
9,10 118:1

**locations (5)**
14:13,14,19,20
22:6

**log (3)**
37:21 79:8 122:23

**logged (5)**
103:13 105:15
129:15 130:12,13

**logging (1)**
130:10

**Login (1)**
129:12

**logo (3)**
59:5,6,7

**logs (3)**
122:21 126:14
127:20

**long (6)**
5:5,13 6:7 9:6
90:2 125:5

**longer (3)**
28:7 87:6,14

**look (13)**
7:4 52:2,12 60:9
82:8 97:5 98:15
100:3 101:8 118:15
121:4 123:21 134:1

**looked (3)**
53:9 82:10 126:2

**looking (7)**
53:2 65:15 72:3,8
133:14,15,16

**looks (1)**
117:20

**lose (2)**
76:13,14

**lot (1)**
75:17

**lots (2)**
88:4 108:22

**Ltd (1)**
143:22

**lunch (2)**

78:2,6

## M

**ma'am (7)**
4:6 95:15 117:19
118:2 123:3 128:13
135:21

**machine (2)**
96:12 123:16

**made (33)**
22:12 26:15 47:23
49:7,17 50:17 67:23
68:13 81:22 89:22
91:9 92:7,9 98:4
101:18,21 106:17,21
120:2,22 123:6
124:10 126:6 129:21
131:14,16 132:15,24
133:18,21 137:2
139:9 142:16

**Mae (10)**
28:2,4,12,13,18
29:8,9,20 75:23
114:8

**magic (1)**
54:20

**mail (10)**
5:4 12:4 64:2
65:11 66:17,23
67:19 89:2,4 123:17

**mailroom (1)**
12:5

**main (1)**
20:22

**maintain (2)**
26:2 31:17

**maintaining (1)**
25:17

**maintains (1)**

43:23

**make (15)**
4:16 39:19 44:23
45:3 49:20 63:23
70:10 75:14 79:24
84:22 111:17,22
138:13 143:8,14

**makes (2)**
27:3 56:1

**making (2)**
19:2 35:19

**Malaki' (1)**
67:20

**manage (5)**
17:23 62:16
103:22 104:1 137:16

**managed (1)**
5:21

**management (3)**
23:21 37:24 75:18

**manager (15)**
5:4,10,14,17
16:14,15,16 43:4
44:18 72:14 88:23
89:2 90:24 91:5,5

**managers (2)**
90:7,13

**manages (3)**
17:24 18:16 33:9

**managing (2)**
5:18 18:19

**mandatory (1)**
43:7

**manual (2)**
23:12 125:19

**manually (5)**
22:9 23:7,16 67:8
110:20

**many (32)**
8:1 11:9,16 12:7,

10 13:10 14:13
20:13,15 21:7,12,24
22:1,5,8 23:24 25:1
26:14 27:8 68:9 77:2,
14 81:15 82:7 85:7
92:6,9 101:17
106:17,23 112:22
116:24

**March (1)**
140:12

**Marietta (9)**
67:18 82:2 101:1
104:7 106:14 109:17
110:7 112:23 139:19

**mark (7)**
51:20 94:6 95:1
117:13 122:15 128:8
132:9

**marked (16)**
51:24 82:11 85:14
94:9 95:4,22 98:14
117:16 122:17 125:8
128:11,22 129:17
132:12 141:10 142:3

**MARKS (1)**
143:8

**match (1)**
131:23

**material (4)**
5:22 73:14 86:5
137:5

**materials (6)**
5:23 9:4 10:20
43:15 59:10 113:22

**matter (6)**
3:10 9:16 65:18
78:18 118:10 121:24

**may (12)**
14:19 25:4 28:17
39:17,23,24 40:2,3

44:19 52:18 60:24
143:17

**Maybe (1)**
77:24

**McCaskill (10)**
3:11 33:21,24
104:8 134:23 137:7
139:9,18 141:17,20

**mean (41)**
10:19 11:3 16:6
18:2 37:3 59:16
63:16 64:8 67:24
70:2 74:8,23 93:15
94:1 95:23 96:1,8,10
97:3 98:22 99:10
101:20 123:9,12
124:7,13 125:1,19
126:10 129:14,20
130:2,18 131:1,5,12
132:5,18,21 134:7
135:7

**meaning (1)**
64:18

**means (17)**
74:9,24 95:24
96:11,14 97:8 98:17
99:13,15 123:24
124:18 125:21
129:15 131:15,18
132:22 134:13

**meant (2)**
65:16 124:20

**meet (1)**
9:6

**meeting (1)**
48:14

**member (2)**
111:24 112:3

**memory (1)**
102:8

**mentioned (1)**
87:13

**message (8)**
65:3,16,20,21,24
66:9 67:19 124:24

**messages (4)**
64:2 65:2 66:17,23

**met (1)**
9:5

**Middle (2)**
3:5 4:17

**might (5)**
8:20 52:10 62:6
76:5 96:13

**Millions (1)**
136:23

**mine (1)**
112:15

**minor (1)**
112:7

**minute (2)**
22:23 117:5

**minutes (1)**
78:2

**missing (2)**
128:23 129:6

**Mode (2)**
99:13 124:3

**moment (2)**
39:19 52:2

**money (3)**
56:23 70:8,10

**monitored (1)**
90:10

**monitoring (1)**
75:17

**month (2)**
68:18 132:1

**months (7)**
82:20 84:3,3,11,

14 92:7,10

**more (11)**
11:20 15:19 34:17
47:13 69:10 77:24
94:23 107:3 121:13
129:2 134:3

**morning (1)**
4:6

**most (4)**
8:3 82:11 84:13
140:14

**move (2)**
96:22 100:4

**Mrs (2)**
113:23 139:15

**much (2)**
77:23 136:21

**multiple (4)**
63:13,15,16
106:20

**Muncie (1)**
21:20

**must (3)**
65:4 74:5,18

**Myers (1)**
116:11

**MYL (7)**
62:17,20 105:15
129:11,12 130:6
138:9

**Myself (1)**
55:9

---

# N

**name (19)**
3:2 4:8 10:1 13:13
16:1 19:20 20:8
24:19 29:6,20 33:23
42:3,12,15 63:6,7

106:1 116:5 118:8

**NAME] (7)**

65:17,19,22,23,24
66:1,10

**named (3)**

22:9 67:9 105:18

**names (1)**

114:1

**name's (1)**

106:3

**narrative (1)**

4:18

**nature (4)**

30:2 48:6 74:15
126:6

**Navient (44)**

3:11,21 5:2,11 6:5,
15,20 7:6,7,7,8,10,
10,11 12:21,22,23
14:9 20:10 27:12,15
28:13,18,21,23
29:12,16,21 30:4
32:5 35:17 40:3 58:4,
5,6 59:6,7 75:23
78:15 82:18 117:22
118:16 122:8,9

**necessarily (5)**

4:23 14:21 22:17,
20 48:8

**necessary (1)**

143:13

**need (10)**

4:13,18 9:1 22:18
37:17,20 38:1 71:15
84:16 85:18

**needed (3)**

44:18 58:21 84:24

**needs (1)**

54:21

**Nelson (2)**

116:4,5

**net (5)**

20:11 21:1 71:17,
20 121:6

**never (5)**

46:19 54:8 76:3
109:2 137:6

**new (7)**

11:13 44:2 132:15,
24 133:1,2,21

**Newark (3)**

12:2 15:8 21:19

**new-hire (5)**

11:1,2,5 42:21
44:17

**newly (1)**

5:20

**Newsome (17)**

67:18 82:2 101:1,
18 102:11 104:7
106:18,21 107:1
109:17 110:7 112:23
113:5,23 130:5
137:24 138:9

**Newsome95 (2)**

141:17,20

**Newsome's (6)**

88:18 106:14
127:1 137:16 139:15,
19

**next (16)**

7:1 28:10 41:14
74:13 82:21 97:2
118:14 122:23
123:19 124:3 129:17,
23 130:14,14 131:7
132:2

**Noble (2)**

26:5 98:1

**nod (1)**

4:13

**non-consumer (1)**

64:14

**none (3)**

124:8 142:14,17

**non-emergency (2)**

94:15 137:3

**non-expedited (1)**

140:9

**non-known (2)**

64:17,22

**normally (2)**

97:10,11

**Nos (1)**

95:3

**NOTATIONS (1)**

143:8

**note (8)**

35:15 67:17 87:5
122:19 130:23
133:23 139:5 143:5

**noted (1)**

91:13

**notes (27)**

34:3 35:11,12
49:7,9,12,17,18,20
50:7,9,10,17 82:4,6,
7 87:17 88:17 97:21
107:9,11 112:11,14
128:17,18,22 129:6

**nothing (2)**

67:20 71:12

**notice (5)**

23:20 46:14 71:11
117:21 141:22

**notices (1)**

19:15

**notification (1)**

87:14

**notified (1)**

46:19

**NSI (163)**

6:20 7:9,15,24
10:8 12:7,19 14:13
15:1,7,11,20 16:23
17:13,17 18:5 19:18,
24 20:13,23 21:7
24:5,10 26:15 27:12,
16,19,22,24 29:17
30:8,11,13,24 31:5,
24 32:10,13,21 33:1,
11,14,15,23 34:4,21
37:12 38:4,10,18
39:5,14 40:3,5,13,18,
22 41:2,8 42:18
43:23 45:6,9,14 46:7,
14,23 47:18,21,22
48:4,7,11 49:6,17
50:6,18 51:12 54:22
58:7 59:9 61:2,8
63:3 69:17,24 70:6,8,
10 71:4,12 72:9,17
73:4,17,18 74:1
78:18,20 79:12,16
80:14,22 81:8 82:12
88:14 91:15 92:7
93:5,6,14,24 94:14
101:4 102:10,13
103:7,11 104:20
105:2 106:18 107:21
108:23 110:11,21
112:22 113:7,16,20
114:6,10,21 115:10,
12,14,16,18,20,22,
24 116:2,4,7,9,11,13
117:1 118:20 121:23
122:23 123:1,8
125:8,8,16 137:2,6,
15 138:20 141:12,12
142:5,5

**NSI190 (1)**

51:21

**NSI252 (1)**

51:22

**NSI's (11)**

13:3 31:8 43:21

52:17 59:6 64:1

80:13 103:7 104:16

111:2 121:6

**number (94)**

9:20 11:9 12:6

13:9 43:12 54:2,11

61:1,3,8,9,14,16,18

62:1,7,22 64:5,9,13,

17,18 66:4,10 67:1,7,

22,23 68:1,2,7,22,24

69:14 70:1 74:22

79:12 80:2,9 85:9

94:16 98:11 100:11

102:14,20,23 103:1,

8,12,21,24 104:7,17,

18,22 105:2,14

107:4,19,21,22

108:4,12,20 109:1,2,

7,12 110:8,15,16,18,

19,20,22,23 119:3

123:16 125:22 126:3,

5 127:20 129:24

130:3,6 133:2

134:14 137:3,7,12

138:1,8,16,21

**numbered (1)**

122:22

**numbers (17)**

35:3 60:3 62:15,

17 64:22 66:18,24

68:5 76:20 100:7

106:24 107:6,14,16,

17,18 126:2

# O

**oath (2)**

4:3 7:17

**object (128)**

4:17 9:1,23 11:12

14:16 17:22 18:7

20:1 21:2,9,13 22:10

23:8,18 24:2,11

26:16,21 27:4,9

28:15 29:1,15,22

30:18 31:6 32:16

34:6,16,22 35:13

36:3,9,22 37:8,15,22

38:6,12,20 39:7,18

40:9,15 42:24 45:1,

10 46:9,17 47:3,11

49:1,8,21 50:12,19

51:3,14 53:22 54:17,

23 55:18 56:16,24

57:6 59:1 60:13 61:4

62:2 64:20 65:12

66:20 67:3,12 69:20

70:22 71:5 73:5 75:7

77:20 78:21 79:18

80:3,15 81:7 83:9,15

84:5 86:16 89:9,19

91:3,18 92:2,16,24

98:7 104:9,19

105:11 107:23 108:5

109:3 110:13 114:15,

23 118:11,22 119:13,

21 120:6,23 121:8

122:1 126:7 127:12

129:1 131:17 133:3

135:1,9,24 136:12,

17 137:9 138:17,23

140:3

**objected (1)**

25:16

**objection (17)**

4:16,18 21:14

26:3 31:18 45:18

56:9 57:22 68:20

69:2 87:8 113:1,9

122:10 137:18

138:13 139:11

**objections (2)**

25:10,17

**obligation (1)**

48:14

**obligations (1)**

48:17

**oblige (1)**

91:5

**observed (2)**

79:4 110:24

**obtain (7)**

54:10 59:23 70:19

111:13,14 127:15

134:19

**obtained (10)**

61:1 62:10 68:2

97:16 102:13 103:2

127:7 128:19,24

133:2

**obtaining (2)**

123:18 125:12

**obtains (3)**

45:7,14 61:8

**occasion (2)**

87:19 89:10

**Occupies (1)**

14:23

**occurred (2)**

125:5,6

**occurs (1)**

93:19

**o'clock (1)**

128:5

**off (19)**

22:23,24 23:2

41:17 52:14 78:5

100:16,18 106:7,9

112:10 117:4,6,8

127:24 128:2,4

134:17 135:15

**office (12)**

11:24 15:1,7,9,11,

13 20:16,18,22

140:13 143:10,11

**offices (1)**

12:7

**official (1)**

140:11

**often (4)**

10:23 42:21 76:17

81:18

**Once (1)**

107:19

**one (29)**

5:7 15:19,21 24:4

42:12 47:13 48:19

53:11 63:5 68:9,19

69:10 72:20 75:4,5

80:12 96:17 99:17,

22 107:4 112:6,19

117:5 124:5,5

125:21 126:14 128:1

140:12

**ones (6)**

83:3 84:7,8,8,13

112:20

**online (10)**

43:13,18,19,20

62:12 83:2,21 86:4

129:16 130:4

**only (13)**

64:11 65:1,16

66:9 88:10 92:3
98:10 99:17,22
105:12 113:22 118:1
139:15

**open (2)**
139:24 140:4

**operates (1)**
33:9

**operation (4)**
18:3,4 98:23 99:2

**operations (1)**
18:5

**opinions (1)**
69:5

**opportunity (1)**
85:5

**oral (1)**
4:12

**Orange (1)**
3:9

**order (3)**
25:9 54:21 86:14

**organization (1)**
57:8

**original (2)**
107:12 143:21

**other (22)**
8:3,17 22:18 35:9
38:3,4 40:3 42:7,13
67:8 80:16 91:21
96:17 107:10,15,17
109:16 110:6 126:18
127:19 128:23
139:23

**others (4)**
5:19,20 15:6 55:3

**other's (1)**
32:15

**out (11)**
20:18 71:1,17,22

82:23 86:15 96:13
110:23 111:7 126:5
127:10

**outbound (1)**
26:14

**outreaching (1)**
59:22

**outside (5)**
19:8 24:20 69:7
71:14,23

**over (10)**
18:21 29:5 91:1,
10 101:16,16 117:12
123:19 133:17
137:10

**overall (1)**
93:3

**Oversee (1)**
17:13

**oversees (2)**
16:7 17:17

**owe (2)**
57:9 139:10

**owed (2)**
31:4 102:1

**own (5)**
32:13,14,18 49:23
73:20

**owner (6)**
48:11,15,23 50:16
70:21 72:5

**owners (3)**
48:7 93:7 122:4

---

**P**

---

**page (30)**
7:2 53:2 57:14
59:5 62:16 72:8,16,
16 74:1 85:12 94:13

99:18 103:22 104:2
106:14 118:14 123:7
129:11 131:7,10
132:14 134:2 137:17
138:9 141:6 142:13,
16,19,20 143:8

**pages (7)**
95:7 118:4 122:22,
24 125:7 126:11,14

**paid (4)**
70:20,21 71:13,14

**paragraph (3)**
65:15 72:15 73:9

**parent (1)**
12:22

**part (7)**
25:3,5 47:21 57:1
65:7 70:7 79:5

**Partial (1)**
129:18

**participated (1)**
118:9

**particular (6)**
46:7 60:19 66:14
77:10 90:19 96:2

**parties (2)**
65:3 109:16

**party (21)**
9:21 33:22 40:20,
23 41:8 45:7,15
52:18 64:12 65:8
73:11,12 85:14
86:21 87:6,12 104:8,
18 105:3 112:6,6

**pass (9)**
84:16 85:1,2,11
94:5,23 117:12
122:14 132:8

**passing (1)**
84:19

**past (5)**
23:11 55:12 56:20
66:1 139:6

**Patty (3)**
17:5,16 18:13

**pay (2)**
71:7,9

**payment (1)**
101:19

**payments (10)**
14:5,8 38:19 57:5,
9 70:15 93:21,22
101:17,20

**pays (2)**
32:21 70:12

**penalty (3)**
90:15,20,21

**Pennsylvania (1)**
21:19

**people (14)**
11:8,16,19,20
20:13,15 55:16 57:8
71:7,9 110:6,8,9,12

**per (11)**
25:2 68:7,18
69:14,14 79:24 80:2
81:5,6 106:18,21

**percent (8)**
12:9,13 56:18
84:24 85:3 90:11
96:15 132:19

**perform (1)**
30:10

**Performance (2)**
63:11,23

**period (1)**
129:8

**Permission (8)**
53:17 55:2,2 61:2
62:9,10,13,20

**person (17)**
20:23 21:5 35:22,
24 36:2 56:2 62:4,11
67:9 74:19,21 105:7,
20 111:15 112:19
116:15 131:19

**personal (2)**
65:17 69:4

**personally (10)**
44:19 53:15 58:11
76:3 79:2,8 81:16
82:17 84:2 109:9

**person's (1)**
83:24

**pertaining (1)**
77:4

**Peterson (3)**
17:5,16 18:13

**Peterson's (2)**
17:6,9

**Phil (1)**
3:2

**Phoenix (1)**
8:9

**phone (59)**
9:19,20 24:18
35:3 54:1 55:14
61:19 62:7,12,17
64:5,8,13,17,22 66:4
68:5,7 91:10 94:16
98:10 102:13 104:14
105:6,8 107:6,13,16,
17,18,22 108:1,12
110:16,19 111:4,15
112:2,2,8,10,19
123:16,16 125:22,22,
23 126:2,3 129:24
130:3 132:20,23
134:4 135:3 136:14
137:3,3,7

**phoned (1)**
134:14

**phones (2)**
11:5 58:20

**physical (6)**
11:24 12:7 14:13
15:19 20:15 21:21

**physically (1)**
126:4

**picks (1)**
126:4

**piece (1)**
133:16

**pieces (1)**
133:16

**Pioneer (6)**
12:16,20 13:24
15:5 17:14,20

**place (2)**
74:6,14

**plaintiff (7)**
3:17,19 33:21
88:12 114:19 137:13
139:17

**plans (2)**
56:14,15

**please (12)**
3:14 4:7 25:23
54:7 66:3 85:13
97:11 111:9 122:15
128:9 143:5,9

**pm (3)**
27:6 78:9 141:2

**point (11)**
28:11 38:10 39:14
43:8 51:8 54:16 57:9
58:12 62:6 67:11
134:24

**points (1)**
74:17

**policies (25)**
52:4,10 58:3,5,9,
12,16,19,23 69:22
72:3 73:20 75:2,4
76:19 77:5 82:9,12,
13,15,18,22 83:1
85:13 86:4

**policy (36)**
49:6 52:18,22,23
53:1,4 57:11,13,14,
19 58:6 59:20 64:1,4,
16 69:7,13 72:6
73:12 76:4 77:10,11
79:24 80:5,6 81:5
85:10 86:6,20 87:11
90:22 110:21 111:1,
2,5,14

**policy-and-procedure-wise (1)**
111:19

**pop (1)**
52:4

**populate (1)**
62:15

**populated (1)**
138:10

**portions (1)**
73:19

**position (6)**
10:14 75:24 76:15
89:1 103:7 104:16

**possible (3)**
40:16 80:11 133:4

**post (1)**
76:15

**potentially (1)**
60:22

**practice (2)**
67:5,5

**Practices (5)**
72:18 73:10,13

119:12,19

**Predictive (6)**
124:6,13,13,20,24
126:10

**prep (1)**
8:21

**preparation (3)**
9:3 113:16,20

**prepared (4)**
118:15,19 125:14
140:1

**prepping (1)**
9:12

**pre-recorded (1)**
124:24

**presentations (2)**
10:21,23

**presented (1)**
7:14

**president (1)**
19:18

**previously (1)**
114:20

**Prides (1)**
12:4

**principal (1)**
102:1

**print (1)**
127:10

**printout (1)**
98:5

**Prior (20)**
5:8 6:4,10 16:10
29:6 40:19 52:19
57:20,24 92:1
108:16 112:1 118:16,
20 119:10,17 120:1,
14 128:14 137:6

**prior-complaints (1)**
120:11

**probably (7)**
37:23 54:24 55:9
81:20 88:5 90:13
105:23
**Procedure (13)**
52:24 53:1 63:21
65:5 66:12 69:7 72:6
77:12 87:21 90:19,
22 117:24 143:16
**procedures (20)**
36:11,13 52:5
58:9,12,16,19 69:22
72:3 73:20 75:3,5
76:19 77:5 82:10,19,
22 83:1 85:13 87:11
**proceed (2)**
25:12 54:9
**process (6)**
51:16 61:22,24
93:3,23 94:2
**produced (5)**
9:4 111:19 115:1,
2 119:7
**Producing (1)**
18:20
**production (1)**
100:10
**professional (1)**
8:10
**profile (1)**
127:1
**promise (1)**
52:3
**properly (1)**
37:13
**Protection (2)**
10:4,7
**provide (14)**
39:2,15 40:22
41:2 46:24 47:19

65:4 66:8 73:12 93:8,
9 97:18 111:3 118:7
**provided (7)**
30:15 58:24 92:4
93:12 118:23 126:14
129:7
**provides (3)**
38:18 47:20
143:16
**provision (1)**
64:24
**provisions (1)**
73:19
**public (8)**
102:15,17 104:11
108:6 109:7,8,11,20
**pull (2)**
96:19 98:8
**pulled (1)**
126:21
**pulls (1)**
96:23
**purpose (8)**
12:23 13:3 22:14
28:6 30:3 38:24 39:2
66:8
**purposes (2)**
98:4 125:14
**pursuant (2)**
4:16 117:23
**Pursuit (1)**
50:5
**put (1)**
133:24

# Q

**question (28)**
4:14 6:18 7:1
25:23 27:20 28:10

29:2 31:12,14 34:13,
14 36:4 38:21 41:15
45:12 61:6 72:20
80:8,18 82:16 98:11
100:23,24 107:12,13
111:8,10 124:17
**questions (15)**
8:20 24:23 52:9
83:2,22 84:8 89:15
93:21 112:10 120:7,
8,9,14,15 139:23
**quite (1)**
61:22
**quiz (2)**
52:4,14

# R

**RA (3)**
130:16 131:4
132:5
**rare (1)**
48:20
**re (1)**
47:4
**reach (4)**
18:9 104:22 108:9
139:7
**reached (3)**
67:19 123:15
125:1
**react (1)**
24:19
**reaction (1)**
97:5
**read (9)**
25:22,24 31:13,15
83:5 111:10,11
113:24 137:5
**reading (4)**

64:24 112:9 143:1,
4
**ready (2)**
52:3 118:5
**really (4)**
22:13 54:14 111:7
122:20
**reason (4)**
29:19 82:14
130:11 143:6
**rebranded (1)**
29:20
**recall (32)**
9:24 10:12 12:5
14:21 42:3,12,16
44:19 45:3 55:19
76:22 77:2,7,14 83:3
84:6,7 85:9 86:12
87:20 94:12 101:6,
17 103:3 106:23
107:3 108:13 109:13
115:6 121:19 130:9
133:15
**receive (7)**
11:5 44:5 56:23
57:9 58:11 84:16
87:15
**receives (2)**
58:8 87:14
**receiving (1)**
93:22
**recent (2)**
8:3 84:13
**recess (3)**
41:19 78:6 135:17
**recognize (1)**
87:1
**record (47)**
3:2 4:8 22:21,23
23:1,2,4 33:8 41:4,

18,21 78:5,11 90:16
95:9 100:17,18,20
101:8 102:16,17
104:11 106:6,8,9,11
108:7 109:8,8,11,21
111:18,22 117:5,7,8,
10 122:19 128:1,3,4,
6 133:10 134:9
135:16,19 137:23

**recorded (3)**
65:2 89:23 90:1

**recording (4)**
67:8 108:18,24
123:15

**recordings (4)**
9:5 90:5 108:15
138:5

**records (2)**
101:9 129:7

**Recovery (3)**
12:16 13:24 17:20

**Redacted (3)**
128:22 133:8,13

**refer (9)**
6:19 7:11 38:10
39:5 40:2 52:11
59:17 63:20 97:11

**reference (1)**
6:19

**referencing (2)**
54:2 63:22

**referred (3)**
10:14 57:11
135:22

**referring (2)**
17:19 65:6

**refers (3)**
39:12 64:17 97:10

**reflect (3)**
128:16 130:5

133:1

**reflected (1)**
88:17

**refrain (1)**
64:7

**reg (1)**
83:24

**regard (3)**
9:19 44:21 63:21

**regarding (38)**
10:16 24:18 27:23
40:19 42:22 44:6
46:7 47:23 49:10
52:18 57:20 58:15,
18 59:21,23 64:2
81:15 82:22,24
84:22 85:10 86:15
94:2 97:22 105:21
110:22 114:13
116:16 118:16,20,20
119:10,17,24 120:19
121:6,18 127:19

**regards (9)**
10:13 11:22 13:7
19:16 44:15 75:2
77:11 98:18 102:4

**registered (1)**
110:23

**regulatory (3)**
43:9 58:22 83:17

**related (3)**
68:5 113:22
114:16

**relating (2)**
120:4 121:14

**relationship (2)**
30:3 31:1

**relayed (1)**
79:15

**remark (1)**

131:19

**remember (1)**
115:4

**Remondi (3)**
19:19,22 20:6

**R-e-m-o-n-d-i (1)**
19:21

**repeat (3)**
39:22 47:5 111:8

**repeatedly (1)**
74:20

**rephrase (5)**
31:11 34:7 45:11
61:5 124:17

**report (8)**
18:12 27:12,15,19,
22 47:22 72:13
127:10

**reporter (15)**
3:23 25:24 31:15
51:20 94:6 95:1
111:11 117:13
122:15 128:8 132:8
140:8,18,22 142:20

**reporting (1)**
48:1

**represent (2)**
130:22 131:22

**representative (4)**
7:15,24 31:8 69:4

**represented (1)**
137:12

**Request (4)**
52:24 57:13 87:2,
16

**requested (6)**
88:2,14 92:21
129:8 134:5 135:7

**requests (7)**
57:20 85:15,19,21

86:8,22 142:16

**require (4)**
85:20,22 86:7 87:1

**required (8)**
19:2,15 43:9
50:24 84:12 85:11
87:5 91:1

**requirements (3)**
48:18 58:22
112:18

**requires (1)**
66:4

**resolution (1)**
99:5

**resolve (1)**
56:19

**resources (7)**
43:18,24 86:1,3
105:23,24 106:2

**responds (1)**
92:14

**responses (1)**
4:12

**responsibilities (13)**
5:16 17:10,12
18:10,15 19:7 24:5
32:19 48:12,14,16
49:3 91:22

**responsibility (3)**
23:15 27:22 67:14

**responsible (2)**
67:10 72:7

**rest (2)**
65:20 134:20

**restate (1)**
31:12

**result (2)**
96:9 97:6

**resumed (1)**
78:8

**retained (1)**
  3:3
**retake (2)**
  85:6,8
**retest (2)**
  85:5,6
**return (3)**
  143:10,18,21
**Revenue (6)**
  12:17,19 13:21
  17:21 71:4,7
**review (14)**
  81:24 88:7 91:24
  98:9 106:13 107:5,8,
  11 108:15 113:15,19
  121:14 130:8 139:4
**reviewed (14)**
  9:4 80:4 86:20
  88:10 92:3 100:23
  103:17 105:13
  120:12,21,24 126:1
  128:13 139:15
**reviewing (2)**
  87:10 133:8
**revocation (5)**
  54:15,22 55:7,17,
  24
**revoke (1)**
  52:18
**revoked (3)**
  46:4 79:20 114:20
**revokes (3)**
  40:23 41:8 79:10
**revoking (1)**
  53:21
**Right (2)**
  14:24 115:1
**ring (1)**
  74:18
**RN (1)**

**132:5**
**Robert (3)**
  72:9,10,11
**role (6)**
  5:7,8,18 16:10
  83:24 84:1
**roles (1)**
  75:23
**room (1)**
  74:13
**rows (2)**
  123:21 124:12
**Rule (2)**
  117:23 143:16
**rules (1)**
  4:17
**rusty (1)**
  96:13

---

# S

**S/T (1)**
  123:23
**SAC (41)**
  12:19 30:10,15
  31:2 32:10,13 34:21,
  23 36:20 37:6 38:4,
  11 39:5,12,15 40:1,7,
  13,19,22 41:3 44:22,
  22 45:9,15,16 46:3,6,
  24 49:16,19 50:8
  58:24 59:3,10 69:18
  78:19 79:12 81:11,
  22 113:7
**SAC's (3)**
  38:24 46:11 69:21
**safe (1)**
  108:23
**said (15)**
  14:12 18:16 41:24

**54:7,13 66:12 67:18**
  73:24 79:14 80:17
  90:21 100:23 109:7
  124:19,20
**Sallie (10)**
  28:2,4,12,13,18
  29:8,9,20 75:23
  114:8
**Same (27)**
  21:14 23:11 32:4,
  5,8,8,9 34:4 40:14
  50:8 58:23 69:18
  72:16 78:19,19
  80:13,14,22 81:12
  83:14,17,17 111:24
  112:3 133:16,16
  140:23
**saw (6)**
  7:1,5 82:6,7
  101:22 137:20
**saying (7)**
  16:11 25:9 37:7
  46:5 56:4 64:7 83:5
**scan (1)**
  91:19
**scenario (2)**
  36:14 54:4
**scenarios (1)**
  115:7
**schedule (3)**
  43:12,14 82:23
**scheduled (1)**
  82:21
**Schwartz (1)**
  115:10
**scope (8)**
  19:8 22:14 23:19
  28:8 71:11,15,24
  91:21
**score (3)**

**84:15,23 85:3**
**scored (5)**
  83:7,13,19 84:4,15
**screen (1)**
  107:13
**screens (5)**
  107:5,7,10,15
  130:8
**script (3)**
  65:10,13 66:15
**second (10)**
  26:7 65:7 72:15
  73:8 94:13 96:4
  98:13 99:18 126:15
  128:1
**section (4)**
  53:10 74:2 85:14
  130:14
**seeing (1)**
  106:23
**sees (1)**
  43:4
**selected (2)**
  80:9 126:3
**self-populated (1)**
  104:1
**send (2)**
  38:10 50:24
**sending (2)**
  38:14 93:22
**senior (1)**
  16:4
**sent (1)**
  51:9
**sentence (2)**
  94:14 134:16
**separate (5)**
  28:12 60:6 91:16
  122:20 126:13
**separately (1)**

