UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE MCCASKILL,

       Plaintiff,

v.                                    Case No. 8:15-cv-1559-T-33TBM

NAVIENT SOLUTIONS, INC.,
et al.,

       Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to: (1) the
Defendants' Motion for Partial Summary Judgment (Doc. # 91),
filed on February 12, 2016, to which Plaintiff responds in
opposition (Doc. # 98); and (2) Plaintiff's Motion for Partial
Summary Judgment, filed on February 12, 2016 (Doc. # 92), to
which Defendants respond in opposition (Doc. # 97).  On March
25, 2016, Plaintiff filed a Notice of Supplemental Authority.
(Doc. # 101).  For the reasons that follow, the Motions are
granted in part and denied in part.

I.   **Background**

Between January 13, 2014 and February 16, 2015, Defendant
Navient Solutions, Inc. ("NSI") placed 249 calls to a cellular
telephone number ending in -6140.  (Doc. # 95-3 at 159; Doc.
# 95-4 at 29-37; Doc. # 92 at ¶ 3; Doc. # 97 at ¶ 3).  Between
March 27, 2014 and May 28, 2015, Defendant Student Assistance
Corporation ("SAC") placed 478 calls to the same number. (Doc.
# 95-3 at 171; Doc. # 95-4 at 2-27; Doc. # 92 at ¶ 4; Doc.

# 97 at ¶ 4).  Plaintiff Willie McCaskill alleges that the calls violated the Telephone Consumer Practices Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.  In these Motions, the parties contest several issues, including whether Defendants had Plaintiff's prior express consent to call the -6140 number, whether Plaintiff told Defendants to stop calling, whether the calls constituted prohibited harassment under the FCCPA and FDCPA, and whether SAC is a debt collector.

Defendant NSI is a student loan servicer.  (Doc. # 96-3, "Dillon Dep." at 13).  Defendant SAC provides "default prevention" services for guarantors of federal student loans. (Doc. # 96-3, "Campbell Dep." at 11).  For instance, SAC contacts borrowers to counsel them on "repayment options." (Id. at 8, 12).  Defendants' internal policies allow NSI and SAC to call anyone up to eight times in one day.  (Doc. # 98-4, "Peterson Dep." at 35; Doc. # 94-5, "Hampton Dep." at 26).

The parties agree that the calls to the -6140 number were regarding a student loan issued to the Plaintiff's daughter, Maretta Newsome.  (Doc. # 91 at ¶ 1; Doc. # 98 at ¶ 1; Doc. # 92 at ¶ 7; Doc. # 97 at ¶ 7). Defendants present no evidence that Plaintiff, herself, had any obligation on Newsome's

2

student loan, or that Plaintiff was obligated to pay on any other student loan. (Pl. Dep. at 21).

The -6140 number is assigned to Plaintiff's cell phone. (Doc. # 98-2, "Pl. Dep." at 26). Before Plaintiff began using the -6140 number for her cell phone, the number was assigned to Plaintiff's residence for many years, including while her daughters were growing up. (Id. at 28-29). The -6140 number is also the only number for the Largo for Jesus Christian Center, Inc. ("LFJ"). (Id. at 43). Plaintiff is the pastor of LFJ. (Id.).

NSI obtained the -6140 number from a public records search. (Dillon Dep. at 102; Doc. # 91 at ¶ 11; Doc. # 92 at ¶ 10). In 1999, Plaintiff submitted an application to the Florida Division of Corporations to incorporate LFJ. (Pl. Dep. at 43; Doc. # 95-3 at 36). Plaintiff's cover letter included the -6140 number. (Doc. # 95-3 at 36). The Articles of Incorporation listed Newsome as the Secretary of LFJ. (Id. at 40). Newsome was also listed as an officer or director of LFJ in every annual update filed with the Division of Corporations. (Doc. # 95-3 at 42-57).

Although Defendants concede that the -6140 number was initially obtained from public records, they maintain that Newsome confirmed the -6140 number as her own when she requested a voluntary forbearance on her student loan from

Sallie Mae, NSI's predecessor.   (Doc. # 91 at ¶¶ 11-12, 15).
Defendants submit a screenshot from the Sallie Mae website
entitled "Edit Your Contact Information," which is dated
February 4, 2014.   (Doc. # 95-3 at 95).   The following
language appears at the top of the page:

> We would like to ensure that we have the most up to
> date records for your student loan account. Please
> take a few moments to review your contact
> information and update as needed. If no changes are
> needed, please click Submit.
>
> It is important that we have your most current
> address, telephone number, and email address. Use
> this form to update and/or verify any part of your
> contact information.

(Id.).   Below this language is a box for "Contact
Information," which lists the -6140 number as Newsome's home
phone number.   (Id. at 95-96).   Within that box is the
following statement:

> By providing my telephone number, I authorize
> Sallie Mae, Inc. its affiliates and agents to
> contact me at such number using any means of
> communication, including, but not limited to, calls
> placed to my cellular telephone using an automated
> dialing device, calls using prerecorded messages
> and/or SMS text messages, regarding any current or
> future loans owned or serviced by Sallie Mae, Inc.,
> its affiliates and agents, even if I will be
> charged by my service provider(s) for receiving
> such communications.