95:1

**service (7)**
13:5 30:11 63:6
70:11 93:19 102:11
122:3

**servicer (2)**
31:1 40:3

**servicers (3)**
30:22 39:10 40:4

**services (5)**
39:16 46:23 47:1
63:3 99:5

**servicing (7)**
13:4 33:24 70:12
93:3,14,20 101:5

**session (1)**
11:10

**set (4)**
60:19 85:9 100:13
126:11

**sets (2)**
72:2 122:21

**settled (1)**
136:21

**seven (4)**
6:16 10:10 68:13,
16

**several (3)**
14:20 29:10 131:9

**shake (1)**
4:12

**share (8)**
15:1,7,11 33:1
34:21 47:17 53:4
113:7

**shared (12)**
14:14 31:23 34:11,
15 38:3 45:9,15 46:1
48:1,4,5,10

**shares (1)**

40:18

**Shaw (1)**
115:14

**sheet (6)**
143:7,10,13,14,18,
21

**SHEET/DEPONENT'S (1)**
142:19

**shifts (1)**
27:8

**short (1)**
41:14

**showed (2)**
107:6 130:9

**shows (2)**
57:17 107:17

**side (1)**
46:11

**sign (1)**
143:9

**SIGNATURE (1)**
142:19

**signed (1)**
143:18

**SIGNING (1)**
143:1

**Similar (2)**
126:11 136:10

**simple (1)**
24:23

**sister (14)**
12:11,14 14:14,21
15:2,8,12 18:6 19:23
30:6 70:18 80:13,16,
23

**site (2)**
12:12 43:24

**sits (1)**
11:10

**situation (1)**

33:20

**six (8)**
6:15 10:9 82:20
84:2,3,11,14 131:21

**skill (1)**
60:19

**skip (17)**
59:14,16,21 60:5,
7,22 61:1,8 62:1
63:4 64:19 67:1 68:2
102:20,22 133:2
138:15

**skip-traced (5)**
62:6,15,22 67:23,
24

**Smyrna (1)**
4:24

**software (2)**
24:10,14

**Solutions (23)**
3:11,21 5:2,11 6:5,
15,20 7:7,8,10 14:9
20:10 28:21,23
29:21 30:5 32:5 58:6
78:15 82:18 117:22
118:17 122:9

**somebody (3)**
46:4 53:19 117:1

**someone (18)**
19:7 24:23 35:21
36:15 40:2 54:6,7
55:24 64:14 76:23
77:14 104:13 106:2
125:1 126:4 127:14,
23 134:23

**something (5)**
26:12 75:20,20
98:5 126:5

**Somewhere (1)**
8:16

**sorry (8)**
39:20,22 65:6
72:22 83:16 113:18
134:11 136:5

**sort (1)**
93:3

**sounds (1)**
116:5

**space (3)**
15:1,7,11

**speak (4)**
46:22 54:21 55:23
105:20

**speaking (1)**
62:11

**special (1)**
26:13

**specific (14)**
9:20 15:15 23:6
28:17 34:18 52:11
54:1 60:20 77:5
87:22 90:3 98:10,20
129:3

**specifically (4)**
18:18 25:14 76:8
93:11

**specifics (1)**
119:3

**spell (4)**
16:1 19:20 20:8
26:7

**spelled (1)**
96:12

**spelling (1)**
26:13

**spells (1)**
111:7

**spent (1)**
9:12

**spirit (1)**

73:21

**split (2)**
28:12,18

**spoke (6)**
40:1 44:3 88:13
134:23 135:4,5

**spreadsheet (1)**
95:18

**staff (1)**
10:15

**stamp (2)**
51:21 122:23

**stamped (7)**
72:9,16 74:1
123:1,7 141:11 142:4

**stand (1)**
99:4

**standards (4)**
75:12,16 76:2 77:9

**stands (1)**
50:4

**start (3)**
36:16 52:8 95:6

**state (8)**
4:7,20 13:17 19:5,
13 88:5 120:4 131:10

**stated (1)**
79:23

**statements (2)**
38:22 93:20

**States (11)**
3:4 74:17 80:5
85:20,22 86:7,8,11
87:3 104:14 134:3

**stating (1)**
88:1

**Status (6)**
95:11,11 96:7
97:3,3,6

**step (2)**

93:16,18

**steps (2)**
85:17 108:3

**still (5)**
8:14 16:23 17:1
70:16 79:12

**stipulates (1)**
94:15

**stipulation (7)**
22:11,15 24:13
25:6,18 68:11 141:14

**stop (4)**
24:12 55:13 88:15
90:17

**stopping (1)**
25:12

**stored (8)**
34:4 35:12 49:12
90:2,4 91:11,17
97:19

**strategist (1)**
16:4

**Street (2)**
3:9 143:23

**strictly (2)**
64:17 137:15

**strike (2)**
84:19 103:20

**structure (1)**
24:6

**struggles (1)**
43:5

**Student (28)**
12:16 13:6,18,20
14:3 15:5 27:18,23
28:5 30:4,7,14,20
31:5,20,24 32:3,22,
24 34:1,3 38:14,17
41:7 44:12 46:15
78:14 122:8

**subject (2)**
75:10 118:9

**submit (1)**
70:14

**submitting (1)**
103:19

**subsequently (2)**
62:23 69:17

**subsidiaries (1)**
12:21

**substance (1)**
9:9

**Success (1)**
123:12

**Successful (1)**
129:12

**sued (1)**
117:1

**suited (1)**
20:24

**summarize (1)**
59:19

**supervising (1)**
76:4

**supervisor (4)**
15:22 16:17 17:4
91:1

**support (4)**
17:13,24 18:3
63:13

**suppose (1)**
85:2

**sure (28)**
12:9,13 14:12
15:6 16:22 17:7 19:2
20:14 26:12 39:19
41:16 47:7 56:18
57:1 61:22 62:18
72:14 75:19 79:15
88:5 90:11 92:17

96:15 127:16 132:4,
19 133:5 135:10

**swear (1)**
3:23

**sworn (1)**
4:3

**synopsis (1)**
29:13

**system (55)**
24:9 25:1 26:5,7
33:4,7,8,10,13,16,18
34:4,5 35:16 36:2,11,
21,24 37:5,7 38:5
41:4,5 44:22,24
49:23 50:2,5,10
58:14 62:7 78:14,16
79:3,8 81:15,24
91:13,14 97:20,23
100:24 107:1 121:22
127:2,9 129:16
130:15,21,22,24
131:10,15 133:19,23

**systemically (2)**
46:12 61:20

**systems (2)**
91:21 126:22

---

**T**

---

**taking (2)**
93:21 117:21

**talk (5)**
91:6 93:2 116:15
135:13 139:16

**talked (2)**
78:13 112:22

**talking (1)**
56:2

**talks (1)**
89:24

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

**Tampa (1)**
  3:5
**Tav (4)**
  3:18 96:23 100:3
  135:13
**TCPA (17)**
  10:3,11,16,24
  11:22 42:5,10,23
  43:16 44:7 86:15
  114:14,17 117:2
  118:18,21 136:16
**team (23)**
  5:22 6:13 16:7,8
  18:16,17 24:7 27:1,3
  41:12 55:9 75:18,18
  88:20 89:6 90:6,14
  97:17 100:2 113:8
  125:11 127:13,23
**teams (3)**
  18:19 23:22,24
**Telephone (8)**
  10:4,7 60:2 66:10
  74:18,19 94:16
  114:13
**tells (3)**
  24:17 99:1,6
**ten (1)**
  123:21
**term (3)**
  17:18 22:4 59:13
**terminated (4)**
  77:8 134:4,15
  135:4
**termination (2)**
  75:11 76:6
**test (2)**
  84:15 85:8
**testified (5)**
  4:4 42:20 71:20
  81:2 120:24

**testify (9)**
  31:7 69:3,23
  115:5 118:19 119:9,
  16,24 139:12
**testifying (1)**
  69:21
**testimony (1)**
  69:12
**testing (2)**
  82:22,24
**tests (3)**
  83:13,13,19
**thanks (1)**
  95:12
**their (31)**
  24:6 28:6 32:18
  37:24 40:2,23 41:8
  43:4,16,23,24 46:4
  49:22 50:2,7,9 52:19
  53:21 55:2,17 56:19
  70:14 74:12,14
  76:13,14,14 79:10
  84:1 104:14 120:3
**themselves (1)**
  3:15
**theory (2)**
  36:1 40:14
**there (70)**
  5:3 7:4 11:8 12:3
  13:10 15:19 23:6
  24:1 25:8 26:12
  27:21 28:17 29:2,14,
  16 31:23 35:12
  36:17 38:3 42:22
  43:7,15 46:14 47:12
  48:5,10 52:23 54:20,
  24 55:6,15 57:19,24
  60:6 62:21 65:7
  67:22 68:24 70:15
  71:12 74:2 75:19

  82:4 83:19,23 86:19,
  23 87:19 90:24
  91:16 93:23 94:2,14
  95:22 99:22 101:20
  105:21 107:3,10,15
  109:15 112:12 124:5
  126:13,18 129:5,21
  132:2,22 139:4
**therefor (1)**
  143:6
**They (95)**
  11:4,4,5 13:20,23
  14:5,6,8,8 23:11
  24:19 28:8,9 32:11,
  14,18 33:3 34:2
  35:22,23 36:7,10,15,
  18,24 37:4,16,17,19,
  20,21 38:1 39:17,23,
  24 40:2 41:4 42:8
  43:4,5,18 46:4 47:19
  49:18,20,22 53:6,7,
  20,24 54:2,6,7 55:13
  56:13 57:9 58:13,18,
  20 60:24 62:18,20
  67:13,14,17 69:22,
  22 74:10,11,14,16
  75:10,20,21 76:11,
  12,13 80:21 87:6,14,
  15 88:5 89:13 90:9
  92:14,22 93:8,9,20
  97:5 110:10 126:1,
  17 127:15 131:23
**thing (1)**
  93:13
**things (6)**
  25:2 52:11 55:16
  70:17 88:5 120:8
**think (28)**
  10:14 12:10,12
  19:8 20:7 21:12,15

  22:12 23:19 24:16
  25:2,11,20 35:9 62:4
  68:18,21 69:1 71:15
  75:21 77:17 99:5
  100:10 106:1,2
  120:24 134:16,16
**third (7)**
  64:12 65:3,8 96:7
  104:8,18 105:3
**third-party (5)**
  13:23 14:2 43:21
  80:12,23
**third-to-last (1)**
  134:1
**though (3)**
  73:9,17 97:5
**thought (2)**
  135:11 137:12
**thousands (1)**
  136:23
**Three (3)**
  8:2 95:7 118:3
**threshold (1)**
  51:6
**thresholds (2)**
  68:4,6
**times (13)**
  8:1 69:10,17,18
  77:14 81:11,16,19
  85:7 112:22 116:24
  130:10 138:21
**title (5)**
  5:3 16:3,13,19
  17:6
**today (16)**
  4:7,12 6:19 7:14,
  18 8:4,15,20 24:15
  28:22 104:6,16
  119:7,16 128:14
  136:11

**Today's (7)**
3:7 9:3 92:1
108:16 113:16,21
118:5

**together (1)**
11:11

**told (5)**
53:23 55:20 110:4
120:13,18

**tomorrow (2)**
140:6,14

**top (6)**
57:14 58:3 59:5
72:5 123:7 132:14

**topics (4)**
44:19 120:9,15,16

**total (5)**
26:18 69:18 99:23
101:14 119:3

**totaling (1)**
81:12

**trace (2)**
60:22 63:4

**traced (6)**
62:1 64:19 67:1
102:20,22 138:15

**tracing (9)**
59:14,16,21 60:5,
7 61:2,9 68:3 133:2

**train (3)**
32:9 44:12,15

**trained (8)**
5:19 23:11 32:4
37:13,16 58:15,18
79:2

**trainer (5)**
6:5,7 10:15 32:12
45:23

**trainers (2)**
32:13,14

**training (36)**
5:19,23 6:1 10:20
11:5,6,10 16:21 17:2,
15 42:21,22 43:7,9,
11,17 44:1,6,6,12,17
45:3 54:5 55:5 79:4,
4,6 82:17 83:21 84:2,
4 86:4 89:5,7,8,14

**transcribed (1)**
143:17

**transcript (3)**
140:9 143:4,9

**Trial (1)**
140:12

**true (2)**
113:7 138:20

**truth (1)**
7:18

**try (5)**
25:1 54:10 60:9
106:5 108:8

**trying (8)**
34:10 52:14,15
57:8 71:17,22 106:1
139:6

**turn (8)**
51:18 85:12 94:13
98:13 118:3,14
125:16 131:7

**Turning (1)**
82:9

**TW50 (1)**
129:11

**Two (13)**
8:5 28:12 30:9
42:1,7 74:17 94:23
117:1 122:20 124:4
126:13,19 128:5

**two-digit (3)**
131:24,24 132:1

**type (7)**
62:14 64:5,8
98:24 99:6 125:17,20

**types (4)**
76:7 84:9 124:4
126:13

**Typically (1)**
32:11

## U

**ultimately (4)**
18:17 24:4 44:3
62:19

**unclear (1)**
19:3

**under (8)**
7:17 25:10,20
66:16 75:9 87:11
123:22 125:19

**understand (22)**
7:13,17 8:19
25:15 30:10 34:10
38:17 52:10,15 65:1
79:23 83:6 104:13
111:15,20 112:5,18
116:20 125:11 136:8,
13,18

**understandable (1)**
18:23

**understanding (25)**
9:16,18 13:1 19:9
28:11,22 30:13,19
31:19 41:1 45:20,22,
24 46:21 48:13
50:23 56:3 63:12
102:15 104:10,21
124:1 125:15 126:17
127:8

**Understood (3)**

31:10 66:17
105:13

**undertaken (1)**
61:24

**United (1)**
3:4

**University (1)**
8:9

**unredacted (1)**
133:10

**unscored (1)**
83:13

**until (1)**
140:12

**up (11)**
7:4 25:10 63:23
68:7 75:10 79:24
96:19,23 100:10,13
140:5

**update (3)**
36:11 41:4 53:7

**updated (1)**
44:5

**updates (1)**
86:20

**upload (2)**
50:7,9

**upon (2)**
60:18 62:9

**up-to-date (1)**
82:12

**URL (1)**
63:9

**USA (2)**
47:16,17

**use (5)**
17:17 33:23 63:3
79:2,8

**used (3)**
24:10 66:8,15

Min-U-Script®
Wilcox & Fetzer Ltd.
www.wilfet.com
(302) 655-0477
(172) Today's - used

**uses (2)**

78:15 121:23

**using (17)**

40:20,24 41:9

45:7,15,16 52:19

61:3 73:13 79:11,12

103:8,12 105:4

111:4 112:2,8

**usually (2)**

77:16 111:5

**utilizing (1)**

82:12

## V

**values (1)**

107:17

**Van (180)**

3:20,20 6:17 9:8,

23 11:12 14:16

15:14 17:22 18:7

19:6,11 20:1 21:2,9,

13 22:10,19,22 23:8,

18 24:2,11 25:4,15

26:2,16,21 27:4,9

28:15 29:1,15,22

30:18 31:6,17 32:16

34:6,16,22 35:13

36:3,9,22 37:8,15,22

38:6,12,20 39:7,18

40:9,15 41:13 42:24

45:1,10,18 46:9,17

47:3,11 49:1,8,21

50:12,19 51:3,14

53:14,22 54:17,23

55:18 56:9,16,24

57:6,22 59:1 60:13

61:4 62:2 64:20

65:12 66:20 67:3,12

68:20 69:2,20 70:22

71:5,10,19,23 72:20

73:5 75:7 77:20,23

78:21 79:18 80:3,15

81:7 83:9,15 84:5

86:16 87:8 89:9,19

91:3,18 92:2,16,24

95:12 96:16 98:7

100:6,9 101:7,12

102:6 104:9,19

105:11 107:23 108:5

109:3,24 110:13

111:17,21 112:9,13

113:1,9 114:15,23

115:4 116:18 117:4

118:11,22 119:6,13,

21 120:6,13,23

121:8,13 122:1,10

126:7 127:12 129:1

131:17 133:3,9

134:8 135:1,9,24

136:12,17 137:9,18

138:2,12,17,23

139:11 140:3,24

**variations (1)**

123:14

**variety (1)**

88:4

**vary (1)**

43:1

**Verbal (15)**

74:2 76:12,18,23

85:15,18,20,22

86:21 87:2,12,16

109:5 137:23 138:5

**verbally (3)**

108:11,24 109:2

**verify (1)**

62:1

**version (3)**

96:12 118:1

126:19

**versions (1)**

126:20

**versus (5)**

3:11 42:18 61:19

64:13 102:1

**via (4)**

61:1,8 68:2 133:2

**video (2)**

3:4,8

**VIDEOGRAPHER (19)**

3:1,3,22 22:24

23:3 41:17,20 78:4,

10 100:16,19 106:7,

10 117:6,9 128:2,5

135:15,18

**videotape (1)**

117:22

**view (5)**

37:14,17 49:17

50:17 78:16

**viewed (2)**

81:16 109:8

**violate (1)**

76:4

**violates (1)**

75:4

**violation (1)**

76:19

**violations (8)**

114:14 117:2

118:17,21 119:11,18

120:4 136:16

**voice (7)**

64:2 65:11 66:17,

23 67:8,19 123:17

**VP (1)**

17:7

## W

**walk (1)**

54:4

**wanted (1)**

87:7

**Ward (1)**

116:7

**warning (5)**

76:12,12,13,18,24

**way (5)**

46:22 51:22 54:11

73:24 123:10

**ways (1)**

71:13

**web (1)**

137:17

**website (8)**

43:21 62:13 63:7,

8,9 103:13,16 129:16

**websites (2)**

43:22 63:3

**week (6)**

68:9,12,13,17,19,

22

**weeks (2)**

8:5 42:1

**weren't (1)**

14:12

**whatever (2)**

19:14 37:19

**What's (8)**

12:3 23:20 34:13

42:15 89:1 93:13,16

124:15

**who's (2)**

22:13 35:5

**Whose (4)**

55:22 58:3 105:7

McCaskill v.
Navient Solutions, Inc.

Cheryl A. Dillon
December 29, 2015

112:19

**Wilcox (2)**
3:3 143:22

**Wilkes-Barre (1)**
21:19

**Willie (9)**
33:21,24 67:19
104:8 137:7 139:9,
18 141:16,19

**Wilmington (6)**
3:10 12:5 15:12,
20 20:22 143:23

**wireless (1)**
110:22

**wish (2)**
53:7 87:15

**within (17)**
19:15 20:23 22:13
24:4 49:2 59:9 60:12
73:21 76:15,23 80:5
82:20 84:3,11 92:7,9
143:18

**without (1)**
75:1

**witness (143)**
3:24 4:2 9:24
11:13 15:16 17:23
18:8 19:13 20:2 21:4,
10,15 23:9,21 24:3
25:23 26:4,17,22
27:5,10 28:16 29:16,
23 30:19 31:11,19
32:17 34:7,17,23
36:10,23 37:9,16,23
38:7,13 39:8,20
40:10,16 43:1 45:2,
11,24 46:10,18 47:4,
12 49:2,9,22 50:13,
20 51:5,15 53:17,23
54:18,24 55:19

56:10,17 57:1,7,23
59:2 60:14 61:5 62:3
64:21 65:13 66:21
67:4,13 68:21 69:6
70:1,23 71:6 73:1,8
75:8 77:21 78:22
79:19 80:4,16 81:8
83:10,16 84:6 86:17
87:10 89:10,20 91:4,
19 92:3,17 98:8
104:10,20 105:12
107:24 108:6 109:4
110:14 111:13
112:17 113:3,11
114:16 115:6 116:21
118:12,23 119:14,22
120:18 121:2,9,19
122:2,12 126:8
127:13 129:2 131:18
133:4 134:13 135:2,
10 136:1,13,18
137:11,20 138:4,18
139:12 140:1

**Wooler (1)**
3:2

**word (3)**
53:12,13 130:21

**words (2)**
8:17 54:20

**work (14)**
5:9,13 6:7,10 12:1
20:15,18 22:2,5
27:23 28:7,22 30:7
56:15

**worked (4)**
5:10,21 29:7 30:14

**working (3)**
10:8 16:11 29:10

**works (7)**
30:20 35:21 46:11,

22 48:7 70:24 94:4

**world (1)**
46:22

**worth (5)**
20:11 21:1 71:18,
20 121:6

**Wrapup (3)**
123:8,19,22

**writing (2)**
91:10 120:2

**written (8)**
16:8 18:20,20
25:6 62:14 76:13
86:6 91:19

## Y

**year (14)**
5:7 6:9 28:24 29:5,
11 42:8 43:10 58:21
83:20,22 84:13
86:15 131:24,24

**years (5)**
5:15 6:15 10:10
117:1 121:7

**yesterday (1)**
9:14

**Young (1)**
116:13

**yourself (3)**
7:5 79:8 116:17

## Z

**zero (1)**
70:3

**zone (1)**
27:6

## 0

**010715 (1)**
134:12

**020414 (1)**
129:11

**072814 (1)**
130:15

## 1

**1 (10)**
34:15 51:20,23
82:11 122:22,24
130:16 131:11,22
141:11

**1:04 (1)**
100:16

**1:08 (1)**
100:19

**1:15 (1)**
106:7

**1:26 (1)**
106:10

**1:42 (1)**
117:6

**1:45 (1)**
117:9

**1:59 (1)**
128:2

**10:19 (1)**
22:24

**10:23 (1)**
23:3

**10:43 (1)**
41:17

**10:54 (1)**
41:20

**100 (1)**

85:3

**11:43 (2)**
78:4,7

**11:45 (1)**
78:2

**111 (1)**
107:16

**11-Z (1)**
107:17

**12 (1)**
92:7

**12:30 (1)**
78:3

**12:34 (2)**
78:9,11

**1201 (1)**
3:9

**1327 (1)**
130:16

**1330 (1)**
143:23

**140728 (1)**
130:16

**144 (1)**
142:19

**145 (1)**
142:20

**14-CV-1741 (1)**
114:6

**14-CV-588 (1)**
114:8

**14-CV-741 (1)**
114:10

**15-CV-103 (1)**
115:24

**15-CV-141 (1)**
116:9

**15-CV-1496 (1)**
115:12

**15-CV-1817 (1)**

115:10

**15-CV-1820 (1)**
115:22

**15-CV-2028 (1)**
115:14

**15-CV-2293 (1)**
115:20

**15-CV-2510 (1)**
115:18

**15-CV-296 (1)**
116:11

**15-CV-58 (1)**
116:13

**15-CV-60903 (1)**
116:4

**15-CV-713 (1)**
115:16

**15-CV-7224 (1)**
116:2

**15-CV-931 (1)**
116:7

**16 (4)**
69:18 81:6,12
118:15

**17 (1)**
119:10

**18 (1)**
119:17

**19 (2)**
120:1,19

**190 (4)**
72:9,21,22 141:12

**191 (1)**
74:1

**193 (1)**
75:9

**194 (1)**
72:23

**195 (2)**
72:17,21

**19801 (1)**
143:23

**1st (3)**
85:14 86:20 87:11

---

## 2

**2 (4)**
20:5 94:7,8 141:14

**2/12/70 (1)**
4:21

**2:09 (1)**
135:15

**2:20 (1)**
135:19

**2:26 (1)**
141:2

**20 (1)**
11:20

**2014 (5)**
57:15,21 103:6
112:23 130:20

**2015 (2)**
3:8 86:22

**2016 (1)**
82:23

**210 (2)**
53:3 57:12

**211 (2)**
85:12 87:13

**214 (2)**
59:2 63:20

**215 (1)**
59:18

**222 (2)**
64:10,16

**223 (1)**
64:11

**24 (1)**
92:10

**240 (1)**
68:18

**240.8 (1)**
68:18

**249 (5)**
94:15 137:2
138:21 139:5,8

**25251 (1)**
141:12

**27 (2)**
71:16 121:4

**28 (1)**
130:19

**29th (1)**
3:7

---

## 3

**3 (7)**
25:13,21 95:2,4,7,
10 141:16

**30 (1)**
143:19

**302-655-0477 (1)**
143:24

**30b6 (1)**
117:24

**30e (1)**
143:16

**3197 (6)**
100:9 122:23
123:8 125:8 126:15
142:5

**3200 (3)**
122:23 125:8
126:15

**3201 (3)**
123:1 125:16
126:15

**3205 (3)**

100:11 123:1

126:16

**3205122 (1)**

142:5

### 4

**4 (6)**

95:2,4 98:14,14

122:22 141:19

**45 (1)**

78:2

**4th (1)**

140:21

### 5

**5 (4)**

117:14,15 122:24

141:22

**56 (2)**

68:17,19

### 6

**6 (3)**

122:15,16 142:4

**60 (1)**

51:1

**6140 (13)**

103:12,21,24

104:6,17 107:19

108:4 123:6 130:6

138:1,8,16,20

### 7

**7 (3)**

128:8,10 142:7

**727581-6140 (1)**

94:17

**727-581-6140 (4)**

102:14 103:8

137:4,8

### 8

**8 (5)**

57:15,21 132:10,

11 142:10

**8:00 (1)**

27:5

**80 (2)**

84:24 85:3

### 9

**9:00 (1)**

27:6

**9:58 (1)**

3:8

**90 (2)**

84:24 85:3

# NAVIENT.



Policy

| Title: First Party Collection Practices Policy | |
|---|---|
| Department: Collections/Default Aversion | Owner/Contact: Robert Glinke |
| Approval Date: 05/01/2014 | Reference # 1398 |
| Last Review Date: 04/24/2014 | |

## Purpose

Generally, persons who are subject to the Federal Fair Debt Collection Practices Act (FDCPA) and similar state debt collection laws are considered "third party debt collectors." Collectors who are otherwise exempt from the FDCPA are considered "first party debt collectors." This policy provides guidance for any employee engaging in first party collection activities. Although they are exempt from the FDCPA, these collectors must comply with the Dodd Frank Act's prohibitions against unfair, deceptive and abusive acts and practices (UDAAP). In addition, 1st party debt collectors must comply with applicable state laws.

Even though the Fair Debt Collection Practices Act does not apply to first party collectors, it is the intent of this policy to provide guidance to first party collectors on best practices using the FDCPA as a basis for the material contained herein.

## Applicability

The guidance in this policy applies to all Navient companies performing first party collection activities. For any calls that are handled by Servicing that are delinquent, the agent must follow appropriate servicing departmental procedures. Business units should consult with Legal to determine if any new collection activity they perform is considered first party collections. For State Law requirements, please reference applicable departmental procedures.

## Policy

Collection activities must comply with the requirements outlined in each section. It is also important to note that local or state guidelines, other applicable regulations or client requirements may be stricter than the guidelines outlined in this policy and must be followed. To the extent these state guidelines, regulations or client requirements are applicable, they should be documented in departmental procedures.

The Higher Education Act, if applicable and its implementing regulations will prevail to the extent that there is a conflict with any state guidelines, regulations or client requirements. (Example: Required due diligence phone calls and letters will continue even if requested by customer to cease communication regarding the debt.)

### First Party Collections

First party debt collectors are exempt from the FDCPA only if they adhere to the following guidelines when servicing or collecting on consumer debts:
- Such entity may only use its true name during the servicing or collection of the debt.
- The debts must have not been in default at the time it was obtained for servicing or collection.
- An entity engaging in debt collection on behalf of an affiliate is considered to be acting as a first party debt collector, but only if it does so only for affiliated entities and if the principal business of such entity is not debt collection.
- Such entity may not attempt to service or collect any debts that were in default when the servicing or collection activities began, except under the following circumstances:
  - If the entity originated the debt being collected.
  - If the entity obtained such debts as a secured party in a commercial credit transaction involving the creditor.
  - If the collection activity is being performed as part of the entity's bona fide fiduciary obligations and/or a bona fide escrow arrangement.

### Written Communication

The following guidelines must be adhered to when sending written communication to the consumer. Forms of written communication include, but are not limited to letters, faxes, text messages, internet chats, e-mails and any other form of printed or electronic communication. Guidance requiring approval of written communication is located in the Customer

Page 1 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000190

# NAVIENT.

Policy

Communication Approval Process Policy for Private Credit Collections and Customer Resolution Services and the
Communication Approval Process Policy for all other first party lines of business.

- Any communication with a third party who is not authorized to receive Non-Public Personal Information (NPI) regarding a consumer must not contain any language that suggests or implies the existence of a debt.
- Postcards and envelopes (viewable to anyone other than the addressee) concerning an account must not contain any information that suggests or implies the existence of a debt.
- The company's business name must not be used on the outside of any mailing if it indicates that the company is in the debt collection business.
- Written communication must not utilize any tactic that simulates or falsely represents the document is authorized, issued or approved by any court, official or agency of the United States or any State, or that documents are part of a legal process.
- Written communication that is part of a legal process must not be represented as not being part of a legal process, or represent that action is not required when action is required.
- Written communication must not falsely threaten any action that cannot be legally be taken or that is not intended to be taken, or oppress, harass or abuse the consumer in any manner in connection with the collection of an account.
- The "mini-Miranda" warning must be provided in written communications, with consumers residing in locations specified in applicable departmental procedures.
  "This is an attempt to collect a debt and information obtained will be used for that purpose."

## Verbal Communication
Each line of business must have documented and approved procedures for approving verbal scripts for customer communication. The following guidelines must be adhered to when communicating verbally to the consumer.

- Attempts at consumer contact must only occur within the hours of 8 a.m. and 9 p.m. in the consumer's time zone. The consumer may only be contacted outside of these hours with the consumer's prior verbal or written consent. Consent must be documented in the collection system of record prior to making a phone call outside of allowable hours.
- Consumers must not be contacted at a time or place that is known or should be known to be inconvenient.
- The consumer must not be contacted at their place of employment if the consumer requests not to be contacted at their place of employment, or if the employee is informed that the employer prohibits such communication.
- The employee must not cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
- Except to obtain location information regarding a consumer in compliance with skip tracing sections of this policy, employees may not contact a consumer's spouse unless state or other guidelines allow such contact.
- Employees may contact other third parties upon verbal or written consent of the consumer or the consumer's attorney or other legal representative, provided that the consent is documented in the collection system of record.
- Aliases are not permitted unless pre-approved according to individual line of business procedures.
- The employee must not falsely threaten any action that cannot be legally taken or that is not intended to be taken, or otherwise, oppress, harass or abuse the consumer in any manner in connection with the collection of an account.
- Telephone calls must not be placed to consumers without meaningful disclosure of the employee's identity.

## Ceasing Communication Regarding the Debt
If a consumer, guardian, attorney, executor or administrator notifies Navient in verbally or in writing that they are requesting that Navient cease communication regarding the debt, or that the individual refuses to pay the debt, Navient must follow appropriate departmental procedures pertaining to the party requesting cessation of collection activities and/or with the person on whose behalf the request was made.

## Dispute Handling
The following practices must be followed when engaging in first party collection activities regarding disputes:

- If an account is reported to a consumer reporting agency when a dispute is received, the consumer reporting agency must be notified of the dispute in accordance with the Direct Disputes Procedure .
- All disputes regarding fraud must be handled within the Fair and Accurate Credit Transactions Act (FACTA) Red Flag Rules criteria that are applicable to each line of business.

Page 2 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIENT.

- If a consumer submits a written dispute for reasons including, but not limited to, validity of the debt, principal balance, payment due etc., the agent must follow departmental procedures, where applicable.

## Attorney Representation

If the employee is aware that the consumer is represented by an attorney with respect to the debt that the collector is attempting to collect (regardless of how we are made aware of the representation), the employee must communicate only with the attorney unless the attorney fails to communicate with the collector within 30 days or consents to direct communication with the consumer.

All collection activities must immediately cease when the collector is made aware that the consumer has filed bankruptcy.

## Misrepresentation

First party collection activities must not result in misrepresentation of any of the following:
- Threatening to take any action that cannot legally be taken or that is not intended to be taken.
- Misrepresenting themselves, their position in the company, or their decision making authority to a consumer.
- Misrepresenting the character, amount, legal status of an account, or the services rendered or compensation that may be received for the collection of an account.
- Implying that the consumer has committed a crime or other conduct intended to disgrace the consumer.
- Employees must not threaten or imply seizure, garnishment, attachment or sale of any property or wages of any person unless the action is lawful and intended, and the employee has the authority to do so.
- Communicate or threaten to communicate any credit information that is known or should be known to be false.
- Using false representation or deceptive means to collect or attempt to collect information about a consumer.
- Representing or implying that accounts have been turned over to innocent purchasers for value.
- Using any company name other than the true company name.
- Representing that the company operates or is employed by a consumer reporting agency.

## Payments on Multiple Accounts

If a consumer is making payments on multiple accounts, the payment amounts must be applied to the accounts identified by the consumer.