(Id. at 96).

Newsome testified that she recalled seeing a similar
screen, but that she did not enter the -6140 number, and it
did not appear when she pulled that screen up. (Doc. # 98-3,

4

"Newsome Dep." at 58-59, 61).   Rather, the website reflected
the phone number that Newsome provided, which was her own
phone number ending in -8617.   (Id. at 62).

Defendants submit another screenshot from the Sallie Mae
website entitled "Voluntary Forbearance: Verify Information,"
also dated February 4, 2014.   (Doc. # 95-3 at 108).   At the
top of the page is the following statement:

> This is the certification page for your Voluntary
> Forbearance request. Please read over the
> information carefully before submitting.   Should
> any of the information be incorrect, click the
> "Edit" button to make changes.

Immediately below the statement is a section for "Your Contact
Information," which lists the -6140 number as Newsome's home
phone number.   (Id.).

Newsome   again   denies   providing   the   -6140   number.
(Newsome Dep. at 69-71).   Newsome further stated: "I don't
known that it was there at the time that I was doing it.  But
had I seen the number, I would have changed it."   (Id. at 71).

Newsome testified that Plaintiff never authorized Newsome
to provide anyone with the -6140 number, and Newsome never
believed that she had such authority.   (Id. at 84-85).
Newsome explained: "You don't give out my mom's number, which
is her business.  I handle my own business, she handles her
own business. . . . She stay over there, and I stay over
here."   (Id. at 85).

Of the 727 calls placed to Plaintiff's cell phone, Plaintiff maintains that she answered only one call in August 2014 and spoke with "Heather." (Pl. Dep. at 20). Plaintiff testified to the specifics of that conversation as follows:

> Q.  Tell me everything you can remember about the conversation with Heather.
>
> A.  Okay.  I wrote it down so I could remember. Our conversation was, I received a call.  Okay. And she called the cell phone and she was calling for Maretta Newsome.
>
> And I told her that I was sure that she had caller ID and she could see that that was not Maretta Newsome's phone number.  Okay.
>
> And she said, "I need to give" — she told me, "I need to give Maretta her message."  And I told her this was the wrong person and I am not her messenger to deliver her calls.  Then Heather asked me if I knew her.  I said yes.  And I told her, why doesn't she just call Maretta herself.  And she gave her phone number, she gave me her phone number, which was [-8617].  And she said — gave me the phone number for Maretta.  And then I told her that that phone number was correct.  And she said, "Maretta does not answer her phone."
>
> And I'm not surprised, because she doesn't.  I asked her not to call my cell phone anymore about a student loan.  I told Heather I have never had a student loan in my life and I don't have anything to do with anybody else's loans.  Not at all.  And the call ended.  And then after that I was just bombarded with phone calls.

(Id. at 21).

While giving this testimony, Plaintiff referred to typewritten notes prepared by her attorneys ("Attorney Notes").  (Doc. # 91 at ¶ 27; Doc. # 98 at ¶ 27).  According

6

to Plaintiff, the Attorney Notes were typed up when she called Morgan & Morgan, PA and provided them information for her statement. (Pl. Dep. at 64). Before the notes were typed up, Plaintiff also "wrote [] down" what she and Heather said during the call, and she testified that she made those notes "[i]mmediately after" the call.

After Plaintiff's deposition, Defendants requested that Plaintiff produce the Attorney Notes as well as the original written notes ("Handwritten Notes"). (Doc. # 91 at ¶ 30; Doc. # 97 at ¶ 30). As discussed below, Defendants object to Plaintiff's testimony about the phone call with Heather, and they challenge the legitimacy of the Handwritten Notes. Defendants also maintain that they have no record of an employee named Heather making calls to the -6140 number. (Doc. # 95-4 at 40-41, 47, 52-53). Indeed, Defendants assert that they did not speak with Plaintiff at any point, except when she mistakenly called in while attempting to reach a third party. (Doc. # 95-4 at 39-40).

Plaintiff stopped receiving calls after May 28, 2015. On that date, an SAC employee, Christine Hampton, included in SAC's records the following notation: "DID NOT LEAVE MESSAGE, DIFF NME ON VM." (Hampton Dep. at 29; Doc. # 96-5 at 2).

Plaintiff filed the instant action on July 2, 2015. (Doc. # 1). On November 2, 2015, Plaintiff filed an Amended

Complaint, asserting claims against NSI, SAC, and NSI's parent company, Navient Corporation, for violations of the TCPA for placing non-emergency calls to Plaintiff's cell phone without her prior express consent(Counts I, III and VI), and for violations of the FCCPA for harassment and attempting to enforce a debt knowing that the debt was not legitimate (Counts II, IV, and VII). (Doc. # 35 at ¶¶ 55-74, 81-90). Plaintiff also alleges that SAC violated a number of provisions in the FDCPA (Count V). (<u>Id.</u> at ¶¶ 75-80).