## Unfair Practices

First party collection activities must not include the use of unfair practices to collect or attempt to collect an account. Unfair practices include but are not limited to the following and are prohibited:
- Threatening to institute criminal prosecution for the purpose of soliciting a postdated check or other postdated payment instrument.
- Depositing or threatening to deposit any postdated payment prior to the date indicated.
- Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include but are not limited to, collect telephone calls and telegram fees.
- Taking or threatening to take any non-judicial action to repossess or disable property if it is not lawful, allowable and the employee does not have the authority to do so.

## Skip Tracing

First party collection activities must adhere to the following guidelines when skip tracing:
- The employee must identify himself/herself by name.
- When disclosing the company name, only the true name of the company must be used.
- The employee must only ask location information questions regarding place of residence, telephone number or place of employment.
- The employee must not communicate or infer the existence of a debt when skip tracing.
- The employee must not communicate with a skip trace contact more than once unless the employee is requested to do so or the employee believes the information provided by the contact is erroneous or incomplete and the contact now has correct or complete location information.

Page 3 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIENT.

- Skip tracing efforts must cease when the consumer's location is known or if the consumer is represented by an attorney with respect to the debt that the collector is attempting to collect or the consumer is currently in a bankruptcy.

## Discrimination

First party collection activities shall not discriminate against a consumer on a prohibited basis for the administration and treatment of delinquent or slow accounts. Prohibited basis includes race, color, religion, national origin, marital status, age, sex, disability, familial status, receipt of public assistance or if the individual has exercised any right under the Consumer Credit Protection Act.

## Compliance Controls

The following controls are designed to ensure that first party collection entities adhere to this policy:

- Monitoring of collection activities may be conducted internally by each business unit and/or independent reviews of a whole or part of the policy by the Collection Support and/or the Navient Corporate Compliance team.
- Independent reviews of a whole or part of the policy by internal or external audit partners.
- Dialer restrictions are to be programmed when available to ensure consumers are not called outside of allowable times, or when restricted due to attorney representation or account status.
- Annual compliance training and testing.
- Employees are subject to discipline up to and including termination for failure to comply with these standards.

## Definitions

| Word/Phrase | Definition |
|---|---|
| N/A | |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
| | |
| | |
| | |

## Reference Material

### Related Policies and Procedures

- Third Party Collection Practices Policy (Consumer Debt)
- Customer Communication Approval Process Policy
- Communication Approval Process Policy
- Cease and Desist Request Procedure
- Direct Disputes Procedure Unfair, Deceptive or Abusive Acts or Practices: FTC Act Sec. 5, Regulations AA; FTC Holder Rule Policy
- State Law Requirements for 1st Party QRG
- State Law Rules (RKLF)
- CRS Collections – State Law Requirements – KS Document

### Related Regulations

- FACTA: Fair and Accurate Credit Transaction Act
- Fair Lending Laws:
- FCRA: Fair Credit Reporting Act
- FDCPA: Fair Debt Collections Practices Act
- GLBA: Gramm-Leach-Bliley Act
- Regulation B: Equal Credit Opportunity Act (ECOA)

Page 4 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000193

# NAVIΞNT.

- UDAAP (Unfair. Deceptive, or Abusive Acts or Practices): Dodd-Frank Act Section 1036 and FTC Act Section 5
- State Collection Laws:

   *Note: Although first party collection efforts are not legally required to adhere to the Fair Debt Collection Practices Act (FDCPA), it has been used as a guide to develop first party best practices.*

Industry Publications
N/A

## Affected Department(s)

Collections/Default Aversion. Private Credit Collections. Private Credit Post-Default Collections, RKL Financial, Servicing. Student Assistance Corporation (SAC). Student Outreach Solutions Inc. (SOSI)

## Appendices:

N/A

## Exception(s):

Any exceptions to this policy must be approved and documented by the SVP appropriate to the business.

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000194

# NAVIƎNT.

Policy

| Title: Third Party Collection Practices Policy | |
|---|---|
| Department: Collections | Owner/Contact: Robert Glinke |
| Approval Date: 05/01/2014 | Reference # 1399 |
| Last Review Date: 04/23/2014 | |

## Purpose

This policy provides guidance for employees engaging in third party collection activities that are subject to federal and state laws and regulations including, but not solely limited to the Fair Debt Collection Practices Act (FDCPA).

## Applicability

This policy applies to all Navient companies, including all legal entities and their subsidiaries that are subject to third party collection laws and regulations. Third party collection is a term generally used to describe debt collection activities that are subject to the FDCPA and various state debtor collection laws.

Business units should consult with Legal to determine if the collection activity they perform is considered third party collections.

## Policy

Collection activities must comply with the requirements outlined in each section of this policy. It is also important to note that local or state laws and regulations, client requirements, or other applicable regulations may be more restrictive than the federal laws and regulations outlined in this policy, and should be documented in departmental procedures. To the extent that there is a conflict, the Higher Education Act, if applicable, and its implementing regulations will prevail.

### Written Communication

The following must be adhered to when sending written communication to the debtor. Forms of written communication include, but are not limited to letters, faxes, text messages, internet chats, e-mails and any other form of printed or electronic communication. Each line of business must have documented and approved procedures for written communication. (See the Communication Approval Process Policy and the Customer Communication Approval Process Policy for approval requirements.)

- The initial communication to the debtor must state the full Mini-Miranda.
- Every communication to the debtor or an authorized third party must state that the communication is from a debt collector.
- Any communication to a non-authorized third party must not contain any language that suggests or implies the existence of a debt.
- Postcards and envelopes (viewable to anyone other than the addressee) concerning a debt must not contain any information that suggests or implies the existence of a debt.
- The use of a symbol or language other than the company's name and address must not be used on the outside of any mailing (i.e., envelope, postcard).
- The company's business name must not be used on the outside of any mailing if it indicates that the company is a collection agency.
- Written communication must not utilize any tactic that simulates or falsely represents that the document is authorized, issued or approved by any court, official, or agency of the United States or any State, or that documents are part of a legal process.
- Written communication that is part of a legal process must not be represented as not being part of a legal process, or represent that action is not required when action is required.
- Written communication must not falsely threaten any action that cannot legally be taken, or that is not intended to be taken, or oppress, harass or abuse the debtor in any manner in connection with the collection of a debt.
- The initial written communication to the debtor must contain applicable debt validation language that is uniform in both font size and ink type with the rest of the letter. All written communications to the debtor must include the full Mini-Miranda warning.
- If an account is reported to a consumer reporting agency, when a dispute is received, the consumer reporting agency must be notified of the dispute. This requirement is limited to those APG entities that participate in credit reporting.

Page 1 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

Policy

- If a debtor, debtor's spouse, guardian, attorney, executor or administrator notifies the collector in writing that they are refusing to pay, or they request that we cease communication with them regarding the debt, collectors must not communicate further with the debtor.

## Verbal Communication

The following must be adhered to when communicating verbally to the debtor.  Each line of business must have documented and approved procedures for approving verbal scripts for customer communication. (See the Communication Approval Process Policy and the Customer Communication Approval Process Policy for approval requirements.)

- The initial contact with the debtor must include the full Mini-Miranda statement, and in all subsequent communications with the debtor the collector must state that the communication is from a debt collector.
- Debtor contact must only occur within the hours of 8 a.m. and 9 p.m. in the debtor's time zone.  The debtor may only be contacted outside of these hours with prior verbal or written consent. Consent must be documented in the collection system of record prior to making a phone call outside of allowable hours.
- Debtors must not be contacted at a time or place that is known or should be known to be inconvenient.
- The debtor must not be contacted at their place of employment if the debtor requests not to be contacted at their place of employment, or if the collector knows or has reason to know that the employer prohibits the debtor from receiving such communication.
- The collector must not cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
- Collectors may contact a debtor's spouse unless state law or other guidelines prohibit such contact.
- Collectors may contact other third parties upon verbal or written consent of the debtor or the debtor's attorney or other legal representative, provided that the consent is documented in the collection system of record.
- Aliases are not permitted to be used by collectors unless pre-approved according to individual line of business procedures.
- The collector must not falsely threaten any action that cannot legally be taken, or that is not intended to be taken.
- The collector must not oppress, harass or abuse the debtor in any manner in connection with the collection of a debt.
- The collector must not overshadow the validation period when speaking with a debtor (See Validation of Debts and Dispute Handling section).
- Telephone calls must not be placed to debtors without meaningful disclosure of the collector's identity, including the collector's name and the name of the company.

## Validation of Debts and Dispute Handling

The following practices must be followed when engaging in third party collection activities regarding debt validation or disputes:

- Within five days after the initial communication with a debtor in connection with the collection of any debt, a written notice must be sent to the debtor which contains:
  - The amount of the debt;
  - The name of the creditor to whom the debt is owed;
  - A statement that, unless the debtor disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
  - A statement that, if the debtor notifies the debt collector that the debt, or any portion thereof is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the debtor, and a copy of such verification or judgment will be mailed to the debtor by the debt collector; and
  - A statement that, upon the debtor's written request, the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor.
- If the debtor disputes the debt or any part of the debt in writing, or requests in writing the name and address of the original creditor, the collector shall cease collection of the debt or any disputed portion thereof until verification of the debt or copy of the judgment against the debtor and/or the name and address of the original creditor is mailed to the debtor.
- Any collection activities and communication during the thirty-day period must not overshadow or be inconsistent with the debtor's right to dispute the debt or request verification of the debt, a copy of a judgment, or the name and address of the original creditor.

Page 2 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

Policy

- If an account is reported to a consumer reporting agency, when a dispute is received, the consumer reporting agency must be notified of the dispute. This requirement is limited to those APG entities that participate in credit reporting.
- All disputes regarding fraud must be handled within the Fair and Accurate Credit Transactions Act (FACTA) Red Flag Rules criteria that are applicable to each line of business.

## Attorney Representation

- If the collector is aware that the debtor is represented by an attorney with respect to the debt that the collector is attempting to collect (regardless of how we are made aware of the representation), the collector must communicate only with the attorney unless the attorney fails to communicate with the collector within thirty (30) days, or consents to direct communication with the debtor.
- All collection activities must immediately cease when the collector is made aware that the debtor has filed bankruptcy.

## Misrepresentation

Third party collection activities must not result in misrepresentation of any of the following:

- Threatening to take any action that cannot legally be taken or that is not intended to be taken.
- Misrepresenting themselves, their position in the company, or their decision making authority to a debtor.
- Misrepresenting the character, amount, or legal status of a debt, or the services rendered or compensation that may be received for the collection of the debt.
- Implying that the debtor has committed a crime or other conduct intended to disgrace the debtor.
- Collectors must not threaten or imply seizure, garnishment, attachment or sale of any property or wages of any person unless the action is lawful and intended, and the collector has the authority to do so.
- Communicate or threaten to communicate any credit information that is known or should be known to be false.
- Use of any false representation or deceptive means to collect or attempt to collect information about a debtor.
- Representing or implying that accounts have been turned over to innocent purchasers for value.
- Using any company name other than the true company name.
- Representing that the company operates or is employed by a consumer reporting agency.
- Misrepresenting or implying that the sale, referral, or transfer of any interest in the debt will cause the debtor either to lose any claim or defense to payment or become subject to any practice prohibited by the FDCPA.

## Payments on Multiple Accounts

If a debtor is making payments on multiple accounts, the payment amounts must be applied to the accounts identified by the debtor. If the debtor does not provide direction on the payment amounts to be applied, the payment must not be applied to any debt in dispute by the debtor.

## Unfair Practices

Third party collection activities must not include the use of unfair practices to collect or attempt to collect a debt. Unfair practices include but are not limited to the following, and are prohibited:

- The acceptance of a payment postdated more than five days unless the debtor is notified of the collector's intent to deposit the payment in writing not more than ten nor less than three days prior to the deposit of the payment.
- Threatening to institute criminal prosecution for the purpose of soliciting a postdated check or other postdated payment instrument.
- Depositing or threatening to deposit any postdated payment prior to the date indicated.
- Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include but are not limited to, collect telephone calls and telegram fees.
- Taking or threatening to take any non-judicial action to repossess or disable property if it is not lawful, allowable or the collector does not have the authority to do so.
- The collection of any amount, including fees, interest, charges, or expenses incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## Skip Tracing

Third party collection activities must adhere to the following guidelines when skip tracing:

Page 3 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000197

# NAVIƎNT.

Policy

- The collector must identify himself/herself by name.
- Only disclose the company name if specifically asked.
- If asked to disclose the company name, the collector must give the true name of the company.
- The collector must only ask location information questions regarding place of residence, telephone number or place of employment.
- The collector must not communicate or imply/infer the existence of a debt when skip tracing.
- The collector must not communicate with a skip trace contact more than once unless the collector has permission to do so, or the collector believes the information provided by the contact is erroneous or incomplete, and the contact now has correct or complete location information.
- Skip tracing efforts must cease when the debtor is represented by an attorney with respect to the debt that the debt collector is attempting to collect, or the debtor is currently in a bankruptcy.

## Discrimination
- Third party collection activities shall not discriminate against a debtor on a prohibited basis for the administration and treatment of delinquent or slow accounts.
- Prohibited basis includes race, color, religion, national origin, marital status, age, sex, disability, familial status, receipt of public assistance or if the individual has exercised any right under the Consumer Credit Protection Act.

## Compliance Controls
The following controls are designed to ensure that third party collection entities adhere to this policy:
- Monitoring of collection activities may be conducted internally by each business unit and/or independent reviews of a whole or part of the policy by the Collection Support and/or the Navient Corporate Compliance Team.
- Independent reviews of a whole or part of the policy by internal or external audit partners.
- Dialer restrictions are to be programmed to ensure compliance with applicable laws and regulations. Examples include, but are not limited to, ensuring debtors are not called outside of allowable times and ceasing calls when restricted due to attorney representation or other protected account status, etc.
- Annual compliance training and testing.
- Collectors are subject to discipline up to and including termination for failure to comply with these standards.

## Definitions

| Word/Phrase | Definition |
| --- | --- |
| N/A | |

## Key Roles & Responsibilities

| Role | Responsibility |
| --- | --- |
| | |
| | |
| | |
| | |

## Reference Material
Related Policies and Procedures
- First Party Collection Practices Policy
- Customer Communication Approval Process Policy
- Communication Approval Process Policy

Related Regulations
- Bankruptcy Code: U.S. Code Title 11
- Fair Lending Laws:
- FCRA: Fair Credit Reporting Act

Page 4 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIENT

Policy

- FDCPA: Fair Debt Collections Practices Act
- GLBA: Gramm-Leach-Bliley Act
- Regulation B: Equal Credit Opportunity Act (ECOA)
- TCPA: Telephone Consumer Protection Act of 1991
- UDAAP (Unfair, Deceptive, or Abusive Acts or Practices): Dodd-Frank Act Section 1036 and FTC Act Section 5
- State Collection Laws:

Industry Publications
N/A

**Affected Department(s)**
Contingency Services, Portfolio Management

**Appendices:**
N/A

**Exception(s):**
Any exceptions to this policy must be approved and documented by the SVP appropriate to the business.

**Page 5 of 5**

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

| Title: Third Party Collection Practices Policy (Consumer Debt) | |
|---|---|
| Department: Collections/Default Aversion | Contact: Robert Glinke |
| Approval Date: 12/09/2014 | Reference # 1399 |
| Last Review Date: 12/09/2014 | |

## Purpose

This policy provides guidance for employees engaging in third party collection activities that are subject to federal and state laws and regulations including, but not solely limited to the Fair Debt Collection Practices Act (FDCPA).

## Applicability

This policy applies to all Navient companies and their subsidiaries that are subject to third party collection laws and regulations, including all legal entities as defined in the Affected Departments section below. Third party collection is a term generally used to describe debt collection activities that are subject to the FDCPA and various state collection laws.

Business units should consult with Legal to determine if the collection activity they perform is subject to these requirements.

## Policy

Collection activities must be made in full compliance with all federal and state regulations. It is also important to note that local or state laws and regulations, client requirements, or other applicable regulations may be more restrictive than the federal laws and regulations outlined in this policy, and should be documented in departmental procedures. To the extent that there is a conflict, legal and compliance should be engaged to decide which regulations will prevail.

### Written Communication

The following must be adhered to when sending written communication to the debtor. Forms of permissible written communication include, but are not limited to letters, faxes, e-mails and any other form of printed or electronic communication. Each line of business must have documented and approved procedures for written communication. (See the Communication Approval Process Policy and the Customer Communication Approval Process Policy for approval requirements.)

- The initial communication to the debtor must state the full Mini-Miranda.
- All written communications to the debtor must include the full Mini-Miranda warning. Any communication to a non-authorized third party must not contain any language that suggests or implies the existence of a debt. This does not apply to commercial debt.
- Postcards and envelopes (viewable to anyone other than the addressee) concerning a debt must not contain any information that suggests or implies the existence of a debt.
- The use of a symbol, language or the company name must not be used on the outside of any mailing (i.e., envelope, postcard).
- Written communication must not utilize any tactic that simulates or falsely represents that the document is authorized, issued or approved by any court, official, or agency of the United States or any State, or that documents are part of a legal process.
- Written communication that is part of a legal process must be represented as being part of a legal process, or represent that action is not required when action is required.
- Written communication must not falsely threaten any action that cannot legally be taken, or that is not intended to be taken, or oppress, harass or abuse the debtor in any manner in connection with the collection of a debt.
- The initial written communication to the debtor must contain applicable debt validation language that is uniform in both font size and ink type with the rest of the letter.
- If an account is reported to a consumer reporting agency, when a dispute is received, the consumer reporting agency must be notified of the dispute. This requirement is limited to those entities that participate in credit reporting.
- If a debtor, debtor's spouse, guardian, attorney, executor or administrator notifies the collector in writing that they are refusing to pay, or they request that we cease communication with them regarding the debt, collectors must not communicate further with the debtor. One final communication is allowed to notify the debtor that the debt collector or creditor may invoke a specified remedy.

Page 1 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIENT

## Verbal Communication

The following must be adhered to when communicating verbally to the debtor. Each line of business must have documented and approved procedures for approving verbal scripts for customer communication. (See the Communication Approval Process Policy and the Customer Communication Approval Process Policy for approval requirements.)

- The initial contact with the debtor must include the full Mini-Miranda statement, and in all subsequent communications with the debtor the collector must state that the communication is from a debt collector, and once the disclosure is given it must be documented in the applicable collections platform as it pertains to applicable state requirements (i.e. Massachusetts).
- Outbound debtor contact must only occur within the hours of 8 a.m. and 9 p.m. in the debtor's time zone. The debtor may only be contacted outside of these hours with prior verbal or written consent. Consent must be documented in the collection system prior to making a phone call outside of allowable hours.
- Debtors must not be contacted at a time or place that is known or should be known to be inconvenient.
- The debtor must not be contacted at their place of employment if the debtor requests not to be contacted at their place of employment, or if the collector knows or has reason to know that the employer prohibits the debtor from receiving such communication.
- The collector must not allow a debtor's phone to ring more than ten times.
- The collector must not cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
- The outbound attempts must not exceed the allowable number per day for each contact number associated with a consumer or any third party. Please reference the Contingency Outbound Call Attempts Procedure for more information.
- Collectors may contact a debtor's spouse unless state law or other guidelines prohibit such contact.
- Collectors may contact other third parties upon verbal or written consent of the debtor or the debtor's attorney or other legal representative, provided that the consent is documented in the collection system.
- The use of aliases is generally not allowed per company policy. Rare exceptions may be granted on an approved basis and are subject to the appropriate license, registration, or reporting procedure.
- The collector must not falsely threaten any action that cannot legally be taken, or that is not intended to be taken.
- The collector must not oppress, harass or abuse the debtor in any manner in connection with the collection of a debt.
- The collector must not overshadow the validation period when speaking with a debtor (See Validation of Debts and Dispute Handling section).
- Telephone calls must not be placed to debtors without meaningful disclosure of the collector's identity, including the collector's name and the name of the company.

## Validation of Debts and Dispute Handling

The following practices must be followed when engaging in third party collection activities regarding debt validation or disputes:

- Within five days after the initial communication with a debtor in connection with the collection of any debt, a written notice must be sent to the debtor which contains:
  - The amount of the debt;
  - The name of the creditor to whom the debt is owed;
  - A statement that, unless the debtor disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
  - A statement that, if the debtor notifies the debt collector that the debt, or any portion thereof is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the debtor, and a copy of such verification or judgment will be mailed to the debtor by the debt collector; and
  - A statement that, upon the debtor's written request, the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor.
- If the debtor disputes the debt or any part of the debt in writing, or requests in writing the name and address of the original creditor, the collector shall cease collection of the debt or any disputed portion thereof until verification of the debt or copy of the judgment against the debtor and/or the name and address of the original creditor is mailed to the debtor.

Page 2 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

Policy

- Any collection activities and communication during the thirty-day period must not overshadow or be inconsistent with the debtor's right to dispute the debt or request verification of the debt, a copy of a judgment, or the name and address of the original creditor.
- If an account is reported to a consumer reporting agency, when a dispute is received, the consumer reporting agency must be notified of the dispute. This requirement is limited to those entities that participate in credit reporting.
- All disputes regarding fraud must be handled within the Fair and Accurate Credit Transactions Act (FACTA) Red Flag Rules criteria that are applicable to each line of business.

## Attorney Representation
- If the collector is aware that the debtor is represented by an attorney with respect to the debt that the collector is attempting to collect (regardless of how we are made aware of the representation), the collector must communicate only with the attorney unless the attorney fails to communicate with the collector within thirty (30) days, or consents to direct communication with the debtor. Such consent must be documented in the collections system.
- All collection activities must immediately cease when the collector is made aware that the debtor has filed bankruptcy.

## False and Misleading / Misrepresentation
Third party collection activities must not result in misrepresentation of any kind, but not limited to the following:
- Threatening to take any action that cannot legally be taken or that is not intended to be taken.
- Misrepresenting themselves, their position in the company, or their decision making authority to a debtor.
- Misrepresenting the character, amount, or legal status of a debt, or the services rendered or compensation that may be received for the collection of the debt.
- Implying that the debtor has committed a crime or other conduct intended to disgrace the debtor.
- Collectors must not threaten or imply seizure, garnishment, attachment or sale of any property or wages of any person unless the action is lawful and intended, and the collector has the authority to do so.
- Communicate or threaten to communicate any credit information that is known or should be known to be false.
- Use of any false representation or deceptive means to collect or attempt to collect information about a debtor.
- Representing or implying that accounts have been turned over to innocent purchasers for value.
- Using any company name other than the true company name.
- Representing that the company operates or is employed by a consumer reporting agency.
- Misrepresenting or implying that the sale, referral, or transfer of any interest in the debt will cause the debtor either to lose any claim or defense to payment or become subject to any practice prohibited by the FDCPA.
- The terms, benefits, and/or method required for repayment.

## Payments on Multiple Accounts
If a debtor is making payments on multiple accounts, the payment amounts must be applied to the accounts identified by the debtor. If the debtor does not provide direction on the payment amounts to be applied, the payment must not be applied to any debt in dispute by the debtor.

## Unfair Practices
Third party collection activities must not include the use of unfair practices to collect or attempt to collect a debt. Unfair practices include but are not limited to the following, and are prohibited:
- The acceptance of a payment postdated more than five days unless the debtor is notified of the collector's intent to deposit the payment in writing not more than ten nor less than three days prior to the deposit of the payment.
- Threatening to institute criminal prosecution for the purpose of soliciting a postdated check or other postdated payment instrument.
- Depositing or threatening to deposit any postdated payment prior to the date indicated.
- Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include but are not limited to, collect telephone calls and telegram fees.
- Taking or threatening to take any non-judicial action to repossess or disable property if it is not lawful, allowable or the collector does not have the authority to do so.

Page 3 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVI≡NT.

Policy

- The collection of any amount, including fees, interest, charges, or expenses incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## Skip Tracing

Third party collection activities must adhere to the following guidelines when skip tracing:
- The collector must identify himself/herself by name.
- Only disclose the company name if specifically asked.
- If asked to disclose the company name, the collector must give the true name of the company.
- The collector must only ask location information questions regarding place of residence, telephone number or place of employment.
- The collector must not communicate or imply/infer the existence of a debt when skip tracing.
- The collector must not communicate with a skip trace contact more than once unless the collector has permission to do so, or the collector believes the information provided by the contact is erroneous or incomplete, and the contact now has correct or complete location information. Complete documentation is required.
- Skip tracing efforts must cease when the debtor is represented by an attorney with respect to the debt that the debt collector is attempting to collect, or the debtor is currently in a bankruptcy.

## Discrimination

- Third party collection activities shall not discriminate against a debtor on a prohibited basis for the administration and treatment of delinquent or slow accounts.
- Prohibited basis includes race, color, religion, national origin, marital status, age, sex, disability, familial status, receipt of public assistance or if the individual has exercised any right under the Consumer Credit Protection Act.

## Compliance Controls

The following controls are designed to ensure that third party collection entities adhere to this policy:
- Call Monitoring by 1st Line of Defense Compliance will occur on a monthly basis to ensure adherence to this policy.
- Monitoring of collection activities may be conducted internally by each business unit and/or independent reviews of a whole or part of the policy by the Collection Support and/or the Navient Corporate Compliance Team.
- Independent reviews of a whole or part of the policy by internal or external audit partners.
- Dialer restrictions are to be programmed to ensure compliance with applicable laws and regulations. Examples include, but are not limited to, ensuring debtors are not called outside of allowable times and ceasing calls when restricted due to attorney representation or other protected account status, etc.
- Annual compliance training and testing.
- Collectors are subject to discipline up to and including termination for failure to comply with these standards.

## Definitions

| Word/Phrase | Definition |
|---|---|
| N/A | |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
| Navient's Business Management (including Collections Departments) | Ensuring that business practices and procedures comply with policy. |
| Internal Audit | Conduct independent audits of the adherence to this policy. |
| 1st Line of Defense Compliance | Own and maintain this policy. Ensure that business policies and procedures comply with this policy. |
| 2nd Line of Defense | Approve all substantive revisions to this policy. Ensure that business policies and |

Page 4 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000203

# NAVI≡NT.

Policy

| Role | Responsibility |
|---|---|
| Compliance | procedures comply with this policy. |
| Legal | Verify that this policy complies with applicable federal and state law. Approve all substantive revisions to this policy. Ensure that business policies and procedures comply with this policy. |

## Reference Material

Related Policies and Procedures
- First Party Collection Practices Policy
- Customer Communication Approval Process Policy
- Communication Approval Process Policy
- Contingency Outbound Call Attempts Procedure

Related Regulations
- Bankruptcy Code: U.S. Code Title 11
- Fair Lending Laws:
- FCRA: Fair Credit Reporting Act
- FDCPA: Fair Debt Collections Practices Act
- Regulation B: Equal Credit Opportunity Act (ECOA)
- TCPA: Telephone Consumer Protection Act of 1991
- UDAAP (Unfair, Deceptive, or Abusive Acts or Practices): Dodd-Frank Act Section 1036 and FTC Act Section 5
- State Collection Laws:

Industry Publications
N/A

## Affected Department(s)
Collections/Default Aversion, Contingency Services

## Appendices:
N/A

## Exception(s):
Any exceptions to this policy must be approved and documented by the SVP appropriate to the business.

Page 5 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000204

# NAVIENT.

| Title: Third Party Collection Practices Policy (Consumer Debt) | |
|---|---|
| Department: Collections/Default Aversion | Owner/Contact: Robert Glinke |
| Approval Date: 09/26/2014 | Reference # 1399 |
| Last Review Date: 09/26/2014 | |

## Purpose

This policy provides guidance for employees engaging in third party collection activities that are subject to federal and state laws and regulations including, but not solely limited to the Fair Debt Collection Practices Act (FDCPA).

## Applicability

This policy applies to all Navient companies and their subsidiaries that are subject to third party collection laws and regulations, including all legal entities as defined in the Affected Departments section below. Third party collection is a term generally used to describe debt collection activities that are subject to the FDCPA and various state collection laws.

Business units should consult with Legal to determine if the collection activity they perform is subject to these requirements.

## Policy

Collection activities must be made in full compliance with all federal and state regulations. It is also important to note that local or state laws and regulations, client requirements, or other applicable regulations may be more restrictive than the federal laws and regulations outlined in this policy, and should be documented in departmental procedures. To the extent that there is a conflict, legal and compliance should be engaged to decide which regulations will prevail.

### Written Communication

The following must be adhered to when sending written communication to the debtor. Forms of permissible written communication include, but are not limited to letters, faxes, e-mails and any other form of printed or electronic communication. Each line of business must have documented and approved procedures for written communication. (See the Communication Approval Process Policy and the Customer Communication Approval Process Policy for approval requirements.)

- The initial communication to the debtor must state the full Mini-Miranda.
- All written communications to the debtor must include the full Mini-Miranda warning. Any communication to a non-authorized third party must not contain any language that suggests or implies the existence of a debt. This does not apply to commercial debt.
- Postcards and envelopes (viewable to anyone other than the addressee) concerning a debt must not contain any information that suggests or implies the existence of a debt.
- The use of a symbol, language or the company name must not be used on the outside of any mailing (i.e., envelope, postcard).
- Written communication must not utilize any tactic that simulates or falsely represents that the document is authorized, issued or approved by any court, official, or agency of the United States or any State, or that documents are part of a legal process.
- Written communication that is part of a legal process must be represented as being part of a legal process, or represent that action is not required when action is required.
- Written communication must not falsely threaten any action that cannot legally be taken, or that is not intended to be taken, or oppress, harass or abuse the debtor in any manner in connection with the collection of a debt.
- The initial written communication to the debtor must contain applicable debt validation language that is uniform in both font size and ink type with the rest of the letter.
- If an account is reported to a consumer reporting agency, when a dispute is received, the consumer reporting agency must be notified of the dispute. This requirement is limited to those entities that participate in credit reporting.
- If a debtor, debtor's spouse, guardian, attorney, executor or administrator notifies the collector in writing that they are refusing to pay, or they request that we cease communication with them regarding the debt, collectors must not communicate further with the debtor. One final communication is allowed to notify the debtor that the debt collector or creditor may invoke a specified remedy.

Page 1 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000205

# NAVIΞNT.

Policy

## Verbal Communication

The following must be adhered to when communicating verbally to the debtor. Each line of business must have documented and approved procedures for approving verbal scripts for customer communication. (See the Communication Approval Process Policy and the Customer Communication Approval Process Policy for approval requirements.)

- The initial contact with the debtor must include the full Mini-Miranda statement, and in all subsequent communications with the debtor the collector must state that the communication is from a debt collector, and once the disclosure is given it must be documented in the applicable collections platform as it pertains to applicable state requirements (i.e. Massachusetts).
- Outbound debtor contact must only occur within the hours of 8 a.m. and 9 p.m. in the debtor's time zone. The debtor may only be contacted outside of these hours with prior verbal or written consent. Consent must be documented in the collection system prior to making a phone call outside of allowable hours.
- Debtors must not be contacted at a time or place that is known or should be known to be inconvenient.
- The debtor must not be contacted at their place of employment if the debtor requests not to be contacted at their place of employment, or if the collector knows or has reason to know that the employer prohibits the debtor from receiving such communication.
- The collector must not allow a debtor's phone to ring more than ten times.
- The collector must not cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
- The outbound attempts must not exceed the allowable number per day for each contact number associated with a consumer or any third party. Please reference the Contingency Outbound Call Attempts Procedure for more information.
- Collectors may contact a debtor's spouse unless state law or other guidelines prohibit such contact.
- Collectors may contact other third parties upon verbal or written consent of the debtor or the debtor's attorney or other legal representative, provided that the consent is documented in the collection system.
- The use of aliases is generally not allowed per company policy. Rare exceptions may be granted on an approved basis and are subject to the appropriate license, registration, or reporting procedure.
- The collector must not falsely threaten any action that cannot legally be taken, or that is not intended to be taken.
- The collector must not oppress, harass or abuse the debtor in any manner in connection with the collection of a debt.
- The collector must not overshadow the validation period when speaking with a debtor (See Validation of Debts and Dispute Handling section).
- Telephone calls must not be placed to debtors without meaningful disclosure of the collector's identity, including the collector's name and the name of the company.