Each Defendant filed an Answer and Affirmative Defenses. (Docs. ## 42-44). On November 17, 2015, NSI filed a motion to stay this action pending a ruling from the Supreme Court in <u>Robins v. Spokeo, Inc.</u>, 742 F.3d 409 (9th Cir. 2014), <u>cert. granted</u>, 135 S.Ct. 1892 (2015), which the Court denied on December 2, 2015. (Docs. ## 47, 48). On February 20, 2016, the parties stipulated to dismissal with prejudice of each claim against NSI's parent company, Navient Corporation (Doc. # 87), leaving only the claims against NSI and SAC at issue (Counts I through V).

On February 12, 2016, the parties filed their respective Motions for Partial Summary Judgment. (Docs. ## 91-92). On April 4, 2016, Defendants filed a Motion for Leave to File an Amended Motion for Summary Judgment, which this Court denied on April 6, 2016. (Doc. ## 103, 106). The Motions are ripe for the Court's review.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

### A.   TCPA

The TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of

the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a  . . . cellular telephone." 47 U.S.C. § 227(b)(1)(A)(iii).  The parties agree that NSI made 249 calls to Plaintiff's cell phone using an automated telephone dialing system (ATDS), that SAC made 478 calls to Plaintiff's cell phone using an ATDS, and that the calls were not for emergency purposes.  (Doc. # 92 at ¶¶ 3-4, 6; Doc. # 97 at ¶¶ 3-4, 6).  The parties dispute whether the calls were made with Plaintiff's "prior express consent."  The parties also contest Defendants' liability for treble damages.  As explained below, Plaintiff's Motion is due to be granted on liability under the TCPA, and the parties' cross-Motions are denied on the issue of treble damages.

 **1.**   <u>**Liability**</u>

 The TCPA provides an affirmative defense if calls are "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A); <u>Murphy v. DCI Biologicals Orlando, LLC</u>, 797 F.3d 1302, 1304-05 (11th Cir. 2015). Pursuant to its rulemaking authority, the Federal Communications Commission (FCC) has defined the contours of "prior express consent." <u>Murphy</u>, 797 F.3d at 1305-06.  The FCC explains that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number

11

which they have given, absent instructions to the contrary."
Id. (internal quotation marks omitted). "[P]roviding a cell
phone number to a creditor — as part of a credit application,
for example — reasonably evidences prior express consent . . .
to be contacted at that number regarding the debt." Id. at
1306 (internal quotation marks omitted).  The FCC emphasizes
"that prior express consent is deemed to be granted only if
the wireless number was provided by the consumer to the
creditor, and that such number was provided during the
transaction that resulted in the debt owed[.]" Mais v. Gulf
Coast Collection Bureau, Inc., 768 F.3d 1110, 1118 (11th Cir.
2014).

Defendants identify no facts suggesting that Plaintiff
knowingly released her cell phone number to NSI or SAC.
Indeed, Defendants point to no evidence that Plaintiff had any
contact with Defendants prior to receiving their calls.
Defendants instead argue that Plaintiff manifested her consent
by allowing her phone to ring over 700 times without
attempting to stop the calls.  (Doc. # 97 at 12).  The Court
is not persuaded.  The statute requires "express consent," 47
U.S.C. § 227(b)(1)(A), and Plaintiff's silence in the face of
727 phone calls demonstrates, at best, presumed or implied
consent, which is not sufficient under the statute.  In the
Matter of Rules & Regulations Implementing the Tel. Consumer

12

<u>Prot. Act of 1991</u>, 30 FCC Rcd. 7961, 7991 (2015).[1]

Defendants also suggest that there is a "significant question" about whether the -6140 number is exclusively Plaintiff's to use, and thus whether it is a number for which Plaintiff may provide consent. (Doc. # 97 at 12). The TCPA requires prior express consent to be supplied by "the called party." 47 U.S.C. 227(b)(1)(A). The Eleventh Circuit holds that "the called party" is the current subscriber of the cell phone, not the intended recipient of the call. <u>Breslow v. Wells Fargo Bank, N.A.</u>, 755 F.3d 1265, 1267 (11th Cir. 2014); <u>Osorio v. State Farm Bank, F.S.B.</u>, 746 F.3d 1242, 1251-52 (11th Cir. 2014). More specifically, the subscriber is "the person who pays the bills or needs the line in order to receive other calls." <u>Osorio</u>, 746 F.3d 1251. Similarly, the FCC recently defined "called party" as "the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 FCC Rcd. at 8000-01.

Defendants point out that Plaintiff used the -6140 number as her residential line for years and also listed it as the

---

[1] The 2015 ruling was adopted and released after the calls at issue, but it remains persuasive authority. <u>Osorio</u>, 746 F.3d 1256.

phone number for LFJ on her 1999 application to incorporate the church.  (Doc. # 97 at 11-12).  These facts, while undisputed, are not directly relevant to whether Plaintiff is the "subscriber," that is, the person who pays the bills for the number or who is the customary user of the number. Osorio, 746 F.3d 1251; In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. at 8000-01.