## Validation of Debts and Dispute Handling

The following practices must be followed when engaging in third party collection activities regarding debt validation or disputes:

- Within five days after the initial communication with a debtor in connection with the collection of any debt, a written notice must be sent to the debtor which contains:
  - The amount of the debt;
  - The name of the creditor to whom the debt is owed;
  - A statement that, unless the debtor disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
  - A statement that, if the debtor notifies the debt collector that the debt, or any portion thereof is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the debtor, and a copy of such verification or judgment will be mailed to the debtor by the debt collector; and
  - A statement that, upon the debtor's written request, the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor.
- If the debtor disputes the debt or any part of the debt in writing, or requests in writing the name and address of the original creditor, the collector shall cease collection of the debt or any disputed portion thereof until verification of the debt or copy of the judgment against the debtor and/or the name and address of the original creditor is mailed to the debtor.

Page 2 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000206

# NAVIENT.

Policy

- Any collection activities and communication during the thirty-day period must not overshadow or be inconsistent with the debtor's right to dispute the debt or request verification of the debt, a copy of a judgment, or the name and address of the original creditor.
- If an account is reported to a consumer reporting agency, when a dispute is received, the consumer reporting agency must be notified of the dispute. This requirement is limited to those entities that participate in credit reporting.
- All disputes regarding fraud must be handled within the Fair and Accurate Credit Transactions Act (FACTA) Red Flag Rules criteria that are applicable to each line of business.

## Attorney Representation
- If the collector is aware that the debtor is represented by an attorney with respect to the debt that the collector is attempting to collect (regardless of how we are made aware of the representation), the collector must communicate only with the attorney unless the attorney fails to communicate with the collector within thirty (30) days, or consents to direct communication with the debtor. Such consent must be documented in the collections system.
- All collection activities must immediately cease when the collector is made aware that the debtor has filed bankruptcy.

## False and Misleading / Misrepresentation
Third party collection activities must not result in misrepresentation of any kind, but not limited to the following:
- Threatening to take any action that cannot legally be taken or that is not intended to be taken.
- Misrepresenting themselves, their position in the company, or their decision making authority to a debtor.
- Misrepresenting the character, amount, or legal status of a debt, or the services rendered or compensation that may be received for the collection of the debt.
- Implying that the debtor has committed a crime or other conduct intended to disgrace the debtor.
- Collectors must not threaten or imply seizure, garnishment, attachment or sale of any property or wages of any person unless the action is lawful and intended, and the collector has the authority to do so.
- Communicate or threaten to communicate any credit information that is known or should be known to be false.
- Use of any false representation or deceptive means to collect or attempt to collect information about a debtor.
- Representing or implying that accounts have been turned over to innocent purchasers for value.
- Using any company name other than the true company name.
- Representing that the company operates or is employed by a consumer reporting agency.
- Misrepresenting or implying that the sale, referral, or transfer of any interest in the debt will cause the debtor either to lose any claim or defense to payment or become subject to any practice prohibited by the FDCPA.
- The terms, benefits, and/or method required for repayment.

## Payments on Multiple Accounts
If a debtor is making payments on multiple accounts, the payment amounts must be applied to the accounts identified by the debtor. If the debtor does not provide direction on the payment amounts to be applied, the payment must not be applied to any debt in dispute by the debtor.

## Unfair Practices
Third party collection activities must not include the use of unfair practices to collect or attempt to collect a debt. Unfair practices include but are not limited to the following, and are prohibited:
- The acceptance of a payment postdated more than five days unless the debtor is notified of the collector's intent to deposit the payment in writing not more than ten nor less than three days prior to the deposit of the payment.
- Threatening to institute criminal prosecution for the purpose of soliciting a postdated check or other postdated payment instrument.
- Depositing or threatening to deposit any postdated payment prior to the date indicated.
- Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include but are not limited to, collect telephone calls and telegram fees.
- Taking or threatening to take any non-judicial action to repossess or disable property if it is not lawful, allowable or the collector does not have the authority to do so.

Page 3 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL                                                                                      NSI0000207

# NAVIΞNT.

Policy

- The collection of any amount, including fees, interest, charges, or expenses incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## Skip Tracing
Third party collection activities must adhere to the following guidelines when skip tracing:
- The collector must identify himself/herself by name.
- Only disclose the company name if specifically asked.
- If asked to disclose the company name, the collector must give the true name of the company.
- The collector must only ask location information questions regarding place of residence, telephone number or place of employment.
- The collector must not communicate or imply/infer the existence of a debt when skip tracing.
- The collector must not communicate with a skip trace contact more than once unless the collector has permission to do so, or the collector believes the information provided by the contact is erroneous or incomplete, and the contact now has correct or complete location information. Complete documentation is required.
- Skip tracing efforts must cease when the debtor is represented by an attorney with respect to the debt that the debt collector is attempting to collect, or the debtor is currently in a bankruptcy.

## Discrimination
- Third party collection activities shall not discriminate against a debtor on a prohibited basis for the administration and treatment of delinquent or slow accounts.
- Prohibited basis includes race, color, religion, national origin, marital status, age, sex, disability, familial status, receipt of public assistance or if the individual has exercised any right under the Consumer Credit Protection Act.

## Compliance Controls
The following controls are designed to ensure that third party collection entities adhere to this policy:
- Monitoring of collection activities may be conducted internally by each business unit and/or independent reviews of a whole or part of the policy by the Collection Support and/or the Navient Corporate Compliance Team.
- Independent reviews of a whole or part of the policy by internal or external audit partners.
- Dialer restrictions are to be programmed to ensure compliance with applicable laws and regulations. Examples include, but are not limited to, ensuring debtors are not called outside of allowable times and ceasing calls when restricted due to attorney representation or other protected account status, etc.
- Annual compliance training and testing.
- Collectors are subject to discipline up to and including termination for failure to comply with these standards.

## Definitions

| Word/Phrase | Definition |
|---|---|
| N/A | |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
| Navient's Business Management (including Collections Departments) | Ensuring that business practices and procedures comply with policy. |
| Internal Audit | Conduct independent audits of the adherence to this policy. |
| 1st Line of Defense Compliance | Own and maintain this policy. Ensure that business policies and procedures comply with this policy. |
| 2nd Line of Defense | Approve all substantive revisions to this policy. Ensure that business policies and |

Page 4 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000208

# NAVIΞNT.

Policy

| Role | Responsibility |
|------|----------------|
| Compliance | procedures comply with this policy. |
| Legal | Verify that this policy complies with applicable federal and state law. Approve all substantive revisions to this policy. Ensure that business policies and procedures comply with this policy. |

## Reference Material

Related Policies and Procedures
- First Party Collection Practices Policy
- Customer Communication Approval Process Policy
- Communication Approval Process Policy
- Contingency Outbound Call Attempts Procedure

Related Regulations
- Bankruptcy Code: U.S. Code Title 11
- Fair Lending Laws:
- FCRA: Fair Credit Reporting Act
- FDCPA: Fair Debt Collections Practices Act
- Regulation B: Equal Credit Opportunity Act (ECOA)
- TCPA: Telephone Consumer Protection Act of 1991
- UDAAP (Unfair, Deceptive, or Abusive Acts or Practices): Dodd-Frank Act Section 1036 and FTC Act Section 5
- State Collection Laws:

Industry Publications
N/A

## Affected Department(s)

Collections/Default Aversion, Contingency Services

## Appendices:

N/A

## Exception(s):

Any exceptions to this policy must be approved and documented by the SVP appropriate to the business.

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000209

# NAVIƎNT.

Procedure

| Title: Cease and Desist Request Procedure | |
|---|---|
| Department: Asset Recovery and Business Services | Owner/Contact: Robert Glinke |
| Approval Date: 04/08/2014 | Reference # 1748 |
| Last Review Date: 04/01/2014 | |

## Purpose
This procedure contains Assets Performance Group's (APG) acceptable practices for communicating with a consumer/debtor who has requested, either verbally or in writing, a Cease & Desist.

## Applicability
This procedure is applicable to all APG lines of business, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in any another APG procedure or Navient Corporate Policy, as approved by Compliance and/or Legal.

## Procedure
### All APG Employees – Cell Phone Auto-dialing Cease & Desist Requests
The following governs steps that need to be taken for verbal and/or written Do Not Call requests to a consumer/debtor's **cellular telephone only**, for consumer/debtors located in all states.

- If an APG employee receives any form of Do Not Call notification (verbal and/or written) from the consumer/debtor to his/her cellular telephone, the APG employee will document the account with the consumer/debtor's request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future auto-dialing activity to the cellular telephone.
  - Please follow the correct verbal or written Cease & Desist section below for any Cease & Desist request that extends beyond solely auto-dialing the consumer/debtor's cellular telephone (i.e. a verbal request to cease communications for 1st Party employees to a resident located in a state where verbal Cease & Desist requests must be honored must follow the proper guidance under the section entitled **1st Party Employees – Verbal Cease & Desist Requests**).
- For verbal Do Not Call requests to a consumer/debtor's cellular telephone, the APG employee should request an alternate telephone number where the consumer/debtor prefers to be contacted.
  - If the consumer/debtor provides a new number, and the new number is a cellular telephone, proper protocol regarding TCPA must be followed. Please reference the Autodialers and Artificial or Prerecorded Voice Messages Policy for further guidance.

### All APG Employees – Third Parties and/or References Cease & Desist Requests
The following governs steps that need to be taken for verbal and/or written Cease & Desist requests for authorized third parties, unauthorized third parties, and/or references located in all states.

- If an APG employee receives any form of notification (verbal and/or written) from either an authorized third party, unauthorized third party, and/or reference requesting to cease communications, the APG employee will document the account with the request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication to him/her.
- If an APG employee receives any form of notification (verbal and/or written) by the consumer/debtor to cease communications to one or more authorized third party, unauthorized third party, and/or reference, the APG employee will document the account with the consumer/debtor's request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication to the specific third party and/or reference.
  - If the consumer/debtor notifies the APG employee verbally of a request to cease communications to a specific third party and/or reference, the APG employee should attempt to secure a replacement contact if possible.
  - A request made by a consumer/debtor on behalf of another consumer/debtor to cease communications will not be honored (i.e. a borrower on behalf of one or more cosigners; a cosigner on behalf of the borrower, etc.).

### 1st Party Employees – Written Cease & Desist Requests

Page 1 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIΞNT.

Procedure

The following governs steps that need to be taken for written Cease & Desist requests for consumer's located in states that require written Cease & Desist requests to be honored.

- If a 1st Party APG employee receives written notification from the consumer that they no longer wish to receive communication, the 1st Party APG employee will document the account with the consumer's written request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication.
- The 1st Party APG employee is allowed one final communication with the consumer to confirm receipt of the request, inform him/her that all collection/default aversion activities will cease, and notify them of any other remedies that may be taken. No demand for payment is allowed on this call.
- A 1st Party APG employee cannot make a demand for payment on an incoming call from a consumer who has a written Cease & Desist communication on file. The 1st Party APG employee may advise of the consumer of the payment owed and may take a payment voluntarily offered by the consumer.
- Note: if the consumer's written request regarding communication is Do Not Call only, unless otherwise specified by the consumer, Do Not Call requests do not prevent the 1st Party APG employee from using approved written forms of communication with the consumer.

The following governs steps that need to be taken for written Cease & Desist requests for consumers located in states that do not require written Cease & Desist requests to be honored.

- All written **Do Not Call** requests regarding a cellular telephone number must follow the guidelines within the section entitled **All APG Employees – Cell Phone Auto-Dialing Cease & Desist Requests**.
- All autodialing activity to a consumer's place of employment (POE) should cease.  Manual dialing may continue.

## 1st Party Employees – Verbal Cease & Desist Requests

The following governs steps that need to be taken for verbal Cease & Desist requests for consumer's located in states that require verbal Cease & Desist requests to be honored.

- If a 1st Party APG employee receives verbal notification from the consumer that they no longer wish to receive communication, the 1st Party APG employee will document the account with the consumer's verbal request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication.
- The 1st Party APG employee must also inform the consumer that all collection/default aversion activities will cease, and notify them of any other remedies that may be taken. No demand for payment is allowed.
- A 1st Party APG employee cannot make a demand for payment on an incoming call from a consumer who has a verbal Cease & Desist communication on file. The 1st Party APG employee may advise of the consumer of the payment owed and may take a payment voluntarily offered by the consumer.
- Note: if the consumer's verbal request regarding communication is Do Not Call only, unless otherwise specified by the consumer, Do Not Call requests do not prevent the 1st Party APG employee from using approved written forms of communication with the consumer. The 1st Party APG employee should request an alternate telephone number where the consumer prefers to be contacted.
  - If the consumer provides a new number, and the new number is a cellular telephone, proper protocol regarding TCPA must be followed. Please reference the Autodialers and Artificial or Prerecorded Voice Messages Policy for further guidance.

The following governs steps that need to be taken for verbal Cease & Desist requests for consumers located in states that do not require verbal Cease & Desist requests to be honored.

- If a 1st Party APG employee receives a verbal Cease & Desist, the 1st Party APG employee should advise the consumer that there is no guarantee that he/she will not receive communication.
- For verbal **Do Not Call** requests regarding, the 1st Party Collections, APG employees should request an alternate telephone number where the consumer prefers to be contacted.
  - If the consumer provides a new number, and the new number is a cellular telephone, proper protocol regarding TCPA must be followed. Please reference the Autodialers and Artificial or Prerecorded Voice Messages Policy for further guidance.
- The 1st Party APG employee will provide the correct mailing address for the consumer to mail the Cease & Desist request if the consumer resides in a state that requires written Cease & Desist requests to be honored.

Page 2 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIƎNT.

Procedure

- All verbal **Do Not Call** requests regarding a cellular telephone number must follow the guidelines within the section entitled **All APG Employees – Cell Phone Auto-Dialing Cease & Desist Requests**.
- All autodialing activity to a consumer's place of employment (POE) should cease. Manual dialing may continue.

## 3rd Party Employees – Written Cease & Desist Requests (Consumer Debt)
The following governs steps that need to be taken for written Cease & Desist requests for consumer's located in all states.

- Written Cease & Desist request for consumer debt must be honored in all states. The 3rd Party APG employee will document the account with the consumer's written request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication.
- The 3rd Party APG employee is allowed one final communication with the consumer to confirm receipt of the request, inform him/her that all collection activities will cease, and notify them of any other remedies that may be taken. No demand for payment is allowed on this call.
- A 3rd Party APG employee cannot discuss the details of a debt on an incoming call with a consumer who has a written Cease & Desist communication on file. If the consumer wishes to communicate with the APG subsidiary after sending the written Cease & Desist communication, the consumer must first send written release from the Cease & Desist.
- Note: if the consumer's written request regarding communication is Do Not Call only, unless otherwise specified by the consumer, Do Not Call requests do not prevent the 3rd Party APG employee from using approved written forms of communication with the consumer.

## 3rd Party Employees – Verbal Cease & Desist Requests (Consumer Debt)
The following governs steps that need to be taken for verbal Cease & Desist requests for consumers located in all states.

- Verbal Cease & Desist requests for consumer debt must be honored in all states. The 3rd Party APG employee will document the account with the consumer's verbal request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication.
- The 3rd Party APG employee must also inform the consumer that all collection activities will cease, and notify them of any other remedies that may be taken. No demand for payment is allowed.
- A 3rd Party APG employee cannot discuss the details of a debt on an incoming call with a consumer who has a verbal Cease & Desist communication on file. If the consumer/debtor wishes to communicate with the APG subsidiary after providing a verbal Cease & Desist communication, the consumer must first send written release from the Cease & Desist.
- Note: if the consumer's verbal request regarding communication is Do Not Call only, unless otherwise specified by the consumer, Do Not Call requests do not prevent the 3rd Party APG employee from using approved written forms of communication with the consumer. The 3rd Party APG employee should request an alternate telephone number where the consumer prefers to be contacted.
  - If the consumer provides a new number, and the new number is a cellular telephone, proper protocol regarding TCPA must be followed. Please reference the, Autodialers and Artificial or Prerecorded Voice Messages Policy for further guidance.

## 3rd Party Employees – Written Cease & Desist Requests (Non-Consumer Debt)
The following governs steps that need to be taken for written Cease & Desist requests for debtors located in all states.

- Written Cease & Desist request for non-consumer debt must be honored in all states. The 3rd Party APG employee will document the account with the debtor's written request in the account notes and other appropriate fields. They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication.
- The 3rd Party APG employee is allowed one final communication with the debtor to confirm receipt of the request, inform him/her that all collection activities will cease, and notify them of any other remedies that may be taken. No demand for payment is allowed on this call.
- A 3rd Party APG employee cannot discuss the details of a debt on an incoming call with a debtor who has a written Cease & Desist communication on file. If the debtor wishes to communicate with the APG subsidiary after sending the written Cease & Desist communication, the debtor must first send written release from the Cease &

Page 3 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000212

# NAVIΞNT.

Procedure

Desist.
- Note: if the debtor's written request regarding communication is Do Not Call only, unless otherwise specified by the debtor, Do Not Call requests do not prevent the 3rd Party APG employee from using approved written forms of communication with the debtor.

## 3rd Party Employees – Verbal Cease & Desist Requests (Non-Consumer Debt)

The following governs steps that need to be taken for verbal Cease & Desist requests for debtor's located in all states.
- If a 3rd Party APG employee receives a verbal Cease & Desist request for non-consumer debt at the debtor's non-POE location, the 3rd Party APG employee should advise the debtor that there is no guarantee that he/she will not receive communication.
- For verbal **Do Not Call** requests regarding a non-POE phone number, the 3rd Party Collection APG employee should request an alternate telephone number where the debtor prefers to be contacted.
   - If the debtor provides a new number, and the new number is a cellular telephone, proper protocol regarding TCPA must be followed.  Please reference the <u>Autodialers and Artificial or Prerecorded Voice Messages Policy</u> for further guidance.
- The 3rd Party APG employee will provide the correct mailing address for the debtor to mail the Cease & Desist request.
- All verbal **Do Not Call** requests regarding a cellular telephone number must follow the guidelines within the section entitled **All APG Employees – Cell Phone Auto-Dialing Cease & Desist Requests**.
- For verbal Cease & Desist requests to a debtor's POE location, please reference the section entitled **3rd Party Employees – Place of Employment Verbal Cease & Desist Requests (Non-consumer Debt)**

## 3rd Party Employees – Place of Employment Verbal Cease & Desist Requests (Non-consumer Debt)

The following governs steps that need to be taken for verbal and/or written Cease & Desist requests to a debtor's **POE only** for debtors located in all states.
- If a 3rd Party APG employee receives a verbal Cease & Desist requests to cease communications to a debtor's POE for non-consumer debt, the 3rd Party APG employee will document the account with the debtor's request in the account notes and other appropriate fields.  They will also make the necessary changes to the system of record or the default aversion/collection platform to prevent any future communication to his/her POE (except for employment verification or Administrative Wage Garnishment purposes).
- Note: if the debtor's request regarding communication to his/her POE is Do Not Call only, unless otherwise specified by the debtor, Do Not Call requests do not prevent the 3rd Party APG employee from using approved written forms of communication with the debtor at his/her POE.  The 3rd Party APG employee should request an alternate telephone number where the debtor prefers to be contacted.
   - If the debtor provides a new number, and the new number is a cellular telephone, proper protocol regarding TCPA must be followed.  Please reference the <u>Autodialers and Artificial or Prerecorded Voice Messages Policy</u> for further guidance.

## 3rd Party Employees – Written Refusal to Pay

The following governs written notification from the consumer/debtors located in all states regarding refusal to pay for 3rd Party Employees.
- A written refusal to pay should be treated as a written Cease & Desist.  Please follow the appropriate written Cease & Desist guidelines for 3rd Party Employees above.
- You must cease communication.
- You may not contact a consumer/debtor who has submitted a written refusal to pay.
- Upon receiving a written refusal to pay, you must ensure the consumer/debtor's account is updated accurately to reflect the consumer/debtor's refusal to pay request.

## Definitions

| Word/Phrase | Definition |
|---|---|
| Cease & Desist | An order or request to halt an activity (cease) and not to take it up again later (desist).  The recipient of the Cease & Desist may be an individual or an organization.  Cease & |

Page 4 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000213

# NAVIENT.

Procedure

| Word/Phrase | Definition |
|---|---|
|  | Desist requests include the stoppage of all communications, including (but not limited to) telephone communications (Do Not Call). |
| Do Not Call | A form of Cease & Desist that pertains to telephone communications only; other forms of communication can still be pursued.  Do Not Call requests can pertain to one or more phone numbers on a consumer/debtor(s) account. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

## Reference Material

Related Policies and Procedures
- First Party Collection Practices Policy
- Third Party Collection Practices Policy (Consumer Debt)
- Autodialers and Artificial or Prerecorded Voice Messages Policy
- APG training material

Related Regulations
- FDCPA: Fair Debt Collections Practices Act
- None Applicable - State:

Industry Publications
N/A

## Affected Department(s)

Asset Recovery and Business Services, Contingency Services, Portfolio Management, Private Credit Collections, Private Credit Post-Default Collections, RKL Financial, Student Assistance Corporation (SAC)

## Appendices:

N/A

## Exception(s):

A verbal Cease & Desist request may be accepted according to contract, line of business management, and/or office/agency preferences and instructions.

A final collection effort may be utilized on accounts placed in a Cease & Desist status prior to invoking special remedies (i.e., Administrative Wage Garnishment, charge-off, litigation, etc.).

Calls may be placed to a POE to verify employment on any account where any form of Cease & Desist has been honored. There may be no reference to the debt on this call.

Page 5 of 5

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000214

# NAVIƎNT.

Procedure

| Title: Skiptracing and Tool Usage Procedure | |
|---|---|
| Department: Collections/Default Aversion | Contact: Robert Glinke |
| Approval Date: 01/13/2015 | Reference # 1753 |
| Last Review Date: 01/13/2015 | |

## Purpose

The purpose of this procedure is to define acceptable practices for communicating with third parties, including employers, and/or using other skiptracing tools in order to obtain consumer/debtor location information.

## Background

During their attempts to locate a consumer/debtor, employees may need to contact a third party, including an employer, in order to obtain location information. Additionally, they may need to use various approved tools/websites. This process is known as "skiptracing."

## Procedure

### Skiptracing Contact Requirements

Employees must adhere to the following guidelines when skiptracing, and must follow any applicable state laws (Refer to the State Laws Quick Reference Guide):

- An employee may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection/resolution of a debt.
- If there has been prior right party contact at the home/cell, skiptracing for an alternate home/cell may not commence until 14 days after the last right party contact, unless notified the number is no longer valid, in which case, skiptracing may commence.
- When calling a consumer/debtor's location you may ask for alternate contact information to locate the consumer/debtor.
- If we receive information that the consumer/debtor's information has changed (i.e. returned mail) skiptracing may commence.
- The employee must identify himself/herself.
- In 3rd party, only disclose the company name if specifically asked on an outbound call.
- When disclosing the company name, only the true name of the company must be used.
- The employee must only ask location information questions regarding the consumer/debtor's place of residence, telephone number or place of employment.
- The employee must not communicate or infer the existence of a debt when skiptracing.
- The employee must not communicate with the same skip trace contact more than once unless the employee is requested to do so or the employee believes the information provided by the contact is erroneous or incomplete and the contact now has correct or complete location information. Skiptracing efforts must cease when the consumer/debtor is represented by an attorney with respect to the debt that the employee is attempting to resolve, or the consumer/debtor is currently in bankruptcy.

### Additional Skiptracing Contact Requirements

Employees may not divulge any information regarding the consumer/debtor's account, or non-public personal information (NPI) such as the consumer/debtor's Social Security Number or date of birth, to a third party. The employee is allowed to disclose the last known address of the consumer/debtor, when necessary, for the purpose of obtaining the consumer/debtor's new location information. The employee is allowed to disclose only the last four (4) digits of the consumer/debtors phone number to confirm that it's good for the consumer/debtor.

If asked what the call is regarding, the employee should reply: "It is a personal business matter" or similar verbiage and must not state or infer the existence of a debt.

The employee cannot ask the third party to deliver any messages to the consumer/debtor. If the third party volunteers to take a message, the employee is allowed to leave contact information.

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIΞNT.                                        Procedure

The employee must cease skiptracing efforts when it has been made known that a consumer/debtor has filed for bankruptcy and is protected by the automatic stay.

The employee should document all skiptracing attempts including source and applicable information obtained.

## Skiptracing and Employer Contact

If an employee needs to contact an employer for the purpose of gaining location information about the consumer/debtor, the employee will only contact an employer one (1) time to obtain "location information" and must follow the guidance provided in the above sections.

Follow up contacts to obtain "location information" are not permitted unless there is a reasonable belief that the original information given was incorrect or has changed (e.g., the consumer/debtor is at a different office).

If personnel at the employer's office agree to take messages for the consumer/debtor, then it is reasonable to believe that the consumer/debtor is employed there and no further contact with the employer to verify location information is necessary.

*Note:* "Employer Contact" instructions only pertain to skiptracing purposes (it does not provide procedures for employer contact for Administrative Wage Garnishment (AWG), employment verification, or Legal Proceedings).

## Use of Skiptracing Tools/Websites

Employees are allowed to access skiptracing websites and use skiptracing tools only for business-related purposes and only when there is a valid business reason to do so.

Employees shall not access nor attempt to access any other data or accounts on any of the skiptracing sites that is unrelated to our business.

Employees are strictly prohibited from using skiptracing sites for reasons other than to obtain location information for a consumer/debtor's account.

Employees may not create profiles on social networking sites for the purposes of conducting business (including skiptracing). The use of social networking websites is not permitted. However, employees may utilize any information that is found via a public domain, such as a search engine, even if such information from the public domain is linked to a social networking site.

Employees are restricted from signing in on any website using his or her personal information or account for the purposes of skiptracing.

While using an approved website for skiptracing purposes, employees are strictly prohibited from sending messages to or otherwise attempting to contact consumer/debtors through the website. This includes sending direct messages, e-mails and/or establishing "friend" requests.

Employees are strictly prohibited from misrepresenting themselves on any website to obtain consumer/debtor location information.

Employees will not access or attempt to access any skiptracing site from a non-Navient computer.

The following is a list of examples of prohibited searches on skiptracing sites:
- Celebrities
- Politicians
- World leaders
- Family members
- Friends
- Co-workers
- Anyone other than a consumer/debtor or persons associated on an account with the consumer/debtor

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIENT.

Procedure

## Definitions

| Word/Phrase | Definition |
|---|---|
| Line of Business (LOB) | The specific division or subsidiary within Navient. Examples include: Private Credit Collections (PCC), Student Assistance Corporation (SAC), RKL Financial (RKLF), Contingency Services; Pioneer Credit Recovery (PCR), General Revenue Corporation (GRC), Student Outreach Solutions Incorporated (SOSI). |
| Location Information | A consumer/debtor's place of residence, residence telephone number or place of employment. |
| Skiptracing | This definition is for purposes of this document only, to exclude skiptracing via applications (ex Accurint, NCOA, etc.) - Process of calling alternate phone numbers in an attempt to obtain location information for a consumer/debtor. |
| Skiptracing Tools | Pre-approved applications and/or websites utilized for skiptracing purposes. |

## Reference Material

Related Policies and Procedures

- First Party Collection Practices Policy
- Third Party Collection Practices Policy (Consumer Debt)

Related Regulations

- FDCPA: Fair Debt Collections Practices Act
- State Collection Laws:

Industry Publications

N/A

## Affected Department(s)

Collections/Default Aversion, Contingency Services, Portfolio Management, Private Credit Collections, Private Credit Post-Default Collections, RKL Financial, Student Assistance Corporation (SAC)

## Appendices:

N/A

## Exception(s):

N/A

Page 3 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000217

# NAVIΞNT.

| Title: Skiptracing and Tool Usage Procedure | |
|---|---|
| Department: Collections/Default Aversion | Owner/Contact: Robert Glinke |
| Approval Date: 05/01/2014<br>Last Review Date: 04/14/2014 | Reference # 1753 |

## Purpose

The purpose of this procedure is to define Asset Performance Group's (APG's) acceptable practices for communicating with third parties, including employers, and/or using other skiptracing tools in order to obtain consumer/debtor location information.

## Background

During their attempts to locate a consumer/debtor, APG employees may need to contact a third party, including an employer, in order to obtain location information. Additionally, they may need to use various approved tools/websites. This process is known as "skiptracing."

## Applicability

This procedure is applicable to all APG lines of business unless otherwise specified in client contracts, regulatory, federal or state-specific guidelines, or in any other APG procedure or Navient Corporate Policy.

## Procedure

### 1st Party APG Employees - Skiptracing Contact Requirements

1st Party APG employees must adhere to the following guidelines when skiptracing:

- The 1st Party APG employee must identify himself/herself by name.
- When disclosing the company name, only the true name of the company must be used.
- The 1st Party APG employee must only ask location information questions regarding place of residence, telephone number or place of employment.
- The 1st Party APG employee must not communicate or infer the existence of a debt when skiptracing.
- The 1st Party APG employee must not communicate with a skip trace contact more than once unless the 1st Party APG employee is requested to do so or the 1st Party APG employee believes the information provided by the contact is erroneous or incomplete and the contact now has correct or complete location information.
- Skiptracing efforts must cease when the consumer/debtor's location is known or if the consumer/debtor is represented by an attorney with respect to the debt that the 1st Party APG employee is attempting to service and/or collect or the consumer/debtor is currently in a bankruptcy.

### 3rd Party APG Employees - Skiptracing Contact Requirements

3rd Party APG employees must adhere to the following guidelines when skiptracing:

- The 3rd Party APG employee must identify himself/herself by name.
- Only disclose the company name if specifically asked.
- If asked to disclose the company name, the 3rd Party APG employee must give the true name of the company.
- The 3rd Party APG employee must only ask location information questions regarding place of residence, telephone number or place of employment.
- The 3rd Party APG employee must not communicate or imply/infer the existence of a debt when skiptracing.
- The 3rd Party APG employee must not communicate with a skip trace contact more than once unless the 3rd Party APG employee has permission to do so, or the 3rd Party APG employee believes the information provided by the contact is erroneous or incomplete, and the contact now has correct or complete location information.
- Skiptracing efforts must cease when the consumer/debtor is represented by an attorney with respect to the debt that the 3rd Party APG employee is attempting to service and/or collect, or the consumer/debtor is currently in a bankruptcy.

### All APG Employees - Additional Skiptracing Contact Requirements

APG employees may not divulge any information regarding the consumer/debtor's account, or non-public personal information (NPI) such as the consumer/debtor's Social Security Number or date of birth, to a third party. The APG

Page 1 of 4

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000218

# NAVI≡NT.

Procedure

employee is allowed to disclose the last known address of the consumer/debtor, when necessary, for the purpose of obtaining the consumer/debtor's new location information.

If asked what the call is regarding, the APG employee should reply: "It is a personal business matter" or similar verbiage.

The APG employee cannot ask the third party to deliver any messages to the consumer/debtor. If the third party volunteers to take a message, the APG employee is allowed to leave contact information.

The APG employee must cease skiptracing efforts when it has been made known that a consumer/debtor has filed for bankruptcy and is protected by the automatic stay.

The APG employee should document all skiptracing attempts including source and applicable information obtained.

## All APG Employees - Skiptracing and Employer Contact

If an APG employee needs to contact an employer for the purpose of gaining location information about the consumer/debtor, the APG employee will only contact an employer one (1) time to obtain "location information" and must follow the guidance provided in the above sections.

Follow up contacts to obtain "location information" are not permitted unless there is a reasonable belief that the original information given was incorrect or has changed (e.g., the consumer/debtor is at a different office).

If personnel at the employer's office agree to take messages for the consumer/debtor, then it is reasonable to believe that the consumer/debtor is employed there and no further contact with the employer to verify location information is necessary.