Plaintiff testified that the bill for the -6140 number goes to her daughter Melissa, because she is on a family plan, but that Plaintiff pays her part of the bill.  (Pl. Dep. at 24).  Plaintiff also testified that she uses the phone both for herself and for LFJ, for which she is the pastor.  (Id. at 43).  Because Defendants cite no evidence indicating that another person pays the bills or is the customary user of the -6140 number, Defendants fail to create an issue of fact as to whether Plaintiff is "the called party" under 47 U.S.C. 227(b)(1)(A).

Because there is no evidence that Plaintiff, herself, provided prior express consent, the remaining question is whether Newsome consented on Plaintiff's behalf.  In particular, Defendants must establish that Newsome had authority to consent on Plaintiff's behalf, and that Newsome did, in fact, consent.  Osorio, 746 F.3d at 1252.  Defendants

14

argue that disputed issues of material fact exist sufficient to preclude summary judgment in Plaintiff's favor.  The Court disagrees.

In <u>Osorio v. State Farm Bank, F.S.B.</u>, the Eleventh Circuit clarified that prior express consent under the TCPA is evaluated under the common law of consent.  746 F.3d at 1253. For instance, consent may be demonstrated pursuant to an agency theory because "[i]t is settled law that the acts of an agent, within the scope of his real or apparent authority, bind the principal." <u>Id.</u> (internal quotation marks omitted). To assess whether an agency relationship existed in <u>Osorio</u>, the court consulted the established definition under Florida law, which provides:

> [a]n agency relationship can arise by written consent, oral consent, or by implication from the conduct of the parties. An agency by implication, or apparent agency, arises only when there has been (1) a representation by the principal that the actor is his or her agent, (2) reliance on that representation by a third party, and (3) a change in position by the third party in reliance on that representation. As to the first element, when there has been no representation of authority by the principal, no apparent or implied agency arises. The acts of the agent, standing alone, are insufficient to establish that the agent is authorized to act for the principal. Moreover, the scope of the agent's authority is limited to what the principal has authorized the agent to do.

<u>Id.</u> (internal citations omitted).

In <u>Osorio</u>, the key facts regarding agency were disputed. <u>Id.</u>  The plaintiff's housemate provided the plaintiff's cell

phone number to the housemate's insurance company.  Id. at 1247.  However, both the plaintiff and the housemate testified that they never gave each other authority to consent to phone calls from third parties.  Id. at 1253–54.  Although they had an adult son together and shared both a home and a cell phone plan, the court concluded that these facts did not demonstrate the requisite authority as a matter of law.  Id. at 1254.

Plaintiff argues that Newsome's testimony establishes that she lacked the requisite authority. (Doc. # 92 at 9, 11; Id. at ¶ 12).  In particular, Newsome testified that she never had authority to provide Plaintiff's cell phone number, explaining, "You don't give out my mom's number, which is her business.  I handle my own business, she handles her own business. . . . She stay over there, and I stay over here." (Newsome Dep. at 84–85; Doc. # 92 at ¶ 12).  By identifying specific record evidence, Plaintiff adequately discharges her burden as the party moving for summary judgment on Defendants' affirmative defense.  United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala., 941 F.2d 1428, 1438 & n.19 (11th Cir. 1991).

In response, Defendants cursorily assert that genuine issues of material fact exist as to whether Plaintiff and Newsome had an agency relationship.  (Doc. # 97 at 13).  Defendants identify no evidence calling into question

16

Newsome's testimony.   For instance, in contrast to <u>Osorio</u>, Defendants cite no evidence suggesting that the Plaintiff and Newsome shared a cell phone plan, that they lived together, or that they shared any assets at all.

Taking Defendants' version of the facts as true, Newsome may have confirmed Plaintiff's cell phone number to Sallie Mae (a point that Plaintiff vehemently disputes).   Under Florida law, however, Newsome's conduct is not sufficient to create an apparent agency relationship absent some evidence that Plaintiff tolerated, allowed, or acknowledged Newsome's conduct. <u>Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.</u>, 483 So. 2d 775, 777 (Fla. 3d DCA 1986) ("'Apparent authority' does not arise . . . from appearances created by the purported agent himself; instead, 'apparent authority' exists only where the principal creates the appearance of an agency relationship.").   Defendants cite no evidence indicating the Plaintiff knowingly tolerated, allowed, or acknowledged Newsome's purported exercise of apparent authority. <u>Owen Indus., Inc. v. Taylor</u>, 354 So. 2d 1259, 1261 (Fla. 2d DCA 1978).

The existence of an agency relationship is typically a question for the trier of fact. <u>Villazon v. Prudential Health Care Plan, Inc.</u>, 843 So. 2d 842, 853 (Fla. 2003). Nonetheless, in this action, Defendants fail to create a

17

genuine factual dispute as to whether Plaintiff and Newsome had a principal-agent relationship.