*Note:* "Employer Contact" instructions only pertain to skiptracing purposes (it does not provide procedures for employer contact for Administrative Wage Garnishment (AWG), employment verification, or Legal Proceedings).

## All APG Employees - Use of Skiptracing Tools/Websites

APG employees are allowed to access skiptracing websites and use skiptracing tools only for APG business-related purposes and only when there is a valid business reason to do so.

APG employees shall not access nor attempt to access any other data or accounts on any of the skiptracing sites that is unrelated to our business.

APG employees are strictly prohibited from using skiptracing sites for reasons other than to obtain location information for a consumer/debtor's account.

APG employees may not create profiles on social networking sites for the purposes of conducting APG business (including skiptracing). The use of social networking websites is not permitted. However, APG employees may utilize any information that is found via a public domain, such as a search engine, even if such information from the public domain is linked to a social networking site.

APG employees are restricted from signing in on any website using his or her personal information or account for the purposes of skiptracing.

While using an approved website for skiptracing purposes, APG employees are strictly prohibited from sending messages to or otherwise attempting to contact consumer/debtors through the website. This includes sending direct messages, e-mails and/or establishing "friend" requests.

APG employees are strictly prohibited from misrepresenting themselves on any website to obtain consumer/debtor location information.

APG employees will not access or attempt to access any skiptracing site from a non- Navient computer.

Page 2 of 4

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIƎNT.

Procedure

The following is a list of examples of prohibited searches on skiptracing sites:

- Celebrities
- Politicians
- World leaders
- Family members
- Friends
- Co-workers
- Anyone other than a consumer/debtor or persons associated on an account with the consumer/debtor

## Definitions

| Word/Phrase | Definition |
|---|---|
| Line of Business (LOB) | The specific division or subsidiary within Asset Performance Group. Examples include: Private Credit Collections (PCC), Student Assistance Corporation (SAC), RKL Financial (RKLF), Contingency Services; Pioneer Credit Recovery (PCR), General Revenue Corporation (GRC). Student Outreach Solutions Incorporated (SOSI). |
| Location Information | A consumer/debtor's place of residence, residence telephone number or place of employment. |
| Skiptracing | Process of obtaining location information for a consumer/debtor through various means of research or investigation. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
| | |
| | |
| | |
| | |

## Reference Material

Related Policies and Procedures
- First Party Collection Practices Policy
- Third Party Collection Practices Policy (Consumer Debt)

Related Regulations
- FDCPA: Fair Debt Collections Practices Act
- None Applicable - State:

Industry Publications
N/A

## Affected Department(s)

Collections/Default Aversion, Contingency Services, Portfolio Management, Private Credit Collections, Private Credit Post-Default Collections, RKL Financial, Student Assistance Corporation (SAC), Student Outreach Solutions Inc. (SOSI)

## Appendices:
N/A

## Exception(s):
N/A

Page 3 of 4

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000220

# NAVIƎNT.

Procedure

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIΞNT.

Procedure

| Title: Messages on Recording Devices (Third Party Consumer Debt) Procedure | |
|---|---|
| Department: Contingency Services | Owner/Contact: Robert Glinke |
| Approval Date: 04/08/2014<br>Last Review Date: 03/20/2014 | Reference # I767 |

## Purpose

To define Asset Performance Group's (APG) acceptable practices when leaving messages for consumers on answering machines, voicemails, and/or other message recording devices in regards to consumer debt.

## Applicability

This procedure is applicable to all APG lines of business, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in another APG procedure or Navient Corporate Policy, as approved by Compliance and/or Legal.

## Procedure

### Recorded Messages at Consumers' Known Phone Numbers

When leaving messages in connection with the collection of a debt, the APG employees may only leave messages for consumers at phone numbers that they have reason to believe are correct, or at phone numbers which have been previously confirmed by prior contact. This only applies to the recorded messages left for a consumer, not to messages for authorized third parties. In these instances, the APG employees must provide the scripted disclosure below.

This disclosure includes the minimum requirements for a script. Other business specific language approved by Legal and/or Compliance may be added to this script as deemed appropriate:

"This message is meant only for [CONSUMER FIRST AND LAST NAME] and is about a personal business matter. If you are not [CONSUMER FIRST AND LAST NAME], do not listen to the rest of this message. By continuing to listen to this message, you acknowledge that you are [CONSUMER FIRST AND LAST NAME].

[slight pause]

[CONSUMER FIRST AND LAST NAME], this message is from [COLLECTOR NAME] with [COMPANY NAME] and is about a past due debt from [ORIGINATING CREDITOR/CLIENT] in the amount of [TOTAL AMOUNT DUE]. Please call me back at _ _ _-_ _ _-_ _ _ _. Federal law requires that we advise you that this communication is from a debt collector and is an attempt to collect a debt. Any information that you provide to us will be used for such purpose. Again, this message is only for [CONSUMER FIRST AND LAST NAME]. _ _ _ - _ _ _-_ _ _ _. Thank you."

### Recorded Messages for Non-Consumers

APG employees may leave a recorded message on a non-consumer's recording device if the purpose of the message is to obtain a consumer's location information (skip tracing).

- If/when the APG employee has reason to believe that the recording device may belong to someone other than the intended consumer, for example, at a place of employment, when the name on the recording device does not match the intended consumer, or when reaching a general voice box, no messages or scripted disclosures should be left.
- If the subsidiary permits leaving messages during the skip tracing process, then all applicable policies and procedures regarding skip tracing must be followed. Thus, the APG employee may only leave a message that contains:
  - The consumer's name,
  - The APG employee's name,
  - The APG employee's call back number and extension,
  - A reference number (if applicable)
- The APG employee **may not** disclose the company name or the reason for the call on any recording device of non-consumers.
- The APG employee **may not** imply or mislead that the call is an "emergency" or stress a sense of urgency in any manner.
- The APG employee **may not** disclose any information regarding the account. Disclosure is understood to mean, but is not limited to, divulging specific detail(s) on:

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

Procedure

- o   the existence or status of a debt or a legal matter,
- o   dispute, including the amount of the debt,
- o   the delinquency or
- o   the consumer's identification such as
    - ▪   address,
    - ▪   social security
    - ▪   date of birth.
- The APG employee **may not** leave a message with threatening or harassing dialogue, including tone of voice.
- The APG employee **may not** misrepresent or mislead in any manner, for example, pretending that the APG employee is a family member or friend.
- The APG employee **must** properly notate the account if they determine that the possible phone number for a consumer is incorrect.
- The APG employee may communicate **only once** with a third party to obtain location information. Thus, once actual contact has been made with the third party, no further attempts may be made to communicate with such third party without their permission. A third party may only be contacted more than once if permission was given by that third party, and is documented in the system of record, or you have substantiated reason to believe that the previous information obtained from communication with the third party is incorrect or incomplete, and the third party contact now has correct or complete location information.

## Definitions

| Word/Phrase | Definition |
|---|---|
| Skip tracing | Process of obtaining location information for a customer through various means of research or investigation. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |

## Reference Material

Related Policies and Procedures
- Third Party Collection Practices Policy (Consumer Debt)

Related Regulations
- None Applicable:
- FDCPA: Fair Debt Collections Practices Act
- None Applicable - State:

Industry Publications
N/A

## Affected Department(s)

Collections/Default Aversion, Contingency Services

## Appendices:

N/A

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIΞNT.

**Exception(s):**
N/A

*Note: **Printed copies of this** document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000224

# NAVIƎNT.

Procedure

| Title: Messages on Recording Devices (Third Party Consumer Debt) Procedure | |
|---|---|
| Department: Contingency Services | Contact: Robert Glinke |
| Approval Date: 01/02/2015 | Reference # 1767 |
| Last Review Date: 01/02/2015 | |

## Purpose
To define acceptable practices when leaving messages for debtors on answering machines, voicemails, and/or other message recording devices in regards to consumer debt.

## Applicability
This procedure is applicable to all lines of business, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in another procedure or Navient Corporate Policy, as approved by Compliance and/or Legal.

## Procedure
### Recorded Messages at Debtors' Known Phone Numbers
When leaving the Mini Miranda messages in connection with the collection of a debt, employees may only leave messages on the debtor's residence/cell/POE answering machine when the following criteria are met: .

1. The debtor's voicemail discloses the debtor's first and last name, and only the debtor's name.    -or-
2. The agency spoke previously with the debtor using the telephone number associated with the debtor's voicemail.

This disclosure includes the minimum requirements for a script. Other business specific language approved by Legal and/or Compliance may be added to this script as deemed appropriate:

"This confidential and important message is meant solely for [DEBTOR FIRST AND LAST NAME], this is [COLLECTOR NAME]. The law requires I notify you that I'm calling from (Pioneer Credit Recovery, Inc./General Revenue Corporation), a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please call me back today at [1-800 number]. [You may leave the hours of operation specific to your line of business]. When calling back, the Reference ID is [Reference #XXXX]. Once again, the number is [1-800 number]. Thank you."

For approved alternate versions of this message (message regarding paperwork, message for a NYC debtor, etc), see the "Answering Machine Messages" Job Aid.

### Generic Recorded Message for a Debtor
If, when calling the debtor, you are uncertain that the number (residence or debtor's voicemail at Place of Employment) is the debtor's number (voicemail does not state the debtor's name and no previous contact at that number), you must use the following message:

"This is an important message from Pioneer Credit Recovery, Inc/General Revenue Corporation. This is [COLLECTOR NAME], the law requires that we notify you that this is a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please call us back today at [1-800 number]. When calling back, the Reference ID is [Reference #XXXX]. Thank you." (You may leave the hours of operation).

### Generic Message for Third Party or Non-Debtor Location
Employees may leave a recorded message on a non-debtor's recording device if the purpose of the message is to obtain a debtor's location information (skip tracing).

• When calling a third party or non-debtor location you must read the following generic message script:

[NON-DEBTOR / 3rd PARTY FIRST AND LAST NAME], this message is from [COLLECTOR NAME] please call me back at [1-800 number].

You may leave the following additional information:

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000225

# NAVIƎNT.

Procedure

- A reference number (if applicable)
- The debtor's name
- Your name
- Your call back number

**Message for References**

Third-parties that the debtor previously listed as a reference, and references that were solicited during loan rehabilitation enrollment may be left the following scripted message for location information:

[REFERENCE'S FIRST AND LAST NAME], this message is from [COLLECTOR NAME]. I am calling in regards to [DEBTOR FIRST AND LAST NAME]; you were used as a reference. Please call me back at [1-800 number]. (You may leave the reference number).

- The employee **may not** disclose the company name or the reason for the call on any recording device of non-consumers.
- The employee **may not** imply or mislead that the call is an "emergency" or stress a sense of urgency in any manner.
- The employee **may not** disclose any information regarding the account. Disclosure is understood to mean, but is not limited to, divulging specific detail(s) on:
    - the existence or status of a debt or a legal matter,
    - dispute, including the amount of the debt,
    - the delinquency or
    - the debtor's identification such as
        - address,
        - social security
        - date of birth.
- The employee **may not** leave a message with threatening or harassing dialogue, including tone of voice.
- The employee **may not** misrepresent or mislead in any manner, for example, pretending that the employee is a family member or friend.
- The employee **must** properly notate the account if they determine that the possible phone number for a consumer is incorrect.
- The employee may communicate **only once** with a third party to obtain location information. Thus, once actual contact has been made with the third party, no further attempts may be made to communicate with such third party without their permission. Permission for further contact must be given by that specific third party, and must be documented in the collection system, or you must have a substantiated reason to believe that the previous information obtained from communication with the third party is incorrect or incomplete, and the third party contact now has correct or complete location information.

## Definitions

| Word/Phrase | Definition |
|---|---|
| Skip tracing | Process of obtaining location information for a customer through various means of research or investigation. |

## Reference Material

Related Policies and Procedures
- Third Party Collection Practices Policy (Consumer Debt)

Related Regulations
- FDCPA: Fair Debt Collections Practices Act

Industry Publications
N/A

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000226

# NAVIENT.

Procedure

**Affected Department(s)**
Asset Recovery and Business Services, Contingency Services

**Appendices:**
N/A

**Exception(s):**
N/A

Page 3 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVI≡NT.

Procedure

Local regulations. client restrictions. business procedures, or federal and state laws ("guidance") may be more restrictive than the procedure listed above. In the event that any of this guidance is in conflict with the directives listed above, the more restrictive guidance takes precedence.

## Definitions

| Word/Phrase | Definition |
|---|---|
| IVR | The outbound IVR, or Interactive Voice Response unit, is a system or technology which allows a consumer to interact with a database through keypad or voice commands. |
| Call Attempt | Any outbound call which causes the receiving telephone to ring and/or results in notification on a caller ID system or other message service. Telco messages such as not in service, cannot be completed as dialed, disconnect notification, or busy signals will not be counted towards the total number of calls. |
| Manual Call | Any agent initiated outbound call that is generated through any resource other than an automated dialer campaign. |
| Dialer Call | A telephone communication originated by an automated or predictive dialing device from a predefined list of telephone numbers and without direct manual intervention. |
| Third Party Vendor Call | Any call generated by an entity or system not directly controlled by Navient. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
| | |

## Reference Material

Related Policies and Procedures
- Third Party Collection Practices Policy (Consumer Debt)
- Skiptracing and Tool Usage Procedure
- Cease and Desist Request Procedure
- Messages on Recording Devices (Third Party Consumer Debt) Procedure
- Messages on Recording Devices (Third Party Non-Consumer Debt) Procedure

Related Regulations
- None Applicable:
- None Applicable - State:

Industry Publications
N/A

## Affected Department(s)
Collections/Default Aversion, Contingency Services

## Appendices:
N/A

## Exception(s):
A Director of Collections or above may override the procedure in order to maintain business continuity in the event of a systemic failure or other extenuating circumstances.
- The event must be fully documented with cause, period of time procedure was overridden, and action implemented to correct the event.

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000229

# NAVI≡NT.

Procedure

| Title: Contingency Outbound Call Attempts Procedure | |
|---|---|
| Department: Contingency Services | Owner/Contact: Robert Glinke |
| Approval Date: 04/08/2014<br>Last Review Date: 03/20/2014 | Reference # 1776 |

## Purpose
The purpose of this procedure is to define acceptable practices for Contingency Services employees who engage in outbound telephone attempts to consumers and/or third parties either manually, through the use of an auto dialer, the outbound Interactive Voice Response (IVR) Unit, or other comparable outbound dialing system.

## Applicability
This procedure applies to all lines of business within Contingency Services, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in any another APG procedure or a Navient Corporate Policy, as approved by Compliance and/or Legal. Commercial Collections and its employees are excluded from this procedure.

## Procedure
### Call Frequency
The number of outbound attempts must not exceed four (4) per day for each contact number associated with a consumer or any third party.

All outbound attempts, regardless of dialing method, are included in the total number of attempts. This includes manual calls, dialer calls, IVR calls, and outbound attempts generated by a third party vendor.

No more than two (2) attempts may be made to each number in any one (1) hour time period.

**Important Note:** The number of attempts and/or messages should be calculated separately by each line of business, such as Treasury or Department of Education. If a consumer has an account with each separate line of business, each account can receive up to four (4) outbound attempts per day.

### Messages
The number of messages left with a live person or a recording device must not exceed one (1) per day for each contact number associated with a consumer or any third party.

Once a message has been left with a live person or a recording device, all further attempts to that number must cease until the following day.

For defaulted accounts, daily messages may be left with a live person or a recording device.

### Callback
In the event that the consumer and/or third party requests or indicates a call back is necessary which exceeds the above directives, express permission must be obtained from the consumer and/or third party and must be clearly documented in the collections system.

### Additional Guidance
All policies and procedures regarding third party verbal communication, including but not limited to those outlined below, must be adhered to in addition to the directives outlined above:
- Third Party Collection Practices Policy (Consumer Debt)
- Skiptracing and Tool Usage Procedure
- Cease and Desist Request Procedure
- Messages on Recording Devices (Third Party Consumer Debt) Procedure
- Messages on Recording Devices (Third Party Non-Consumer Debt) Procedure

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

# NAVIƎNT.

Procedure

- Notification must be made to the SVP of Collections, VP of the contingency line of business, Senior Director of Corporate Compliance, and Director of APG Compliance.

Page 3 of 3

*Note: Printed copies of this* document are for reference only. The official version of this document is available *on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT™

Procedure

| Title: PCC Pre-Default Outbound Call Attempts Procedure | |
|---|---|
| **Department:** Private Credit Collections | **Owner/Contact:** Robert Glinke |
| Approval Date: 04/08/2014<br>Last Review Date: 03/13/2014 | **Reference #** 1798 |

## Purpose
The purpose of this procedure is to define acceptable practices for Private Credit Collections (PCC) Pre-Default employees engaging in outbound telephone attempts to consumers and/or third parties either manually, through the use of an auto dialer, the outbound Interactive Voice Response (IVR) Unit or other comparable outbound dialing system.

## Applicability
This procedure applies to Private Credit Collections Pre-Default, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in any another APG procedure or a Navient Policy, as approved by Compliance and/or Legal.

## Procedure
### Call Frequency
The following provides governance regarding call frequency:
- The number of outbound attempts must not exceed eight (8) per day for each Artiva account associated with a consumer or any third party.
  - Known home, cell or work phone numbers count toward the eight call attempts. This will not include numbers that are marked bad.
- The number of outbound attempts to references must not exceed two (2) per day for each account.
- The number of outbound attempts to skip waterfall numbers must not exceed four (4) per day for each account.
- No more than two (2) attempts may be made to each number in any one (1) hour time period.

All outbound attempts, regardless of dialing method, are included in the total number of attempts; this includes manual calls, dialer calls, IVR calls, and outbound attempts generated by a third party vendor.

### Messages and Right Party Contacts
The following provides governance regarding outbound call attempts after a message has been left or a right party contact has been made:
- The number of messages left with a live person or a recording device must not exceed one (1) per day for each contact number associated with a consumer or any third party.
- Once a message has been left with a live person or a recording device, all further attempts to that number for that account must cease until the following day.
- Once a right party contact has been made, all further attempts to that number for that account must cease until the following day.

### Callback
In the event that the consumer and/or third party requests or indicates a call back is necessary which exceeds the above directives, express permission must be obtained from the consumer and/or third party, and must be clearly documented in the collections system.

### Additional Guidance
All policies and procedures regarding first and third party verbal communication, including but not limited to those outlined below, must be adhered to in addition to the directives outlined above:
- First Party Collection Practices Policy
- Skiptracing and Tool Usage Procedure
- Cease and Desist Request Procedure
- Messages on Recording Devices (First Party Collections) Procedure

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000231

# NAVIENT.

Procedure

Local regulations, client restrictions, business procedures, or federal and state laws ("guidance") may be more restrictive than the procedure listed above. In the event that any of this guidance is in conflict with the directives listed above, the more restrictive guidance takes precedence.

## Definitions

| Word/Phrase | Definition |
|---|---|
| IVR | The outbound IVR, or Interactive Voice Response unit, is a system or technology which allows a consumer to interact with a database through keypad or voice commands. |
| Call Attempt | Any outbound call which causes the receiving telephone to ring and/or results in notification on a caller ID system or other message service. Telco messages such as not in service, cannot be completed as dialed, disconnect notification, or busy signals will not be counted towards the total number of calls. |
| Manual Call | Any agent initiated outbound call that is generated through any resource other than an automated dialer campaign. |
| Dialer Call | A telephone communication originated by an automated or predictive dialing device from a predefined list of telephone numbers and without direct manual intervention. |
| Third Party Vendor Call | Any call generated by an entity or system not directly controlled by Navient. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |

## Reference Material

Related Policies and Procedures
- First Party Collection Practices Policy
- Skiptracing and Tool Usage Procedure
- Cease and Desist Request Procedure
- Messages on Recording Devices (First Party Collections) Procedure

Related Regulations
- None Applicable:
- None Applicable - State:

Industry Publications
N/A

## Affected Department(s)

Private Credit Collections

## Appendices:

N/A

## Exception(s):

A Director of Collections or above may override the procedure in order to maintain business continuity in the event of a

# NAVIΞNT.

Procedure

- The event must be fully documented with cause, period of time procedure was overridden, and action implemented to correct the event.
- Notification must be made to the SVP of Collections, VP of Private Credit Collections, Senior Director of Corporate Compliance - Collections, and Director of APG Compliance.

Page 3 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000233

# NAVIƎNT

Procedure

| Title: PCC Recovery Outbound Call Attempts Procedure | |
|---|---|
| Department: Private Credit Post-Default Collections | Owner/Contact: Robert Glinke |
| Approval Date: 04/08/2014<br>Last Review Date: 03/18/2014 | Reference # 1972 |

## Purpose

The purpose of this procedure is to define acceptable practices for Private Credit Collections (PCC) Recovery employees engaging in outbound telephone attempts to consumers and/or third parties either manually, through the use of an auto dialer, the outbound Interactive Voice Response (IVR) Unit or other comparable outbound dialing system.

## Applicability

This procedure applies to Private Credit Collections Recovery, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in any another APG procedure or a Navient Corporate Policy, as approved by Compliance and/or Legal.

## Procedure

### Call Frequency

The following provides governance regarding call frequency:

- The number of outbound attempts must not exceed eight (8) per day for each FACS account associated with a consumer or any third party.
- No more than two (2) attempts may be made to each number in any one (1) hour time period.

All outbound attempts, regardless of dialing method, are included in the total number of attempts; this includes manual calls, dialer calls, IVR calls, and outbound attempts generated by a third party vendor.

### Messages and Right Party Contacts

The following provides governance regarding outbound call attempts after a message has been left or a right party contact has been made:

- The number of messages left with a live person or a recording device must not exceed one (1) per day for each contact number associated with a consumer or any third party.
- Once a message has been left with a live person or a recording device, all further attempts to that number for that account must cease until the following day.
- Once a right party contact has been made, all further attempts to that number for that account must cease until the following day.

### Callback

In the event that the consumer and/or third party requests or indicates a call back is necessary which exceeds the above directives, express permission must be obtained from the consumer and/or third party, and must be clearly documented in the collections system.

### Additional Guidance

All policies and procedures regarding first and third party verbal communication, including but not limited to those outlined below, must be adhered to in addition to the directives outlined above:

- First Party Collection Practices Policy
- Messages on Recording Devices (First Party Collections) Procedure
- Skiptracing and Tool Usage Procedure
- Cease and Desist Request Procedure

Local regulations, client restrictions, business procedures, or federal and state laws ("guidance") may be more restrictive than the procedure listed above. In the event that any of this guidance is in conflict with the directives listed above, the more restrictive guidance takes precedence.

Page 1 of 2

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000234

# NAVIENT.

*Procedure*

## Definitions

| Word/Phrase | Definition |
|---|---|
| IVR | The outbound IVR, or Interactive Voice Response unit, is a system or technology which allows a consumer to interact with a database through keypad or voice commands. |
| Call Attempt | The outbound IVR, or Interactive Voice Response unit, is a system or technology which allows a consumer to interact with a database through keypad or voice commands. |
| Manual Call | Any agent initiated outbound call that is generated through any resource other than an automated dialer campaign. |
| Dialer Call | A telephone communication originated by an automated or predictive dialing device from a predefined list of telephone numbers and without direct manual intervention |
| Third Party Vendor Call | Any call generated by an entity or system not directly controlled by Navient. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

## Reference Material

Related Policies and Procedures
- First Party Collection Practices Policy
- Messages on Recording Devices (First Party Collections) Procedure
- Skiptracing and Tool Usage Procedure
- Cease and Desist Request Procedure

Related Regulations
- None Applicable:

Industry Publications
N/A

## Affected Department(s)
Private Credit Post-Default Collections

## Appendices:
N/A

## Exception(s):
N/A

Page 2 of 2

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000235

# NAVIƎNT.

Procedure

| Title: PCC Recovery TCPA Execution Procedure | |
|---|---|
| Department: Private Credit Post-Default Collections | Contact: Robert Glinke |
| Approval Date: 01/27/2015 | Reference # 2055 |
| Last Review Date: 01/27/2015 | |

## Purpose

The Telephone Consumer Protection Act (TCPA) requires express consent for the predictive autodialing, leaving of pre-recorded messages, or texting of a customer's cell phone for non-telemarketing activities. The purpose of this document is to outline the TCPA processes involved on the GC dialer for Private Credit Collections – Recovery (PCC Recovery).

## Background

The GC dialer is the dialer that is used in PCC Recovery to manage all outbound and inbound calls. Outbound calling consists of manual dialing and message blast campaigns. For more details regarding outbound campaign types on the GC dialer, please reference the GRC section of Contingency Dialer Campaign Development and Execution Procedure.

Message Blast campaigns require TCPA consent. *See definitions.*

## Applicability

This procedure applies to Private Credit Collections – Recovery.

## Procedure

### FACS

FACS is the primary workstation for PCC Recovery. Different businesses are separated within different FACS directories to protect NPI and to comply with applicable regulations and state laws. The PCC Recovery business is segmented in the EDU directory. Phone numbers can appear on FACS on many different user screens. Phone numbers and consent are stored within FACS and can be changed simply by entering the applicable information on the screen. *See Screenshot.*

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVI☰NT.

*Procedure*



Auto Dial Consent Options
- C = cell (cell phone without consent)
- * = yes (cell phone with consent)
- R = Revoke (used for no consent and Arthur revokes)
- ! = Do Not Call
- B = Bad Number
- G = Good Number
- H = Hold (manual dial only)
- ' ' = Blank consent

## GC

The GC dialer is used in PCC Recovery and was built to work with the FACS workstation. Validity is an add on within the GC dialer that does real time cell phone scrubs at the time that each campaign is being executed. This means any number that does not already have B, R, or ! will get rescrubbed to ensure it does not get message blasted without consent. This scrub includes all new phone numbers that get added to FACS which will have a blank consent value. Validity uses the same IMS cell phone block and port files that CIS uses, for consistency among business areas. Once the scrub is complete, only those cell phones with * consent will be message blasted.

## Controls

The GC dialer has an audit that runs every 15 minutes, daily, that ensures no one disables the Validity cell phone scrub. If for some reason it is disabled, automated emails will alert the Dialer Operations Team.

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

NSI0000237

# NAVIΞNT.

Procedure

As a secondary control, at the end of each day an audit is run to determine if any numbers with a consent value of C were predictively autodialed. If any were autodialed in error, automated emails will alert the Dialer Operations Team.

**Arthur Scrub**
FACS currently has a list of the Arthur plaintiffs at the SSN and phone number level. If any new business enters **PCC Recovery**'s work stream, or new numbers are added to existing accounts, they get scrubbed against the Arthur list. If there is a match, FACS will use the IMS Port and Block files (identical to CIS) to set all cell phones belonging to that SSN to R consent.

## Definitions

| Word/Phrase | Definition |
|---|---|
| Message Blast | Pre-recorded messages delivered to a customer via an answering machine or when a customer picks up the phone. This message states they need to call Private Credit Collections - Recovery back. The message that is delivered is pre-approved by Compliance and Legal. |

## Key Roles & Responsibilities

## Reference Material
Related Policies and Procedures
- Contingency Dialer Campaign Development and Execution Procedure
- Autodialers and Artificial or Prerecorded Voice Messages Policy v.1

Related Regulations
- TCPA: Telephone Consumer Protection Act of 1991

Industry Publications
N/A

## Affected Department(s)
Private Credit Post-Default Collections

## Appendices:
N/A

## Exception(s):
N/A

Page 3 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

Procedure

| Title: PCC Recovery TCPA Execution Procedure | |
|---|---|
| Department: Private Credit Post-Default Collections | Owner/Contact: Robert Glinke |
| Approval Date: 04/08/2014<br>Last Review Date: 03/20/2014 | Reference # 2055 |

## Purpose
The Telephone Consumer Protection Act (TCPA) requires express consent for the predictive autodialing, leaving of pre-recorded messages, or texting of a customer's cell phone for non-telemarketing activities. The purpose of this document is to outline the TCPA processes involved on the GC dialer for Private Credit Collections – Recovery (PCC Recovery).

## Background
The GC dialer is the dialer that is used in PCC Recovery to manage all outbound and inbound calls. Outbound calling consists of manual dialing and message blast campaigns. For more details regarding outbound campaign types on the GC dialer, please reference the GRC section of Contingency Dialer Campaign Development and Execution Procedure.

Message Blast campaigns require TCPA consent. *See definitions.*

## Applicability
This procedure applies to Private Credit Collections – Recovery.

## Procedure
<**FACS**
FACS is the primary workstation for PCC Recovery. Different businesses are separated within different FACS directories to protect NPI and to comply with applicable regulations and state laws. The PCC Recovery business is segmented in the EDU directory. Phone numbers can appear on FACS on many different user screens. Phone numbers and consent are stored within FACS and can be changed simply by entering the applicable information on the screen. *See Screenshot.*

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIΞNT.

*Procedure*



**Auto Dial Consent Options**
- C = cell (cell phone without consent)
- * = yes (cell phone with consent)
- R = Revoke (used for no consent and Arthur revokes)
- ! = Do Not Call
- B = Bad Number
- G = Good Number
- H = Hold (manual dial only)
- ' ' = Blank consent

## GC
The GC dialer is used in PCC Recovery and was built to work with the FACS workstation. Validity is an add on within the GC dialer that does real time cell phone scrubs at the time that each campaign is being executed. This means any number that does not already have B, R, or ! will get rescrubbed to ensure it does not get message blasted without consent. This scrub includes all new phone numbers that get added to FACS which will have a blank consent value. Validity uses the same IMS cell phone block and port files that CIS uses, for consistency among business areas. Once the scrub is complete, only those cell phones with * consent will be message blasted.

## Controls
The GC dialer has an audit that runs every 15 minutes, daily, that ensures no one disables the Validity cell phone scrub. If for some reason it is disabled, automated emails will alert the APG Dialer Operations Team.

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000240

# NAVIENT.

As a secondary control, at the end of each day an audit is run to determine if any numbers with a consent value of C were predictively autodialed. If any were autodialed in error, automated emails will alert the APG Dialer Operations Team.

### Arthur Scrub

FACS currently has a list of the Arthur plaintiffs at the SSN and phone number level. If any new business enters **PCC Recovery**'s work stream, or new numbers are added to existing accounts, they get scrubbed against the Arthur list. If there is a match, FACS will use the IMS Port and Block files (identical to CIS) to set all cell phones belonging to that SSN to R consent.

## Definitions

| Word/Phrase | Definition |
|---|---|
| Message Blast | Pre-recorded messages delivered to a customer via an answering machine or when a customer picks up the phone. This message states they need to call Private Credit Collections - Recovery back. The message that is delivered is pre-approved by Compliance and Legal. |

## Key Roles & Responsibilities

| Role | Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

## Reference Material

Related Policies and Procedures
- Contingency Dialer Campaign Development and Execution Procedure

Related Regulations
- TCPA: Telephone Consumer Protection Act of 1991
- None Applicable - State:

Industry Publications
N/A

## Affected Department(s)

Private Credit Post-Default Collections

## Appendices:

N/A

## Exception(s):

N/A

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000241

# NAVIENT.

Procedure

| | |
|---|---|
| **Title:** Messages on Recording Devices (PCC & RKLF) Procedure | |
| **Department:** Asset Recovery and Business Services | **Contact:** Robert Glinke |
| **Approval Date:** 11/17/2014<br>**Last Review Date:** 11/17/2014 | **Reference #** 3537 |

## Purpose
The purpose of this procedure is to define acceptable practices for PCC or RKL Financial (RKLF) when leaving messages for consumers or third parties on answering machines, voicemails, and/or other message recording devices.

## Applicability
This procedure is applicable to Private Credit Collections (Pre-Default and Recovery) and RKL Financial, unless otherwise specified by debt type, in client contracts, regulatory, federal or state-specific guidelines, or in any other applicable procedure, or a Navient Corporate Policy, as approved by Compliance and/or Legal.