Defendants briefly suggest, in a parenthetical, that there may be consent by "common control" or "consent by intermediary." (Doc. # 97 at 13-14). Defendants cite Mais v. Gulf Coast Collection Bureau, Inc., which is not factually on-point. 768 F.3d at 1110-26. Mais confronted the question of whether a called party "provides" his cell phone number to a creditor by authorizing an intermediary to disclose the number to the creditor. Id. at 1122-23. Specifically, in connection with a hospital admission, the plaintiff, Mark Mais, provided his cell phone number to the hospital and also specifically authorized the hospital to disclose his information to business associates, including radiology providers. Id. at 1124. Mais incurred a medical debt to a hospital-based radiology provider. Id. at 1114. A billing agent for the radiology provider electronically accessed Mais's information from the hospital and ultimately forwarded the account to a debt collector, which placed calls that allegedly violated the TCPA. Id. The Eleventh Circuit held that the number was "provided by" the plaintiff to the radiology provider, despite the fact that it was transmitted indirectly through the hospital, an intermediary. Id. at 1123-26.

18

The instant case does not involve a dispute over whether Plaintiff indirectly provided her prior express consent to NSI or SAC.   Plaintiff does not currently dispute that, had she provided prior express consent to Sallie Mae through its website, such consent would be effective as to both NSI and SAC.   The issue in this case is whether one party may initially provide consent on another party's behalf — a question that <u>Mais</u> did not address.[2]

Although not referenced by Defendants, the Court notes that <u>Mais</u> relied in part on a 2014 FCC ruling, which clarified that initial consent may be obtained through an intermediary. 768 F.3d at 1123 (citing <u>In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition</u>, 29 FCC Rcd. 3442, 3444 (2014)).  GroupMe, a group text messaging service, requested the FCC to clarify that their method for obtaining consent did not violate the TCPA.   In particular, GroupMe requires a user who wishes to create a group to represent that each individual added to the group consented to be added and to receive text messages.  The FCC first noted that the TCPA is ambiguous as to how a

---

[2]In <u>Mais</u>, the plaintiff's wife filled out the hospital forms authorizing the transmission of plaintiff's information, but her authority to do so did not appear to be in dispute. <u>See</u> 768 F.3d at 1113 ("On behalf of her ill husband, Laura Mais completed and signed admissions documents, which she gave to a Hospital representative."). Here, Plaintiff specifically contests Newsome's authority to act on Plaintiff's behalf.

consumer's consent may be obtained, but that the TCPA was never intended "to be a barrier to normal, expected, and desired business communications." Id. The FCC observed that administrative texts relating GroupMe's messaging services were normal business communications, and allowing consent to be obtained by intermediaries "in this context facilitates these normal, expected, and desired business communications." Id. at 3444-45. Although the FCC endorsed GroupMe's approach, it emphasized both that "the scope of the consent must be determined upon the facts of each situation," and that GroupMe would remain liable for TCPA violations if group organizers did not, in fact, obtain the required express consent. Id. at 3446-47.

Defendants point to no evidence indicating that Newsome conveyed any consent on Plaintiff's behalf. See id. at 3447 ("the intermediary may only convey consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf of the consumer"). And, as discussed above, there is no evidence that Newsome had authority to consent as Plaintiff's agent, or pursuant to any other common-law theory of consent.[3]

---

[3] The 2014 FCC ruling specifically declined to address whether consent may be supplied under an agency theory. In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition, 29 FCC Rcd. at 3447 at ¶ 14 & n.33.

Accordingly, Defendants fail to establish a genuine issue of material fact regarding whether any of the 727 calls were made with Plaintiff's prior express consent. As already noted, Defendants do not otherwise dispute that these 727 calls constitute violations of the TCPA. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to Defendants' liability on the TCPA claims (Counts I and III) is granted.

**2.** **<u>Damages</u>**

The TCPA allows a plaintiff to recover actual monetary loss from a violation, or statutory damages of $500 per violation, whichever amount is greater. 47 U.S.C. § 227(b)(3)(B). Plaintiff asserts entitlement to statutory damages in the amount of $363,500. (Doc. # 92 at 12).

Additionally, if a defendant "willfully or knowingly" violates 47 U.S.C. § 227(b), a court has discretion to increase the damages up to three times the amount otherwise available. 47 U.S.C. § 227(b)(3). The TCPA does not require "malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." <u>Alea London Ltd. v. Am. Home Servs., Inc.</u>, 638 F.3d 768, 776 (11th Cir. 2011). In particular, the violator must "know he was performing the conduct that violates the statute." <u>Lary v. Trinity Physician Fin. & Ins. Servs.</u>, 780 F.3d 1101, 1107 (11th Cir. 2015).

The parties present sufficient evidence to create a factual dispute about whether Defendants knowingly violated the TCPA. For instance, Defendants concede that they originally obtained the -6140 number from public records, but they argue that Newsome later confirmed the number as her own on Sallie Mae's website. (Doc. # 95-3 at 95-96, 108). Although Newsome denies confirming the -6140 number and denies having authority to use the -6140 number (Newsome Dep. at 62, 66, 84-85), Defendants are entitled to have their knowledge of these facts evaluated by a factfinder.