## Procedure
### Recorded Messages for Consumers
Employees must include the following items when leaving messages for consumers at phone numbers reasonably believed to belong to the consumer:
- The consumer's name
- The employee's name (as required by applicable state laws)
- Company name (as required by applicable state laws)
- The employee's call back number (and extension, if applicable)

The following are examples of approved language employees may include when leaving a recorded message for a consumer at a number reasonably believe to be the consumer's number:
- Regarding a student loan or personal business matter
- Office Hours
- Words such as "program", "assist", "offer", and/or "aid"
- The date that the consumer must contact you back by/date of charge off or date a program may expire
  - *Agents my not state "charge off"
- Collector hours of availability

Please reference applicable training material (based on the specific line of business) for additional approved language and guidelines.

Within RKLF, employees may include the following in a recorded message:
- Regarding a boat loan, mortgage loan, or anything of the like regarding the various products that RKLF services.

### Recorded Messages for Third Parties or Messages for Consumers on a number that cannot be reasonably believed to be the consumers.
When the employee has reason to believe that the recording device may belong to someone other than the intended consumer, for example, at a place of employment, when the name on the recording device does not match the intended consumer, or when manually skiptracing (non-waterfall) and reaching a general voice box with no name confirmation, the employee must adhere to the following guidelines when leaving a message:
- The consumer or third party's name (whoever the message is intended for)
- The employee's name (as required by applicable state laws)
- Company name (as required by applicable state laws)
- The employee's call back number (and extension, if applicable)

Page 1 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIƎNT.

Procedure

The following are examples of approved language that employees may include when leaving a recorded message for a third party:

- Regarding a personal business matter,
- The phrase, "You were listed as a reference" (if applicable)
- A reference number (if applicable)
- Office Hours
- The employee's hours of availability

Please reference applicable training material (based on line of business) for additional approved language and guidelines.

## Recorded Messages for Both Consumers and Third Parties

Employees must adhere to the following guidelines when leaving messages for both consumers and/or third parties:

- The employee **may not** imply or mislead that the call is an "emergency" or create a false sense of urgency in any manner.
- The employee **may not** disclose any information regarding the account. Disclosure means, but is not limited to, divulging specific detail(s) on:
  - The existence or status of a debt or a legal matter,
  - Dispute, including the amount of the debt,
  - The delinquency, or
  - The consumer's identification such as
    - Address
    - Social security number
    - Date of birth
    Account number
- The employee **may not** leave a message with threatening or harassing dialogue, including tone of voice.
- The employee **may not** misrepresent or mislead in any manner, for example, pretending that the employee is a family member or friend.
- The employee **must** properly note the account and update the collections system of record to remove the phone number if they determine that the possible phone number for a consumer or third party is incorrect.

## Definitions

| Word/Phrase | Definition |
|---|---|
| Skip tracing | Process of obtaining location information for a customer through various means of research or investigation. |
| Consumer | For the purposes of this procedure, consumer is defined as a Borrower, co-signer, co-maker, authorized third party, or information eligible party. |

## Reference Material

Related Policies and Procedures
- Messages on Recording Devices (SAC) Procedure

Related Regulations
- None Applicable:

Industry Publications
N/A

## Affected Department(s)

Private Credit Collections, Private Credit Post-Default Collections, RKL Financial

Page 2 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

# NAVIENT.

**Appendices:**
N/A

**Exception(s):**
N/A

Page 3 of 3

*Note: Printed copies of this document are for reference only. The official version of this document is available on PolicyTech.*

CONFIDENTIAL

NSI0000244

NSI0000245

## Updating Information

| Type | Screen | Procedure |
|---|---|---|
| Validate an Address - change VALID ADDR from 'N' to 'Y' | 111 | • Locate Zip Code<br>• Type 9999 over the last 4 numbers - Hit Enter<br>• Type 0000 over the last 4 numbers - Hit Enter<br>• VALID ADDR indicator will now be marked 'Y' |
| Add Information Eligible | 116 | • Press F5<br>• Place 'I' in the ID CD Field; 'Y' in VALID ADDR; 'Y in CNTCT; 'D' in ADDR IND<br>• Fill out Name, Address, City, ST, Zip, Relation, and Loan # (type 'al')<br>• Corr GSC8 |
| Add Foreign Address<br>New! 6/24/13 1:00 PM | 111 / 117 | • Change ADDR IND from 'D' to 'F' on 111<br>• On 117 - F5 to add (if necessary)<br>• Place 'B' in the ID CD Field; 'Y in VALID ADDR; 'Y in CNTCT; 'F' in ADDR IND<br>• Fill out Name, Address, City, CO, and Loan # (type 'al')<br>• When adding foreign phone numbers:<br>   ○ On 111 - place 011 555 5555 in the home field<br>   ○ On 117 add phone number, in the 'FGN PH' field located right below the loan# fields<br>     with country code, in a separate entry |
| Removing Wrong Numbers (CLASS) | 111 / 811 | • On 111 (Home and Work field):<br>   ○ Type zeroes over number (e.g., 000 00000000)<br>   ○ Press Enter to update<br>• On the 112 (CLASS 111 shift F2), update the TCPA consent flags for Auto dial and Text to "N" if either are marked "Y" or are blank.<br>• On 811 (Cell field)<br>   ○ Press Shift F4 to access cell field<br>   ○ Type zeroes over cell number<br>   ○ press enter<br>   ○ place a free form note (GD00/TD00) with the number removed.<br><br>Corr GS34 when removing a wrong number on every account |

NSI0000246

| | | |
|---|---|---|
| Removing Wrong Numbers (CARES) | --- | **CAUTION:** If the customer has requested all calls stop, and to remove the phone number, this is a **Cease and Desist**. Click here for procedures.<br><br>• On the Account Profile screen:<br>  ○ Place a check in the invalid box next to the wrong number<br>  ○ Click the Update/Verify button<br>• On the Document Call window:<br>  ○ Choose the appropriate servicing reason (inbound/outbound free form)<br>  ○ Document the number removed<br>  ○ Choose G134 (Servicing Reasons/Validation/G134)<br>  ○ Click Finish |
| Invalidating an address | 121/385 | **CAUTION:** If the customer has requested all calls stop, and to remove the phone number, this is a **Cease and Desist**. Click here for procedures.<br><br>• Access the 121 screen and copy the account number<br>• Access the 385 screen and paste the account number in the "ACCT/SSN" field and add the applicable suffix to the account number<br>• Place "MS18" in the "LTR CODE" field<br>• Press Enter |
| Adding Possible Phone Numbers | 116 | • From CLASS 116 Press F5<br>• Place 'P' in the ID CD Field, hit "Enter"<br>• Fill out the following:<br>  ○ Phone number the caller advised<br>  ○ The account holder's first and last name |

CONFIDENTIAL

NSI0000247

| | | |
|---|---|---|
| | | <ul><li>○ Place "AL" in the "LN" field</li></ul><ul><li>Notate with a free form note a possible phone number was added</li></ul> |
| Validate/Update Email Address | 11a | <ul><li>From CLASS 111 Press Shift F1</li><li>Verify "Email Valid Field"</li></ul><ul><li>○ If Y, continue and verify if the email below "USPS Coupon" field is correct, update by typing over the email address (if applicable)</li><li>○ If N, change to Y, and verify if the email below "USPS Coupon" field is correct, update by typing over the email address (if applicable</li></ul> |

CONFIDENTIAL

# Inbound Calls

Follow the steps below when receiving inbound calls (click the pictures to properly update):

## Department of Education

*"Thank-you for calling Navient Department of Education. This call may be recorded. My name is (first and last name, or first name and employee ID). May I have the social security number or account number you are calling in reference to today"?*

## Commercial

*"Thank-you for calling Navient. This call may be recorded. My name is (first and last name, or first name and employee ID). May I have the social security number or account number you are calling in reference to today"?*

## Is the caller the borrower?

- Yes.
    - ○ Proceed to Validation

- No, but they are calling on behalf of the borrower.
    - ○ Proceed to **Release of Information**

- No, and they advise the borrower does not live at the number we are calling, or does not live at the address we are sending correspondence.
    - ○ They ask you to remove the phone number/give you a possible number for the borrower. See removing phone numbers/adding possible numbers or invalidating addresses.

*Click on the pictures below*

**Removing Wrong Numbers/ Adding Possible Numbers**



**Invalidating an Address**



NSI0000248

CONFIDENTIAL

# Outbound Calls

Follow the steps below when receiving outbound calls (click the pictures to properly update):

| "Hello, "This is (agent first and last name or first name and employee ID), calling from: | Did the person that answered advise you are speaking to them? | *Click on the pictures below* |
|---|---|---|
| • **If you are an ED agent:** *Navient Department of Education.*<br><br>• **If you are Commercial only agent:** *Navient Loan Servicing*<br><br>*This call may be recorded, may I speak to (borrower first and last name), please?"*<br><br>**Note:** If the customer refuses to have the call recorded, state "Okay" and continue the call. | • Yes<br>  ○ Proceed to Validation<br><br>• No, the person advised the borrower is not home.<br>  ○ See leaving messages<br><br>• No, the person that answered advised the borrower no longer lives at the nubmer you are calling, advises you to remove their number/advises of a new number.<br>  ○ See removing phone numbers/adding possible numbers<br><br>**Note:**  When performing outbound calls, the first and last name of the customer needs to be validated; if only the first name is validated you MUST validate 2 items from the list below. | **Leaving messages**<br><br><br><br>**Removing Phone Numbers/adding possible numbers** |

CONFIDENTIAL

NSI0000250

CONFIDENTIAL

NSI000251

# Cease and Desist



Cease and Desist

## What is Cease and Desist?

A Cease and Desist Request is when a borrower, joint borrower, co-maker, or cosigner requests to stop ALL calls. if a customer requests that you stop ALL calls:

- Do **NOT** remove the phone number from the account
- If any of the numbers are cell phones and have a "Y" in the consent field for autodials or text consent, change those flags to "N"
- Advise the request must be submitted in writing and sent to the applicable address:

If you receive a Cease and Desist request from the borrower, joint borrower, co-maker, or cosigner, advise the request must be submitted in writing and sent to the applicable address:

**CLASS - COMM Accounts:**

Navient
PO Box 9500
Wilkes-Barre, PA 18773-9500

**CLASS - ED accounts:**

Navient Department of Education Loan Services
P.O. Box 9635
Wilkes-Barre, PA 18773-9635

CONFIDENTIAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION



WILLIE MCCASKILL,

    Plaintiff,

                           CASE NO.: 8:15-CV-1559-T-33-TBM

-vs-

NAVIENT SOLUTIONS, INC., STUDENT
ASSISTANCE CORPORATION, and
NAVIENT CORPORATION,

    Defendants.

_____/

### JOINT STIPULATION OF FACTS

    WHEREAS, Plaintiff Willie McCaskill ("Plaintiff") and Defendants Navient Solutions

Inc. ("NSI"), Student Assistance Corporation ("SAC") and Navient Corporation ("Navient

Corp") wish to streamline the issues in this action and reduce the time and expense of certain

discovery:

    NOW THEREFORE, Plaintiff, on the one hand, and NSI and SAC, on the other hand, by

and through their undersigned counsel, hereby stipulate as follows:

    For purposes of this litigation only, NSI and SAC will not contest that the phone

system(s) used to telephone the Plaintiff are predictive dialers which the FCC has concluded

constitutes an "automatic telephone dialing system" (ATDS) as defined under the Telephone

Consumer Protection Act (TCPA). To the extent that Plaintiff must prove that the phone

system(s) used by NSI and SAC constitute an ATDS, NSI and SAC will not contest this fact. For

the purposes of this litigation and so as to alleviate the costs associated with discovery, NSI and

SAC do not contest that the phone system(s) used to call (727) 581 - 6140 were ATDS. SAC

stipulates that it attempted 478 non-emergency phone calls to telephone number (727) 581 -

6140. NSI stipulates that it attempted 249 non-emergency phone calls to telephone number (727) 581-6140. This stipulation is specific to this litigation only and it is understood by all parties that it shall not be used, or have any effect, in any other litigation or proceeding. It is further understood that this Joint Stipulation of Facts is limited to this litigation only, and does not represent a concession or admission outside this litigation that NSI or SAC ever used or use an ATDS or artificial or prerecorded voice in any respect whatsoever.

The parties agree that this stipulation will not be made public unless NSI or SAC makes it necessary to prove the issues stipulated to herein.

Facsimile signatures (email, etc.) on this agreement shall be deemed original, and the agreement may be signed in counterparts.

The parties hereby agree that this document is admissible at trial for purposes of proving that NSI and SAC used an ATDS to place non-emergency telephone calls to the Plaintiff's cellular telephone.

Navient Corp, NSI and/or SAC do not dispute anything listed in this Joint Stipulation.

Dated this 15th day of December, 2015.

| | |
|---|---|
| Lisa M. Simonetti, Esquire | Frank H. Kerney, Esq. |
| (admitted *pro hac vice*) | Morgan & Morgan, Tampa, P.A. |
| Vedder Price (CA), LLP | One Tampa City Center |
| 1925 Century Park East, Suite 1900 | 201 N. Franklin St., 7th Floor |
| Los Angeles, California 90067 | Tampa, FL 33602 |
| Tele: (424) 204-7700 | Tele: (813) 223-5505 |
| Fax: (424) 204-7702 | Fax: (813) 223-5402 |
| lsimonetti@vedderprice.com | fkerney@forthepeople.com |
| Attorney for Defendants | Florida Bar #: 88672 |
| | Attorney for Plaintiff |

Willie McCaskill   (Newsome)
727-581-6140

| Agent | Date | Status | Addit_Status | Time | Campaign |
|---|---|---|---|---|---|
| F965 | 1/13/2014 | AM | LM | 9:00:19 PM | EDSM |
| FA76 | 1/14/2014 | AM | LM | 8:35:39 AM | EDSM |
| FB01 | 1/17/2014 | AM | LM | 3:56:20 PM | EDSM |
| F967 | 1/21/2014 | AM | LM | 8:43:15 AM | EDSM |
| | 2/5/2014 | A | | 10:53:47 AM | AB27 |
| | 2/5/2014 | A | | 4:09:37 PM | NREM |
| | 2/5/2014 | MC | AM | 6:03:13 PM | EM1C |
| | 8/13/2014 | MC | AM | 1:42:49 PM | 1530 |
| | 8/20/2014 | MC | AM | 1:59:42 PM | 1530 |
| | 8/27/2014 | A | | 7:41:09 PM | EHEI |
| | 9/3/2014 | A | | 1:29:13 PM | EHEI |
| | 9/4/2014 | MC | AM | 12:52:39 PM | ESEI |
| | 9/9/2014 | MC | AM | 12:40:42 PM | ESEI |
| | 9/10/2014 | MC | AM | 1:42:44 PM | ESEI |
| | 9/11/2014 | A | | 12:31:02 PM | EHEI |
| | 9/12/2014 | A | | 12:00:23 PM | EHEI |
| | 9/16/2014 | MC | AM | 12:47:38 PM | ESEI |
| DA34 | 9/17/2014 | NA | | 2:48:56 PM | EHEI |
| | 9/18/2014 | MC | AM | 12:55:21 PM | ESEI |
| | 9/19/2014 | A | | 7:34:02 PM | EHEI |
| | 9/21/2014 | MC | AM | 7:08:08 PM | ESEI |
| | 9/22/2014 | MC | | 1:05:47 PM | ESEI |
| | 9/23/2014 | A | | 11:34:41 AM | EHEI |
| | 9/24/2014 | MC | AM | 8:27:35 AM | OEDD |
| | 9/25/2014 | A | | 10:52:42 AM | EHEI |
| | 9/26/2014 | MC | AM | 12:23:09 PM | OEDD |
| | 10/1/2014 | MC | AM | 10:53:02 AM | ESEI |
| | 10/8/2014 | N | | 4:50:02 PM | EHEI |
| | 10/10/2014 | N | | 12:12:49 PM | ESEI |
| | 10/13/2014 | N | | 2:08:04 PM | EHEI |
| | 10/15/2014 | N | | 6:59:07 PM | EHEI |
| | 10/16/2014 | N | | 6:46:51 PM | EHEI |
| | 10/17/2014 | MC | AM | 12:04:57 PM | ESEI |
| | 10/21/2014 | N | | 2:47:37 PM | EHEI |
| | 10/23/2014 | N | | 1:26:20 PM | ESEI |
| | 10/24/2014 | N | | 10:08:19 AM | EHEI |
| | 10/25/2014 | N | | 11:55:52 AM | EHEI |
| | 10/27/2014 | N | | 8:45:42 AM | AB15 |
| | 10/27/2014 | N | | 8:39:13 PM | AB27 |
| | 10/28/2014 | N | | 10:21:53 AM | AB15 |
| | 10/29/2014 | N | | 1:28:16 PM | AB15 |
| | 10/29/2014 | N | | 8:56:16 PM | AB27 |
| | 10/30/2014 | N | | 10:59:53 AM | AB15 |
| | 10/31/2014 | A | | 8:39:30 AM | AB15 |

EXHIBIT
Dillon 3
KH 12/29/15
PENGAD 800-631-6989

|       | Date       |     |    | Time         |      |
|-------|------------|-----|----|--------------|------|
|       | 11/3/2014  | A   |    | 8:59:21 AM   | AB15 |
|       | 11/4/2014  | N   |    | 8:51:53 AM   | AB15 |
|       | 11/5/2014  | A   |    | 1:09:34 PM   | AB15 |
|       | 11/5/2014  | N   |    | 8:27:08 PM   | AB27 |
|       | 11/6/2014  | N   |    | 10:35:58 AM  | AB15 |
|       | 11/7/2014  | A   |    | 8:31:27 AM   | AB15 |
|       | 11/10/2014 | A   |    | 8:56:14 AM   | AB15 |
|       | 11/11/2014 | A   |    | 8:55:52 AM   | AB15 |
|       | 11/12/2014 | N   |    | 1:05:35 PM   | AB15 |
|       | 11/12/2014 | N   |    | 8:21:35 PM   | AB27 |
|       | 11/13/2014 | N   |    | 10:48:52 AM  | AB15 |
|       | 11/14/2014 | A   |    | 8:42:47 AM   | AB15 |
|       | 11/14/2014 | N   |    | 7:51:33 PM   | AB15 |
|       | 11/15/2014 | A   |    | 1:58:56 PM   | AB15 |
|       | 11/17/2014 | N   |    | 8:46:23 AM   | AB15 |
|       | 11/18/2014 | A   |    | 8:49:29 AM   | AB15 |
|       | 11/19/2014 | N   |    | 1:08:51 PM   | AB15 |
| PA60  | 11/19/2014 | NA  |    | 8:23:42 PM   | AB27 |
|       | 11/20/2014 | N   |    | 5:36:12 PM   | AB15 |
|       | 11/21/2014 | N   |    | 8:34:15 AM   | AB15 |
| FD07  | 11/22/2014 | NA  |    | 10:46:47 AM  | AB15 |
|       | 11/24/2014 | MC  | AM | 9:58:55 AM   | OEDD |
| FC53  | 11/25/2014 | NA  |    | 10:47:14 AM  | AB15 |
|       | 11/26/2014 | N   |    | 8:47:36 AM   | AB27 |
|       | 12/4/2014  | N   |    | 7:35:31 PM   | AB15 |
|       | 12/5/2014  | N   |    | 10:16:43 AM  | AB15 |
|       | 12/6/2014  | N   |    | 11:45:03 AM  | AB15 |
| FC54  | 12/8/2014  | NA  |    | 7:40:00 PM   | AB15 |
|       | 12/9/2014  | N   |    | 10:44:37 AM  | AB15 |
|       | 12/10/2014 | N   |    | 6:10:48 PM   | AB15 |
|       | 12/11/2014 | N   |    | 7:13:14 PM   | AB15 |
|       | 12/12/2014 | A   |    | 10:34:34 AM  | AB15 |
|       | 12/13/2014 | N   |    | 1:05:33 PM   | AB15 |
|       | 12/15/2014 | N   |    | 10:47:22 AM  | AB15 |
|       | 12/16/2014 | N   |    | 7:26:24 PM   | AB15 |
|       | 12/17/2014 | N   |    | 1:55:11 PM   | AB15 |
|       | 12/18/2014 | A   |    | 5:31:17 PM   | AB15 |
|       | 12/19/2014 | A   |    | 9:59:59 AM   | AB15 |
| FB81  | 12/20/2014 | NA  |    | 10:34:39 AM  | AB15 |
| F799  | 12/22/2014 | AM  | NM | 11:52:03 AM  | AB15 |
|       | 12/23/2014 | N   |    | 10:50:14 AM  | AB15 |
|       | 12/24/2014 | N   |    | 11:48:50 AM  | OEDD |
|       | 12/26/2014 | A   |    | 11:45:57 AM  | AB15 |
|       | 12/26/2014 | N   |    | 7:34:50 PM   | SSED |
|       | 12/27/2014 | MC  | AM | 10:59:51 AM  | SSED |
|       | 1/3/2015   | N   |    | 9:52:12 AM   | SSED |
|       | 1/5/2015   | N   |    | 4:00:06 PM   | NREM |

| | | | | | |
|---|---|---|---|---|---|
| | 1/6/2015 | A | | 5:40:55 PM | AB15 |
| FB81 | 1/7/2015 | BC | HU | 4:37:54 PM | AB15 |
| FA50 | 1/8/2015 | NA | | 4:33:34 PM | NREM |
| | 1/9/2015 | N | | 10:49:44 AM | AB15 |
| | 1/9/2015 | N | | 3:48:39 PM | NREM |
| | 1/10/2015 | N | | 11:59:07 AM | SSED |
| | 1/12/2015 | N | | 8:06:10 AM | OEDD |
| | 1/13/2015 | MC | AM | 8:18:55 AM | OEDD |
| FB68 | 1/14/2015 | BC | HU | 5:24:23 PM | AB15 |
| | 1/16/2015 | N | | 10:35:27 AM | AB15 |
| | 1/16/2015 | N | | 6:04:09 PM | SSED |
| | 1/17/2015 | N | | 10:44:35 AM | SSED |
| | 1/21/2015 | N | | 5:29:20 PM | AB15 |
| | 1/21/2015 | N | | 8:09:07 PM | SSED |
| | 1/22/2015 | MC | AM | 8:07:36 AM | OEDD |
| | 1/23/2015 | N | | 8:06:13 AM | OEDD |
| | 1/26/2015 | N | | 8:03:14 AM | OEDD |
| | 1/27/2015 | N | | 8:02:47 AM | OEDD |
| | 1/28/2015 | MC | AM | 8:03:30 AM | OEDD |
| | 1/29/2015 | N | | 8:03:13 AM | OEDD |
| | 1/30/2015 | MC | AM | 8:03:37 AM | OEDD |
| | 2/2/2015 | N | | 8:02:56 AM | OEDD |
| | 2/3/2015 | MC | AM | 8:09:25 AM | OEDD |
| | 2/4/2015 | MC | AM | 8:04:38 AM | OEDD |
| | 2/5/2015 | N | | 8:03:53 AM | OEDD |
| | 2/6/2015 | MC | AM | 8:19:52 AM | OEDD |
| | 2/9/2015 | N | | 8:06:12 AM | OEDD |
| | 2/10/2015 | N | | 8:02:37 AM | OEDD |
| | 2/11/2015 | MC | AM | 8:04:15 AM | OEDD |
| | 2/12/2015 | MC | | 8:05:03 AM | OEDD |
| | 2/13/2015 | MC | AM | 8:06:29 AM | OEDD |
| | 2/16/2015 | N | | 8:05:33 AM | OEDD |
| S614 | 4/16/2015 | NO | NA | 1:50:02 PM | I008 |

Willie McCaskill   (Newsome)
727 - 581- 6140

| Campaign | Call Mode | Agent ID | Call Time | Length |
|---|---|---|---|---|
| CRS_FFELP_ALL_AGL | 8 | | 7/28/2014 13:25 | 74 |
| CRS_FFELP_ALL_AGL | 8 | | 7/29/2014 20:11 | 50 |
| CRS_FFELP_ALL_AGL | 8 | | 7/30/2014 11:55 | 74 |
| CRS_FFELP_ALL_AGL | 8 | | 7/31/2014 18:32 | 73 |
| CRS_FFELP_ALL_AGL | 8 | | 8/1/2014 11:00 | 79 |
| CRS_FFELP_ALL_AGL | 8 | | 8/2/2014 19:25 | 73 |
| CRS_FFELP_ALL_AGL | 8 | | 8/4/2014 12:30 | 73 |
| CRS_FFELP_ALL_AGL | 8 | | 8/5/2014 20:55 | 73 |
| CRS_FFELP_ALL_AGL | 8 | | 8/6/2014 12:21 | 71 |
| CRS_FFELP_ALL_AGL | 8 | | 8/8/2014 14:36 | 15 |
| CRS_FFELP_ALL | 1 | | 8/12/2014 19:12 | 25 |
| CRS_FFELP_ALL | 1 | | 8/13/2014 11:24 | 14 |
| CRS_FFELP_ALL | 1 | | 8/14/2014 11:44 | 17 |
| CRS_FFELP_ALL | 1 | | 8/14/2014 17:21 | 98 |
| CRS_FFELP_ALL | 1 | | 8/15/2014 12:16 | 15 |
| CRS_FFELP_ALL | 1 | | 8/18/2014 10:35 | 33 |
| CRS_FFELP_ALL | 1 | | 8/19/2014 12:10 | 16 |
| CRS_FFELP_ALL | 1 | | 8/19/2014 18:29 | 101 |
| CRS_FFELP_ALL | 1 | | 8/20/2014 11:03 | 32 |
| CRS_FFELP_ALL | 1 | | 8/21/2014 12:06 | 35 |
| CRS_FFELP_ALL | 1 | | 8/22/2014 11:15 | 18 |
| CRS_FFELP_ALL | 1 | | 8/23/2014 12:58 | 16 |
| CRS_FFELP_ALL | 1 | | 8/25/2014 9:04 | 15 |
| CRS_FFELP_ALL | 1 | | 8/26/2014 16:45 | 14 |
| CRS_FFELP_ALL | 1 | | 8/26/2014 19:21 | 159 |
| CRS_FFELP_ALL | 1 | | 8/27/2014 10:50 | 14 |
| CRS_FFELP_ALL | 1 | | 8/28/2014 12:07 | 32 |
| CRS_FFELP_ALL | 1 | | 8/28/2014 16:18 | 122 |
| CRS_FFELP_ALL | 1 | | 9/3/2014 11:26 | 32 |
| CRS_FFELP_ALL | 1 | | 9/4/2014 11:38 | 37 |
| CRS_FFELP_ALL | 1 | | 9/5/2014 10:42 | 36 |
| CRS_FFELP_ALL | 1 | | 9/6/2014 10:20 | 32 |
| CRS_FFELP_ALL | 1 | | 9/8/2014 8:37 | 31 |
| CRS_FFELP_ALL | 1 | | 9/8/2014 15:35 | 159 |
| CRS_FFELP_DUEDIL_AGL | 8 | | 9/9/2014 8:35 | 74 |
| CRS_FFELP_ALL | 1 | | 9/10/2014 11:09 | 45 |
| CRS_FFELP_ALL | 1 | | 9/11/2014 16:13 | 40 |
| CRS_FFELP_ALL | 1 | | 9/15/2014 8:33 | 44 |
| CRS_FFELP_ALL | 1 | | 9/15/2014 11:33 | 70 |
| CRS_FFELP_ALL | 1 | | 9/16/2014 16:12 | 34 |
| CRS_FFELP_ALL | 1 | | 9/18/2014 16:47 | 138 |
| CRS_FFELP_ALL | 1 | | 9/19/2014 9:00 | 31 |
| CRS_FFELP_ALL | 1 | | 9/22/2014 9:35 | 32 |
| CRS_FFELP_ALL | 1 | | 9/22/2014 11:31 | 123 |

EXHIBIT
Dillon 4
KH 12/29/15
PENGAD 800-631-6989

| | | | | |
|---|---|---|---|---|
| CRS_FFELP_ALL | 1 | | 9/23/2014 16:10 | 32 |
| CRS_FFELP_ALL | 1 | | 9/23/2014 18:14 | 142 |
| CRS_FFELP_ALL | 1 | | 9/26/2014 8:28 | 43 |
| CRS_FFELP_ALL | 1 | | 9/26/2014 12:03 | 49 |
| CRS_FFELP_ALL | 1 | | 9/29/2014 8:58 | 30 |
| CRS_FFELP_ALL | 1 | | 9/29/2014 11:10 | 72 |
| CRS_FFELP_ALL | 1 | | 9/30/2014 15:33 | 39 |
| CRS_FFELP_ALL | 1 | | 10/2/2014 12:06 | 45 |
| CRS_FFELP_ALL | 1 | | 10/3/2014 8:17 | 39 |
| CRS_FFELP_ALL | 1 | | 10/3/2014 12:10 | 22 |
| CRS_FFELP_ALL | 1 | | 10/6/2014 8:56 | 15 |
| CRS_FFELP_ALL | 1 | | 10/6/2014 11:51 | 57 |
| CRS_FFELP_ALL | 1 | | 10/7/2014 15:27 | 18 |
| CRS_FFELP_ALL | 1 | | 10/8/2014 10:30 | 13 |
| CRS_FFELP_DUEDIL_AGL | 8 | | 10/9/2014 8:26 | 75 |
| CRS_FFELP_ALL | 1 | | 10/10/2014 8:11 | 43 |
| CRS_FFELP_ALL | 1 | | 10/10/2014 11:43 | 128 |
| CRS_FFELP_DUEDIL_AGL | 8 | | 10/13/2014 15:30 | 31 |
| CRS_FFELP_ALL | 1 | | 10/14/2014 16:36 | 14 |
| CRS_FFELP_ALL | 1 | | 10/15/2014 10:59 | 24 |
| CRS_FFELP_ALL | 1 | | 10/16/2014 17:36 | 13 |
| CRS_FFELP_ALL | 1 | | 10/17/2014 8:09 | 35 |
| CRS_FFELP_ALL | 1 | | 10/17/2014 11:36 | 98 |
| CRS_FFELP_ALL | 1 | | 10/20/2014 8:00 | 23 |
| CRS_FFELP_ALL | 1 | | 10/20/2014 11:01 | 21 |
| CRS_FFELP_ALL | 1 | | 10/21/2014 15:04 | 17 |
| CRS_FFELP_ALL | 1 | | 10/23/2014 11:51 | 77 |
| CRS_FFELP_ALL | 1 | | 10/24/2014 8:06 | 38 |
| CRS_FFELP_ALL | 1 | | 10/24/2014 11:23 | 103 |
| CRS_FFELP_ALL | 1 | | 10/27/2014 8:45 | 16 |
| CRS_FFELP_ALL | 1 | | 10/27/2014 11:59 | 104 |
| CRS_FFELP_ALL | 1 | | 10/28/2014 17:49 | 16 |
| CRS_FFELP_ALL | 1 | c48284 | 10/30/2014 12:25 | 40 |
| CRS_FFELP_ALL | 1 | | 10/31/2014 8:06 | 19 |
| CRS_FFELP_ALL | 1 | | 10/31/2014 11:11 | 30 |
| CRS_FFELP_ALL | 1 | | 11/3/2014 8:22 | 13 |
| CRS_FFELP_ALL | 1 | | 11/3/2014 11:49 | 120 |
| CRS_FFELP_ALL | 1 | | 11/4/2014 16:44 | 39 |
| CRS_FFELP_ALL | 1 | | 11/7/2014 8:00 | 45 |
| CRS_FFELP_ALL | 1 | | 11/7/2014 11:01 | 17 |
| CRS_FFELP_DUEDIL_AGL | 8 | | 11/10/2014 14:16 | 81 |
| CRS_FFELP_LATE | 1 | | 11/11/2014 9:32 | 30 |
| CRS_FFELP_LATE | 1 | | 11/11/2014 12:51 | 38 |
| CRS_FFELP_LATE | 1 | | 11/13/2014 8:18 | 31 |
| CRS_FFELP_LATE | 1 | | 11/13/2014 11:27 | 34 |
| CRS_FFELP_LATE | 1 | | 11/13/2014 13:30 | 67 |
| CRS_FFELP_LATE | 1 | | 11/13/2014 20:22 | 55 |

| | | | |
|---|---|---|---|
| CRS_FFELP_LATE | 1 | 11/14/2014 9:01 | 34 |
| CRS_FFELP_LATE | 1 | 11/14/2014 13:52 | 40 |
| CRS_FFELP_LATE | 1 | 11/14/2014 15:15 | 100 |
| CRS_FFELP_LATE | 1 | 11/15/2014 8:37 | 26 |
| CRS_FFELP_LATE | 1 | 11/15/2014 11:43 | 13 |
| CRS_FFELP_LATE | 1 | 11/17/2014 16:47 | 32 |
| CRS_FFELP_LATE | 1 | 11/17/2014 20:26 | 102 |
| CRS_FFELP_LATE | 1 | 11/18/2014 8:25 | 43 |
| CRS_FFELP_LATE | 1 | 11/18/2014 11:27 | 32 |
| CRS_FFELP_LATE | 1 | 11/19/2014 10:59 | 37 |
| CRS_FFELP_LATE | 1 | 11/19/2014 16:07 | 15 |
| CRS_FFELP_LATE | 1 | 11/19/2014 20:58 | 162 |
| CRS_FFELP_LATE | 1 | 11/20/2014 10:00 | 31 |
| CRS_FFELP_LATE | 1 | 11/21/2014 9:57 | 32 |
| CRS_FFELP_LATE | 1 | 11/21/2014 14:21 | 61 |
| CRS_FFELP_LATE | 1 | 11/22/2014 8:41 | 35 |
| CRS_FFELP_LATE | 1 | 11/22/2014 12:02 | 11 |
| CRS_FFELP_LATE | 1 | 11/24/2014 10:43 | 18 |
| CRS_FFELP_LATE | 1 | 11/24/2014 16:42 | 92 |
| CRS_FFELP_LATE | 1 | 11/25/2014 8:20 | 32 |
| CRS_FFELP_LATE | 1 | 11/25/2014 11:30 | 28 |
| CRS_FFELP_LATE | 1 | 11/26/2014 16:51 | 15 |
| CRS_FFELP_LATE | 1 | 11/29/2014 10:02 | 31 |
| CRS_FFELP_LATE | 1 | 12/2/2014 8:30 | 32 |
| CRS_FFELP_LATE | 1 | 12/2/2014 11:32 | 37 |
| CRS_FFELP_LATE | 1 | 12/3/2014 16:00 | 15 |
| CRS_FFELP_LATE | 1 | 12/4/2014 9:46 | 32 |
| CRS_FFELP_LATE | 1 | 12/5/2014 9:19 | 13 |
| CRS_FFELP_LATE | 1 | 12/5/2014 15:59 | 59 |
| CRS_FFELP_LATE | 1 | 12/6/2014 8:35 | 31 |
| CRS_FFELP_LATE | 1 | 12/6/2014 12:41 | 18 |
| CRS_FFELP_DUEDIL_AGL | 8 | 12/8/2014 10:27 | 26 |
| CRS_FFELP_DUEDIL_AGL | 8 | 12/8/2014 11:42 | 13 |
| CRS_FFELP_DUEDIL_AGL | 8 | 12/9/2014 16:02 | 27 |



# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WILLIE MCCASKILL,

    Plaintiff,

v.