The parties also dispute whether Plaintiff told Heather to stop calling in August 2014. Plaintiff testified that, "I asked her not to call my cell phone anymore about a student loan." (Pl. Dep. at 21). On the other hand, Defendants contend that they possess no record of such a conversation. (Doc. # 95-4 at 40-41, 47, 52-53). Defendants also question the veracity of Plaintiff's testimony, which Plaintiff admits was read from the Attorney Notes. (Doc. # 91 at ¶ 27; Doc. # 98 at ¶ 27). Although Plaintiff testified that the Attorney Notes were based on her own Handwritten Notes, Defendants further question the legitimacy of the Handwritten Notes. Plaintiff testified that she made the Handwritten Notes "[i]mmediately after" the conversation with Heather, but Defendants observe that the Notes reference subsequent phone

calls: "After that call, my cell phone rang constantly and I had Saturday and Sunday calls also." (Doc. # 95-3 at 153).[4] Defendants also argue that Plaintiff failed to include the Handwritten Notes in her initial disclosures. (Doc. # 91 at 13).

Defendants point to sufficient evidence to create a credibility issue regarding Plaintiff's testimony about the phone call with Heather. However, Defendants' contention that Plaintiff's testimony should be disregarded in its entirety is without merit. This is not a case in which Plaintiff's testimony is "blatantly contradicted" or "utterly discredited" by other evidence of record. Compare Scott v. Harris, 550 U.S. 372, 379–81 (2007) (rejecting the plaintiff's version of

---

[4] The Handwritten Notes state as follows:

My name is Willie Myra McCaskill and I had a call from Heather around or about the 26th of August 2014. She called my cell phone and said she was calling for Maretta Newsome and I told her I am sure that she has caller I.d. and know this is not the number for Maretta. She said I need to give Maretta Newsome her message and I told her she has the wrong person and I am not her messenger to deliver her calls. She ask me did I know her and I Said yes, and told her why doesn't she call Maretta and did she have her phone number and Heather told me what her home number was and I told her it was correct. I told her not to call my cell phone anymore. It was about a Student Loan. I told Heather I have never had a student loan and I don't have anything to do with someone elses bills. The call ended. After that call, my cell phone rang constantly and I had Saturday and Sunday calls also.

(Doc. # 95-3 at 153).

events where it was clearly contradicted by a video tape from the scene), <u>with</u> <u>Reeder v. Chitwood</u>, 595 F. App'x 890, 896 (11th Cir. 2014) (holding that the plaintiff's deposition testimony was not utterly discredited by his videotaped statement, despite the two versions being "in tension"). Defendants' credibility challenge is circumstantial. For instance, the fact that the Notes refer to subsequent calls arguably may be reconciled with Plaintiff's testimony that the Notes were made "[i]mmediately after" her conversation with Heather if Plaintiff explains that the Notes were made a week after the conversation. <u>Morton v. Kirkwood</u>, 707 F.3d 1276, 1284 (11th Cir. 2013) (holding that the plaintiff's testimony was not "utterly discredit[ed]" where it could be harmonized with forensic evidence).

Plaintiff presents additional evidence that she contends warrants judgment in her favor. Plaintiff argues that Defendants' own records indicate that, as of May 28, 2015, an SAC employee acknowledged that Plaintiff's voicemail did not have Newsome's name. (Doc. # 96-5 at 2). But as Defendants respond, there is no evidence that any calls were made after that date. (Doc. # 97 at 17). Plaintiff also argues that Defendants have been sued in other venues for similar violations of the TCPA and have been the subject of numerous consumer complaints. (Doc. # 92 at 14). However, Defendants'

alleged violations of the TCPA in unrelated cases are not sufficient to demonstrate wilful or knowing conduct in this action. McBeth v. Credit Prot. Ass'n, L.P, No. 8:14-CV-606-T-36AEP, 2015 WL 4429324, at *4 (M.D. Fla. July 20, 2015).

Based on the foregoing, neither side demonstrates entitlement to judgment as a matter of law on the issue of treble damages. The parties' cross-Motions for summary judgment on treble damages are therefore denied.

**B.  FDCPA and FDCPA**

Plaintiff alleges that SAC violated the FDCPA, which imposes civil liability on "debt collectors" for certain prohibited debt-collection practices. Harris v. Liberty Cmty. Mgmt., Inc., 702 F.3d 1298, 1299 (11th Cir. 2012). Plaintiff also brings claims against both NSI and SAC under the FCCPA, Florida's analogue to the FDCPA, which prohibits various practices in "collecting consumer debts." Fla. Stat. § 559.72; Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 837 (11th Cir. 2010).

Defendants argue that Plaintiff is unable to demonstrate that SAC is a "debt collector" under the FDCPA or that SAC was "collecting consumer debts" under the FCCPA. Additionally, both sides move for summary judgment on Plaintiff's FCCPA claims, which allege that Defendants' conduct was harassing and abusive in violation of Fla. Stat. § 559.72(7), and that

25

Defendants attempted to enforce a debt they knew was not legitimate, in violation of Fla. Stat. § 559.72(9). Plaintiff also moves for summary judgment on a parallel claim for harassment under the FDCPA, 15 U.S.C. § 1692d.

**1.  SAC's status as a debt collector**

The FDCPA defines "debt collector" to include: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1314 (11th Cir. 2015); 15 U.S.C. § 1692a(6). Although the FDCPA provides a number of exclusions to the definition of "debt collector," Defendants do not maintain that any exclusion applies. 15 U.S.C. § 1692a(6)(A)-(F).