                              CASE NO.:  8:15-CV-1559-T-33-TBM

NAVIENT SOLUTIONS, INC., STUDENT
ASSISTANCE CORPORATION, and
NAVIENT CORPORATION,

    Defendants.

_____/

## PLAINTIFF'S AMENDED NOTICE OF TAKING VIDEO TAPE DEPOSITION OF NAVIENT SOLUTIONS, INC. PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30(B)(6) (AS TO LOCATION ONLY)

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure, including 30(b)(6), Plaintiff, Willie McCaskill, by and through her undersigned counsel, will take the deposition, by oral examination, and videotape, of the following person as indicated below or at such other location, time and date as is mutually agreed upon by counsel or ordered by the Court, before an associate or deputy court reporter at the offices as indicated below, before its designated representatives, of Wilcox & Fetzer Ltd., who are not counsel to the parties of interested in the events of the cause.

| NAME | DATE & TIME | LOCATION |
|---|---|---|
| Navient Solutions, Inc. | Tuesday, December 29, 2015 at 10:00 AM EST | State Office Solutions<br>1201 Orange St.<br>7th Floor<br>Wilmington, DE 19801 |

The deposition is being taken for the purposes of discovery, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure including 30(b)(6).

As directed by the Federal Rules of Civil Procedures including 30(b)(6), Navient Solutions, Inc.

is to produce the appropriate person(s) concerning the areas of inquiry listed on Exhibit "A"

attached hereto.

This deposition is to continue from day-to-day until such time as it is completed or may

be adjourned to be reconvened at such later date as may be established therefore by those in

attendance at such deposition, and is intended for use at trial or other such purposes as authorized

by law. You are invited to attend and cross-examine the witness.

Dated December 23rd, 2015.

William Peerce Howard, Esq.
Florida Bar No.: 0103330
whoward@forthepeople.com
Octavio Gomez, Esq.
Florida Bar No.: 338620
tgomez@forthepeople.com
Frank H. Kerney III, Esq.
Florida Bar No.: 88672
fkerney@forthepeople.com
Morgan & Morgan, Tampa, P.A.
One Tampa City Center, 7th Floor
201 North Franklin Street
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
*Attorney for Plaintiff*

## EXHIBIT A

**DEFINITIONS:**

1.      "Any," "All," and "each" shall be construed as any, all and each.

2.      "And" shall mean and/or.

3.      "Automatic telephone dialing system" shall mean equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers, per 47 U.S.C. 227(a)(1).

4.      "Concern," "concerning," "refer," "referring," "relate," "relating," "regard" or "regarding" shall all mean documents which  explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, specify, memorialize, relate, describe, discuss, consider, concern, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

5.      "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

6.      "Document" or "documents" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or graphic matter and all other tangible things and media upon which any handwriting, typing printing, drawing, representation, electrostatic or other copy, sound or video records, magnetic or electrical impulse, electronically stored information ("ESI"), visual reproduction or communication is recorded, reproduced or represented, including each and any book, record,

correspondence, report, memoranda, electronic mail (*i.e.,* email), contract, table, tabulation,

graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time sheet, report,

study, analysis, draft, telegram, teletype or telecopy message file, telephone log, telephone

message, check, microfilm, microfiche, picture, photograph, printout, electronic data

compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings,

including, but not limited to, minutes of meetings, or other communication of any type, including

inter-office communications, questionnaires, surveys, charges, newspapers, booklets, circulars,

work papers, bulletin, notices, instructions, resolutions, reports, records, papers, bills or invoices,

books of account, financial statements, working papers, deeds, loan agreements, notes, ledgers,

security agreements, financing statements, tax returns, checks, receipts, journals and data of

every description, and shall include each and every original produced or reproduced by any

method, all non-identical copies (whether different from the original because of notes made in or

attached to such copy, or otherwise), all data compilations from which information can be

obtained (translated, if necessary, into reasonably usable form) and any preliminary versions,

drafts or revisions of any of the foregoing.

7.      "Including" means (1) including, but not limited to, or (2) including, without

limitation. Any examples, which follow these phrases, are set forth to clarify the request,

definition or instruction, not limited to the request, definition or instruction.

8.      "Identify" with respect to natural person, means to give, to the extent known, the

person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment. Once a person has been identified

in accordance with this paragraph, only the name of that person need be listed in response to

subsequent discovery requesting the identification of that person.

9.      "Or" shall mean and/or.

10.      "Person" or "Persons" shall mean natural persons, proprietorships, joint ventures, partnerships, corporations, trust, groups, associations, organizations, governmental agencies and all other entities.

12.      If no time frame is specified it should be two years prior to the filing of this complaint.

## AREAS OF INQUIRY:

1.      Each and every communication Defendant had with Plaintiff, which are the subject matter of this litigation.

2.      The name and address of every individual that participated in the telephone calls that are the subject matter of this lawsuit.

3.      Name, description and explanation of the telephone equipment used to contact the cellular telephone number (727) 581-6140, from January 1, 2014 through present.

4.      Name, description and explanation of the telephone equipment used to contact the Plaintiff, including the capacity of the equipment to store or produce numbers to be called.

5.      Description and explanation of any random or sequential number generator used by the Defendant.

6.      The exact number of phone calls that were made to and received from (727) 581-6140 by the Defendant, from January 1, 2014 to present.

7.      Identify the method by which each phone call was placed to (727) 581-6140 by the Defendant.

8.      Any express consent received by the Defendant to contact the Plaintiff on his cellular telephone using an automatic telephone dialing system.

9.      Description and explanation of the debt, which is the subject matter of this litigation, including the nature of the debt, any alleged deficiency balance, interest, and other fees.

10.      Description and explanation of each and every entry on documents produced by Defendant.

11.      Defendant's policy and procedures for collecting consumer debts.

12. Defendant's policy and procedures for contacting consumers on their cellular telephone.

13. Defendant's policy and procedures for using an automated telephone dialing system.

14. Defendant's policy and procedures for using an artificial voice.

15. Defendant's policy and procedures for leaving prerecorded messages on Plaintiff's cellular telephone.

16. Prior lawsuits filed against the Defendant concerning alleged violations of the Telephone Consumer Protection Act.

17. Prior lawsuits filed against the Defendant concerning alleged violations of the Fair Debt Collections Practices Act.

18. Prior lawsuits filed against the Defendant concerning alleged violations of the Florida Consumer Collection Practices Act.

19. Prior complaints, formal or informal, whether in writing or not, made by consumers or their attorneys, concerning alleged violations of state and federal law relating to the collection of consumer debts.

20. Prior requests by individuals not to be called by the Defendant.

21. Factual basis for each affirmative defense alleged or raised by you in your Answer to the Complaint.

22. Factual basis for each denial contained within Defendant's answer to Plaintiff's complaint.

23. Defendant's answers to any Interrogatories served in this case.

24. Defendant's responses to any Requests for Production served in this case.

25. Defendant's responses to any Request for Admission served in this case.

26. Defendant's Policies and Procedures for handling individuals who ask the Defendant to stop calling or informs the Defendant they have called the wrong person.

27. Defendant's net worth for the last four years.

28. The name of any insurance company that has a written policy for the Defendant in the last four years.

29.     The relationship between Navient Solutions Inc., Navient Corporation and Student Assistance Corporation.

30.     The sharing of information and/or accounts between Navient Solutions Inc., Navient Corporation and Student Assistance Corporation.

31.     Any contracts, agreement or compensation between Navient Solutions Inc., Navient Corporation and Student Assistance Corporation regarding the servicing of the loan in question for this litigation.

32.     The process by which the loan in question for this litigation was assigned to Navient Solutions Inc., Navient Corporation and Student Assistance Corporation. (Please have an understanding of the timelines for the life and servicing of the loan)

EXHIBIT

Dillon
K.H 12/29

PENGAD 800-631-6989

NSI0003197

| Wrapup Cat | Wrapup Code | Call Mode | Phone | Call Time | Length |
|---|---|---|---|---|---|
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 7/28/2014 13:25 | 74 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 7/29/2014 20:11 | 50 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 7/30/2014 11:55 | 74 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 7/31/2014 18:32 | 73 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 8/1/2014 11:00 | 79 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 8/2/2014 19:25 | 73 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 8/4/2014 12:30 | 73 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 8/5/2014 20:55 | 73 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 8/6/2014 12:21 | 71 |
| Not Reached | Not Reached | Agentless | 7275816140 | 8/8/2014 14:36 | 15 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/12/2014 19:12 | 25 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 8/13/2014 11:24 | 14 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 8/14/2014 11:44 | 17 |
| Not Reached | Not Reached | Predictive | 7275816140 | 8/14/2014 17:21 | 98 |
| Not Reached | Not Reached | Predictive | 7275816140 | 8/15/2014 12:16 | 15 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/18/2014 10:35 | 33 |
| Not Reached | Not Reached | Predictive | 7275816140 | 8/19/2014 12:10 | 16 |
| No Answer | No Answer | Predictive | 7275816140 | 8/19/2014 18:29 | 101 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/20/2014 11:03 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/21/2014 12:06 | 35 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 8/22/2014 11:15 | 18 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/23/2014 12:58 | 16 |
| Not Reached | Not Reached | Predictive | 7275816140 | 8/25/2014 9:04 | 15 |
| Not Reached | Not Reached | Predictive | 7275816140 | 8/26/2014 16:45 | 14 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/26/2014 19:21 | 159 |
| Not Reached | Not Reached | Predictive | 7275816140 | 8/27/2014 10:50 | 14 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/28/2014 12:07 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 8/28/2014 16:18 | 122 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/3/2014 11:26 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/4/2014 11:38 | 37 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/5/2014 10:42 | 36 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/6/2014 10:20 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/8/2014 8:37 | 31 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/9/2014 15:35 | 159 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 9/9/2014 8:35 | 74 |
| No Answer | No Answer | Predictive | 7275816140 | 9/10/2014 11:09 | 45 |

1

CONFIDENTIAL

NSI0003198

| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/11/2014 16:13 | 40 |
|---|---|---|---|---|---|
| No Answer | No Answer | Predictive | 7275816140 | 9/15/2014 8:33 | 44 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/15/2014 11:33 | 70 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/16/2014 16:12 | 34 |
| No Answer | No Answer | Predictive | 7275816140 | 9/18/2014 16:47 | 138 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/19/2014 9:00 | 31 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/22/2014 9:35 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/22/2014 11:31 | 123 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/23/2014 16:10 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/23/2014 18:14 | 142 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/26/2014 8:28 | 43 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/26/2014 12:03 | 49 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/29/2014 8:58 | 30 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/29/2014 11:10 | 72 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 9/30/2014 15:33 | 39 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/2/2014 12:06 | 45 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/3/2014 8:17 | 39 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/3/2014 12:10 | 22 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/6/2014 8:56 | 15 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/6/2014 11:51 | 57 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/7/2014 15:27 | 18 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/8/2014 10:30 | 13 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 10/9/2014 8:26 | 75 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/10/2014 8:11 | 43 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/10/2014 11:43 | 128 |
| No Answer | No Answer | Agentless | 7275816140 | 10/13/2014 15:30 | 31 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/14/2014 16:36 | 14 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/15/2014 10:59 | 24 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/16/2014 17:36 | 13 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/17/2014 8:09 | 35 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/17/2014 11:36 | 98 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/20/2014 8:00 | 23 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/20/2014 11:01 | 21 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/21/2014 15:04 | 17 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/23/2014 11:51 | 77 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/24/2014 8:06 | 38 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/24/2014 11:23 | 103 |

CONFIDENTIAL

NSI0003199

| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 10/27/2014 8:45 | 16 |
|---|---|---|---|---|---|
| Not Reached | Not Reached | Predictive | 7275816140 | 10/27/2014 11:59 | 104 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/28/2014 17:49 | 16 |
| No Answer | CRS - No Answer | Predictive | 7275816140 | 10/30/2014 12:25 | 40 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 10/31/2014 8:06 | 19 |
| Not Reached | Not Reached | Predictive | 7275816140 | 10/31/2014 11:11 | 30 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/3/2014 8:22 | 13 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/3/2014 11:49 | 120 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/4/2014 16:44 | 39 |
| No Answer | No Answer | Predictive | 7275816140 | 11/7/2014 8:00 | 45 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/7/2014 11:01 | 17 |
| Success | Success - Recording played to Machine | Agentless | 7275816140 | 11/10/2014 14:16 | 81 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/11/2014 9:32 | 30 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/11/2014 12:51 | 38 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/13/2014 8:18 | 31 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 11/13/2014 11:27 | 34 |
| No Answer | No Answer | Predictive | 7275816140 | 11/13/2014 13:30 | 67 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 11/13/2014 20:22 | 55 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/14/2014 9:01 | 34 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/14/2014 13:52 | 40 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/14/2014 15:15 | 100 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/15/2014 8:37 | 26 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 11/15/2014 11:43 | 13 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/17/2014 16:47 | 32 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/17/2014 20:26 | 102 |
| No Answer | No Answer | Predictive | 7275816140 | 11/18/2014 8:25 | 43 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/18/2014 11:27 | 32 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/19/2014 10:59 | 37 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 11/19/2014 16:07 | 15 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/19/2014 20:58 | 162 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/20/2014 10:00 | 31 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/21/2014 9:57 | 32 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/21/2014 14:21 | 61 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/22/2014 8:41 | 35 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 11/22/2014 12:02 | 11 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/24/2014 10:43 | 18 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/24/2014 16:42 | 92 |

3

CONFIDENTIAL

NSI0003200

| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/25/2014 8:20 | 32 |
| Not Reached | Not Reached | Predictive | 7275816140 | 11/25/2014 11:30 | 28 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 11/26/2014 16:51 | 15 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 11/29/2014 10:02 | 31 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 12/2/2014 8:30 | 32 |
| Not Reached | Not Reached | Predictive | 7275816140 | 12/2/2014 11:32 | 37 |
| Not Reached | Not Reached | Predictive | 7275816140 | 12/3/2014 16:00 | 15 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 12/4/2014 9:46 | 32 |
| SIT Callable | SIT Callable - No Circuit | Predictive | 7275816140 | 12/5/2014 9:19 | 13 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 12/5/2014 15:59 | 59 |
| Machine | Machine - System Hang up on Machine | Predictive | 7275816140 | 12/6/2014 8:35 | 31 |
| Not Reached | Not Reached | Predictive | 7275816140 | 12/6/2014 12:41 | 18 |
| SIT Callable | SIT Callable - No Circuit | Agentless | 7275816140 | 12/8/2014 10:27 | 26 |
| SIT Callable | SIT Callable - No Circuit | Agentless | 7275816140 | 12/8/2014 11:42 | 13 |
| Not Reached | Not Reached | Agentless | 7275816140 | 12/9/2014 16:02 | 27 |

4

CONFIDENTIAL

NSI0003201

| Area Code | Phone | Date | Status Translation | Time | Call Type (2) |
|---|---|---|---|---|---|
| 727 | 5816140 | 1/13/2014 | Answering Machine - Left Message | 9:00:19 PM | Manual |
| 727 | 5816140 | 1/14/2014 | Answering Machine - Left Message | 8:35:39 AM | Manual |
| 727 | 5816140 | 1/17/2014 | Answering Machine - Left Message | 3:56:20 PM | Manual |
| 727 | 5816140 | 1/21/2014 | Answering Machine - Left Message | 8:43:15 AM | Manual |
| 727 | 5816140 | 2/5/2014 | Answering Machine | 10:53:47 AM | Predictive |
| 727 | 5816140 | 2/5/2014 | Answering Machine | 4:09:37 PM | Predictive |
| 727 | 5816140 | 2/5/2014 | IVR message completed - Answering Machine | 6:03:13 PM | Predictive |
| 727 | 5816140 | 8/13/2014 | IVR message completed - Answering Machine | 1:42:49 PM | Predictive |
| 727 | 5816140 | 8/20/2014 | IVR message completed - Answering Machine | 1:59:42 PM | Predictive |
| 727 | 5816140 | 8/27/2014 | Answering Machine | 7:41:09 PM | Predictive |
| 727 | 5816140 | 9/3/2014 | Answering Machine | 1:29:13 PM | Predictive |
| 727 | 5816140 | 9/4/2014 | IVR message completed - Answering Machine | 12:52:39 PM | Predictive |
| 727 | 5816140 | 9/9/2014 | IVR message completed - Answering Machine | 12:40:42 PM | Predictive |
| 727 | 5816140 | 9/10/2014 | IVR message completed - Answering Machine | 1:42:44 PM | Predictive |
| 727 | 5816140 | 9/11/2014 | Answering Machine | 12:31:02 PM | Predictive |
| 727 | 5816140 | 9/12/2014 | Answering Machine | 12:00:23 PM | Predictive |
| 727 | 5816140 | 9/16/2014 | IVR message completed - Answering Machine | 12:47:38 PM | Predictive |
| 727 | 5816140 | 9/17/2014 | No Answer | 2:48:56 PM | Predictive |
| 727 | 5816140 | 9/18/2014 | IVR message completed - Answering Machine | 12:55:21 PM | Predictive |
| 727 | 5816140 | 9/19/2014 | Answering Machine | 7:34:02 PM | Predictive |
| 727 | 5816140 | 9/21/2014 | IVR message completed - Answering Machine | 7:08:08 PM | Predictive |
| 727 | 5816140 | 9/22/2014 | IVR message completed | 1:05:47 PM | Predictive |
| 727 | 5816140 | 9/23/2014 | Answering Machine | 11:34:41 AM | Predictive |
| 727 | 5816140 | 9/24/2014 | IVR message completed - Answering Machine | 8:27:35 AM | Predictive |
| 727 | 5816140 | 9/25/2014 | Answering Machine | 10:52:42 AM | Predictive |

1

CONFIDENTIAL

NSI0003202

| 727 | 5816140 | 9/26/2014 | IVR message completed - Answering Machine | 12:23:09 PM | Predictive |
|---|---|---|---|---|---|
| 727 | 5816140 | 10/1/2014 | IVR message completed - Answering Machine | 10:53:02 AM | Predictive |
| 727 | 5816140 | 10/8/2014 | No Answer | 4:50:02 PM | Predictive |
| 727 | 5816140 | 10/10/2014 | No Answer | 12:12:49 PM | Predictive |
| 727 | 5816140 | 10/13/2014 | No Answer | 2:08:04 PM | Predictive |
| 727 | 5816140 | 10/15/2014 | No Answer | 6:59:07 PM | Predictive |
| 727 | 5816140 | 10/16/2014 | No Answer | 6:46:51 PM | Predictive |
| 727 | 5816140 | 10/17/2014 | IVR message completed - Answering Machine | 12:04:57 PM | Predictive |
| 727 | 5816140 | 10/21/2014 | No Answer | 2:47:37 PM | Predictive |
| 727 | 5816140 | 10/23/2014 | No Answer | 1:26:20 PM | Predictive |
| 727 | 5816140 | 10/24/2014 | No Answer | 10:08:19 AM | Predictive |
| 727 | 5816140 | 10/25/2014 | No Answer | 11:55:52 AM | Predictive |
| 727 | 5816140 | 10/27/2014 | No Answer | 8:45:42 AM | Predictive |
| 727 | 5816140 | 10/27/2014 | No Answer | 8:39:13 PM | Predictive |
| 727 | 5816140 | 10/28/2014 | No Answer | 10:21:53 AM | Predictive |
| 727 | 5816140 | 10/29/2014 | No Answer | 1:28:16 PM | Predictive |
| 727 | 5816140 | 10/29/2014 | No Answer | 8:56:16 PM | Predictive |
| 727 | 5816140 | 10/30/2014 | No Answer | 10:59:53 AM | Predictive |
| 727 | 5816140 | 10/31/2014 | Answering Machine | 8:39:30 AM | Predictive |
| 727 | 5816140 | 11/3/2014 | Answering Machine | 8:59:21 AM | Predictive |
| 727 | 5816140 | 11/4/2014 | No Answer | 8:51:53 AM | Predictive |
| 727 | 5816140 | 11/5/2014 | Answering Machine | 1:09:34 PM | Predictive |
| 727 | 5816140 | 11/5/2014 | No Answer | 8:27:08 PM | Predictive |
| 727 | 5816140 | 11/6/2014 | No Answer | 10:35:58 AM | Predictive |
| 727 | 5816140 | 11/7/2014 | Answering Machine | 8:31:27 AM | Predictive |
| 727 | 5816140 | 11/10/2014 | Answering Machine | 8:56:14 AM | Predictive |
| 727 | 5816140 | 11/11/2014 | Answering Machine | 8:55:52 AM | Predictive |
| 727 | 5816140 | 11/12/2014 | No Answer | 1:05:35 PM | Predictive |
| 727 | 5816140 | 11/12/2014 | No Answer | 8:21:35 PM | Predictive |
| 727 | 5816140 | 11/13/2014 | No Answer | 10:48:52 AM | Predictive |
| 727 | 5816140 | 11/14/2014 | Answering Machine | 8:42:47 AM | Predictive |
| 727 | 5816140 | 11/14/2014 | No Answer | 7:51:33 PM | Predictive |
| 727 | 5816140 | 11/15/2014 | Answering Machine | 1:58:56 PM | Predictive |
| 727 | 5816140 | 11/17/2014 | No Answer | 8:46:23 AM | Predictive |

2

CONFIDENTIAL

NSI0003203

| | | | | | |
|---|---|---|---|---|---|
| 727 | 5816140 | 11/18/2014 | Answering Machine | 8:49:29 AM | Predictive |
| 727 | 5816140 | 11/19/2014 | No Answer | 1:08:51 PM | Predictive |
| 727 | 5816140 | 11/19/2014 | No Answer | 8:23:42 PM | Predictive |
| 727 | 5816140 | 11/20/2014 | No Answer | 5:36:12 PM | Predictive |
| 727 | 5816140 | 11/21/2014 | No Answer | 8:34:15 AM | Predictive |
| 727 | 5816140 | 11/22/2014 | No Answer | 10:46:47 AM | Predictive |
| 727 | 5816140 | 11/24/2014 | IVR message completed - Answering Machine | 9:58:55 AM | Predictive |
| 727 | 5816140 | 11/25/2014 | No Answer | 10:47:14 AM | Predictive |
| 727 | 5816140 | 11/26/2014 | No Answer | 8:47:36 PM | Predictive |
| 727 | 5816140 | 12/4/2014 | No Answer | 7:35:31 PM | Predictive |
| 727 | 5816140 | 12/5/2014 | No Answer | 10:16:43 AM | Predictive |
| 727 | 5816140 | 12/6/2014 | No Answer | 11:45:03 AM | Predictive |
| 727 | 5816140 | 12/8/2014 | No Answer | 7:40:00 PM | Predictive |
| 727 | 5816140 | 12/9/2014 | No Answer | 10:44:37 AM | Predictive |
| 727 | 5816140 | 12/10/2014 | No Answer | 6:10:48 PM | Predictive |
| 727 | 5816140 | 12/11/2014 | No Answer | 7:13:14 PM | Predictive |
| 727 | 5816140 | 12/12/2014 | Answering Machine | 10:34:34 AM | Predictive |
| 727 | 5816140 | 12/13/2014 | No Answer | 1:05:33 PM | Predictive |
| 727 | 5816140 | 12/15/2014 | No Answer | 10:47:22 AM | Predictive |
| 727 | 5816140 | 12/16/2014 | No Answer | 7:26:24 PM | Predictive |
| 727 | 5816140 | 12/17/2014 | No Answer | 1:55:11 PM | Predictive |
| 727 | 5816140 | 12/18/2014 | Answering Machine | 5:31:17 PM | Predictive |
| 727 | 5816140 | 12/19/2014 | Answering Machine | 9:59:59 AM | Predictive |
| 727 | 5816140 | 12/20/2014 | No Answer | 10:34:39 AM | Predictive |
| 727 | 5816140 | 12/22/2014 | Answering Machine - No Message Left | 11:52:03 AM | Predictive |
| 727 | 5816140 | 12/23/2014 | No Answer | 10:50:14 AM | Predictive |
| 727 | 5816140 | 12/24/2014 | No Answer | 11:48:50 AM | Predictive |
| 727 | 5816140 | 12/26/2014 | Answering Machine | 11:45:57 AM | Predictive |
| 727 | 5816140 | 12/26/2014 | No Answer | 7:34:50 PM | Predictive |
| 727 | 5816140 | 12/27/2014 | IVR message completed - Answering Machine | 10:59:51 AM | Predictive |
| 727 | 5816140 | 1/3/2015 | No Answer | 9:52:12 AM | Predictive |
| 727 | 5816140 | 1/5/2015 | No Answer | 4:00:06 PM | Predictive |
| 727 | 5816140 | 1/6/2015 | Answering Machine | 5:40:55 PM | Predictive |
| 727 | 5816140 | 1/7/2015 | Bad Call | 4:37:54 PM | Predictive |
| 727 | 5816140 | 1/8/2015 | No Answer | 4:33:34 PM | Predictive |

3

CONFIDENTIAL

NSI0003204

| 727 | 5816140 | 1/9/2015 | No Answer | 10:49:44 AM | Predictive |
|-----|---------|----------|-----------|-------------|------------|
| 727 | 5816140 | 1/9/2015 | No Answer | 3:48:39 PM | Predictive |
| 727 | 5816140 | 1/10/2015 | No Answer | 11:59:07 AM | Predictive |
| 727 | 5816140 | 1/12/2015 | No Answer | 8:06:10 AM | Predictive |
| 727 | 5816140 | 1/13/2015 | IVR message completed - Answering Machine | 8:18:55 AM | Predictive |
| 727 | 5816140 | 1/14/2015 | Bad Call | 5:24:23 PM | Predictive |
| 727 | 5816140 | 1/16/2015 | No Answer | 10:35:27 AM | Predictive |
| 727 | 5816140 | 1/16/2015 | No Answer | 6:04:09 PM | Predictive |
| 727 | 5816140 | 1/17/2015 | No Answer | 10:44:35 AM | Predictive |
| 727 | 5816140 | 1/21/2015 | No Answer | 5:29:20 PM | Predictive |
| 727 | 5816140 | 1/21/2015 | No Answer | 8:09:07 PM | Predictive |
| 727 | 5816140 | 1/22/2015 | IVR message completed - Answering Machine | 8:07:36 AM | Predictive |
| 727 | 5816140 | 1/23/2015 | No Answer | 8:06:13 AM | Predictive |
| 727 | 5816140 | 1/26/2015 | No Answer | 8:03:14 AM | Predictive |
| 727 | 5816140 | 1/27/2015 | No Answer | 8:02:47 AM | Predictive |
| 727 | 5816140 | 1/28/2015 | IVR message completed - Answering Machine | 8:03:30 AM | Predictive |
| 727 | 5816140 | 1/29/2015 | No Answer | 8:03:13 AM | Predictive |
| 727 | 5816140 | 1/30/2015 | IVR message completed - Answering Machine | 8:03:37 AM | Predictive |
| 727 | 5816140 | 2/2/2015 | No Answer | 8:02:56 AM | Predictive |
| 727 | 5816140 | 2/3/2015 | IVR message completed - Answering Machine | 8:09:25 AM | Predictive |
| 727 | 5816140 | 2/4/2015 | IVR message completed - Answering Machine | 8:04:38 AM | Predictive |
| 727 | 5816140 | 2/5/2015 | No Answer | 8:03:53 AM | Predictive |
| 727 | 5816140 | 2/6/2015 | IVR message completed - Answering Machine | 8:19:52 AM | Predictive |
| 727 | 5816140 | 2/9/2015 | No Answer | 8:06:12 AM | Predictive |
| 727 | 5816140 | 2/10/2015 | No Answer | 8:02:37 AM | Predictive |
| 727 | 5816140 | 2/11/2015 | IVR message completed - Answering Machine | 8:04:15 AM | Predictive |
| 727 | 5816140 | 2/12/2015 | IVR message completed | 8:05:03 AM | Predictive |
| 727 | 5816140 | 2/13/2015 | IVR message completed - Answering Machine | 8:06:29 AM | Predictive |

4

CONFIDENTIAL

NSI0003205

| 727 | 5816140 | 2/16/2015 | No Answer | 8:05:33 AM | Predictive |
| 727 | 5816140 | 4/16/2015 | No Connect - No Answer | 1:50:02 PM | Inbound |

5

CONFIDENTIAL

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L          REDACTED
REDACTED

| SSN REDACTED | LOANS REDACTED | PROG REDAC | STATUS REDACTED | GUAR REDAC | OWNER REDACTED |
| NAME REDACTED | | | | OWNER REDACTED | |
| LETTER REQUEST ____ | REDACTED ____ | ____ | LOANS SELECTED REDACTED | | |
| | REDACTED ____ | ____ | | | |

| | DATE | SOURCE | | MESSAGE | | PST/RESOLVE |
|---|---|---|---|---|---|---|
| | REDACTED | | | | | |
| _ | 020414 | MYL | TW50 | MYL LOGIN SUCCESSFUL | | 020414 |
| _ | 020414 | CISMYL | C008 | PARTIAL ADDRESS CHANGE | | 020414 |
| _ | 020414 | CISMYL | C005 | BORROWER HOME PHONE NUM CHANGED | | 020414 |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |

REDACTED

EXHIBIT
Dillon 7
KH 12/29/15
PENGAD 800-631-6989

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L          REDACTED
REDACTED

| SSN REDACTED | LOANS REDACTED | PROG REDAC | STATUS REDACTED | GUAR REDAC | OWNER REDACTED |
| NAME REDACTED | | | | OWNER REDACTED | |
| LETTER REQUEST ____ | REDACTED ____ | ____ | LOANS SELECTED REDACTED | | |
| | REDACTED ____ | ____ | | | |

| | DATE | SOURCE | | MESSAGE | | PST/RESOLVE |
|---|---|---|---|---|---|---|
| | REDACTED | | | | | |
| _ | REDACTED | | REDACTED | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | REDACTED | | | |
| _ | REDACTED | | | | | |
| _ | REDACTED | | | | | |
| _ | 072814 | SYSTEM | GD00 | CALL ATTEMPTS 1) 140728 1327 RA | | 072914 |
| _ | 072814 | SYSTEM | GD00 | CALL ATTEMPTS 1) 140728 1327 RA | | 073014 |
| _ | 072914 | SYSTEM | GD00 | CALL ATTEMPTS 1) 140729 2012 RA | | 073014 |

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L       REDACTED
REDACTED
SSN REDACTED        LOANS REDACTED    PROG REDAL    STATUS REDACTED    GUAR REDAC    OWNER REDACTED
NAME   REDACTED                                                       OWNER  REDACTED
LETTER REQUEST  _____    REDACTED    _____    _____    LOANS SELECTED   REDACTED
                        REDACTED    _____    _____

| DATE   | SOURCE | | MESSAGE | | | | PST/RESOLVE |
|--------|--------|--|---------|--|--|--|-------------|
| REDACTED | | | | | | | |
| _ 073014 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140730 | 1157 | RA | 073114 |
| _ 073014 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140730 | 1157 | RA | 073114 |
| _ 073114 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140731 | 1833 | RA | 080214 |
| _ 080114 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140801 | 1101 | RA | 080214 |
| _ 080214 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140802 | 1926 | RA | 080614 |
| _ 080414 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140804 | 1232 | RA | 080614 |
| _ 080514 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140805 | 2056 | RA | 080714 |
| _ REDACTED | | | | | | | |
| _ 080614 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140806 | 1222 | RA | 080714 |
| _ 081314 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140813 | 1124 | RN | 081414 |
| _ 081414 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140814 | 1145 | RN | 081514 |
| _ 081914 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140819 | 1830 | RN | 082014 |

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L       REDACTED
REDACTED
SSN REDACTED        LOANS REDACTED    PROG REDAL    STATUS REDACTED    GUAR REDAC    OWNER REDACTED
NAME   REDACTED                                                       OWNER  REDACTED
LETTER REQUEST  _____    REDACTED    _____    _____    LOANS SELECTED   REDACTED       .
                        REDACTED    _____    _____

| DATE   | SOURCE | | MESSAGE | | | | PST/RESOLVE |
|--------|--------|--|---------|--|--|--|-------------|
| REDACTED | | | | | | | |
| _ 082214 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140822 | 1115 | RN | 082314 |
| _ REDACTED | | | | | | | |
| _ REDACTED | | | | | | | |
| _ 090314 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140903 | 1420 | Z | 090414 |
| _ REDACTED | | | | | | | |
| _ REDACTED | | | | | | | |
| | REDACTED | | | , | | | |
| _ REDACTED | | | | | | | |
| _ 090914 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140909 | 0836 | RA | 091014 |
| _ REDACTED | | | | | | | |
| _ REDACTED | | | | | | | |
| _ 091014 | SYSTEM | GD00 | CALL ATTEMPTS 1) | 140910 | 1110 | RN | 091114 |

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L    REDACTED
REDACTED
SSN REDACTED          LOANS REDACTED   PROG REDAC   STATUS REDACTED   GUAR REDAC   OWNER REDACTED
NAME   REDACTED                                                      OWNER  REDACTED
LETTER REQUEST ____    REDACTED  ____    ____    LOANS SELECTED  REDACTED
                       REDACTED  ____    ____

     DATE  SOURCE                           MESSAGE                        PST/RESOLVE
     REDACTED
_    091514 SYSTEM GD00 CALL ATTEMPTS 1) 140915 0834 RN                        091614
_    091514 SYSTEM GD00 CALL ATTEMPTS 1) 140915 0834 RN                        091714
_    091814 SYSTEM GD00 CALL ATTEMPTS 1) 140918 1649 RN                        091914
_    REDACTED
_    REDACTED
_    REDACTED
_    100614 SYSTEM GD00 CALL ATTEMPTS 1) 141006 1152 RN                        110414
_    100714 SYSTEM GD00 CALL ATTEMPTS 1) 141007 1527 RN                        110414
_    100914 SYSTEM GD00 CALL ATTEMPTS 1) 141009 0828 RA                        101014
_    101314 SYSTEM GD00 CALL ATTEMPTS 1) 141013 1531 RN                        101414
_    101314 SYSTEM GD00 CALL ATTEMPTS 1) 141013 1531 RN                        101514

REDACTED


CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L    REDACTED
REDACTED
SSN REDACTED          LOANS REDACTED   PROG REDAC   STATUS REDACTED   GUAR REDAC   OWNER REDACTED
NAME   REDACTED                                                      OWNER  REDACTED
LETTER REQUEST ____    REDACTED  ____    ____    LOANS SELECTED  REDACTED
                       REDACTED  ____    ____

     DATE  SOURCE                           MESSAGE                        PST/RESOLVE
     REDACTED
_    101614 SYSTEM GD00 CALL ATTEMPTS 1) 141016 1736 RN                        101714
_    101714 SYSTEM GD00 CALL ATTEMPTS 1) 141017 1138 RN                        103114
_    REDACTED
_    102014 SYSTEM GD00 CALL ATTEMPTS 1) 141020 1102 RN                        102114
_    102814 SYSTEM GD00 CALL ATTEMPTS 1) 141028 1750 RN                        102914
_    REDACTED
_    REDACTED
                       REDACTED
_    103114 SYSTEM GD00 CALL ATTEMPTS 1) 141031 0706 RN                        110414
_    REDACTED
_    REDACTED
_    110714 SYSTEM GD00 CALL ATTEMPTS 1) 141107 0801 RN                        110914

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L    REDACTED
REDACTED

SSN REDACTED        LOANS REDACTED   PROG REDAC   STATUS REDACTED   GUAR REDAC   OWNER REDACTED
NAME   REDACTED                                                    OWNER  REDACTED
LETTER REQUEST _____   REDACTED   _____   _____   LOANS SELECTED   REDACTED
                       REDACTED   _____   _____

|   | DATE | SOURCE | MESSAGE | PST/RESOLVE |
|---|------|--------|---------|-------------|
|   | REDACTED | | | |
| _ | 110714 | SYSTEM GD00 | CALL ATTEMPTS 1)  141107 0801 RN | 111114 |
| _ | 111014 | SYSTEM GD00 | CALL ATTEMPTS 1)  141110 1417 RA | 111114 |
| _ | 111014 | SYSTEM GD00 | CALL ATTEMPTS 1)  141110 1417 RA | 111214 |
| _ | 111314 | SYSTEM GD00 | CALL ATTEMPTS 1)  141113 2023 RN | 111414 |
| _ | 111314 | SYSTEM GD00 | CALL ATTEMPTS 1)  141113 2023 RN | 111414 |
| _ | 111314 | SYSTEM GD00 | CALL ATTEMPTS 1)  141113 2023 RN | 111414 |
| _ | 111314 | SYSTEM GD00 | CALL ATTEMPTS 1)  141113 1127 RN | 111514 |
| _ | 111314 | SYSTEM GD00 | CALL ATTEMPTS 1)  141113 1331 RN | 111514 |
| _ | 111514 | SYSTEM GD00 | CALL ATTEMPTS 1)  141115 1143 RN | 111814 |
| _ | 111514 | SYSTEM GD00 | CALL ATTEMPTS 1)  141115 1143 RN | 111914 |
| _ | 111814 | SYSTEM GD00 | CALL ATTEMPTS 1)  141118 0826 RN | 112014 |
| _ | 111914 | SYSTEM GD00 | CALL ATTEMPTS 1)  141119 1608 RN | 112014 |

**I001 PREVIOUS SCREEN PROCESSED SUCCESSFULLY**
SELECT AND PRESS ENTER TO DISPLAY DETAIL. PF5=IN MAIL(152). PF6=IN PHONE(153).
PF7=OUT MAIL/PHONE(154). PF8=CRIT CHANGES(155).

CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F L    REDACTED
REDACTED

SSN REDACTED        LOANS REDACTED   PROG REDAC   STATUS REDACTED   GUAR REDAC   OWNER REDACTED
NAME   REDACTED                                                    OWNER  REDACTED
LETTER REQUEST _____   REDACTED   _____   _____   LOANS SELECTED   REDACTED
                       REDACTED   _____   _____

|   | DATE | SOURCE | MESSAGE | PST/RESOLVE |
|---|------|--------|---------|-------------|
|   | REDACTED | | | |
| _ | 112214 | SYSTEM GD00 | CALL ATTEMPTS 1)  141122 1203 RN | 112514 |
| _ | 112614 | SYSTEM GD00 | CALL ATTEMPTS 1)  141126 1651 RN | 112714 |
| _ | REDACTED | | | |
|   | | | REDACTED | |
| _ | 120514 | SYSTEM GD00 | CALL ATTEMPTS 1)  141205 0919 RN | 120614 |
| _ | 120814 | SYSTEM GD00 | CALL ATTEMPTS 1)  141208 1028 RT | 121014 |
| _ | 120814 | SYSTEM GD00 | CALL ATTEMPTS 1)  141208 1142 RT | 121014 |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | 121114 | SYSTEM GD00 | CALL ATTEMPTS 1)  141211 0828 RV | 121214 |
| _ | REDACTED | | | |

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY---------------- LSC/F          REDACTED
REDACTED
SSN REDACTED          LOANS REDACTE     PROG REDA     STATUS REDACTED     GUAR REDA     OWNER * * * * * *
NAME   REDACTED                                                          OWNER   * * * * * * * * * * * * * * *
LETTER REQUEST _____   REDACTED _____    _____     LOANS SELECTED   REDACTED
                      REDACTED _____    _____

| DATE | SOURCE | | MESSAGE | PST/RESOLVE |
|------|--------|--|---------|-------------|
| REDACTED | | | | |
| _ 010814 | SYSTEM | GO72 | MADE COMMERCIAL ATTEMPT, FOUND NEW INFORMATION | 010814 |
| _ 010814 | SYSTEM | C005 | BORROWER HOME PHONE CHANGE | 010814 |
| _ 011314 | E69454 | GD45 | PH BORROWER HOME,LEFT MESSAGE ON ANSWERING MACHINE | A011314 |
| _ 011414 | E70789 | GD45 | PH BORROWER HOME,LEFT MESSAGE ON ANSWERING MACHINE | A011414 |
| _ 011714 | E71057 | GD45 | PH BORROWER HOME,LEFT MESSAGE ON ANSWERING MACHINE | A011714 |
| _ 012114 | E69467 | GD45 | PH BORROWER HOME,LEFT MESSAGE ON ANSWERING MACHINE | A012114 |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| | | REDACTED | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |

REDACTED


CLASS-151-BORROWER CORRESPONDENCE HISTORY---------------- LSC/F          REDACTED
REDACTED
SSN REDACTED          LOANS REDACTE     PROG REDA     STATUS REDACTED     GUAR REDA     OWNER * * * * *
NAME   REDACTED                                                          OWNER   * * * * * * * * * * * * * *
LETTER REQUEST _____   REDACTED _____    _____     LOANS SELECTED   REDACTED
                      REDACTED _____    _____

| DATE | SOURCE | | MESSAGE | PST/RESOLVE |
|------|--------|--|---------|-------------|
| REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| | | REDACTE | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| | | REDACTED | | |

REDACTED



**CLASS–151–BORROWER CORRESPONDENCE HISTORY—————————— LSC/F**          REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE          **PROG** REDAC          **STATUS** REDACTED          **GUAR** REDAC          **OWNER** \* \* \* \* \* \*

**NAME**   REDACTED                                                                                **OWNER**   \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LETTER REQUEST** _____   REDACTED   _____   _____          **LOANS SELECTED**   REDACTED

                          REDACTED   _____   _____

| | DATE | SOURCE | MESSAGE | PST/RESOLVE |
|---|---|---|---|---|
| | REDACTED | | | |
| _ | 020514 | SYSTEM | GD00 CALL ATTEMPTS 1) 140205 1803 RA | 020514 |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |

REDACTED

**CLASS–151–BORROWER CORRESPONDENCE HISTORY—————————— LSC/F**          REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE          **PROG** REDAC          **STATUS** REDACTED          **GUAR** REDAC          **OWNER** \* \* \* \* \*

**NAME**   REDACTED                                                                                **OWNER**   \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LETTER REQUEST** _____   REDACTED   _____   _____          **LOANS SELECTED**   REDACTED

                          REDACTED   _____   _____

| | DATE | SOURCE | MESSAGE | PST/RESOLVE |
|---|---|---|---|---|
| | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | 081314 | SYSTEM | GD00 CALL ATTEMPTS 1) 140813 1342 RA | 081314 |
| _ | 082014 | SYSTEM | GD00 CALL ATTEMPTS 1) 140820 1359 RA | 082014 |
| _ | REDACTED | | | |
| _ | REDACTED | | | |
| _ | REDACTED | | | |

REDACTED

CLASS–151–BORROWER CORRESPONDENCE HISTORY––––––––––––––––– LSC/F          REDACTED

REDACTED

| SSN REDACTED | LOANS REDACTE | PROG REDAL | STATUS REDACTED | GUAR REDAL | OWNER ***** |
| NAME  REDACTED | | | | | OWNER *************** |

LETTER REQUEST _____   REDACTED _____   _____   LOANS SELECTED  REDACTED
REDACTED   _____   _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| REDACTED | | | |
| _ 090414 | SYSTEM GD00 | CALL ATTEMPTS 1) 140904 1252 RA | 090414 |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 090914 | SYSTEM GD00 | CALL ATTEMPTS 1) 140909 1240 RA | 090914 |
| _ REDACTED | | | |
| _ 091014 | SYSTEM GD00 | CALL ATTEMPTS 1) 140910 1342 RA | 091014 |
| _ 091614 | SYSTEM GD00 | CALL ATTEMPTS 1) 140916 1247 RA | 091614 |
| _ REDACTED | | | |
| _ 091814 | SYSTEM GD00 | CALL ATTEMPTS 1) 140918 1255 RA | 091814 |

REDACTED

CLASS–151–BORROWER CORRESPONDENCE HISTORY––––––––––––––––– LSC/F          REDACTED

REDACTED

| SSN REDACTED | LOANS REDACTE | PROG REDAL | STATUS REDACTED | GUAR REDAL | OWNER ***** |
| NAME  REDACTED | | | | | OWNER *************** |

LETTER REQUEST _____   REDACTED _____   _____   LOANS SELECTED  REDACTED
REDACTED   _____   _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| REDACTED | | | |
| _ 092114 | SYSTEM GD00 | CALL ATTEMPTS 1) 140921 1908 RA | 092214 |
| _ 092214 | SYSTEM GD00 | CALL ATTEMPTS 1) 140922 1305 RV | 092214 |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 092414 | SYSTEM GD00 | CALL ATTEMPTS 1) 140924 0827 RA | 092414 |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 092614 | SYSTEM GD00 | CALL ATTEMPTS 1) 140926 1223 RA | 092614 |
| _ 100114 | SYSTEM GD00 | CALL ATTEMPTS 1) 141001 1053 RA | 100114 |
| _ REDACTED | | | |
| _ 100814 | SYSTEM GD00 | CALL ATTEMPTS 1) 141008 1650 RN | 100814 |
| _ 101014 | SYSTEM GD00 | CALL ATTEMPTS 1) 141010 1212 RN | 101014 |

REDACTED

**CLASS−151−BORROWER CORRESPONDENCE HISTORY−−−−−−−−−−−−−−− LSC/F**       REDACTED

REDACTED

**SSN** REDACTED       **LOANS** REDACTE    **PROG** REDAC    **STATUS** REDACTED    **GUAR** REDAC   **OWNER** * * * * * *

**NAME**   REDACTED                                                                **OWNER**   * * * * * * * * * * * * * *

**LETTER REQUEST** _____   REDACTED   _____   _____   **LOANS SELECTED**   REDACTED

REDACTED   _____   _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| _ | REDACTED | | |
| _ 101314 | SYSTEM GD00 | CALL ATTEMPTS 1) 141013 1408 RN | 101314 |
| _ 101514 | SYSTEM GD00 | CALL ATTEMPTS 1) 141015 1859 RN | 101514 |
| _ 101614 | SYSTEM GD00 | CALL ATTEMPTS 1) 141016 1846 RN | 101614 |
| _ 101714 | SYSTEM GD00 | CALL ATTEMPTS 1) 141017 1204 RA | 101714 |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 102114 | SYSTEM GD00 | CALL ATTEMPTS 1) 141021 1447 RN | 102114 |
| _ 102314 | SYSTEM GD00 | CALL ATTEMPTS 1) 141023 1326 RN | 102314 |
| _ 102414 | SYSTEM GD00 | CALL ATTEMPTS 1) 141024 1008 RN | 102414 |

REDACTED

**CLASS−151−BORROWER CORRESPONDENCE HISTORY−−−−−−−−−−−−−−− LSC/F**       REDACTED

REDACTED

**SSN** REDACTED       **LOANS** REDACTE    **PROG** REDAC    **STATUS** REDACTED    **GUAR** REDAC   **OWNER** * * * * * *

**NAME**   REDACTED                                                                **OWNER**   * * * * * * * * * * * * * *

**LETTER REQUEST** _____   REDACTED   _____   _____   **LOANS SELECTED**   REDACTED

REDACTED   _____   _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| _ | REDACTED | | |
| _ 102514 | SYSTEM GD00 | CALL ATTEMPTS 1) 141025 1155 RN | 102514 |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 102714 | SYSTEM GD00 | CALL ATTEMPTS 1) 141027 0845 RN | 102714 |
| _ 102714 | SYSTEM GD00 | CALL ATTEMPTS 1) 141027 2039 RN | 102714 |
| _ REDACTED | | | |
| _ 102814 | SYSTEM GD00 | CALL ATTEMPTS 1) 141028 1021 RN | 102814 |
| _ 102914 | SYSTEM GD00 | CALL ATTEMPTS 1) 141029 1328 RN | 102914 |
| _ 102914 | SYSTEM GD00 | CALL ATTEMPTS 1) 141029 2056 RN | 102914 |
| _ 103014 | SYSTEM GD00 | CALL ATTEMPTS 1) 141030 1059 RN | 103014 |
| _ REDACTED | | | |

REDACTED

REDACTED

**CLASS–151–BORROWER CORRESPONDENCE HISTORY**––––––––––––––––– **LSC/F**          REDACTED
REDACTED
**SSN** REDACTED          **LOANS** REDACTE    **PROG** REDAC    **STATUS** REDACTED    **GUAR** REDAC  **OWNER** ＊＊＊＊＊＊
**NAME**   REDACTED                                                              **OWNER**  ＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊
**LETTER REQUEST** _____  REDACTED  _____    _____    **LOANS SELECTED**   REDACTED
                              REDACTED  _____    _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| REDACTED | | | |
| _ REDACTED | | | |
| _ 110414 | SYSTEM GD00 | CALL ATTEMPTS 1) 141104 0851 RN | 110414 |
| _ 110514 | SYSTEM GD00 | CALL ATTEMPTS 1) 141105 2027 RN | 110514 |
| _ 110614 | SYSTEM GD00 | CALL ATTEMPTS 1) 141106 1035 RN | 110614 |
| _ REDACTED | | | |
| _ 111214 | SYSTEM GD00 | CALL ATTEMPTS 1) 141112 2021 RN | 111214 |
| _ 111214 | SYSTEM GD00 | CALL ATTEMPTS 1) 141112 1305 RN | 111214 |
| _ REDACTED | | | |
| _ 111314 | SYSTEM GD00 | CALL ATTEMPTS 1) 141113 1048 RN | 111314 |
| _ 111414 | SYSTEM GD00 | CALL ATTEMPTS 1) 141114 1951 RN | 111414 |
| _ REDACTED | | | |
| _ 111714 | SYSTEM GD00 | CALL ATTEMPTS 1) 141117 0846 RN | 111714 |

REDACTED


**CLASS–151–BORROWER CORRESPONDENCE HISTORY**––––––––––––––––– **LSC/F**          REDACTED
REDACTED
**SSN** REDACTED          **LOANS** REDACTE    **PROG** REDAC    **STATUS** REDACTED    **GUAR** REDAC  **OWNER** ＊＊＊＊＊＊
**NAME**   REDACTED                                                              **OWNER**  ＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊
**LETTER REQUEST** _____  REDACTED  _____    _____    **LOANS SELECTED**   REDACTED
                              REDACTED  _____    _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 111914 | SYSTEM GD00 | CALL ATTEMPTS 1) 141119 1308 RN | 111914 |
| _ 112014 | SYSTEM GD00 | CALL ATTEMPTS 1) 141120 1736 RN | 112014 |
| _ 112114 | SYSTEM GD00 | CALL ATTEMPTS 1) 141121 0834 RN | 112114 |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ REDACTED | | | |
| _ 112414 | SYSTEM GD00 | CALL ATTEMPTS 1) 141124 0958 RA | 112414 |
| _ REDACTED | | | |
| _ REDACTED | | | |

REDACTED

**CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F**          REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE     **PROG** REDAC    **STATUS** REDACTED    **GUAR** REDA    **OWNER** * * * * * *

**NAME**   REDACTED                                                                   **OWNER**  * * * * * * * * * * * * * *

**LETTER REQUEST** _____   REDACTED  _____   _____   **LOANS SELECTED**   REDACTED

                          REDACTED    _____    _____

| DATE | SOURCE | | MESSAGE | | PST/RESOLVE |
|------|--------|--|---------|--|-------------|
| REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ 112614 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141126 2047 RN | | 112614 |
| _ REDACTED | | | | | |
| | | REDACTED | | | |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ 120414 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141204 1935 RN | | 120514 |
| _ 120514 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141205 1016 RN | | 120514 |
| _ 120614 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141206 1145 RN | | 120614 |
| _ REDACTED | | | | | |
| _ 120814 | E73705 | GD07 | PHONED BORROWER, NO ANSWER - PM | | A120814 |
| _ 120914 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141209 1044 RN | | 120914 |

REDACTED


**CLASS-151-BORROWER CORRESPONDENCE HISTORY--------------- LSC/F**          REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE     **PROG** REDAC    **STATUS** REDACTED    **GUAR** REDA    **OWNER** * * * * * *

**NAME**   REDACTED                                                                   **OWNER**  * * * * * * * * * * * * * *

**LETTER REQUEST** _____   REDACTED  _____   _____   **LOANS SELECTED**   REDACTED

                          REDACTED    _____    _____

| DATE | SOURCE | | MESSAGE | | PST/RESOLVE |
|------|--------|--|---------|--|-------------|
| REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ 121014 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141210 1810 RN | | 121014 |
| _ 121114 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141211 1913 RN | | 121114 |
| _ 121314 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141213 1305 RN | | 121414 |
| _ REDACTED | | | | | |
| _ 121514 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141215 1047 RN | | 121514 |
| _ 121614 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141216 1926 RN | | 121614 |
| _ 121714 | SYSTEM | GD00 | CALL ATTEMPTS 1) 141217 1355 RN | | 121714 |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |

REDACTED

**CLASS−151−BORROWER CORRESPONDENCE HISTORY−−−−−−−−−−−−−−− LSC/F**        REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE     **PROG** REDAC     **STATUS** REDACTED     **GUAR** REDAC     **OWNER** * * * * * *
**NAME**   REDACTED                                                                   **OWNER**   * * * * * * * * * * * * * *
**LETTER REQUEST** _____  REDACTED  _____   _____        **LOANS SELECTED**   REDACTED
                           REDACTED  _____   _____

| DATE | SOURCE | | | MESSAGE | PST/RESOLVE |
|------|--------|--|--|---------|-------------|
| REDACTED | | | | | |
| _ 122314 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 141223 1050 RN | 122314 |
| _ 122414 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 141224 1148 RN | 122414 |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ 122614 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 141226 1934 RN | 122614 |
| _ 122714 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 141227 1059 RA | 122714 |
| _ REDACTED | | | | | |
| _ REDACTED | | | REDACTED | | |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |

REDACTED

---

**CLASS−151−BORROWER CORRESPONDENCE HISTORY−−−−−−−−−−−−−−− LSC/F**        REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE     **PROG** REDAC     **STATUS** REDACTED     **GUAR** REDAC     **OWNER** * * * * * *
**NAME**   REDACTED                                                                   **OWNER**   * * * * * * * * * * * * * *
**LETTER REQUEST** _____  REDACTED  _____   _____        **LOANS SELECTED**   REDACTED
                           REDACTED  _____   _____

| DATE | SOURCE | | | MESSAGE | PST/RESOLVE |
|------|--------|--|--|---------|-------------|
| REDACTED | | | | | |
| _ 010315 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 150103 0952 RN | 010315 |
| _ 010515 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 150105 1600 RN | 010515 |
| _ 010715 | E72499 | GO69 | PH BORROWER HOME, CALL TERMINATED WHEN REQUESTED | | A010715 |
| _ 010815 | E70441 | GD05 | PH BORROWER HOME, NO ANSWER | | A010815 |
| _ 010915 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 150109 1548 RN | 010915 |
| _ 010915 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 150109 1049 RN | 010915 |
| _ 011015 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 150110 1159 RN | 011115 |
| _ 011215 | SYSTEM | GD00 | CALL ATTEMPTS | 1) 150112 0806 RN | 011215 |
| _ REDACTED | | | | | |
| _ 011315 | SYSTEM | GD00 | CALL **ATT**EMPTS | 1) 150113 0818 RA | 011315 |
| _ REDACTED | | | | | |
| _ REDACTED | | | | | |

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY---------------- LSC/F          REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE     **PROG** REDAC     **STATUS** REDACTED     **GUAR** REDAC     **OWNER** ******
**NAME**   REDACTED                                                                      **OWNER** ***************
**LETTER REQUEST** _____  REDACTED  _____   _____     **LOANS SELECTED**   REDACTED
                          REDACTED  _____   _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| _ | REDACTED | | |
| _ 011615 | SYSTEM GD00 | CALL ATTEMPTS 1) 150116 1035 RN | 011615 |
| _ 011615 | SYSTEM GD00 | CALL ATTEMPTS 1) 150116 1804 RN | 011615 |
| _ 011715 | SYSTEM GD00 | CALL ATTEMPTS 1) 150117 1044 RN | 011715 |
| _ | REDACTED | | |
| _ 012115 | SYSTEM GD00 | CALL ATTEMPTS 1) 150121 2009 RN | 012115 |
| _ 012115 | SYSTEM GD00 | CALL ATTEMPTS 1) 150121 1729 RN | 012115 |
| _ 012215 | SYSTEM GD00 | CALL ATTEMPTS 1) 150122 0807 RA | 012215 |
| _ 012315 | SYSTEM GD00 | CALL ATTEMPTS 1) 150123 0806 RN | 012315 |
| _ | REDACTED | | |
| _ | REDACTED | | |
| _ 012615 | SYSTEM GD00 | CALL ATTEMPTS 1) 150126 0803 RN | 012615 |

REDACTED

CLASS-151-BORROWER CORRESPONDENCE HISTORY---------------- LSC/F          REDACTED

REDACTED

**SSN** REDACTED          **LOANS** REDACTE     **PROG** REDAC     **STATUS** REDACTED     **GUAR** REDAC     **OWNER** ******
**NAME**   REDACTED                                                                      **OWNER** ***************
**LETTER REQUEST** _____  REDACTED  _____   _____     **LOANS SELECTED**   REDACTED
                          REDACTED  _____   _____

| DATE | SOURCE | MESSAGE | PST/RESOLVE |
|------|--------|---------|-------------|
| _ | REDACTED | | |
| _ 012715 | SYSTEM GD00 | CALL ATTEMPTS 1) 150127 0802 RN | 012715 |
| _ 012815 | SYSTEM GD00 | CALL ATTEMPTS 1) 150128 0803 RA | 012815 |
| _ 012915 | SYSTEM GD00 | CALL ATTEMPTS 1) 150129 0803 RN | 012915 |
| _ 013015 | SYSTEM GD00 | CALL ATTEMPTS 1) 150130 0803 RA | 013015 |
| _ | REDACTED | | |
| | | REDACTED | |
| _ 020215 | SYSTEM GD00 | CALL ATTEMPTS 1) 150202 0802 RN | 020215 |
| _ | REDACTED | | |
| _ 020315 | SYSTEM GD00 | CALL ATTEMPTS 1) 150203 0809 RA | 020315 |
| _ 020415 | SYSTEM GD00 | CALL ATTEMPTS 1) 150204 0804 RA | 020415 |
| _ 020515 | SYSTEM GD00 | CALL ATTEMPTS 1) 150205 0803 RN | 020515 |
| _ 020615 | SYSTEM GD00 | CALL ATTEMPTS 1) 150206 0819 RA | 020615 |

REDACTED

CLASS–151–BORROWER CORRESPONDENCE HISTORY––––––––––––––– LSC/F          REDACTED
REDACTED
SSN REDACTED          LOANS REDACTE     PROG REDAC    STATUS REDACTED     GUAR REDAC    OWNER ★ ★ ★ ★ ★ ★
NAME    REDACTED                                                         OWNER   ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★
LETTER REQUEST _____ REDACTED _____    _____     LOANS SELECTED  REDACTED
                      REDACTED _____    _____

| DATE | SOURCE | | MESSAGE | PST/RESOLVE |
|------|--------|--|---------|-------------|
| REDACTED | | | | |
| _ 020915 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150209 0806 RN | 020915 |
| _ REDACTED | | | | |
| _ 021015 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150210 0802 RN | 021015 |
| _ REDACTED | | | | 5 |
| _ REDACTED | | | | |
| _ 021115 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150211 0804 RA | 021115 |
| _ 021215 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150212 0805 RV | 021215 |
| _ 021315 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150213 0806 RA | 021315 |
| _ 021615 | MYLSP | TW50 | MYL LOGIN SUCCESSFUL | 021615 |
| _ 021615 | MYL | TW50 | MYL LOGIN SUCCESSFUL | 021615 |
| _ 021615 | CISMYL | C005 | BORROWER HOME PHONE CHANGE | 021615 |
| _ 021615 | CISMYL | C338 | SITE CHANGED | 021615 |

REDACTED


CLASS–151–BORROWER CORRESPONDENCE HISTORY––––––––––––––– LSC/F          REDACTED
REDACTED
SSN REDACTED          LOANS REDACTE     PROG REDAC    STATUS REDACTED     GUAR REDAC    OWNER ★ ★ ★ ★ ★ ★
NAME    REDACTED                                                         OWNER   ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★
LETTER REQUEST _____ REDACTED _____    _____     LOANS SELECTED  REDACTED
                      REDACTED _____    _____

| DATE | SOURCE | | MESSAGE | PST/RESOLVE |
|------|--------|--|---------|-------------|
| REDACTED | | | | |
| _ 021615 | CISMYL | C101 | AUXILIARY PHONE NUMBER CHANGE | 021615 |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| | | REDACTED | | |
| | | REDAC | | |
| _ REDACTED | | | | |
| _ 021615 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150216 0805 RN | 021615 |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ REDACTED | | | | |
| _ 021715 | SYSTEM | GD00 | CALL ATTEMPTS 1) 150217 0806 RA | 021715 |

REDACTED