The FCCPA includes an identical definition of "debt collector." Fla. Stat. § 559.55(7). However, the FCCPA more broadly regulates the conduct of any "person" who collects consumer debts. Gann v. BAC Home Loans Servicing LP, 145 So.3d 906, 910 (Fla. 2d DCA 2014).

SAC's President, Kevin Campbell, testified that SAC performs "default prevention" and is not a "debt collector." (Campbell Dep. at 8, 11, 19). In particular, SAC contacts

borrowers to counsel them on "repayment options." (<u>Id.</u> at 12). SAC does not take payments over the phone. (<u>Id.</u> at 29). Instead, SAC typically transfers the borrower to the loan servicer. (<u>Id.</u> at 28). A manager at NSI, Cheryl Dillon, gave similar testimony:

> Q. Does [SAC] collect any debts?
>
> A. They take no payments.
>
> Q. Do they attempt to collect a debt at all?
>
> A. They can't.  They can't take payments.

(Dillon Dep. at 14).

The foregoing evidence does not demonstrate that Plaintiff would be unable to prevail on her FDCPA claim. Although Campbell testified that SAC is not a debt collector, that testimony is conclusory.  <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 642 & n.6 (11th Cir. 1998) (holding that conclusory portions of affidavit were properly struck by the district court).  Dillon and Campbell both testified that SAC does not accept payment, but that fact does not eliminate SAC's status as a debt collector.  Debt collection encompasses not just a demand for payment, but other actions taken to induce payment.  <u>See</u> <u>Saint Vil v. Perimeter Mortg. Funding Corp.</u>, No. 15-10347, ____ F. App'x ____, 2015 WL 6575814, at *2 (11th Cir. Oct. 30, 2015) ("If SSH had taken other action that could be interpreted as trying

to induce payment of the debt, like threatening additional penalties or fees, hounding the Saint Vils for payment, proposing alternatives to immediate or full payment, or even just telling the Saint Vils the amount they needed to pay, then the firm might have been acting as a debt collector under the FDCPA"). Moreover, Campbell's own testimony indicates that SAC counsels debtors on their "repayment options," which suggests, at the very least, an indirect attempt to obtain payment on a debt. Id.; 15 U.S.C. § 1692a(6). Defendants' Motion is therefore denied on this issue.

### 2. **Violations of 15 U.S.C. §1692d and Fla. Stat. § 559.72(7)**

The FDCPA prohibits the use of harassing, oppressive, or abusive measures to collect a debt, including "[c]ausing a phone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The FCCPA similarly prohibits a person from willfully communicating "with a debtor or any member of her or his family with such frequency as can reasonably be expected to harass." Fla. Stat. § 559.72(7).

Under both the FDCPA and FCCPA, the question of whether conduct is harassing or abusive is ordinarily an issue for the factfinder. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985); Story v. J. M. Fields, Inc., 343 So.2d 675,

677 (Fla. 1st DCA 1977).   However, courts will grant summary judgment where a plaintiff rests on the number of phone calls, without other evidence of harassing conduct.  See Lardner v. Diversified Consultants Inc., 17 F. Supp. 3d 1215, 1225-26 (S.D. Fla. 2014); Valle v. Nat'l Recovery Agency, No. 8:10-CV-2775-T-23MAP, 2012 WL 1831156, at *2 (M.D. Fla. May 18, 2012) (reviewing factors that may demonstrate harassment). As the First District Court of Appeal explained in Story v. J. M. Fields, Inc.:

> Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed.

343 So.2d at 677.  In Story, the court held that 100 calls in a 5-month period, continuing after the defendant was told to quit calling, presented a jury question.   Id.; see also Meadows v. Franklin Collection Service, Inc., 414 F. App'x 230, 233 (11th Cir. 2011) (holding that a jury question was presented under the FDCPA where the defendant called the plaintiff 300 times over a two-and-a-half years, despite being informed that the debts were not the plaintiff's).

Plaintiff testified that she told Heather in August 2014 that the student loan did not belong to her and that she also

told Heather to stop calling. (Pl. Dep. at 21). That testimony distinguishes the instant case from Defendants' cited authority, in which no evidence of harassment was presented beyond the number of calls. See Lardner, 17 F. Supp. 3d at 1226 (holding that 132 calls over eight months was not sufficient where the plaintiff produced no other evidence, "such as requesting the communications stop"); Waite v. Fin. Recovery Servs., Inc., No. 8:09-CV-02336, 2010 WL 5209350, at *4 (M.D. Fla. Dec. 16, 2010) (holding that pattern of calls was not sufficient where there was no indication that the plaintiff ever confirmed or disputed the debt, or asked defendant to stop calling). Although the Plaintiff's testimony is in dispute for the reasons discussed above, it must be credited for the purposes of Defendants' Motion.

Based on the high volume of calls, as well as Plaintiff's testimony that she told Heather that the student loan did not belong to her and that she asked Heather to stop calling, Plaintiff is entitled to have a factfinder determine whether the calls were harassing or abusive under the FDCPA and FCCPA. Defendants' Motion is therefore denied on Plaintiff's claims pursuant to 15 U.S.C. § 1692d and Fla. Stat. § 559.72(7).

Plaintiff's evidence is not sufficient, however, to warrant judgment in her favor on these claims. As noted, whether a defendant's conduct is harassing or abusive is

typically a jury question, and Plaintiff provides no authority to the contrary.  <u>Ortega v. Collectors Training Inst. of Ill., Inc.</u>, No. 09-21744-CIV, 2011 WL 241948, at *9 (S.D. Fla. Jan. 24, 2011) (surveying cases).  Accordingly, Plaintiff's Motion is denied on her claims pursuant to 15 U.S.C. § 1692d and Fla. Stat. § 559.72(7).

### 3.   <u>Violation of Fla. Stat. § 559.72(9)</u>

The FCCPA prohibits a person from claiming, attempting, or threatening "to enforce a debt when such person knows that the debt is not legitimate," or from asserting "the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72(9).  Defendants argue that Plaintiff lacks standing to sue under this subsection.  (Doc. # 91 at 16-17).

Pursuant to Fla. Stat. § 559.77(1), "[a] debtor" is authorized to bring a civil action to recover for violations of Fla. Stat. § 559.72.  The FCCPA defines "debtor" as "any natural person obligated or allegedly obligated to pay any debt."  Fla. Stat. § 559.55(8).  Here, there is no evidence that Plaintiff was actually obligated to pay a debt.  Rather, the issue is whether Plaintiff was "allegedly obligated" to pay a debt.

"In determining whether a plaintiff was allegedly obligated to pay a debt, the operative question is whether the

31

defendant communicated to the plaintiff that she was obligated." <u>Smith v. Markone Fin., LLC</u>, No. 3:13-CV-933-J-32MCR, 2015 WL 419005, at *4 (M.D. Fla. Feb. 2, 2015). Thus, when a creditor calls the wrong number and mistakenly alleges that the plaintiff owes a debt, the plaintiff is a "debtor" under the FCCPA. <u>Smith</u>, 2015 WL 419005, at *4. For instance, in <u>Desmond v. Accounts Receivable Management, Inc.</u>, the debt collector mistakenly left messages for the plaintiff, Edward S. Desmond, rather than the credit card holder, Edward A. Desmond. 72 So. 3d 179, 180 (Fla. 2d DCA 2011). "The messages varied in content, but they would always inform Mr. Desmond that the call was in regard to an important matter and that he should return the call." <u>Id.</u> Similarly, in <u>Fini v. Dish Network L.L.C.</u>, Dish Network left a generic message requesting that the plaintiff pay a bill, even though the plaintiff did not subscribe to Dish Network's services. 955 F. Supp. 2d 1288, 1290 (M.D. Fla. 2013) ("To continue your monthly services and avoid collection of early termination fees, please pay the total amount due shown on your last statement immediately"). In both cases, the court held that the plaintiff was "allegedly obligated" to pay a debt. <u>Id.</u>; <u>Desmond</u>, 72 So. 3d at 181.

By contrast, when a creditor leaves a message that expressly provides that it is for a different party than the

plaintiff, at least one court has held that the plaintiff is not "allegedly obligated" to pay a debt. McBeth, 2015 WL 4429324, at *9 (holding that the plaintiff was not a "debtor" where the messages were for a third party, "Tommy Mitchell," who was not associated with the plaintiff). Similarly, where a debt collector calls the plaintiff "looking for" a third party, the plaintiff is not "allegedly obligated" to pay a debt. Smith, 2015 WL 419005, at *5.

Plaintiff maintains that she received "more than a few mere 'locational' telephone calls" looking for Newsome. (Doc. # 98 at 15). However, the only substantive communication that Plaintiff identifies is the August 2014 conversation with Heather.[5] Even according to Plaintiff's version of events, Heather did not allege that Plaintiff owed on the student loan, nor did she otherwise allege that Plaintiff was obligated to pay a debt. (See Pl. Dep. at 21).

Accordingly, Plaintiff fails to come forward with sufficient evidence to demonstrate that she is a "debtor" entitled to sue for a violation of Fla. Stat. § 559.72(9). Defendant's Motion for Partial Summary Judgment is therefore granted as to Counts II and IV, to the extent these counts allege a violation of Fla. Stat. § 559.72(9). As discussed

---

[5] The record indicates that Defendants left messages on the -6140 number (e.g., Doc. # 96-5 at 8, 9), but Plaintiff has not introduced the content of those messages.

above, the Motion is denied as to Counts II and IV to the extent these counts allege a violation of Fla. Stat. § 559.72(7).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion for Partial Summary Judgment (Doc. # 91) is **GRANTED IN PART** as to Counts II and IV, to the extent that Counts II and IV allege violations of Fla. Stat. § 559.72(9).  The Motion is otherwise **DENIED.**

(2) Plaintiff's Motion for Partial Summary Judgment (Doc. # 92) is **GRANTED IN PART** as to Counts I and III, to the extent that the Court finds that Defendants are liable for statutory damages under the TCPA.  The Motion is otherwise **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 6th day of April, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE